IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC,
     Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE,

     Defendant.

Case No. 1:19-cv-879-RBW

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"), Winchester, Virginia. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation Support Unit from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of the General Counsel, Freedom of Information Act ("FOIA") Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("FOIPA") litigation cases nationwide. Prior to my joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration ("DEA") from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various assignments from 1994 to September 2006 culminating in my assignment as

1

Chief, General Litigation Branch, U.S. Army Litigation Division where I oversaw FOIPA

litigation for the U.S. Army.  I am an attorney registered in the State of Ohio and the District of

Columbia.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 235

FBI employees, supported by approximately 94 contractors, who staff a total of ten (10) FBI

Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective

mission is to effectively plan, develop, direct, and manage responses to requests for access to

FBI records and information pursuant to the FOIA, as amended by the OPEN Government Act of

2007 and the OPEN FOIA Act of 2009; the FOIA Improvement Act of 2016; the Privacy Act of

1974; Executive Order ("E.O.") 13526; Presidential, Attorney General, and FBI policies and

procedures; judicial decisions; and Presidential and Congressional directives.  The statements

contained in this declaration are based upon my personal knowledge, upon information provided

to me in my official capacity, and upon conclusions and determinations reached and made in

accordance therewith.

(3)     Because of the nature of my official duties, I am familiar with the procedures

followed by the FBI in responding to Judicial Watch, Inc.'s (hereafter "Plaintiff") request for

information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552.  Specifically, I

am familiar with the FBI's handling of the Plaintiff's FOIA request for records regarding,

concerning, or relating to an April 2017 meeting between the Department of Justice, FBI

personnel, and reporters, editors of the Associated Press ("AP"), reported in a Politico news

article dated June 29, 2018.

(4)     In response to Plaintiff's FOIA request, the FBI searched for, located, and

processed 28 pages of responsive records.  Of the 28 pages of FBI records, seven (7) pages were

2

released in full ("RIF"), and 21 pages were released in part ("RIP"). The FBI withholding justifications for the FBI records processed in response to Plaintiff's FOIA request will not be further described as the Plaintiff is only challenging the reasonableness of FBI's search for those responsive records.[1]

(5)      The FBI also reviewed 59 pages of records referred for consultation by DOJ's Criminal Division ("CRM"). Of the 59 pages of CRM records reviewed, the FBI withheld FBI equities on 47 pages. Of those 47 pages, to protect FBI equities, the FBI requested that 39 pages be RIP, and 8 pages be withheld in full ("WIF"). Plaintiff is challenging both the CRM and FBI withholdings on CRM Bates pages CRM-029 and CRM-030, on which pages FBI requested partial redactions to protect its equities. The FBI's justification for those requested withholdings is described herein.[2]

(6)      The FBI submits this declaration, including the referenced exhibits, in support of its motion for summary judgment. In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), these materials provide the Court and Plaintiff with a brief administrative history of Plaintiff's FOIA request; a description of the FBI's recordkeeping system and the procedures used to search for responsive FBI records subject to the FOIA, and a description of the FBI's justifications for withholding records in part within two (2) CRM pages pursuant to FOIA Exemptions 6, 7(C), and 7(E). *See* 5 U.S.C. §§ 552 (b)(6), (b)(7)(C), and (b)(7)(E).

---

[1] On November 3, 2020, and November 5, 2020, counsel for Plaintiff informed counsel for the Defendants that while Plaintiff did not concede that all of the FBI's redactions withheld within the FBI records were proper, Plaintiff intends to challenge only the reasonableness of the FBI's search for those records.

[2] On February 12, 2021, CRM informed counsel for the Defendants that Plaintiff would challenge both the CRM and FBI withholdings for CRM Bates pages CRM-029 and CRM-030.

## ADMINISTRATIVE HISTORY OF PLAINTIFF'S FOIA REQUEST

(7)     On July 5, 2018, Plaintiff submitted a FOIA request, through the FBI's electronic

FOIA ("eFOIA") portal,[3] seeking copies of FBI records regarding, concerning, or related to:

1) the April 2017 meeting between Department of Justice and FBI
   personnel and reporters, editors, and/or other individuals employed by
   and/or representing the Associated Press.  This request includes, but is
   not limited to, any and all notes, reports, memoranda, briefing materials,
   or other records created in preparation for, during, and/or pursuant to
   the meeting; and,

2) Any and all records of communication between any officials, employee,
   or representative of the Department of Justice and any of the individuals
   present at the aforementioned meeting.

For purposes of clarification, the subject of Plaintiff's request was reported on in Politico on June

29, 2018 (see https://www.politico.com/story/2018/06/29/paul-manafort-storage-locker-associ).

Plaintiff, which is a member of the news media, requested a waiver of both search and

duplication fees, arguing that there was an overriding public interest in disclosure, and disclosure

would shed light and public understanding of the operations or activities of the government.  If

Plaintiff's fee waiver was denied, Plaintiff agreed to pay up to $300 for associated fees.  **(Ex. A.)**

(8)     By letter dated July 16, 2018, the FBI acknowledged receipt of Plaintiff's

electronic eFOIA request, and notified Plaintiff it had assigned their request FOIPA Request

Number 1410979-000.  The FBI advised Plaintiff, *inter alia*, that a decision regarding its fee

waiver request would be rendered at a later date.  **(Ex. B.)**

(9)     Plaintiff filed this lawsuit on March 27, 2019. (ECF No. 1.)

