## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-879 (RBW) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## DECLARATION OF JONATHAN M. BREYAN

I, Jonathan M. Breyan, declare the following to be true and correct:

1.        I am a Senior Supervisory Attorney in the Office of Information Policy (OIP), United States Department of Justice (DOJ or the Department).  In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests subject to litigation processed by the Initial Request Staff (IR Staff) of OIP.  The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and from six senior leadership offices of the DOJ, specifically, the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs (PAO).  Moreover, the IR Staff is responsible for processing FOIA requests seeking certain records from the Special Counsel's Office (SCO).

2.        The IR Staff devises appropriate records searches for each FOIA request and determines whether records can be released in accordance with the FOIA.  In processing such requests, the IR Staff consults with personnel in the Department's senior leadership offices and,

when appropriate, with other components within the DOJ, as well as with other Executive

Branch agencies.

3.      I make the statements herein on the basis of personal knowledge, as well as

information provided to me by others within the Department with knowledge of the types of

records at issue in this case, and on information acquired by me in the course of performing my

official duties.

## Plaintiff's FOIA Request

4.      Plaintiff's FOIA request, dated July 5, 2018, was originally submitted directly to

the Department's Mail Referral Unit ("MRU"), as well as the Federal Bureau of Investigation

("FBI").  The MRU receives FOIA requests from requesters uncertain about which component of

the Department would maintain records responsive to their request.  The MRU then forwards

such a request to the Department component(s) determined to be most likely to maintain the

records that the requester is seeking.  In this case, the MRU forwarded Plaintiff's request to the

Department's Criminal Division ("CRM").

5.      On July 2, 2019, after the instant litigation had already commenced, the FBI and

CRM routed Plaintiff's FOIA request to OIP.  A copy of Plaintiff's FOIA request is attached

hereto as Exhibit A.

6.      Specifically, Plaintiff's request was two-fold: (1) "Any and all records regarding,

concerning, or related to the April 2017 meeting between Department of Justice and FBI

personnel and reporters, editors, and/or other individuals employed by and/or representing the

Associated Press.  This request includes but is not limited to, any and all notes, reports,

memoranda, briefing materials, or other records created in preparation for, during, and/or

pursuant to the meeting." and (2) "Any and all records of communication between any official,

2

employee, or representative of the Department of Justice and any of the individuals present at the aforementioned meeting."

7.     Plaintiff's request also stated "[f]or purposes of clarification" that the meeting referenced in its request was reported by Politico in the following article dated June 29, 2018: https://www.politico.com/story/2018/06/29/paul-manafort-storage-locker-associated-press-687776.  This Politico article provides details about the meeting, including that it took place in April 2017 with officials present from CRM, the FBI, and reporters from the Associated Press. This Politico article also references a binder utilized at a hearing in the government's prosecution of Paul Manafort, which the Politico article reported as containing statements about the April 2017 meeting.  Based on the details discussed in the Politico article and the fact that SCO was involved in the prosecution of Paul Manafort, OIP endeavored, as explained in detail below, to locate this binder within SCO records.

8.     Finally, Plaintiff also requested a waiver of fees in its request.[1]

### **OIP's Response to Plaintiff's FOIA Request**

9.     By letter dated February 6, 2020, OIP responded to Plaintiff's FOIA request, on behalf of the SCO, under OIP administrative tracking number DOJ-2019-005812.

10.     In the same response letter, OIP informed Plaintiff that, after identifying and searching certain SCO files that were the most likely to possess records responsive to Plaintiff's request, no records responsive to Plaintiff's request were located.  A copy of this letter, dated February 6, 2020, is attached hereto as Exhibit B.

---

[1] No fees have been assessed for Plaintiff's FOIA request.  Accordingly, Plaintiff's request for a fee waiver is moot.

