**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

JUDICIAL WATCH,

                Plaintiff,

        v.                            Civil Action No. 19-0879 (CJN)

UNITED STATES DEPARTMENT
OF JUSTICE,

                Defendant.

---

## DECLARATION OF COURTNEY J. O'KEEFE

I, Courtney J. O'Keefe, declare the following to be true and correct:

1.     I am an Attorney in the Freedom of Information Act ("FOIA")/Privacy Act ("PA") Unit in the Office of Enforcement Operations in the Criminal Division of the United States Department of Justice ("Department" or "DOJ").  I have held this position since February 2020.  I was previously employed as an Attorney with the Department's Office of Information Policy from 2015-2018 and with the Department's National Security Division from 2018-2020.

2.     In my capacity as an Attorney in the FOIA/PA Unit, and in conjunction with the Chief and Deputy Chief of the FOIA/PA Unit, I assist in supervising the handling of FOIA and PA requests processed by the FOIA/PA Unit.  I am responsible for, among other things, providing litigation support and assistance to Assistant United States Attorneys and Civil Division Trial Attorneys who represent the Criminal Division in lawsuits filed in federal court under the FOIA and/or the PA stemming from requests for Criminal Division records.

3.     The FOIA/PA Unit is responsible for processing FOIA/PA requests that seek records from the Criminal Division.  The FOIA/PA Unit determines whether the Criminal

Division maintains records responsive to FOIA/PA requests, and if so, whether they can be released in accordance with the FOIA and the PA.  In processing such requests, the FOIA/PA Unit consults with personnel in the Criminal Division sections where potentially responsive records may be maintained and, when appropriate, with other components within the Department of Justice, as well as with other Executive Branch agencies.

4.      Due to the nature of my official duties, I am familiar with the procedures followed by the Criminal Division in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the PA, 5 U.S.C. § 552a.  Specifically, I am familiar with the FOIA request submitted by Plaintiff to the Criminal Division that is at issue in this litigation and the Criminal Division's search and response to that request.

5.      I make the statements herein on the basis of personal knowledge, as well as on information provided to me by others within the Criminal Division with knowledge of the search and documents at issue in this case and on information acquired by me in the course of performing my official duties in the FOIA/PA Unit.

**Plaintiff's FOIA Request**

6.      By email dated July 5, 2018, Plaintiff submitted a FOIA request to the Mail Referral Unit of the United States Department of Justice ("MRU") seeking "any and all records regarding, concerning, or related to the April 2017 meeting between Department of Justice and FBI personnel and reporters, editors, and/or other individuals employed by and/or representing the Associated Press ["April 2017 meeting"]."  Additionally, the FOIA request sought "any and all records of communication between any official, employee, or representative of the Department of Justice and any of the individuals present at the aforementioned meeting."  Plaintiff provided in this FOIA request "for purposes of clarification" a hyperlink to a Politico

news article, dated June 29, 2018, entitled "Associated Press May Have Led FBI to Manafort Storage Locker." A copy of Plaintiff's FOIA request, dated July 5, 2018, is attached hereto as Exhibit A.

7.     By email dated July 17, 2018, the MRU routed Plaintiff's FOIA request to the Criminal Division for processing.

8.     On March 27, 2019, Plaintiff filed suit in connection with their July 5, 2018 FOIA request. See Compl., ECF No. 01.

### Description of FOIA/PA Unit Search Methods

9.     The FOIA/PA Unit oversees the processing of FOIA requests submitted to the Criminal Division and works with the Criminal Division's offices in doing so. Upon receipt of a FOIA request, the FOIA/PA Unit will, first, assess which Criminal Division office(s) is/are most likely to have records responsive to the request. Additionally, if the FOIA/PA Unit determines that the request pertains to a subject that is likely to generate substantial media interest, the FOIA/PA Unit will also notify the Office of the Assistant Attorney General ("OAAG") of the Criminal Division of receipt of the request.

10.     Once it has assessed which Criminal Division office(s) is/are most likely to maintain records responsive to a FOIA request, the FOIA/PA Unit typically initiates records searches by sending a search request through its electronic FOIA Tracking Database to the specific office(s), or by sending an email to a designated point-of-contact in the office in question who serves as the liaison with the FOIA/PA Unit. The search request notifies the office(s) of the receipt of the request and the need to conduct a search.