(10)    By letter dated October 17, 2019, the FBI responded to Plaintiff's FOIA request.

The FBI advised Plaintiff, *inter alia*, that it had reviewed 28 responsive pages and released 28

---

[3] An eFOIA is an electronic means by which requesters can submit FOIA requests to the FBI,
online, through the FBI's public website, www.FBI.gov.

pages in full or in part with information withheld pursuant to FOIA Exemptions (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).   (**Ex. C.**)

## FBI SEARCHES FOR RESPONSIVE RECORDS

(11)    The FBI's general practice is to search the FBI's Central Records System ("CRS") to determine if the FBI has records about a particular subject in response to a FOIA request.  In the CRS, FBI employees record index terms in files that are useful to a particular investigation or are deemed potentially useful for future investigative/intelligence retrieval purposes, such as names of individuals, organizations, companies, publications, activities, or foreign intelligence matters (or programs).  They do not index every individual name or other subject matter in the general indices.

(12)    In this instance, the FBI determined, at first, that a standard index search of the CRS would be unlikely to locate responsive records, since the request sought records regarding, concerning, or relating to an April 2017 meeting between the Department of Justice, FBI personnel, and reporters, editors of the Associated Press, reported in a Politico news article dated June 29, 2018. This type of records request pertains a specific meeting that is typically not indexed within the CRS.  As described in more detail below, RIDS identified the FBI SA's who were invited to the meeting at issue in this litigation, and reached out to the FBI attendee still working at the FBI.  RIDS determined an FBI attendee would have more specific direct knowledge of the meeting and based on information provided by then-FBI SA (who has since moved to a different position), RIDS was then able to conduct a search of the CRS and locate responsive records.

## TARGETED SEARCH

### *Targeted Search of Field Office Special Agent ("SA") Records*

(13)    On or about May 1, 2019, RIDS contacted, through an Electronic Communication ("EC"),[4] one of FBI SA's who attended the April 11, 2017, meeting at issue[5] and requested he search for and locate records, to include but not limited to, any and all notes, reports, memoranda, briefing materials, or other records created in preparation for, during, and/or pursuant to the meeting with DOJ, FBI and AP reporters in April 2017, responsive to Plaintiffs' request.[6] RIDS provided a copy of Plaintiff's FOIA request, and copy of the June 29, 2018, Politico news article describing this meeting, to assist in the then-FBI SA in his search.

(14)    RIDS determined the FBI SA in attendance at the meeting would likely have maintained potentially responsive records and know if other records were generated by any other FBI personnel in attendance.

(15)    On or about May 16, 2019, the then-FBI SA who attended the meeting as described in Plaintiff's FOIA request, responded to RIDS inquiry.  The then-FBI SA reported that he had searched his email archives using a combination of search terms "FBI", "DOJ", and/or "AP April 2017 meeting," but had not located any responsive emails relating to the meeting with the AP.  Additionally, the then-SA separately searched his computer hard drives using the same search terms, as well as his paper files for any additional documents that could be responsive to Plaintiff's FOIA request; these additional searches also did not locate responsive

---

[4] An "EC" is an FBI term of art for an internal memorandum.

[5] RIDS identified the FBI SAs who were invited to the meeting at issue in this litigation.  RIDS reached out to the one FBI attendee still working at the FBI.

[6] Plaintiff's FOIA request only provided a general range of "April 2017" for the AP meeting with DOJ and FBI personnel.  The FBI SA attending the meeting confirmed the meeting took place on April 11, 2017.

records related to the meeting with AP still the FBI SA's possession.

(16)     Even though the then FBI SA did not have any specific records still in his possession concerning the meeting, the then-SA did recall creating an EC in May 2017 memorializing the items discussed during the meeting, and serializing both that EC as well as his handwritten notes taken during the meeting within the FBI's CRS file for its Manafort investigation.  The SA also conveyed that the serialized EC and notes were later turned over and separately maintained as part of the Special Counsel's Office ("SCO") case files within the CRS to assist during their investigations.  Finally, the then FBI SA informed RIDS that any additional records concerning other FBI personal attending the meeting would also be maintained as part of both the FBI's Paul Manafort investigative case file in the CRS, and also as part of the SCO case files that are separately maintained within the CRS.

## CRS SEARCH

(17)     As detailed above, an individualized search request to the then-FBI SA attending the April 11, 2017 AP meeting, led to the identification of records serialized by the then-SA within the CRS, and later turned over and maintained within the SCO file.  RIDS determined it could now conduct a search reasonably likely to locate responsive records in the CRS, based on the information provided by the FBI SA attending the meeting.

(18)     The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated mission and functions as a law enforcement, counterterrorism, and intelligence agency to include performance of administrative and personnel functions.  The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters ("FBIHQ"), FBI field offices, and FBI legal attaché offices ("Legats")

7

worldwide.

(19)    The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subject categories. The broad array of CRS file classification categories includes types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a universal case file number ("UCFN") consisting of three sequential components: (a) the CRS file classification number, (b) the abbreviation of the FBI office of origin ("OO") initiating the file, and (c) the assigned individual case file number for that particular subject matter.[7] Within each case file, pertinent documents of interest are "serialized," or assigned a document number in the order in which the document is added to the file, typically in chronological order.