11.     As set forth in greater detail below, in the fall of 2020, during the course of the parties' discussions regarding Defendant's response to Plaintiff's FOIA request, OIP learned that the SCO's paper files had been assigned "box lists," *i.e.*, a list of the subjects of the records contained in each respective box.  At the time OIP initially received Plaintiff's FOIA request, the box lists had not yet been created and, thus, it had not been feasible to search SCO's paper files at that time, as there would have been no way to identify a box's contents unless a review of every paper contained in each of the 180 boxes was undertaken.  Accordingly, after using the box lists to conduct a supplemental search, on January 26, 2021, OIP provided a supplemental response letter to Plaintiff, which informed Plaintiff that, after conducting a supplemental manual search, no records responsive to Plaintiff's request were located.  A copy of this letter is attached hereto as Exhibit C.

## Organization of SCO Records Collection

12.     On May 17, 2017, Deputy Attorney General Rod J. Rosenstein, in his capacity as Acting Attorney General,[2] appointed Robert S. Mueller III to serve as Special Counsel for the investigation into Russian interference with the 2016 presidential election.  *See* DOJ Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017), *available at* https://www.justice.gov/opa/press-release/file/967231/download.  Acting Attorney General Rosenstein's appointment order included authorization for the Special Counsel to both investigate this matter and prosecute federal crimes arising from this investigation.  *Id.*  Under

---

[2] Deputy Attorney General Rosenstein was Acting Attorney General for purposes of the investigation due to then-Attorney General Jeff Sessions' March 2, 2017 recusal from "any matters arising from the campaigns for President of the United States." *See* Attorney General Sessions Statement on Recusal (March 2, 2017), *available at* https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal.

the terms of his appointment, Special Counsel Mueller was specifically authorized to "conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including: (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)." *Id.*  In addition, the appointment order provided that "[i]f the Special Counsel believes it is necessary and appropriate, the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters." *Id.*  Finally, the appointment order specified that "[s]ections 600.4 through 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel." *Id.*  Accordingly, the SCO absorbed CRM's investigation of Paul Manafort.

13.     On March 22, 2019, Attorney General William P. Barr[3] notified Congress and the public that Special Counsel Mueller had concluded his investigation into Russian interference in the 2016 election and related matters, and that Special Counsel Mueller had submitted a "confidential report explaining the prosecution or declination decisions" reached in the investigation, as required by 28 C.F.R. § 600.8(c).  *See* Letter from Attorney General William P. Barr to the House and Senate Judiciary Committees (March 22, 2019), *available at* https://www.justice.gov/ag/page/file/1147986/download.

---

[3] William Barr was confirmed as Attorney General on February 14, 2019, and, as of that date, Attorney General Barr began oversight of the SCO investigation.  *See* Press Release, William P. Barr Confirmed as 85th Attorney General of the United States (February 14, 2019), *available at* https://www.justice.gov/opa/pr/william-p-barr-confirmed-85th-attorney-general-united-states.

14.     As stated above, OIP is responsible for processing FOIA requests for certain SCO

records, which includes all SCO records other than the investigative records housed in the FBI's

Central Records System.

15.     Since the investigation's conclusion and the closing of the SCO, the Department's

Justice Management Division (JMD), which includes the Department's Office of the Chief

Information Officer (OCIO) and the Office of Records Management Policy (ORMP), has been

responsible for maintaining the non-investigative SCO records collection.  OIP is responsible for

processing FOIA requests seeking these SCO records maintained by JMD.

16.     JMD's SCO records collection falls into three broad categories: (1) non-email

digital data (electronic files), (2) email, and (3) paper files.  JMD maintains the SCO collection

of electronic files and email, as well as a file plan detailing the high-level organization of all

electronic files and a custodian list for a total of 127 SCO staff.  As for the paper files, JMD has

created box lists and is in the process of organizing and scanning the records, a laborious manual

preparation process which is still ongoing.

**Volume of SCO Records Maintained by JMD**

17.     The volume of SCO records is massive.  OIP has been advised by JMD that there

are, at a minimum, eleven terabytes ("TB") of digital data files, 383 gigabytes ("GB") of email

(including calendars created on Microsoft Outlook), and at least 180 boxes of paper file records

in the JMD portion of the collection, alone.  The eleven TB of digital data files includes

electronic documents saved in various file formats.  The digital data is currently maintained in

the various file formats in which the documents were originally created and saved by SCO staff.

The 383 GB of email data consists of SCO email and includes electronic calendars and accounts

for all SCO staff who used email on JMD network servers.