11.     The Criminal Division offices, as the custodians of their own records and the best authorities on what records they would maintain, conduct their own searches depending on

the manner in which they maintain their records and the records management database systems they use.  The designated point-of-contact of each office, after consultation with their supervisor(s), then advise the FOIA/PA Unit if they (1) have no records responsive to the request; (2) have potentially responsive material which will be provided directly to the FOIA/PA Unit for review and processing; or (3) have potentially responsive material for which they request the FOIA/PA Unit conduct a search of electronic records, *i.e.*, the email or computer systems administered by the Criminal Division's Information Technology Management ("ITM") Unit staff.

12.     The FOIA/PA Unit reviews the locations of the searches, the databases searched, the "keywords" used, and the date range used for searches.  The FOIA/PA Unit also has discussions with Criminal Division office personnel familiar with the day-to-day operations of the specific office to determine whether the conducted searches are adequate and reasonable. Once this has been determined, the FOIA/PA Unit takes the next steps to either work with the ITM Unit to conduct electronic searches or begins reviewing the potentially responsive records returned to the FOIA/PA Unit.[1]

**Search Conducted by the FOIA/PA Unit in Response to Plaintiff's Request**

13.     The FOIA/PA Unit decides upon receipt of a FOIA/PA request the appropriate office(s) in which to conduct initial records searches.  Prior to receipt of Plaintiff's FOIA request, the Criminal Division received a separate FOIA request seeking records concerning the April 2017 meeting, which identified Andrew Weissmann, former Chief of the Fraud Section of

---

[1] The initial determination regarding where to search is not always final; rather, throughout the life cycle of a request, staff of the FOIA/PA Unit will assess whether additional or supplemental searches are appropriate. This is based on a review of records that are located in initial searches, discussions with Criminal Division personnel, and other pertinent factors.

the Criminal Division, as an individual who attended the meeting.  Thus, the FOIA/PA Unit was

aware that the Fraud Section potentially maintained responsive records.  Additionally, because of

the media interest surrounding the April 2017 meeting and its relation to the work of the Special

Counsel's Office, the FOIA/PA Unit notified the Office of the Assistant Attorney General

("OAAG") when the request was received and indicated that it would provide a request to

OAAG to conduct a search for responsive records.  At that time, OAAG further identified the

Money Laundering and Asset Recovery Section ("MLARS") as another office within the

Criminal Division that might have potentially responsive records.

14.     Thus, following the initial review of Plaintiff's request, the FOIA/PA Unit was

aware that OAAG and MLARS might have potentially responsive records pertaining to the April

2017 meeting and that Andrew Weissmann, former Chief of the Fraud Section, had attended the

April 2017 meeting.  Accordingly, with the information described above in paragraph 13 and

based on additional research into the subject of Plaintiff's request, the FOIA/PA Unit assessed

that OAAG, MLARS, and the Fraud Section were the Criminal Division offices most likely to

maintain records responsive to Plaintiff's request.

15.     On May 3, 2019, the FOIA/PA Unit sent search requests to OAAG, MLARS,

and the Fraud Section via its electronic FOIA Tracking Database.  OAAG, MLARS, and the

Fraud Section were each asked to conduct a search to identify any potentially responsive records

and/or custodians (if an ITM search was needed) for the following: records regarding,

concerning, or related to the April 2017 meeting between DOJ and FBI personnel and reporters,

editors, and/or other individuals employed by and/or representing the Associated Press and

records of communication between any official, employee, or representative of DOJ and any of

the individuals present at the aforementioned meeting.  Each office was also given access to the FOIA request.

16.     On May 9, 2019, OAAG advised that it was possible that there existed potentially responsive records, for which OAAG requested the FOIA/PA Unit conduct an electronic search, in coordination with ITM.  Based upon OAAG's understanding of the underlying subject of the FOIA request, OAAG identified potential custodians of responsive records: Andrew Weissmann, formerly the Chief of the Fraud Section; Bruce Swartz, a Deputy Assistant Attorney General for the Criminal Division; Kendall Day, a former Acting Deputy Assistant Attorney General for the Criminal Division; and Ann Brickley, an MLARS Trial Attorney.

17.     On May 30, 2019, MLARS provided the FOIA/PA Unit with a set of Ann Brickley's emails believed to be responsive to the request.[2]  After discussions with Ms. Brickley and a review of her provided emails, the following individuals (in addition to those identified above) were identified as having sent or received emails regarding the April 2017 meeting: Deborah Connor, the Chief of MLARS; Mary Butler, the Chief of MLARS' International Unit; and Bruce Ohr, formerly of the Office of the Deputy Attorney General.  Additionally, Ms. Brickley confirmed that she did not possess any hard copy records responsive to Plaintiff's request.