### The CRS General Indices and Indexing

(20)    The general indices to the CRS are the index or "key" to locating records within the enormous amount of information contained in the CRS. The CRS is indexed in a manner that meets the FBI's investigative needs and priorities and allows FBI personnel to reasonably and adequately locate pertinent files in the performance of their law enforcement duties. The general indices are arranged in alphabetical order and comprise an index on a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest that are indexed for future retrieval. The entries in the general indices fall into two category types:

---

[7] For example, in fictitious file number "11Z-HQ-56789," the "11Z" component indicates the file classification, "HQ" indicates that FBI Headquarters is the FBI OO, and "56789" is the assigned case specific file number.

   a. <u>Main entry</u>. A main index entry is created for each individual or non-individual that is the subject or focus of an investigation. The main subject(s) is identified in the case title of most documents in a file.

   b. <u>Reference entry</u>. A reference index entry is created for individuals or non-individuals associated with the case but are not the main subject(s) or focus of an investigation. Reference subjects are typically not identified in the case title of a file.

(21)     FBI employees may index information in the CRS by individual (persons), by organization (organizational entities, places, and things), and by event (*e.g.,* terrorist attack or bank robbery). Indexing information in the CRS is done at the discretion of FBI investigators when information is deemed of sufficient significance to warrant indexing for future retrieval. Accordingly, the FBI does not index every individual name, organization, or event in the general indices.

### *Automated Case Support*

(22)     Automated Case Support ("ACS") was an electronic, integrated case management system that became effective for FBIHQ and all FBI field offices and Legats on October 1, 1995. As part of the ACS implementation process, over 105 million CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices. ACS had an operational purpose and design to enable the FBI to locate, retrieve, and maintain information in its files in the performance of its mission and myriad functions.[8]

(23)     The Universal Index ("UNI") was the automated index of the CRS and provided all offices of the FBI a centralized, electronic means of indexing pertinent investigative

---

[8] ACS was, and the next generation Sentinel system is, relied on by the FBI daily to fulfill essential functions, such as conducting criminal, counterterrorism, and national security investigations; background investigations; citizenship and employment queries; and security screening, to include presidential protection.

information to FBI files for future retrieval via index searching. Individual names were recorded with applicable identifying information such as date of birth, race, sex, locality, social security number, address, and/or date of an event. Moreover, ACS implementation built on and incorporated prior automated FBI indices; therefore, a search employing the UNI application of ACS encompassed data that was already indexed into the prior automated systems superseded by ACS. As such, a UNI search in ACS was capable of locating FBI records created before its 1995 FBI-wide implementation in both paper and electronic format.[9]

### ACS and Sentinel

(24)   Sentinel is the FBI's next generation case management system that became effective FBI-wide on July 1, 2012. Sentinel provides a web-based interface to FBI users, and it includes the same automated applications that are utilized in ACS. After July 1, 2012, all FBI generated records are created electronically in case files via Sentinel; however, Sentinel did not replace the relevance of ACS as an important FBI search mechanism. Just as pertinent information was indexed into UNI for records generated in ACS before July 1, 2012, when a record is generated in Sentinel, information is indexed therein for future retrieval. Additionally, in the timeframe in which both systems were in operation, any information indexed in Sentinel was also indexed in ACS.

(25)   On August 1, 2018, the ACS case management system was decommissioned, and ACS data was migrated into Sentinel, including the ACS indices data and digitized investigative

---

[9] Older CRS records that were not indexed into UNI as a result of the 1995 ACS consolidation remain searchable by manual review of index cards, known as the "manual indices." A search of the manual indices is triggered for requests on individuals if the person was born on or before January 1, 1958; and for requests seeking information about organizations or events on or before January 1, 1973. As the serialized records reported by the FBI SA pertained to an April 2017 meeting, any records created would be captured through a UNI search.

records.  Sentinel retains the index search methodology and function whereby the CRS is queried

via Sentinel for pertinent index main or reference entries in case files.  All CRS index data from

the UNI application previously searched via ACS is now searched through the "ACS Search"

function in Sentinel.  As the serialized records reported by the FBI SA pertained to an April 2017

meeting, any records created would be captured through a UNI search of ACS and an

overlapping Sentinel search.

**Adequacy of the Search**

(26)     Index Searching.  To locate CRS information, RIDS employs an index search

methodology.  Index searches of the CRS are reasonably expected to locate responsive material

within the vast CRS since the FBI indexes pertinent information into the CRS to facilitate

retrieval to serve its primary law enforcement and intelligence gathering functions.  Given the

broad range of indexed material in terms of both timeframe and subject matter that it can locate

in FBI files, a search of the FBI automated indices available at the time of Plaintiff's request in

both ACS and Sentinel was the mechanism RIDS employed to conduct CRS index searches.

(27)     CRS Search and Results.  RIDS conducted a CRS index search for potentially

responsive main file and cross-reference[10] records employing the ACS Search function in

Sentinel using the search terms: "Associated Press", and "AP meeting."  FBI assessed that 28

pages of these search results—including the FBI SA's own EC and handwritten notes, as well as

other ECs and notes created by other FBI personnel who had attended the meeting—are

responsive to Plaintiff's requests.  These 28 pages of responsive records were processed for

segregable release to Plaintiff.