18.     Even though it is not possible to provide an accurate page count for the entire JMD SCO records collection at this time, JMD and OIP have attempted to estimate the approximate total page count.  Determining an approximate number of pages contained in these eleven TB of data, 383 GB of email, and 180 boxes of paper file records is not precise and is largely dependent on the file format types that make up each dataset.  For example, a Portable Document Format ("PDF") file will take up more electronic space than a Microsoft Word document.  Without expending the significant time and resources necessary to process the data and convert each file type to a format in which pages can more precisely be counted, OIP can only rely on imprecise approximations to estimate the total number of pages contained in the SCO collection.

19.     For conversion purposes, assuming a conversion rate of one TB of data to approximately seventy-five million pages, the eleven TB of electronic files maintained by JMD potentially contain 825 million pages.  Assuming a conversion rate of one GB of email and calendar files to approximately 677,963 pages, the 383 GB of email and calendar files maintained by JMD may potentially contain over 250 million pages.  While these figures are not precise, this provides at least some general approximation of the volume of SCO electronic data maintained by JMD.

20.     Approximations for paper records are somewhat more precise.  Although an accurate page count cannot be provided for the paper file records until the compilation and scanning of the paper records boxes are complete, typically one paper records box contains approximately 2,000-2,250 pages.  For 180 boxes, this translates to approximately 360,000 to 405,000 pages.

21.     In sum, the SCO records collection maintained by JMD consists of at least eleven TB, potentially consisting of approximately 825 million pages, 383 GB of email, potentially consisting of approximately 250 million pages, and 180 boxes of paper file records, potentially consisting of approximately hundreds of thousands of pages.  Although OIP is unable to accurately estimate the total number of pages in this collection, it could be more than one billion pages.  For these reasons, and specifically due to the extraordinary size of the SCO records collection, it is currently not technologically possible for OIP to conduct a single electronic search across the entire universe of SCO records maintained by JMD.  Accordingly, OIP has conducted several targeted searches, as described below, to identify records responsive to Plaintiff's FOIA request.

## **Adequacy of OIP's Records Search**

### Description of OIP's Standard Search Methods

22.     As noted in paragraph 1 above, OIP processes FOIA requests on behalf of itself, six senior leadership offices of the Department, as well as requests for certain records of the SCO.  OIP makes determinations upon receipt of a FOIA request, both as to the appropriate offices in which to conduct initial records searches, as well as the records repositories and search methods to use in conducting records searches.  Assessments of where responsive records are likely maintained are based on a review of the content of the request itself and the nature of the records sought therein, as well as our familiarity with the types and location of records that each office maintains, discussions with knowledgeable personnel, and any research that OIP staff may conduct on the topic of the request.  Potentially responsive records may be located in email systems, computer hard drives, and/or hard copy (paper files).

23.     OIP's initial determination regarding offices, search methods, and/or records custodians is not always final.  In order to ensure that reasonably calculated records searches are conducted, during the course of processing a given FOIA request, OIP continually assesses whether alternative search methods (such as targeted inquiries to knowledgeable leadership office staff regarding the existence of records not otherwise identified via "keyword" searches, or searches of additional records repositories) should be used, and will initiate such additional searches as appropriate.  This assessment is based on OIP's review of records that are located as result of the initial records searches, discussions with Department personnel, or other pertinent factors.  In sum, OIP records searches are conducted in a dynamic, efficient, and comprehensive manner, and the various search steps undertaken by OIP staff in response to a given request work in tandem to achieve a complete records search.

<u>OIP's Records Searches Conducted in Response to Plaintiff's Request</u>

24.     In accordance with the methods set forth in paragraphs 22 and 23, OIP conducted a search within certain records of the SCO for records responsive to Plaintiff's request.

*Electronic Email Search of SCO Officials*

25.     Email is searched by OIP using a sophisticated electronic system which remotely searches through a given custodian's entire email collection to isolate and locate potentially responsive records within that digital collection, using search parameters that are provided by OIP staff.  This same system then serves as the review platform on which OIP staff review the records retrieved using those initial search parameters.