18.     On May 30, 2019, the Fraud Section informed the FOIA/PA Unit that its current staff had no knowledge of the Fraud Section or Mr. Weissmann's involvement in the meeting identified in the request.  However, based upon the FOIA/PA Unit's understanding of

---

[2]  During the course of determining appropriate records searches regarding Plaintiff's FOIA request, the FOIA/PA Unit became aware that Ann Brickley attended the April 2017 meeting.

the underlying subject of the FOIA request and the references to Mr. Weissmann in news media articles discussing the April 2017 meeting, the FOIA/PA Unit determined that an ITM search of Mr. Weissmann's emails was necessary.

19.     After receiving these initial responses, the FOIA/PA Unit assessed that an appropriate time frame for the requested electronic searches would be March 1, 2017 through June 30, 2017.  Specifically, because the FOIA/PA Unit had, by this point, determined that the meeting in question occurred on April 11, 2017, this date range extended from more than five weeks prior the meeting, to approximately seven weeks after its occurrence. Based on both the face of Plaintiff's request and discussions with personnel from OAAG and MLARS, including those who were involved in the April 2017 meeting in question, the FOIA/PA Unit assessed that this timeframe would suffice to capture responsive records.

20.     On July 17, 2019, the FOIA/PA Unit sent its first search request to the ITM Unit to conduct an electronic records search.  Specifically, the FOIA/PA Unit requested that ITM search the email accounts of the following custodians, *i.e.*, all persons who had been identified by the means described above, as having potentially responsive records: Andrew Weissmann, Bruce Swartz, Kendall Day, Bruce Ohr, Deborah Connor, Mary Butler, and Ann Brickley. The FOIA/PA Unit also directed a search of MLARS' electronic shared drives.  The FOIA/PA unit provided the following search terms for this electronic records search:  "AP" with "meeting," "Associated Press" with "meeting," "Eric Tucker," Jeff Horwitz," "Ted Bridis," "Jack Gillum," "etucker@ap.org," "jhorwitz@ap.org," or "tbridis@ap.org."[3]

---

[3] Eric Tucker, Jeff Horwitz, Ted Bridis, and Jack Gillum were the AP reporters present at the April 2017 meeting.  Ann Brickley's emails discussed, *supra* paragraph 17, provided the reporters' names and contained the email addresses of Tucker, Horwitz, and Bridis, but not Gillum.

21.     On August 1, 2019, the ITM Unit completed the first electronic search and returned potentially responsive emails as well as documents from MLARS' shared drives to the FOIA/PA Unit.

22.     The FOIA/PA Unit reviewed the records returned from the first electronic search and determined that supplemental records searches of additional custodians, who appeared in these records, were necessary.  Accordingly, on November 27, 2019, the FOIA/PA United submitted two additional search requests (the second and third search requests, respectively) to the ITM Unit.

23.     The second search request sought an electronic records search of the following custodians who appeared in the first set of records returned by the initial searches described above:  Kenneth Blanco, formerly the Acting Assistant Attorney General of the Criminal Division; James Mann, formerly the Chief of Staff of OAAG; and Trevor McFadden, formerly a Deputy Assistant Attorney General of OAAG.  This electronic records search consisted of keyword searches using the following search terms: "AP" with "meeting," "Eric Tucker," "Jeff Horwitz," "Ted Bridis," or "Jack Gillum."

24.     The review of the first electronic records search independently revealed that certain custodians – namely the same three custodians listed in paragraph 23, as well as Kendall Day – had communicated with the Federal Bureau of Investigation and DOJ's Office of Public Affairs regarding the April 2017 meeting.  Accordingly, a separate electronic records search of those custodians (Day, Blanco, Mann, and McFadden) was independently conducted, using the

following search terms:  "siflores@usdoj.gov;" and the email address of a non-public facing FBI
employee who worked in the FBI's Office of Public Affairs.[4]

     25.     On December 23, 2019, the ITM Unit completed the second and third
electronic searches and returned potentially responsive emails to the FOIA/PA Unit.

     26.     The Criminal Division has conducted an adequate and reasonable search for
records responsive to Plaintiff's request.  Information in the public domain regarding the April
2017 meeting confirms that the Criminal Division correctly identified Andrew Weissmann and
Ann Brickley as the Criminal Division employees present at the meeting.  Upon determining that
Mr. Weissmann and Ms. Brickley attended the April 2017 meeting, the Criminal Division
searched their email accounts for potentially responsive records.  The searches of Ms. Brickley's
email account consisted of both a search by MLARS and an additional search by ITM.[5]  A
search of MLARS' shared drives also produced potentially responsive records.  A search for
hard copy records produced no responsive records.  Other DOJ custodians of potentially
responsive records were properly identified via responses to the search requests sent to the
relevant offices, a review of Ms. Brickley's emails as provided by MLARS, and the FOIA/PA
Unit's review of electronic records located by ITM.  Ultimately, three searches for electronic
records were submitted to ITM to ensure that the Criminal Division's search for records
encompassed all custodians of potentially responsive records.  All electronic searches were

---

[4] The email address "siflores@usdoj.gov" belongs to Sarah Flores, the former Department
spokesperson and head of the Department's Office of Public Affairs.  The redacted FBI email
address belongs to a non-public facing FBI employee.  The FOIA/PA Unit was informed by
Criminal Division employees that this FBI employee had discussed the subject of Plaintiff's
FOIA request with the other custodians involved in this search.