---

[10] *See supra* ⁋ 20a-b, for an explanation of main and cross-reference entries.

(28)    Finally, out of abundance of caution, RIDS further conducted a search of the SCO investigatory files that are separately maintained within the CRS, using the same search terms: "Associated Press", and "AP meeting." Through this additional search, RIDS confirmed that (as it expected, given the structure of the CRS, explained *supra*), the only responsive documents in the SCO investigatory files were the same ones that had already been processed and released to Plaintiff.

(29)    Scope of Search. RIDS conducted a search reasonably calculated to locate records responsive to Plaintiffs request. First, the FBI conducted a targeted search with the then-FBI SA attending the meeting at issue. This targeted search provided a lead to the responsive FBI records Plaintiff requested. Second, the lead from the then-FBI SA indicted the responsive records were located within the CRS. Given the CRS's comprehensive nature and scope, the CRS is the principal records system searched by RIDS, to locate information responsive to most FOIA requests, because the CRS is where the FBI indexes information about individuals, organizations, events, and other subjects of investigative interest for future retrieval. *See supra* ¶ 18. Third, it was determined the information requested by Plaintiff about a specific meeting between DOJ, FBI and reporters and editors of the AP, was serialized within the CRS. Accordingly, by utilizing additional information provided by FBI personnel familiar with the matter, the FBI could expect to locate the requested material within the CRS via the index search methodology.

(30)    FBI personnel knowledgeable of the subject matter assisted RIDS in its search for responsive material. These employees advised RIDS there were no other locations likely to maintain responsive records.

## ADDITIONAL SEARCHES CONDUCTED FOR INFORMATION RELATED TO THE MEETING

### *Targeted Search of FBI's Office of Public Affairs ("OPA"), and FBI's Criminal Investigative Division ("CID")*

(31)     A separate administrative FOIA request, not part of the request at issue herein, and processed by RIDS about the same time requested, "records concerning the issuance of a complaint about the March or April 2017 meeting involving Justice and FBI officials with reporters from the Associated Press". This alleged "complaint" came to be known during a court filing by Kevin Downing, an attorney for defendant Paul Manafort, filed May 21, 2018. *See* **18-cr-00083-TSE, Document 77, page 6**. Mr. Downing asserted that, "The senior DOJ attorney's role in arranging the meeting did not go over well with FBI officials, who issued a complaint to the Justice Department suggesting that the attorney did not follow normal procedures for dealing with journalists." Plaintiff did not specifically seek a copy of this alleged complaint, but Plaintiff did request *anything* concerning this AP meeting with DOJ, and the FBI. RIDS determined if records existed, this alleged complaint, would be responsive to Plaintiff's FOIA request.

(32)     On or about June 21, 2019, RIDS reached out to the FBI's OPA, seeking a search of their office for any potentially responsive material concerning the filing of an alleged FBI complaint with DOJ over the procedures followed for dealing with journalists at the April 2017 meeting.

(33)     On or about June 26, 2019, OPA responded to RIDS inquiry. OPA reported that no records concerning an alleged complaint filed by the FBI concerning DOJ's lack of following procedures for dealing with journalists at the April 2017 meeting were located searching their paper and electronic files. As to OPA's electronic email file systems, OPA searched their unclassified network ("UNET") and classified network ("FBINET"), using the following search

13

terms: "FBI Complaint", "Associated Press", "AP/DOJ Meeting", and "April 2017". No responsive records were located. OPA suggested RIDS reach out to FBI's Criminal Investigative Division ("CID"), International Corruption Unit ("ICU"), as they would be the most likely FBI Division and Office to have responsive records if they exist.

(34)   On or about June 27, 2019, RIDS reached out to FBI CID, ICU, seeking any potentially responsive records concerning an alleged complaint filed with DOJ over the procedures followed for dealing with journalists at the April 2017 meeting with AP. RIDS provided a copy of Plaintiff's complaint and a copy of the administrative FOIA request history detailing the alleged complaint to assist in their search.

(35)   On or about July 1, 2019, CID, ICU, responded to RIDS inquiry. A search of both paper and electronic records of CID, ICU were searched for any alleged complaint filed by the FBI against DOJ concerning the handling of the meeting with AP, and no records were located. As to CID's electronic record file systems, CID searched using the following search terms: "FBI Complaint", "Associated Press", "AP/DOJ Meeting", and "April 2017". In addition, a Supervisor Special Agent ("SSA") of ICU spoke with current and former personnel who attended the April 11, 2017 meeting, or were familiar with the details of the meeting, but these conversations did not yield any additional information about the existence of any responsive records.

(36)   Knowledgeable FBI OPA and CID, ICU personnel advised that there were no other employee or locations where responsive records would be maintained in the FBI concerning the requested subject matter.

### Targeted Follow-up Search of FBI's OPA

(37)   As part of narrowing the scope of litigation issues, by email dated September 25,

14

2020, Plaintiff's counsel suggested the FBI conduct an expanded record search of OPA to include "any and all records" as detailed in Plaintiff's FOIA request, and not only for an "alleged complaint" filed by the FBI concerning DOJ's lack of procedures for setting up meetings with journalists.