26.     OIP conducted comprehensive searches of the email accounts of the only two eventual SCO employees who were present at the April 2017 meeting[4] referenced in Plaintiff's FOIA request:  DOJ attorney Andrew Weissmann and one additional FBI employee[5] who was also subsequently detailed to SCO.  In conducting these searches, OIP utilized the date range of May 18 through October 11, 2017.  May 18, 2017 was chosen as the start date because it is the earlier of these two eventual SCO employees' starting dates with the SCO; of note, Mr. Weissmann began his detail on June 2, 2017.  October 11, 2017 was chosen as the end date for the search as it is six months after the April 2017 meeting referenced in Plaintiff's request, allowing a more-than-ample amount of time following the referenced meeting to locate records "regarding, concerning, or related to" the meeting.  For this search, OIP used the following search strings ("Associated Press" AND locker) and ("AP" AND locker), as the meeting participants allegedly discussed a storage locker owned by Paul Manafort.  After reviewing the potentially responsive records identified through this search, no records responsive to Plaintiff's FOIA request were identified.

*Additional Targeted Manual Searches*

27.     The Politico article discussed in Plaintiff's request referenced information about a binder utilized at a hearing in the government's prosecution of Paul Manafort, which according to the article, contained "statements about the April 2017 meeting."  Because the SCO was involved in the prosecution of Paul Manafort, OIP endeavored to determine if the electronic files

---

[4] This determination was made based on review of the FBI's Form FD-1057 report documenting this meeting, which the FBI provided to Plaintiff, by letter dated October 17, 2019, in response to Plaintiff's FOIA request.

[5] The name of this FBI employee has been withheld by the FBI and CRM in each component's respective productions in this case pursuant to FOIA Exemptions 6 and 7(C).

corresponding to the physical contents of this binder were locatable.  OIP assessed that this

binder might have contained responsive records created "pursuant to the meeting."

28.     Due to the extraordinary size of the SCO records collection, as described above,

OIP must conduct targeted electronic searches of the SCO electronic documents and cannot

conduct a search across all SCO files.  Accordingly, the OIP Attorney-Advisor assigned to this

case, who is familiar with the relevant SCO files, reviewed the electronic files to identify the

most likely and logical locations to search for electronic versions of the records contained in the

binder.  In addition, the OIP Attorney-Advisor used information provided by an Assistant United

States Attorney (AUSA) involved in the prosecution of Paul Manafort referenced in the Politico

article discussed in Plaintiff's request, to help inform her search.  The AUSA recalled the

Manafort prosecution hearing and the binder referenced in the Politico article.

29.     The OIP Attorney-Advisor then identified specific electronic folders within the

SCO electronic files collection that related to the prosecution of Paul Manafort and reviewed the

files contained within those folders.  After reviewing the various identified electronic files and

folders, the OIP Attorney-Advisor was unable to locate any electronic folder or sub-folder in

which the records in the binder were organized or saved, or to otherwise identify electronic

versions of the records contained in the binder.  Finally, the OIP Attorney-Advisor also was

unable to identify any further leads in the SCO electronic files collection or elsewhere to locate

the binder or the electronic versions of the records contained in the binder.

30.     As noted briefly above, the SCO's paper files are stored in 180 boxes (and are

presently in the process of being digitized).  At the time when OIP received Plaintiff's FOIA

request and conducted the above-described searches, these boxes, which were already in JMD's

possession, were not indexed in any manner; thus, a manual search of the paper records was

neither reasonable, nor even feasible.  However, in the fall of 2020, during discussions regarding Defendant's response to Plaintiff's FOIA request, OIP learned that JMD had, in the interim since OIP's original electronic search described above, created "box lists," *i.e.*, a list of the subjects of the records contained in each respective box.

31.     Accordingly, in December 2020, the OIP Attorney-Advisor assigned to this case conducted a supplemental manual search of SCO paper files, as follows.  The OIP Attorney-Advisor reviewed the box lists and, based on the descriptions of each box's contents provided by JMD, identified one box that could potentially maintain records created "in preparation for, during, and/or pursuant to" the April 2017 meeting.  Specifically, one of the "box lists" corresponding to a particular box contained, among many other identified subjects corresponding to records contained in that box, an itemization for "Manafort Trial Binder: Locker Search SW Witness."  However, after the OIP Attorney-Advisor manually reviewed page-by-page all the paper files contained in the identified box, no records responsive to Plaintiff's request were identified.