[5] The Criminal Division was limited to an ITM search of Mr. Weissmann's email account
because he no longer worked for the Criminal Division at the time the records searches were
conducted.

conducted using search terms and parameters designed to locate all potentially responsive records.  Following these three searches and a review of all records returned, the FOIA/PA Unit confirmed that no other sections or custodians within the Criminal Division were likely to maintain any additional responsive records.

27.      Each step in the handling of Plaintiff's request was entirely consistent with the FOIA/PA Unit's procedures, which were adopted to ensure an equitable response to all persons seeking records under the FOIA/PA.

### Interim Response to Plaintiff's FOIA Request

28.      On October 4, 2019, after processing seventy-nine pages of records, the FOIA/PA Unit issued its first interim response.  Six pages were withheld in full and twenty-eight pages were released in part, with certain information marked as exempt from disclosure pursuant to 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(A), and (b)(7)(C).[6]  In this letter, the FOIA/PA Unit also informed Plaintiff that forty-five pages were duplicate records.  A copy of this first interim response letter to Plaintiff, dated October 4, 2019, is attached hereto as Exhibit B (with attachments omitted).[7]

---

[6] The FBI withheld certain information in these records pursuant to 5 U.S.C. § 552 (b)(6), (7)(C), and (b)(7)(E).  The FBI will address these withholdings in a separate declaration filed concurrently before this Court.

[7] Because Plaintiff only challenges withholdings from records released in part during this interim response, I do not address the FOIA/ PA Unit's additional interim responses issued from October 30, 2019 through June 19, 2020, which resulted in an additional 48 pages being withheld in full and an additional 323 pages being released in part.

29.      Plaintiff is challenging withholdings in two pages of records released in part to Plaintiff by the FOIA/PA Unit on October 4, 2019.[8]  For ease of reference, a copy of these two pages is attached hereto as Exhibit C.[9]

## Description of Documents and Withheld Material

30.      The information that the FOIA/PA Unit withheld consists of portions of email discussions among Department employees pertaining to the April 2017 meeting.

## Exemption 5

31.      Exemption 5 of the FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  As discussed in detail below, the information protected by the FOIA/PA Unit in part pursuant to FOIA Exemption 5 falls squarely within the attorney work-product and/or deliberative process privileges.  Each of these privileges will be discussed in turn.

## Exemption 5: Inter-/Intra-Agency Threshold

32.      The information withheld from Plaintiff pursuant to this exemption consists of communications generated by and wholly internal to the Department.  Specifically, the FOIA/PA Unit withheld discrete portions of two emails, dated April 4, 2017, consisting of emails among Criminal Division attorneys from OAAG and MLARS that contain internal discussions

---

[8]  The FBI will address its withholdings in these two pages in a separate declaration filed concurrently before this Court.

[9] On April 10, 2020, during the course of this litigation, the FOIA/PA Unit re-issued one of the two pages at issue before this Court, disclosing additional names in these records that became public during the course of this litigation.  The pages presented as Exhibit C reflect these updated disclosure determinations.

regarding the upcoming April 2017 meeting.  As such, the records are "inter-/intra-agency" records within the threshold of Exemption 5.

### Exemption 5: Attorney Work-Product Privilege

33.     The attorney work-product privilege encompassed by Exemption 5 of the FOIA shields material prepared by an attorney, or at the direction of an attorney, in reasonable anticipation of litigation.  It protects both tangible items prepared or developed by an attorney in anticipation of litigation, and intangible items such as mental impressions, conclusions, opinions, or legal theories as s/he anticipates or prepares for litigation.  The privilege extends to materials prepared during law enforcement investigations when an investigation is based upon a specific wrongdoing and is undertaken to collect evidence and build a case against the individual alleged to have committed wrongdoing.  The purpose of this privilege is to protect the adversarial process by insulating the attorneys' preparation of litigation materials from scrutiny.  The privilege protects any part of a document prepared in anticipation of litigation, not just the portions containing opinions and legal theories.