(38)     On or about October 2, 2020, RIDS reached out to the FBI's OPA, seeking a follow-up expanded search of their office records systems for any potentially responsive material as detailed in Plaintiff's FOIA request.  RIDS provided a copy of Plaintiff's FOIA request, and Complaint to assist OPA with their search.

(39)     On or about October 5, 2020, OPA responded to RIDS inquiry.  OPA reported that no records responsive to Plaintiff's FOIA request were located searching their paper and electronic files.  As to OPA's electronic email file systems, OPA searched their unclassified network ("UNET") and classified network ("FBINET"), using the following search terms: "Associated Press", "AP", "April 2017", the named AP reporters attending the meeting and the FBI SAs attending the AP meeting.   No responsive records were located.

(40)     Knowledgeable FBI OPA personnel advised that there were no other employee or locations where responsive records would be maintained in the FBI concerning the requested subject matter.

## JUSTIFICATION OF CHALLEGED WITHHOLDINGS

(41)     As mentioned supra at paragraph 5, the FBI is justifying its withholdings within two (2) CRM pages pursuant to FOIA Exemptions 6, 7(C), and 7(E).

### *EXEMPTION 7 THRESHOLD*

(42)     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law

enforcement purposes.  Pursuant to 28 U.S.C. §§ 533 and 534, Executive Order 12333 as

implemented by the Attorney General's Guidelines for Domestic FBI Operations ("AGG-

DOM"), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal

government with authority and responsibility to investigate all violations of federal law not

exclusively assigned to another agency, to conduct investigations and activities to protect the

United States and its people from terrorism and threats to the national security, and to further the

foreign intelligence objectives of the United States.  Under this investigative authority, the

responsive records described herein were compiled for the following specific law enforcement

purpose.

(43)    The two (2) page CRM document is an email chain dated April 4, 2017, with a

subject title of "Re: Meeting with Andrew Weissman."   The email chain concerned the

scheduling of an upcoming April 11, 2017 meeting between the DOJ attorneys, FBI personnel,

and reporters, and editors of the AP.  An FBI SA who attended the meeting described the

meeting as an 'off the record' meeting with the AP and DOJ concerning the AP reporter's

investigation into Paul Manafort.  The meeting was off the record as the DOJ and FBI could not

answer questions for any potential DOJ and/or FBI pending investigations.  The DOJ federal

investigators, who invited the FBI to attend the session, wanted to hear what the AP had

discovered in their investigations.

(44)    Manafort's first trial on 18 criminal counts began on July 31, 2018.  DOJ

alleged that Manafort laundered $30 million he made working for Ukrainian politicians into the

US from undeclared offshore accounts without paying taxes.  Later, the federal prosecutors

alleged, Manafort defrauded several US banks to obtain more than $20 million in loans (after the

Ukrainian regime was deposed and he was looking for cash elsewhere).  Ultimately, a jury

convicted Manafort on five tax evasion charges, one charge for failure to report foreign accounts, and two counts of bank fraud. Thus, the CRM records were compiled for a law enforcement purpose of gathering potential leads concerning any potential federal crimes associated to Paul Manafort, which falls squarely within the federal law enforcement duties of the FBI. The CRM records at issue readily meet the threshold requirement of Exemption (b)(7).

## EXEMPTIONS (b)(6) AND (b)(7)(C) CLEARLY UNWARRANTED AND UNWARRANTED INVASION OF PERSONAL PRIVACY

(45)    Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of Exemption 6.

(46)    Similarly, 5 U.S.C. § 552(b)(7)(C) exempts from disclosure, "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."[11]

(47)    When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose

---

[11] The practice of the FBI is to assert Exemption (b)(6) in conjunction with Exemption (b)(7)(C). Although the balancing test for (b)(6) uses a standard of "would constitute a clearly unwarranted invasion of personal privacy" and the test for (b)(7)(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions are sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure in the analysis of both exemptions.

17

name and identifying information appears in the documents at issue. When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. In making this analysis, the public interest in the information was determined to be information which would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. In each instance where information was withheld pursuant to Exemptions (b)(6) and (b)(7)(C), the FBI determined that the individuals' privacy interests were not outweighed by any public interest in disclosure.

### Names of FBI Special Agents

(48)    The FBI asserted Exemptions (b)(6) and (b)(7)(C) within CRM Bates pages CRM-029 and CRM-30, to protect the names of FBI special agents ("SAs") attending an off the record meeting with the AP and DOJ concerning the AP reporter's investigation into Paul Manafort. The meeting was off the record as the DOJ and FBI could not answer questions concerning any potential DOJ and/or FBI pending investigations. The DOJ federal investigators, who invited the FBI to attend the session, wanted to hear what the AP had discovered in their investigations into Paul Manafort. The FBI SAs attending this meeting were acting on behalf of the FBI in their capacity as investigators and were interested in hearing any AP reporter leads that may be of investigative interest to the FBI.