<u>Summary of OIP's Records Searches</u>

32.     As a result of the targeted electronic and manual records searches conducted within the SCO records collection, OIP did not locate any records responsive to Plaintiff's request.  OIP conducted searches of the email accounts of the only two Department officials present at the April 2017 meeting later to be detailed to the SCO, reviewed electronic folders and files containing records from Paul Manafort's prosecution, and conducted a manual search of paper files likely to contain records responsive to Plaintiff's request.  OIP's search, as described throughout this declaration, was reasonably calculated to locate responsive records and conducted in a dynamic, efficient, and comprehensive manner.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Jonathan M. Breyan
Senior Supervisory Attorney

Executed this 11th day of March, 2021.

# Exhibit A

July 5, 2018

**VIA E-MAIL (MRUFOIA.Requests@usdoj.gov)**

FOIA/PA Mail Referral Unit
Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001

**Re:  Freedom of Information Act Request**

Dear Freedom of Information Officer:

      Judicial Watch, Inc. ("Judicial Watch") hereby requests that the Department of Justice produce the following records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"):

      **1. Any and all records regarding, concerning, or related to the April 2017 meeting between Department of Justice and FBI personnel and reporters, editors, and/or other individuals employed by and/or representing the Associated Press. This request includes, but is not limited to, any and all notes, reports, memoranda, briefing materials, or other records created in preparation for, during, and/or pursuant to the meeting.**

      **2. Any and all records of communication between any official, employee, or representative of the Department of Justice and any of the individuals present at the aforementioned meeting.**

      **For purposes of clarification, the meeting that is the subject of this request was reported on in Politico on June 29, 2018 (see https://www.politico.com/story/2018/06/29/paul-manafort-storage-locker-associated-press-687776).**

      Please determine whether to comply with this request within the time period required by FOIA and notify us immediately of your determination, the reasons therefor, and the right to appeal any adverse determination to the head of the agency or his or her designee.  5 U.S.C. § 552(a)(6)(i).  Please also produce all responsive records in an electronic format ("pdf" is preferred), if convenient.  We also are willing to accept a "rolling production" of responsive records if it will facilitate a more timely production.

      Judicial Watch also hereby requests a waiver of both search and duplication fees.

Department of Justice
July 5, 2018
Page 2 of 3

We are entitled to a waiver of search fees because we are a "representative of the news media." *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also Cause of Action v. Federal Trade Comm.*, 799 F.3d 1108 (D.C. Cir. 2015); *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381 (D.C. Cir. 1989). For more than twenty years, Judicial Watch has used FOIA and other investigative tools to gather information about the operations and activities of government, a subject of undisputed public interest. We submit over 400 FOIA requests annually. Our personnel, which includes experienced journalists and professional writers on staff and under contract, use their editorial skills to turn this raw information into distinct works that are disseminated to the public via our monthly newsletter, which has a circulation of over 300,000, weekly email update, which has over 600,000 subscribers, investigative bulletins, special reports, www.judicialwatch.org website, *Corruption Chronicles* blog, and social media, including Facebook and Twitter, among other distribution channels. We have authored several books, including *Corruption Chronicles* by Tom Fitton (Threshold Editions, July 24, 2012), and another book, *Clean House* by Tom Fitton (Threshold Editions, Aug. 30, 2016). In 2012, we produced a documentary film, "District of Corruption," directed by Stephen K. Bannon. Our "news media" status has been confirmed in court rulings. *See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Defense*, 2006 U.S. Dist. LEXIS 44003, *1 (D.D.C. June 28, 2006); *Judicial Watch, Inc. v. U.S. Dep't of Justice,* 133 F. Supp.2d 52 (D.D.C. 2000). As a tax exempt, 501(c)(3) non-profit corporation, we have no commercial interests and do not seek the requested records for any commercial use. Rather, we intend to use the requested records as part of our on-going investigative journalism and public education efforts to promote integrity, transparency, and accountability in government and fidelity to the rule of law.