34.     DOJ attorneys are singularly tasked with enforcing federal laws and defending the interests of the United States.  Disclosure of the withheld information would reveal DOJ attorneys' thought process in assessing the posture of a then-ongoing criminal investigation, including opining on potential meetings with third parties, steps that DOJ attorneys were planning to take pertaining to this investigation, the DOJ attorneys' rationale for conducting the investigation in a specific manner, and guidance received from supervisors and DOJ senior officials.  The information withheld reflects essential attorney work-product – legal theories and analysis – that DOJ attorneys engage in as they execute their core function within the Department of Justice.

35.     The protected information consists of portions of an email discussion among Criminal Division attorneys written while conducting a criminal investigation into individuals who may have violated federal criminal laws.  This email exchange considers facts compiled during the underlying investigation and assessments of information gathered, including the purpose of the April 2017 meeting.  Additionally, the protected information includes a strategy discussion on the merits of an issue arising in the course of conducting a criminal investigation into individuals who may have violated federal criminal laws.

## Exemption 5: Deliberative Process Privilege

36.     The deliberative process privilege is intended to protect the decision-making processes of agencies from public scrutiny in order to enhance the quality of an agency's decisions. In order to invoke the deliberative process privilege, the protected information must be both "pre-decisional" and "deliberative."

37.     The protected information comprises portions of an email discussion among Criminal Division attorneys while conducting a then-ongoing criminal investigation. Accordingly, this information is pre-decisional because it precedes both the conclusion of the investigation, and also the Criminal Division's determinations about how to best conduct the meeting in question.

38.     The protected information reflects the exchange of ideas and recommendations among Criminal Division attorneys during a then-ongoing criminal investigation.  In this email discussion, Department attorneys express their opinions regarding an upcoming meeting with a third party in the broader context of a then-ongoing criminal investigation and discuss strategy regarding the upcoming meeting.

39.     These emails reflect exchanges that are at the core of the Department's deliberative process. They are deliberative because they reflect the "give-and-take" of the consultative process among DOJ attorneys when faced with the question of how to conduct a criminal investigation, including potentially meeting with third parties, in an effort to pursue specific criminal charges against individuals.  Disclosure of the information at issue would severely hamper the efficient day-to-day workings of DOJ personnel as individuals would no longer feel free to discuss their ideas, strategies, and advice in email messages and consequently Department employees would be much more circumspect in their discussions with each other. This lack of candor would impair the Department's ability to foster the forthright internal discussions necessary for efficient and proper decision-making.  Certainly, disclosure of such preliminary decisions made, and recommendations offered in an effort to eventually prosecute specific crimes would make officials contributing to pre-decisional deliberations much more wary in providing their views.  Agency decision-making is at its best when employees are able to focus on the substance of their views and not on whether their views may at some point be made publicly available.

40.     Agencies may withhold factual material in an otherwise "deliberative" document where it is so thoroughly integrated with deliberative material that its disclosure would expose or cause harm to the agency's deliberations, or where the author of the document has selected specific facts out of a larger groups of facts, and this act is deliberative in nature. Accordingly, to the extent that information withheld contains factual material, that information is inextricably intertwined with the deliberative nature of the email.  The selection of the relevant facts to include in the emails, moreover, reflects the deliberation of the Criminal Division attorneys who drafted the emails.

41.     In each instance where information was withheld from Plaintiff pursuant to Exemption 5, only that information which is protected by the attorney work-product and/or deliberative process privileges was withheld, and it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision.

### Exemption 6 and 7(C)

42.     FOIA Exemption 6 protects information in "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is generally read broadly to encompass any file containing information that applies to a particular person. Here, the records constitute "similar files" as they contain the names of Department personnel.

43.     FOIA Exemption 7(C) protects information "compiled for law enforcement purposes" and protects personal privacy when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Criminal Division develops, enforces, and supervises the application of federal criminal laws. Specifically, CRM029-030 was created during the course, and in furtherance, of the then-ongoing criminal investigation of Paul Manafort, which ultimately resulted in his indictment, as well as his conviction on several charges. Accordingly, these records were compiled for a law enforcement purpose and readily meet the threshold of Exemption 7.