(49)    The publicity associated with the release of the identities of the FBI SAs names in connection with a particular investigation or unofficial off the record inquiry, especially investigations and inquires that received media attention such as the case concerning Paul Manafort, could trigger harassment and unwanted media attention of the FBI SAs. These FBI

SAs have access to specific information concerning official law enforcement investigations and/or information concerning preliminary inquiries into potential criminal activities, counterterrorism, and national security investigations. The FBI SAs could therefore become targets of harassing inquiries for unauthorized access to FBI investigations and/or inquiries if their identities are released. Privacy considerations protect FBI SAs from unnecessary, unofficial questioning as to the conduct of any investigation or inquiry, whether or not they are currently employed by the FBI.

(50)     The FBI examined the CRM documents containing the names of FBI SAs to determine whether there was any public interest that would outweigh the substantial privacy interests of each FBI SA named in the responsive CRM records. The FBI could not identify any discernible public interest as to how the disclosure of the SAs names would shed light on the operations and activities of the FBI. In addition, the FBI determined it did not make any official disclosure concerning the FBI personnel attending the meeting. Thus, the FBI determined that the privacy interests of the SAs in protecting their names from disclosure in the CRM records outweigh any public interest in disclosure, and that disclosure of the names of the FBI SAs would constitute a clearly unwarranted and unwarranted invasion of personal privacy.

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(51)     5 U.S.C. § 552(b)(7)(E) provides for the withholding of law enforcement records or information which:

> would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

(52)     The FBI asserted Exemption (b)(7)(E) to protect a sensitive internal FBI email

address on CRM Bates page CRM-029, which was created and authorized for internal use by the FBI. In our consultation response to CRM concerning these document pages, the FBI requested CRM apply, on behalf of the FBI, FOIA Exemption 7E for an FBI email address. As detailed below, the FBI provides its justification for protecting this information.

(53)    Exemption 7E provides for categorical protection as to the techniques and procedures used in FBI investigations, and it also protects internal FBI procedures not known to the public, as well as non-public details about the use of well-known techniques and procedures.

### Internal FBI E-mail Address

(54)    The FBI asserted Exemption (b)(7)(E) to protect an internal FBI e-mail address, as it is FBI's standard practice to protect all internal email naming convention for all FBI personnel. Release of this type of information could allow individuals under investigation to exploit the FBI's information technology ("IT") system to gain unauthorized access to, view and manipulate data on, or otherwise interfere with the FBI's non-public intranet. Additionally, release of internal FBI e-mail addresses could allow individuals to disrupt official business and could subject FBI employees to harassing e-mails seeking information concerning FBI investigations. Moreover, as discussed *supra*, the names of FBI SAs are protected from disclosure under FOIA. The vast majority of FBI internal e-mail addresses include at least part of the person's name associated with the e-mail address. Thus, release of an e-mail address would, at the same time, release the FBI's personnel name (or a majority of the name), which has been withheld for the reasons explained *supra* at ¶¶ 48-50. Thus, the FBI properly withheld this information pursuant to Exemption (b)(7)(E).

### Segregation of Non-Exempt Information

(55)    In evaluating the responsive CRM documents, the FBI conducted a document-by-

document and line-by-line review and determined that all nonexempt information was segregated and disclosed. The specific segregability determinations for information protected pursuant to FOIA Exemptions 6, 7(C), and 7(E), are discussed above in paragraphs 44-53 of this declaration.

## CONCLUSION

(56)   Plaintiff did not concede that all of the FBI's redactions withheld within the FBI records were proper, Plaintiff only challenged the reasonableness of the FBI's search for those records and its assertions of Exemptions 6, 7(C), and 7(E) on CRM Bates pages CRM-029 and 030. The FBI performed adequate and reasonable searches for responsive records, processed all such records, and released all reasonably segregable non-exempt information from documents responsive to Plaintiff's FOIA request that are subject to FOIA. As to Plaintiff's challenge of FBI withholdings in a two (2) page CRM record, the FBI processed the record under the access provisions of the FOIA to achieve maximum disclosure. Information was properly withheld pursuant to FOIA Exemptions 6, 7(C), and 7(E). The FBI carefully examined the document and determined the information withheld, if disclosed, would cause a clearly unwarranted invasion of the personal privacy or could reasonably be expected to constitute an unwarranted invasion of personal privacy; and would disclose an internal FBI procedure used for law enforcement investigations. After review of the document pages at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through C attached hereto are true and correct copies.

Executed this _____ day of March 2021.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1: 19-cv-00879-RBW |
| ) | |
| DEPARTMENT OF JUSTICE, ) | |
| ) | |
| ) | |
| Defendant ) | |

# **<u>Exhibit A</u>**

----START MESSAGE---- Subject: eFOIA Request Received Sent: 2018-07-05T17:04:37.941527+00:00
Status: pending Message:

## Organization Representative Information

| | |
|---|---|
| **Organization Name** | Judicial Watch. Inc. |
| **Prefix** | |
| **First Name** | Sean |
| **Middle Name** | |
| **Last Name** | Dunagan |
| **Suffix** | |
| **Email** | sdunagan@judicialwatch.org |
| **Phone** | 814-691-9806 |
| **Location** | United States |

## Domestic Address

| | |
|---|---|
| **Address Line 1** | 400 Scott Ave |
| **Address Line 2** | |
| **City** | Fort Collins |
| **State** | Colorado |
| **Postal** | 80521 |

## Agreement to Pay

**How you will pay**

file://hqrd-sfile-fdps/FDPS_Repository/EFOIA/91a1/EMailCorrespondence.html          4/25/2019

I am requesting a fee waiver for my request and have reviewed the FOIA reference
guide. If my fee waiver is denied, I am willing to pay additional fees and will enter the
maximum amount in the box below.