Judicial Watch also is entitled to a waiver of both search fees and duplication fees because "disclosure of the information is in the public interest." 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure of the requested records undoubtedly will shed light on "the operations or activities of the government." *Cause of Action*, 799 F.3d at 1115 (*quoting* 5 U.S.C. § 552(a)(4)(A)(iii)). Disclosure also is "likely to contribute significantly to the public understanding" of those operations or activities because, among other reasons, Judicial Watch intends to disseminate both the records and its findings to "a reasonably broad audience of persons interested in the subject" via its newsletter, email updates, investigative bulletins, website, blog, and its other, regular distribution channels. *Cause of Action*, 799 F.3d at 1116 (*quoting Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994)). Again, Judicial Watch does not seek the requested records for any commercial benefit or for its own "primary" benefit, but instead seeks them as part of its ongoing investigative journalism and public education efforts to promote integrity, transparency, and accountability in government and fidelity to the rule of law.

In the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch agrees to pay up to $300.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to prioritize search and duplication efforts.

**Department of Justice**
**July 5, 2018**
**Page 3 of 3**

    If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 814-691-9806 or sdunagan@judicialwatch.org.

    Thank you for your cooperation.

Sincerely,

Sean Dunagan
Judicial Watch, Inc.

# Exhibit B



**U.S. Department of Justice**

Office of Information Policy

*441 G Street, NW*
*Sixth Floor*
*Washington, DC 20530*

*Telephone: (202) 514-3642*

February 6, 2020

Sean Dunagan                                        Re:     DOJ-2019-005812
Judicial Watch, Inc.                                           19-cv-879 (D.D.C.)
sdunagan@judicialwatch.org                            VRB:JMB:BRV

Dear Sean Dunagan:

        This responds to your Freedom of Information Act (FOIA) request, dated July 5, 2018 and received in this Office on July 2, 2019,[1] for records related to an April 2017 meeting between Department of Justice and FBI personnel and the Associated Press.  This response is made on behalf of the Special Counsel's Office (SCO).

        Please be advised that on behalf of SCO, the Office of Information Policy (OIP) identified and searched certain SCO files that were likely to possess records responsive to your above-identified FOIA request. No records responsive to your request were located.

        For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c) (2018).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

        If you have any questions regarding this response, please contact Antonia Konkoly of the Department's Civil Division, Federal Programs Branch at 202-514-2395.

                                                Sincerely,

                                                *Jonathan Breyan*

                                                Jonathan Breyan
                                                Senior Supervisory Attorney
                                                for
                                                Vanessa R. Brinkmann
                                                Senior Counsel

---

[1] This FOIA request was not routed to this Office until July 2, 2019, after the above-captioned litigation related to this request had commenced.

Exhibit C



**U.S. Department of Justice**

Office of Information Policy

*441 G Street, NW*
*Sixth Floor*
*Washington, DC 20530*

*Telephone: (202) 514-3642*

January 26, 2021

Sean Dunagan                                    Re:    DOJ-2019-005812
Judicial Watch, Inc.                                   19-cv-879 (D.D.C.)
sdunagan@judicialwatch.org                             VRB:JMB:BRV

Dear Sean Dunagan:

    This is a supplemental response to your Freedom of Information Act (FOIA) request, dated July 5, 2018 and received in this Office on July 2, 2019,[1] for records related to an April 2017 meeting between Department of Justice and FBI personnel and the Associated Press. This response is made on behalf of the Special Counsel's Office (SCO).

    Please be advised that on behalf of SCO, the Office of Information Policy (OIP) identified and conducted a manual search of the contents of a box containing SCO files that was likely to possess records responsive to your above-identified FOIA request. No records responsive to your request were located through this manual paper file search.

    For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c) (2018). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

    If you have any questions regarding this response, please contact Antonia Konkoly of the Department's Civil Division, Federal Programs Branch at 202-514-2395.

Sincerely,

*Jonathan Breyan*

Jonathan Breyan
Senior Supervisory Attorney
for
Vanessa R. Brinkmann
Senior Counsel

---

[1] This FOIA request was not routed to this Office until July 2, 2019, after the above-captioned litigation related to this request had commenced.