44.     When withholding information pursuant to these two exemptions,[10] the FOIA/PA Unit is required to balance the privacy interests of the individuals mentioned in these

---

[10] The FOIA/PA Unit's practice is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "*would* constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "*could* reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a

records against any public interest in disclosure.  For purposes of this analysis, a public interest

exists when information would shed light on the Criminal Division's performance of its mission

to develop, enforce, and supervise the application of all federal criminal laws.  Courts have

generally found that individuals (including law enforcement personnel) have protectable privacy

interests in relation to being associated with criminal investigations and prosecutions.  Courts

also generally have found that there is no overriding public interest in such information because

personal information about individuals typically does not shed light on or significantly increase

the public's understanding of the operations and activities of the Department of Justice.  Here,

Exemptions 6 and 7(C) would justify withholding the identifying information and contact

information of Department personnel that appear in criminal law enforcement communications

and documents.

45.     The FOIA/PA Unit determined that Department employees who hold positions

of leadership within the Criminal Division and/or whose identities were made public in the

course of this litigation have a de minimis privacy interest in their names in these emails.  The

names of those individuals were released.  However, the names of Department employees not in

leadership or public-facing positions, including attorneys not publicly affiliated with specific

criminal investigations, as well as administrative assistants, were withheld.

---

consolidated discussion.  The privacy interests are balanced against the public's interest in
disclosure under the analysis of both exemptions.

46.     Information withheld by FOIA/PA Unit pursuant to Exemption 6 and 7(C) consist of: (1) the names of non-public facing Department employees; (2) contact information for Department employees, including email addresses, and office and mobile phone numbers.[11]

47.     The FOIA/PA Unit determined that the privacy interests in Department employees' information is substantial (more than de minimis).  Considering the sensitive law enforcement work DOJ employees undertake related to the enforcement of federal laws, the release of such information – tied directly to a DOJ employee – could subject them to harassment and unwanted publicity, which may limit their effectiveness in handling their respective prosecution or investigation functions and duties, including administrative support to which they are assigned.  Disclosure would also reveal the identities of Department employees not publicly affiliated with specific criminal investigations, as well as an administrative assistant that has access to sensitive law enforcement information, who is not otherwise public facing.  Harassing telephone calls and unwarranted hostility could disrupt and impede their official activity.  Release of this identifying information could result in unwanted and even unlawful efforts to gain additional access to these individuals and/or personal information about them.

48.     Upon determining that the privacy interests described above are substantial, FOIA requires a balancing analysis between the privacy interests of the individual against any countervailing public interest in disclosure.  In order to overcome a more than de minimis privacy interest, Plaintiff must articulate a "FOIA public interest" in disclosure and establish a nexus between the withheld information and that FOIA public interest.  To demonstrate a FOIA public interest in disclosure, Plaintiff must articulate how the withheld information sheds light on

---

[11] During the course of re-reviewing these records while preparing this Declaration, the FOIA/PA Unit determined that it would no longer assert Exemptions 6 and 7(C) in conjunction with portions withheld pursuant to Exemption 5 in the challenged two pages.

the operations and activities of government or how it would contribute significantly to the public's understanding of the operations or activities of the Criminal Division or the Department. The FOIA/PA Unit has not identified any cognizable public interest in disclosure of this information.  Revealing this information at issue is unlikely to add to the public's understanding of how the Criminal Division or the Department works or how well it performs its statutory duties.  Thus, the substantial privacy interests protected by withholding this information outweigh the non-existent public interest that might be served by its release.  Accordingly, the release of such information constitutes a clearly unwarranted invasion of personal privacy pursuant to Exemptions 6 and 7(C).

49.     In each instance where information was withheld from Plaintiff pursuant to Exemptions 6 and 7(C), the FOIA/PA Unit determined that the privacy interests were not outweighed by any FOIA public interest in disclosure of that information, and it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision.

## Segregation of Non-Exempt Information

50.     I have carefully reviewed the records at issue line-by-line and determined that all nonexempt information was segregated and disclosed.  The specific segregability determinations for information protected pursuant to Exemptions 5, 6, and 7(C) of the FOIA, are discussed above in paragraphs 41 and 49 of this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

_____

Courtney J. O'Keefe

Executed this 11th day of March 2021.

# Exhibit A

July 5, 2018

**VIA E-MAIL (MRUFOIA.Requests@usdoj.gov)**

FOIA/PA Mail Referral Unit
Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001

**Re:  Freedom of Information Act Request**

Dear Freedom of Information Officer:

Judicial Watch, Inc. ("Judicial Watch") hereby requests that the Department of Justice produce the following records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"):

> 1. **Any and all records regarding, concerning, or related to the April 2017 meeting between Department of Justice and FBI personnel and reporters, editors, and/or other individuals employed by and/or representing the Associated Press. This request includes, but is not limited to, any and all notes, reports, memoranda, briefing materials, or other records created in preparation for, during, and/or pursuant to the meeting.**
>
> 2. **Any and all records of communication between any official, employee, or representative of the Department of Justice and any of the individuals present at the aforementioned meeting.**
>
> **For purposes of clarification, the meeting that is the subject of this request was reported on in Politico on June 29, 2018 (see https://www.politico.com/story/2018/06/29/paul-manafort-storage-locker-associated-press-687776).**

Please determine whether to comply with this request within the time period required by FOIA and notify us immediately of your determination, the reasons therefor, and the right to appeal any adverse determination to the head of the agency or his or her designee.  5 U.S.C. § 552(a)(6)(i).  Please also produce all responsive records in an electronic format ("pdf" is preferred), if convenient.  We also are willing to accept a "rolling production" of responsive records if it will facilitate a more timely production.