**Allow up to $**   300

## Proof Of Affiliation for Fee Waiver

**Waiver Explanation**    We are entitled to a waiver of search fees because we are a "representativ-
of the news media." See 5 U.S.C. A§ 552(a)(4)(A)(ii)(II); see also [...]
Action v. Federal Trade Comm., 799 F.3d 1108 (D.C. Cir. 2015); Natur[...]
Archive v. U.S. Dep[...] of Defense, 880 F.2d 1381 (D.C. Cir. 1989). For more
than twenty years, Judicial Watch has used FOIA and other investigative
tools to gather information about the operations and activities of
government, a subject of undisputed public interest. Our personnel, which
includes experienced journalists and professional writers on staff and under
contract, use their editorial skills to turn this raw information into
distinct works that are disseminated to the public via our monthly
newsletter, which has a circulation of over 300,000, weekly email updates,
which has over 690,000 subscribers, investigative bulletins, special
reports, www.judicialwatch.org website, broadcast and radio FOIA, and
social media, including Facebook and Twitter, among other distribution
channels. We have authored several books, including Corruption Chronicles by
Tom Fitton (Threshold Editions, July 24, 2012), and Clean House by Tom
Fitton (Threshold Editions, Aug. 2, 2016). Clean House also produced a
documentary film, "District of Corruption," directed by Stephen K. Bannin.
Our "news media" status has been confirmed in court rulings. See, e.g.,
Judicial Watch, Inc. v. U.S. Dep[...] of Defense, 2014 U.S. Dist. LEXIS 44071,
*1 (D.D.C. June 25, 2004); Judicial Watch, Inc. v. U.S. Dep[...] of Justice,
133 F. Supp.2d 52 (D.D.C. 2000). As a tax-exempt, 501(c)(3) non-profit
corporation, we have no commercial interests and do not seek the requested
records for any commercial use. Rather, we intend to use the requested
records as part of our ongoing investigative journalism and public
education efforts to promote integrity, transparency, and accountability in
government and fidelity to the rule of law.

Judicial Watch also is entitled to a waiver of both search fees and
duplication fees because "disclosure of the information is in the public
interest." 5 U.S.C. A§ 552(a)(4)(A)(iii). Disclosure of the requested record
undoubtedly will shed light on "the operations or activities of the
government." Cause of Action, 799 F.3d at 1115 (quoting 5 U.S.C. A§
552(a)(4)(A)(iii)). Disclosure also is "likely to contribute significantly
to the public understanding" of those operations or activities because,
among other reasons, Judicial Watch intends to disseminate it to the public
and its findings to "a reasonably broad audience of persons interested in
the subject" via its newsletter, email updates, investigative bulletins,
website, blog, and its other, regular distribution channels. Cause of
Action, 799 F.3d at 1116 (quoting Carney v. U.S. Dep[...] of Justice, 19 F.3d
807, 815 (2d Cir. 1994)).

**Documentation Files**

## Non-Individual FOIA Request

**Request Information**   1. Any and all records regarding, concerning, or related to the April 21, 2016 meeting between Department of Justice and FBI personnel and reporters, editors, and/or other individuals employed by and/or representing the Associated Press. This request includes, but is not limited to, any and all notes, reports, memoranda, briefing materials, or other records created in preparation for, during, and/or pursuant to the meeting.

2. Any and all records of communication between any official, employee, or representative of the Department of Justice and any of the individuals present at the aforementioned meeting.

For purposes of clarification, the meeting that is the subject of this request was reported on in Politico in June 22, 2018 from https://www.politico.com/story/2018/06/22/paul-manafort-of-rape-leaker-....

----END MESSAGE----

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1: 19-cv-00879-RBW |
| ) | |
| DEPARTMENT OF JUSTICE, ) | |
| ) | |
| ) | |
| Defendant ) | |

# **Exhibit B**



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

July 16, 2018

MR. SEAN DUNAGAN
JUDICIAL WATCH, INC.
400 SCOTT AVENUE
FORT COLLINS, CO 80521

FOIPA Request No.: 1410979-000
Subject: Records Related to the April 2017
Meeting between DOJ, FBI and the
Associated Press

Dear Mr. Dunagan:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI.   Below you will find check boxes and informational paragraphs about your request, as well as specific determinations required by these statutes.   Please read each one carefully.

☑ Your request has been received at FBI Headquarters for processing.

☐ Your request has been received at the _____ Resident Agency / _____ Field Office and forwarded to FBI Headquarters for processing.

☑ You submitted your request via the FBI's eFOIPA system.

   ☑ We have reviewed your request. Consistent with the FBI eFOIPA terms of service, future correspondence about your FOIA request will be provided in an email link.

   ☐ We have reviewed your request. Consistent with the FBI eFOIPA terms of service, future correspondence about your FOIPA request will be sent through standard mail.

☐ The subject of your request is currently being processed and documents will be released to you upon completion.

☐ Release of responsive records will be posted to the FBI's electronic FOIA Library (The Vault), http:/vault.fbi.gov, and you will be contacted when the release is posted.