Judicial Watch also hereby requests a waiver of both search and duplication fees.

**Department of Justice**
**July 5, 2018**
**Page 2 of 3**

We are entitled to a waiver of search fees because we are a "representative of the news media." *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also Cause of Action v. Federal Trade Comm.*, 799 F.3d 1108 (D.C. Cir. 2015); *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381 (D.C. Cir. 1989). For more than twenty years, Judicial Watch has used FOIA and other investigative tools to gather information about the operations and activities of government, a subject of undisputed public interest. We submit over 400 FOIA requests annually. Our personnel, which includes experienced journalists and professional writers on staff and under contract, use their editorial skills to turn this raw information into distinct works that are disseminated to the public via our monthly newsletter, which has a circulation of over 300,000, weekly email update, which has over 600,000 subscribers, investigative bulletins, special reports, www.judicialwatch.org website, *Corruption Chronicles* blog, and social media, including Facebook and Twitter, among other distribution channels. We have authored several books, including *Corruption Chronicles* by Tom Fitton (Threshold Editions, July 24, 2012), and another book, *Clean House* by Tom Fitton (Threshold Editions, Aug. 30, 2016). In 2012, we produced a documentary film, "District of Corruption," directed by Stephen K. Bannon. Our "news media" status has been confirmed in court rulings. *See*, *e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 2006 U.S. Dist. LEXIS 44003, *1 (D.D.C. June 28, 2006); *Judicial Watch, Inc. v. U.S. Dep't of Justice,* 133 F. Supp.2d 52 (D.D.C. 2000). As a tax exempt, 501(c)(3) non-profit corporation, we have no commercial interests and do not seek the requested records for any commercial use. Rather, we intend to use the requested records as part of our on-going investigative journalism and public education efforts to promote integrity, transparency, and accountability in government and fidelity to the rule of law.

Judicial Watch also is entitled to a waiver of both search fees and duplication fees because "disclosure of the information is in the public interest." 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure of the requested records undoubtedly will shed light on "the operations or activities of the government." *Cause of Action*, 799 F.3d at 1115 (*quoting* 5 U.S.C. § 552(a)(4)(A)(iii)). Disclosure also is "likely to contribute significantly to the public understanding" of those operations or activities because, among other reasons, Judicial Watch intends to disseminate both the records and its findings to "a reasonably broad audience of persons interested in the subject" via its newsletter, email updates, investigative bulletins, website, blog, and its other, regular distribution channels. *Cause of Action*, 799 F.3d at 1116 (*quoting Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994)). Again, Judicial Watch does not seek the requested records for any commercial benefit or for its own "primary" benefit, but instead seeks them as part of its ongoing investigative journalism and public education efforts to promote integrity, transparency, and accountability in government and fidelity to the rule of law.

In the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch agrees to pay up to $300.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to prioritize search and duplication efforts.

**Department of Justice**
**July 5, 2018**
**Page 3 of 3**

      If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 814-691-9806 or sdunagan@judicialwatch.org.

      Thank you for your cooperation.

Sincerely,


Sean Dunagan
Judicial Watch, Inc.

# Exhibit B



**U.S. Department of Justice**

Criminal Division

---

*Office of Enforcement Operations*                *Washington, D.C. 20530*

**Via Electronic Mail**                           October 4, 2019

Ramona R. Cotca
Judicial Watch, Inc.
425 Third St., SW
Suite 800                                         <u>Judicial Watch, Inc. v. U.S. Department of</u>
Washington, D.C. 20024                            <u>Justice</u>, 19-cv-00879-CJN (D.D.C.)

Dear Ms. Cotca:

This is the first interim response to your Freedom of Information Act request dated July 5, 2018 for records concerning an April 2017 meeting between DOJ and FBI personnel and reporters of the Associated Press. Your request is currently in litigation, <u>Judicial Watch, Inc. v. U.S. Department of Justice</u>, 19-cv-00879-CJN (D.D.C.). You should refer to this number in any future correspondence with this Office.