☑ Your request for a public interest fee waiver is under consideration, and you will be advised of the decision at a later date.   If your fee waiver is not granted, you will be responsible for applicable fees per your designated requester fee category below.

☑  For the purpose of assessing any fees, we have determined:

☐  As a commercial use requester, you will be charged applicable search, review, and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(I).

☑  As an educational institution, noncommercial scientific institution or representative of the news media requester, you will be charged applicable duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(II).

☐  As a general (all others) requester, you will be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III).

Please check the status of your FOIPA request at www.fbi.gov/foia by clicking on **FOIPA Status** and entering your FOIPA Request Number. Status updates are adjusted weekly. The status of newly assigned requests may not be available until the next weekly update. If the FOIPA has been closed the notice will indicate that appropriate correspondence has been mailed to the address on file.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request. Please use this number in all correspondence concerning your request.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov. Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov. If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Information Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JUDICIAL WATCH, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF JUSTICE, | ) |
| | ) |
| | ) |
| Defendant | ) |

Civil Action No. 1: 19-cv-00879-RBW

# Exhibit C

U.S. Department of Justice

Federal Bureau of Investigation
*Washington, D.C. 20535*

October 17, 2019

MR. SEAN DUNAGAN
JUDICIAL WATCH, INC.
400 SCOTT AVENUE
FORT COLLINS, CO 80521

Civil Litigation No.: 19-cv-879
FOIPA Request No.: 1410979-000
Subject: Records related to the April 2017 meeting
between DOJ, FBI and the Associated Press

Dear Mr. Dunagan:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Below you will find checked boxes under applicable statutes for the exemptions asserted to protect information exempt from disclosure. The appropriate exemptions are noted on the processed pages next to redacted information. In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely pursuant to applicable exemptions. An Explanation of Exemptions is enclosed to further explain justification for withheld information.

| Section 552 | | Section 552a | |
|---|---|---|---|
| ☐ (b)(1) | ☑ (b)(7)(A) | ☐ (d)(5) | |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) | |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) | |
| | ☐ (b)(7)(D) | ☐ (k)(2) | |
| _____ | ☑ (b)(7)(E) | ☐ (k)(3) | |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) | |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) | |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) | |
| ☑ (b)(6) | | ☐ (k)(7) | |

28 pages were reviewed and 28 pages are being released.

Please see the paragraphs below for relevant information specific to your request and the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☐ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

☐ This information has been referred to the OGA(s) for review and direct response to you.
☐ We are consulting with another agency. The FBI will correspond with you regarding this information when the consultation is completed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests. **"Part 2"** includes additional standard responses that apply to all requests for records on individuals. **"Part 3"** includes general information about FBI records that you may find useful. Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, D.C. 20001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following website: https://www.foiaonline.gov/foiaonline/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).   The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.   Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.   If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."   Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter.   Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

☑   See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Information Management Division

Enclosures

Enclosed is a copy of Bates pages 19-cv-879(FBI)-1 through 19-cv-879(FBI)-28, which represents the final release of information responsive to your Freedom of Information/Privacy Acts (FOIPA) request.

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum includes information applicable to your request.  Part 1 of the Addendum includes standard responses that apply to all requests.  Part 2 includes additional standard responses that apply to all requests for records on individuals.  Part 3 includes general information about FBI records.  For questions regarding Parts 1, 2, or 3, visit the www.fbi.gov/foia website under "Contact Us."  Previously mentioned appeal and dispute resolution services are also available at the web address.

**Part 1: The standard responses below apply to all requests:**

(i)     **5 U.S.C. § 552(c).**  Congress excluded three categories of law enforcement and national security records from the requirements of the FOIA [5 U.S.C. § 552(c) (2006 & Supp. IV (2010)].  FBI responses are limited to those records subject to the requirements of the FOIA.  Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)    **National Security/Intelligence Records.**  The FBI can neither confirm nor deny the existence of national security and foreign intelligence records pursuant to FOIA exemptions (b)(1), (b)(3), and PA exemption (j)(2) as applicable to requests for records about individuals [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2); 50 U.S.C.S 3024(i)(1)].  The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].  This is a standard response and should not be read to indicate that national security or foreign intelligence records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)     **Requests for Records about any Individual—Watch Lists.**  The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].  This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)    **Requests for Records for Incarcerated Individuals.**  The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)].  This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)     **Record Searches.**  The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching those systems or locations where responsive records would reasonably be found.  A reasonable search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling law enforcement, intelligence, and administrative functions.  The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters (FBIHQ), FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide and includes Electronic Surveillance (ELSUR) records.  For additional information about our record searches visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii)    **FBI Records.**  Founded in 1908, the FBI carries out a dual law enforcement and national security mission.  As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)   **Requests for Criminal History Records or Rap Sheets.**  The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheets.  These criminal history records are not the same as material in an investigative "FBI file."  An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.  For a fee, individuals can request a copy of their Identity History Summary Check.  Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.  Additionally, requests can be submitted electronically at www.edo.cjis.gov.  For additional information, please contact CJIS directly at (304) 625-5590.

(iv)    **The National Name Check Program (NNCP).**  The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security.  Please be advised that this is a service provided to other federal agencies.  Private citizens cannot request a name check.

**EXPLANATION OF EXEMPTIONS**

SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal  privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