Please be advised that a search has been conducted in the appropriate components, and we are continuing to review and process potentially responsive records. Thus far, we have processed seventy-nine (79) pages of records responsive to your request. Forty-five (45) of these pages are duplicates of other pages.

After carefully reviewing these seventy-nine pages, I have determined that six (6) pages must be withheld in full, and twenty-eight (28) pages can be released in part in segregable form. All redactions to these 34 pages are made on the basis of:

5 U.S.C. § 552(b)(6), which concerns materials the release of which would constitute a clearly unwarranted invasion of the person privacy of third parties;

5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties; and/or

5 U.S.C. § 552(b)(5), which concerns certain inter- or intra-agency communications protected by the deliberative process privilege and the attorney work-product privilege.

You may contact Trial Attorney Antonia M. Konkoly by phone at (202) 514-2395 or by mail at U.S. Department of Justice, Civil Division, Federal Programs Branch, 1100 L Street, N.W., Washington, DC 20005 for any further assistance and to discuss any aspect of your request.

2

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

Although your request is the subject of litigation, I am required by statute to inform you that if you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Amanda Marchand Jones
Chief
FOIA/PA Unit

Enclosure

# Exhibit C

**From:** Brickley, Ann (CRM)
**To:** Connor, Deborah (CRM)
**Cc:** Day, M. Kendall (CRM); Butler, Mary (CRM)
**Subject:** Re: meeting with Andrew Weissmann
**Date:** Tuesday, April 4, 2017 12:04:24 PM

**(b) (5)**

On Apr 4, 2017, at 11:55 AM, Connor, Deborah (CRM)
**(b) (6), (b) (7)(C)** @CRM.USDOJ.GOV> wrote:

> This is what I thought. Let's work through **(b) (6), (b)(7)(C) per FBI**

On Apr 4, 2017, at 11:54 AM, Day, M. Kendall
**(b) (6), (b) (7)(C)** @CRM.USDOJ.GOV> wrote:

> Thanks, Deb.



> **From:** Connor, Deborah (CRM)
> **Sent:** Tuesday, April 4, 2017 11:52 AM
> **To:** Butler, Mary (CRM) **(b) (6), (b) (7)(C)** @CRM.USDOJ.GOV>; Day, M. Kendall **(b) (6), (b) (7)(C)** @CRM.USDOJ.GOV>
> **Cc:** Brickley, Ann (CRM) < **(b) (6), (b) (7)(C)** @CRM.USDOJ.GOV>
> **Subject:** Fwd: meeting with Andrew Weissmann
>
> Ann, don't schedule the meeting until we understand the purpose.
> Perhaps Mary can call Andrew.
>
> Begin forwarded message:
>
> > **From:** "Brickley, Ann (CRM)"
> > **(b) (6), (b) (7)(C)** @CRM.USDOJ.GOV>
> > **Date:** April 4, 2017 at 11:10:43 AM EDT
> > **To:** **(b) (6), (b) (7)(C)** (CRM)"
> > **(b) (6), (b) (7)(C)** y@CRM.USDOJ.GOV>
> > **Cc:** **(b) (6), (b) (7)(C) per FBI** (CID) (FBI)"
> > **(b) (6), (b)(7)(C), (b) (7)(E) per FBI**
> > **Subject: Re: meeting with Andrew Weissmann**
> >
> > I don't think **(b)(6), (b)(7)(C)** is available the 11th **(b)(6), (b)(7)(C)** might have
> > **(b)(6), (b)(7)(C) per FBI**     **(b)(6), (b)(7)(C) per FBI**

time on the 13th.  - can you chime in?

**per FBI**
If [(b)(6), (b)(7)(C)] is free, I will make the 11th work.

On Apr 4, 2017, at 11:04 AM, **(b) (6), (b) (7)(C)** CRM)
**(b) (6), (b) (7)(C)** @CRM.USDOJ.GOV> wrote:

Good Morning,

I assist Andrew Weissmann and he asked that I help schedule a meeting with you, Bruce Ohr, **(b) (6), (b) (7)(C) per FBI**, and **(b)(6), (b)(7)(C) per FBI** Andrew had suggested 4/11. He is available from 9-10, 11:30-1, and 3-4 that day. Do any of those times work for you? Thank you.

**(b) (6), (b) (7)(C)**
U.S. Department of Justice
Criminal Division, Fraud Section
Contractor: CACI
**(b) (6), (b) (7)(C)** (o) **(b) (6), (b) (7)(C)** (c)
**(b) (6), (b) (7)(C)** @usdoj.gov