**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No. 19-cv-0879 (CJN) |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**<u>DECLARATION OF RAMONA R. COTCA</u>**

I, Ramona R. Cotca, declare and state as follows:

1.      I am an attorney employed by Judicial Watch, Inc. ("Judicial Watch") and counsel for Plaintiff in the above-captioned matter.  I have personal knowledge of the matters set forth below.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the FBI Electronic Communication, "Meeting with AP Reporters," dated May 11, 2017, drafted by Karen A. Greenaway, as it is filed on the public docket in *U.S. v. Paul J. Manafort, et al.*, Case No. 1:18-cr-00083-TSE (E.D. Va.) (ECF 108-3) (filed July 6, 2018).

3.      Attached hereto as Exhibit 2 is a true and correct copy of the printout of a Calendar Entry from Andrew Weissman to Shreve Ariail, with subject line: "Accepted: FW: Meeting with AP," for April 11, 2017, produced by Defendant's Criminal Division to Plaintiff on March 13, 2020 as responsive to Plaintiff's FOIA request in this case.

4.      Attached hereto as Exhibit 3 is a true and correct copy of the FBI Electronic Communication, "Meeting with AP Reporters," dated May 11, 2017, with an attached copy of the AP reporters' business cards, that was produced by the FBI to Plaintiff on October 17, 2019,

as responsive to Plaintiff's FOIA request in this case.  This record appears to be a duplicate of Exhibit 1 referenced in Paragraph 3 above, except that the names of the FBI agents are redacted.

5.      Attached hereto as Exhibit 4 is a true and correct copy of the printout of a Calendar Entry from Andrew Weissman to Jack Gillum, with subject line: "Accepted: Meeting with AP," for April 11, 2017, produced by Defendant's Criminal Division to Plaintiff on March 13, 2020 as response to Plaintiff's FOIA request in this case.

6.      Attached hereto as Exhibit 5 is a true and correct copy of an email record of DOJ Public Affairs Office Director Sarah Isgur Flores, bearing the email address "sarah.isgur.flores@ usdoj.gov," available at https://www.justice.gov/oip/foia-library/foia-processed/general_topics/ sarah_isgur_flores_11_19_20/download at p. 1 (last accessed April 14, 2021).

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 15, 2021 in Washington, D.C.

/s/ *Ramona R. Cotca*
Ramona R. Cotca

# **<u>Exhibit 1</u>**

FD-1057 (Rev. 5-8-10)



UNCLASSIFIED//FOUO

# FEDERAL BUREAU OF INVESTIGATION
### Electronic Communication

**Title:** (U//FOUO) Meeting with AP Reporters.

**Date:** 05/11/2017

**From:** CRIMINAL INVESTIGATIVE
        D6-ICU
        **Contact:** Karen A. Greenaway, ██████████

**Approved By:** A/UC MAHONEY DEVON P

**Drafted By:** Karen A. Greenaway

**Case ID #:** ██████████ 

**Synopsis:** (U//FOUO) To document a meeting with AP reporters.

**Full Investigation Initiated:** ██████████

**Administrative Notes:** (U//FOUO) This EC is in supplement to serial ████

**Enclosure(s):** Enclosed are the following items:
1. (U//FOUO) Interview Notes
2. (U//FOUO) AP Reporter Business Cards
3. (U//FOUO) Fortunato &Venanzi
4. (U//FOUO) Oleg Deripaksa Ad The Washington Post

**Details:**

On April 11, 2017, SSA Karen A. Greenaway, SSA George W. Mceachern, SA Jeffry Pfeiffer, Trial Attorney Ann Brickley, AUSA Ariel Shreve, EDNY, and Chief of the DOJ Fraud Section of the DOJ, Andrew Weissman, met with the following AP reporters: Chad Day, Jack Gillum, Ted Bridis, and Eric Tucker. The meeting was arranged by Andrew Weissman at 1400 New York Ave, Washington, DC.

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO

Title:  (U//FOUO) Meeting with AP Reporters.
Re:  ███████████████  05/11/2017


The purpose of the meeting, as it was explained to SSA Greenaway, was
to obtain documents from the AP reporters that were related to their
investigative reports on Paul Manafort.  However, after the meeting
was started and it was explained to the reporters that there was
nothing that the FBI could provide to them, the reporters opted to ask
a series of questions to see if the FBI would provide
clarification.  No commitments were made to assist the reporters in
their further investigation into the life and activities of Paul
Manafort and the AP reporters understood that the meeting would be off
the record.

The reporters advised that their next report, which was scheduled to
come out in the next day or so after the meeting, would focus on
confirming, to the extent that they could payments in the so called
"black ledger" that were allegedly made to Manafort.  The evidence
that they were able to find confirmed that the NeoCom payments
documented in the ledger which was a $455,249 + $1 payment were
transferred into a Wachovia Account in the 2007 to 2009 time
frame.  They also mentioned the company Graten Alliance as being
another company that was linked to funds sent to Manafort.

The AP reporters also discussed their interviews in Cyprus.  They
reiterated what they had written in their article, which was a
response from the Cypriot Anti-Money Laundering Authority (MOKAS) that
they had fully responded to Department of Treasury agents in response
to their request.  The AP reporters were interested in how this
arrangement worked and if the U.S. had made a formal request.  FBI/DOJ
did not respond, but Andrew Weissman suggested that they ask the
Cypriots if they had provided everything to which they had access or
if they only provided what they were legally required to provide.

The AP reporters briefly discussed Manafort's relationship with
Ukrainian Oligarch Rinaht Akhmetov.  According to the AP reporters,
Manafort had done work for Akhmetov back in the early years of his
time as a political consultant in Ukraine.  Based on their research,
Akhmetov, who they described as running in the same circles as Oleg

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO

Title:   (U//FOUO) Meeting with AP Reporters.
Re:      ██████████████   05/11/2017

Deripaska, was introduced to Manafort by a U.K. person named ████
████████████  (Agent's Note – ██████████████████████████)

The AP reporters asked about FARA violations and they were generally
told that they are enforceable.

The AP reporters then discussed Manafort's time in Ukraine.  According
to them, they had seen internal U.S. work product that had been sent
to Ukraine.  The product was described as an internal White House
document.  It was not clear if the document was classified.  There was
a note attached to the document that asked for limited distribution
that was signed by Manafort.

The AP reporters asked if there had been any official requests to
other countries.  FBI/DOJ declined to discuss specifics, except to
state that the Mutual Legal Assistance Treaty requests are negotiated
by diplomats, so they should remain at that level.

The AP reporters advised that they had located a storage facility in
Virginia that belonged to Manafort.  They had developed information
indicating that there were boxes of records that were from the 1990(s)
potentially to the present.  The records included his time working for
the Party of Regions in Ukraine, as well as records and other
materials from his "film career" where he made a film using Puerto
Rican film tax credits.  The film was called "Successful Vanquishing."

As far as they could determine, Manafort had not actually been in the
storage locker for several years.  Their understanding is that it was
back in 2012 or 2013 when Manafort last accessed the locker.  The code
to the lock on the locker is 40944859.  The reporters were aware of
the Unit number and address, but they declined to share that
information.  Their information indicated that the payments for the
locker were made from the DM Partners account that received money from
the Party of Regions.

The impression that their sources give is that Manafort was not
precise about his finances, specifically as it related to the "black

UNCLASSIFIED//FOUO

3

UNCLASSIFIED//FOUO

Title:  (U//FOUO) Meeting with AP Reporters.
Re: ████████████████  05/11/2017


ledger."  The AP reporters calculated that he received $60 to $80
million from his work in Ukraine, during the time period the ledger
was kept.  According to their review of the ledger, it appears that
there is a slightly lesser amount documented based on all of the
entries.  The AP reporters accessed a copy of the ledger on line,
describing it as "public" document (Agent's note - the ledger has been
published in its entirety by the National Anti-Corruption Bureau of
Ukraine, after it was given to them by Sergei Leshenko, Ukrainian RADA
member and investigative reporter.)

The AP reporters discussed several entries or individuals that they
felt should be followed up on:

1) A $50,000 payment to ████████████ and ████████████  (Agent's Note - See
attached D&B registration and Leagle entry.)  According to what they
could determine, the store is now closed and there are several
lawsuits pending against it.  In addition, it is not the type of men's
store where you could spend that much money on men's clothing.

2) ████████████ and his relationship to both Deripaska and ████████
████████ (████████ allegedly met ████████████ in December 2006.)  According
to their sources, ████████████ introduced Manafort to Deripaska in 2007,
on a yacht off the coast of Montenegro.  During the meeting, Deripaska
allegedly contracted or engaged Manafort to assist the Montenegrin
politicians with their independence from Serbia, including supporting
the former Prime Minister/President who was leading the secession
campaign.  Deripaska's interest was in the aluminum factory that was
in Montenegro.  Allegedly, Deripaska also contracted or facilitated
Manafort's work in Ukraine.  The meeting on the Yacht was a
negotiation to decide who would be paying for what.

As an aside, the AP reporters advised that Deripaska's current lawyer
is threatening to sue them over their article about his relationship
with Manafort.  His lawyer is a NFI Schiller from Schiller, Boies
(Agent's note - Boies, Schiller, Flexner's main office is New York,
NY.)  Prior to the conversation with the lawyer, Deripaska took out a

UNCLASSIFIED//FOUO

4

UNCLASSIFIED//FOUO

Title:  (U//FOUO) Meeting with AP Reporters.
Re:     ▮▮▮▮▮▮▮▮▮▮  05/11/2017

quarter page ad in *The Washington Post*, denying the AP
report.  (Agent's note - a copy of the denial is attached to this
EC.)  After they spoke to the lawyer, he took out a full page ad
denying his relationship with Manafort.

3) The AP reporters suggested that ▮▮▮▮▮▮▮▮▮ a Manafort employee
in Ukraine, may have knowledge about the payments in the
ledger.  Allegedly, Manafort turned over everything to him when he
left.

4) Loav Ltd., which is listed in the "black ledger," was incorporated
in Delaware in 1992, possibly by Manafort.

5) NeoCom - The AP reporters questioned whether this company was
incorporated solely to cover up money laundering, since their
investigation had determined that the source of the computers was
fictitious, although they did not provide any evidence to confirm this
statement.

6) Kypros Chrysostomides from Cyprus - He is listed as owner or
shareholder of some of the Manafort linked companies that they have
been able to identify, including the some of the following:  All Tech,
Global, Yiakora, Leviathon Advisors, KKI Ltd. (Camans), Vernon View,
Tignes Ltd., and Antes Management.  As a result of the International
Consortium of Investigative Journalists' (ICIJ) Panama Papers
investigation, they determined that Deripaska also had companies that
were incorporated by Chrysostomides and linked to Sperbank.

7) Seychelles FIU - They are investigating two companies linked to
former President Victor Yanukovych.  The companies are called Inter-
Hold and Mono-Hold and they were also connected to Manafort,
specifically as it related to Black Sea Cable.

8) Kyrgyzstan - Any relationship that Manafort may have had to
Kyrgyzstan.

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO

Title: (U//FOUO) Meeting with AP Reporters.
Re: ███████████ 05/11/2017

9) Montenegrin Independence Campaign - The company Basic Element
(Agent's Note - Basic Element is Deripaska's company.) may have
provided some or all of the private equity that funded the Montenegrin
Independence Campaign.

10) Black Sea Cable - The AP reporters did some investigation of this
deal and in their opinion, the deal did not make good business
sense. The company that they were buying, Black Sea Cable, was a very
small operation in Odessa, Ukraine that was supposed to be the entree
into the cable market for the region. The original investment was
around 19-20 million dollars, which was then supposed to make
Deripaska and Manafort a 60 million dollars NET gain. In their
opinion this deal was likely not legitimate, since the original
operation was not a good first investment platform because it lacked
infrastructure or possibilities for expansion. They said that the
estimate of the value was off by a value of ten, according to a source
that they spoke to who was familiar with the company. They also said
that the companies Inter-Hold and Mono-Hold were a part of the deal.

In their opinion, Manafort often promised more than he could
deliver. Allegedly, when the Black Sea Cable deal fell through,
Deripaska wanted to go after Manafort in court, but Yanukovych
prevented him from pursuing any legal options against Manafort. Once
Yanukovych was out of office, Deripaska filed suit against Manafort
over this deal.

Allegedly, Manafort also over promised Deripaska when he signed his
contract with him back in 2006 time frame. The contract, which they
did not produce, allegedly included assistance with investments, as
well as political advice, for proposed future work in the U.S. There
is no indication that the AP reporters could find that Manafort
facilitated any U.S. investments for Deripaska.

11) Konstantin Klimnic - Klimnic was one of Manafort's Ukrainian
operatives/employees. He is allegedly associated with the Russian
Intelligence Services.

UNCLASSIFIED//FOUO

UNCLASSIFIED//FOUO

Title:  (U//FOUO) Meeting with AP Reporters.
Re:     ████████████████  05/11/2017

At the conclusion of the meeting, the AP reporters asked if we would
be willing to tell them if they were off based or on the wrong traack
and they were advised that they appeared to have a good understanding
of Manafort's business dealings.

◆◆

# Exhibit 2



**U.S. Department of Justice**

Criminal Division

---

*Office of Enforcement Operations*                                        *Washington, D.C. 20530*

**VIA Electronic Mail**                                        March 13, 2020

Ramona R. Cotca
Judicial Watch, Inc.
425 Third St., SW
Suite 800                                        <u>Judicial Watch, Inc. v. U.S. Department of</u>
Washington, D.C. 20024                           <u>Justice</u>, 19-cv-00879-CJN (D.D.C.)

Dear Ms. Cotca:

This is the sixth interim response to your Freedom of Information Act request dated July 5, 2018, for records concerning an April 2017 meeting between DOJ, FBI personnel, and reporters of the Associated Press. Your request is currently the subject of the above referenced litigation.

Please be advised that a search has been conducted in the appropriate sections and we continue to review and process the collected records. This response pertains to two hundred two (202) pages of records, which comprises the remainder of records responsive to this request. At this time, we have determined that one hundred forty-four (144) pages are duplicates and have processed an additional seventeen (17) pages of records.

After careful review, I have determined that two (2) pages must be withheld in full and that fifteen (15) pages may be released in part. All of these withholdings are made pursuant to:

5 U.S.C. § 552(b)(5), which concerns certain inter- or intra-agency communications protected by the deliberative process privilege and the attorney work-product privilege;

5 U.S.C. § 552(b)(6), which concerns materials the release of which would constitute a clearly unwarranted invasion of the person privacy of third parties; and

5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.

This Office also located a voicemail, which is being withheld in full pursuant to Exemption 6.

There remain forty-one pages that are currently under review. Please be advised that this Office anticipates issuing its final response on those pages on or before April 10, 2020.

| | |
|---|---|
| **From:** | Ariail, Shreve (USANYE) |
| **To:** | Weissmann, Andrew (CRM) |
| **Subject:** | Accepted: FW: Meeting with AP |
| **Start:** | Tuesday, April 11, 2017 9:00:00 AM |
| **End:** | Tuesday, April 11, 2017 10:30:00 AM |
| **Location:** | 4th floor VTC (4204) |

# **Exhibit 3**



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

October 17, 2019

MR. SEAN DUNAGAN
JUDICIAL WATCH, INC.
400 SCOTT AVENUE
FORT COLLINS, CO 80521

Civil Litigation No.: 19-cv-879
FOIPA Request No.: 1410979-000
Subject: Records related to the April 2017 meeting
between DOJ, FBI and the Associated Press

Dear Mr. Dunagan:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.  Below you will find checked boxes under applicable statutes for the exemptions asserted to protect information exempt from disclosure.  The appropriate exemptions are noted on the processed pages next to redacted information.  In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely pursuant to applicable exemptions.  An Explanation of Exemptions is enclosed to further explain justification for withheld information.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☑ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☑ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

28 pages were reviewed and 28 pages are being released.

Please see the paragraphs below for relevant information specific to your request and the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☐ Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

☐ This information has been referred to the OGA(s) for review and direct response to you.
☐ We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.  **"Part 1"** of the Addendum includes standard responses that apply to all requests.  **"Part 2"** includes additional standard responses that apply to all requests for records on individuals.  **"Part 3"** includes general information about FBI records that you may find useful.   Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

Obtained by Judicial Watch, Inc. via FOIA

FD-1057 (Rev. 5-8-10)

UNCLASSIFIED//FOUO



## FEDERAL BUREAU OF INVESTIGATION
### Electronic Communication

**Title:** (U//FOUO) Meeting with AP Reporters.        **Date:** 05/11/2017

**From:** CRIMINAL INVESTIGATIVE
        D6-ICU
        **Contact:** [                              ]                         b6 -1
                                                                              b7C -1

**Approved By:** A/UC[                    ]

**Drafted By:** [                        ]

**Case ID #:** [                ]    (U)[                    ]              b7A -1
                                    [                    ]                 b7E -1
                                    [                    ]
                                    [                    ]

**Synopsis:** (U//FOUO) To document a meeting with AP reporters.

**Full Investigation Initiated:** [              ]                          b7E -2

**Administrative Notes:** (U//FOUO) This EC is in supplement to serial       b7A -1
[    ]                                                                       b7E -1

**Enclosure(s):** Enclosed are the following items:
1.  (U//FOUO) Interview Notes
2.  (U//FOUO) AP Reporter Business Cards
3.  (U//FOUO) Fortunato &Venanzi
4.  (U//FOUO) Oleg Deripaksa Ad The Washington Post

**Details:**

On April 11, 2017, SSA [                    ] SSA [                ] SA      b6 -1
[                    ] Trial Attorney Ann Brickley, AUSA Ariel Shreve, EDNY, b7C -1
and Chief of the DOJ Fraud Section of the DOJ, Andrew Weissman, met
with the following AP reporters: Chad Day, Jack Gillum, Ted Bridis,
and Eric Tucker. The meeting was arranged by Andrew Weissman at 1400
New York Ave, Washington, DC.

UNCLASSIFIED//FOUO

Obtained by Judicial Watch, Inc. via FOIA

**UNCLASSIFIED//FOUO**

Title:  (U//FOUO) Meeting with AP Reporters.                                    b7A -1

Re: [                    ]  05/11/2017                                           b7E -1


                                                                                b6 -1
The purpose of the meeting, as it was explained to SSA [            ] was        b7C -1
to obtain documents from the AP reporters that were related to their
investigative reports on Paul Manafort.  However, after the meeting
was started and it was explained to the reporters that there was
nothing that the FBI could provide to them, the reporters opted to ask
a series of questions to see if the FBI would provide
clarification.  No commitments were made to assist the reporters in
their further investigation into the life and activities of Paul
Manafort and the AP reporters understood that the meeting would be off
the record.

The reporters advised that their next report, which was scheduled to
come out in the next day or so after the meeting, would focus on
confirming, to the extent that they could payments in the so called
"black ledger" that were allegedly made to Manafort.  The evidence
that they were able to find confirmed that the NeoCom payments
documented in the ledger which was a $455,249 + $1 payment were
transferred into a Wachovia Account in the 2007 to 2009 time
frame.  They also mentioned the company Graten Alliance as being
another company that was linked to funds sent to Manafort.

The AP reporters also discussed their interviews in Cyprus.  They
reiterated what they had written in their article, which was a
response from the Cypriot Anti-Money Laundering Authority (MOKAS) that
they had fully responded to Department of Treasury agents in response
to their request.  The AP reporters were interested in how this
arrangement worked and if the U.S. had made a formal request.  FBI/DOJ
did not respond, but Andrew Weissman suggested that they ask the
Cypriots if they had provided everything to which they had access or
if they only provided what they were legally required to provide.

The AP reporters briefly discussed Manafort's relationship with
Ukrainian Oligarch Rinaht Akhmetov.  According to the AP reporters,
Manafort had done work for Akhmetov back in the early years of his
time as a political consultant in Ukraine.  Based on their research,
Akhmetov, who they described as running in the same circles as Oleg

**UNCLASSIFIED//FOUO**

19-cv-879(FBI)-6

Obtained by Judicial Watch, Inc. via FOIA

**UNCLASSIFIED//FOUO**

Title:  (U//FOUO) Meeting with AP Reporters.
Re: [          ]  05/11/2017                                           b7A -1
                                                                       b7E -1


Deripaska, was introduced <u>to Manafort by a U.K. person named</u>[    ]    b6 -2
[            ](Agent's Note –[                          ]                b7C -2

The AP reporters asked about FARA violations and they were generally
told that they are enforceable.

The AP reporters then discussed Manafort's time in Ukraine.  According
to them, they had seen internal U.S. work product that had been sent
to Ukraine.  The product was described as an internal White House
document.  It was not clear if the document was classified.  There was
a note attached to the document that asked for limited distribution
that was signed by Manafort.

The AP reporters asked if there had been any official requests to
other countries.  FBI/DOJ declined to discuss specifics, except to
state that the Mutual Legal Assistance Treaty requests are negotiated
by diplomats, so they should remain at that level.

The AP reporters advised that they had located a storage facility in
Virginia that belonged to Manafort.  They had developed information
indicating that there were boxes of records that were from the 1990(s)
potentially to the present.  The records included his time working for
the Party of Regions in Ukraine, as well as records and other
materials from his "film career" where he made a film using Puerto
Rican film tax credits.  The film was called "Successful Vanquishing."

As far as they could determine, Manafort had not actually been in the
storage locker for several years.  Their understanding is that it was
back in 2012 or 2013 when Manafort last accessed the locker.  The code
to the lock on the locker is 40944859.  The reporters were aware of
the Unit number and address, but they declined to share that
information.  Their information indicated that the payments for the
locker were made from the DM Partners account that received money from
the Party of Regions.

The impression that their sources give is that Manafort was not
precise about his finances, specifically as it related to the "black

**UNCLASSIFIED//FOUO**

3

Obtained by Judicial Watch, Inc. via FOIA

**UNCLASSIFIED//FOUO**

Title:  (U//FOUO) Meeting with AP Reporters.
Re: [                    ]05/11/2017                                    b7A -1
                                                                        b7E -1


ledger."  The AP reporters calculated that he received $60 to $80
million from his work in Ukraine, during the time period the ledger
was kept.  According to their review of the ledger, it appears that
there is a slightly lesser amount documented based on all of the
entries.  The AP reporters accessed a copy of the ledger on line,
describing it as "public" document (Agent's note - the ledger has been
published in its entirety by the National Anti-Corruption Bureau of
Ukraine, after it was given to them by Sergei Leshenko, Ukrainian RADA
member and investigative reporter.)

The AP reporters discussed several entries or individuals that they
felt should be followed up on:

1) A $50,000 payment to [        ]and[        ]  (Agent's Note - See      b7A -1
attached D&B registration and Leagle entry.)  According to what they
could determine, the store is now closed and there are several
lawsuits pending against it.  In addition, it is not the type of men's
store where you could spend that much money on men's clothing.

2)[            ]and his relationship to both Deripaska and[      ]      b6 -2
[          ]allegedly met[          ]in December 2006.)  According       b7C -2
to their sources, [          ]introduced Manafort to Deripaska in 2007,
on a yacht off the coast of Montenegro.  During the meeting, Deripaska
allegedly contracted or engaged Manafort to assist the Montenegrin
politicians with their independence from Serbia, including supporting
the former Prime Minister/President who was leading the secession
campaign.  Deripaska's interest was in the aluminum factory that was
in Montenegro.  Allegedly, Deripaska also contracted or facilitated
Manafort's work in Ukraine.  The meeting on the Yacht was a
negotiation to decide who would be paying for what.

As an aside, the AP reporters advised that Deripaska's current lawyer
is threatening to sue them over their article about his relationship
with Manafort.  His lawyer is a NFI Schiller from Schiller, Boies
(Agent's note - Boies, Schiller, Flexner's main office is New York,
NY.)  Prior to the conversation with the lawyer, Deripaska took out a

**UNCLASSIFIED//FOUO**

19-cv-879(FBI)-8

Obtained by Judicial Watch, Inc. via FOIA

UNCLASSIFIED//FOUO

Title:  (U//FOUO) Meeting with AP Reporters.
Re: [                    ]  05/11/2017                           b7A -1
                                                               b7E -1


quarter page ad in *The Washington Post*, denying the AP
report.  (Agent's note - a copy of the denial is attached to this
EC.)  After they spoke to the lawyer, he took out a full page ad
denying his relationship with Manafort.
                                                               b6 -2
3) The AP reporters suggested that [              ] a Manafort employee   b7C -2
in Ukraine, may have knowledge about the payments in the
ledger.  Allegedly, Manafort turned over everything to him when he
left.

4) Loav Ltd., which is listed in the "black ledger," was incorporated
in Delaware in 1992, possibly by Manafort.

5) NeoCom - The AP reporters questioned whether this company was
incorporated solely to cover up money laundering, since their
investigation had determined that the source of the computers was
fictitious, although they did not provide any evidence to confirm this
statement.

6) Kypros Chrysostomides from Cyprus - He is listed as owner or
shareholder of some of the Manafort linked companies that they have
been able to identify, including the some of the following:  All Tech,
Global, Yiakora, Leviathon Advisors, KKI Ltd. (Camans), Vernon View,
Tignes Ltd., and Antes Management.  As a result of the International
Consortium of Investigative Journalists' (ICIJ) Panama Papers
investigation, they determined that Deripaska also had companies that
were incorporated by Chrysostomides and linked to Sperbank.

7) Seychelles FIU - They are investigating two companies linked to
former President Victor Yanukovych.  The companies are called Inter-
Hold and Mono-Hold and they were also connected to Manafort,
specifically as it related to Black Sea Cable.

8) Kyrgyzstan - Any relationship that Manafort may have had to
Kyrgyzstan.


UNCLASSIFIED//FOUO

19-cv-879(FBI)-9

Obtained by Judicial Watch, Inc. via FOIA

UNCLASSIFIED//FOUO

Title:  (U//FOUO) Meeting with AP Reporters.

Re: [                    ] 05/11/2017

b7A -1
b7E -1

9) Montenegrin Independence Campaign - The company Basic Element
(Agent's Note - Basic Element is Deripaska's company.) may have
provided some or all of the private equity that funded the Montenegrin
Independence Campaign.

10) Black Sea Cable - The AP reporters did some investigation of this
deal and in their opinion, the deal did not make good business
sense.  The company that they were buying, Black Sea Cable, was a very
small operation in Odessa, Ukraine that was supposed to be the entree
into the cable market for the region.  The original investment was
around 19-20 million dollars, which was then supposed to make
Deripaska and Manafort a 60 million dollars NET gain.  In their
opinion this deal was likely not legitimate, since the original
operation was not a good first investment platform because it lacked
infrastructure or possibilities for expansion.  They said that the
estimate of the value was off by a value of ten, according to a source
that they spoke to who was familiar with the company.  They also said
that the companies Inter-Hold and Mono-Hold were a part of the deal.

In their opinion, Manafort often promised more than he could
deliver.  Allegedly, when the Black Sea Cable deal fell through,
Deripaska wanted to go after Manafort in court, but Yanukovych
prevented him from pursuing any legal options against Manafort.  Once
Yanukovych was out of office, Deripaska filed suit against Manafort
over this deal.

Allegedly, Manafort also over promised Deripaska when he signed his
contract with him back in 2006 time frame.  The contract, which they
did not produce, allegedly included assistance with investments, as
well as political advice, for proposed future work in the U.S.  There
is no indication that the AP reporters could find that Manafort
facilitated any U.S. investments for Deripaska.

11) Konstantin Klimnic - Klimnic was one of Manafort's Ukrainian
operatives/employees.  He is allegedly associated with the Russian
Intelligence Services.

UNCLASSIFIED//FOUO

Obtained by Judicial Watch, Inc. via FOIA

**UNCLASSIFIED//FOUO**

Title:   (U//FOUO) Meeting with AP Reporters.

Re: [                    ]   05/11/2017

**b7A -1**
**b7E -1**

At the conclusion of the meeting, the AP reporters asked if we would
be willing to tell them if they were off based or on the wrong traack
and they were advised that they appeared to have a good understanding
of Manafort's business dealings.

◆◆

**UNCLASSIFIED//FOUO**

7

19-cv-879(FBI)-11

Obtained by Judicial Watch via FOIA



**Associated Press**

1100 13th St. NW, Suite 700
Washington, DC 20005-4076
T:
F:
C:
www.ap.org

Ted Bridis

---

**AP**

**ASSOCIATED PRESS**

Eric Tucker
Justice Department Reporter

@etuckerAP on Twitter

1100 13th Street, NW, 5th Fl.
Washington, DC 20005
Office
Mobile

www.ap.org

b6 -2
b7C -2

---

**AP**

**ASSOCIATED PRESS**

Jack Gillum
Reporter

@jackgillum on Twitter

1100 13th Street, NW, 5th Fl.
Washington, DC 20005
Phone
Mobile
www.ap.org

b6 -2
b7C -2

---

**AP**

**ASSOCIATED PRESS**

Chad Day
Reporter

@ChadSDay on Twitter

1100 13th Street, NW, 5th Fl.
Washington, DC 20005
Office
Mobile
www.ap.org



# **Exhibit 4**



**U.S. Department of Justice**

Criminal Division

_Office of Enforcement Operations_             _Washington, D.C. 20530_

**VIA Electronic Mail**           March 13, 2020

Ramona R. Cotca
Judicial Watch, Inc.
425 Third St., SW
Suite 800          <u>Judicial Watch, Inc. v. U.S. Department of</u>
Washington, D.C. 20024      <u>Justice</u>, 19-cv-00879-CJN (D.D.C.)

Dear Ms. Cotca:

This is the sixth interim response to your Freedom of Information Act request dated July 5, 2018, for records concerning an April 2017 meeting between DOJ, FBI personnel, and reporters of the Associated Press. Your request is currently the subject of the above referenced litigation.

Please be advised that a search has been conducted in the appropriate sections and we continue to review and process the collected records. This response pertains to two hundred two (202) pages of records, which comprises the remainder of records responsive to this request. At this time, we have determined that one hundred forty-four (144) pages are duplicates and have processed an additional seventeen (17) pages of records.

After careful review, I have determined that two (2) pages must be withheld in full and that fifteen (15) pages may be released in part. All of these withholdings are made pursuant to:

    5 U.S.C. § 552(b)(5), which concerns certain inter- or intra-agency communications protected by the deliberative process privilege and the attorney work-product privilege;

    5 U.S.C. § 552(b)(6), which concerns materials the release of which would constitute a clearly unwarranted invasion of the person privacy of third parties; and

    5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.

This Office also located a voicemail, which is being withheld in full pursuant to Exemption 6.

There remain forty-one pages that are currently under review. Please be advised that this Office anticipates issuing its final response on those pages on or before April 10, 2020.

**From:** Gillum, Jack
**To:** Weissmann, Andrew (CRM)
**Subject:** Accepted: Meeting with AP
**Start:** Tuesday, April 11, 2017 9:00:00 AM
**End:** Tuesday, April 11, 2017 10:30:00 AM
**Location:** 4th floor VTC (4204)

# **<u>Exhibit 5</u>**

Non-Responsive Record: Sarah Flores Transmitting Email to OIP

---------- Forwarded message ---------
From: **Bryant, Errical (OAG)** <Errical.Bryant@usdoj.gov>
Date: Wed, Mar 1, 2017 at 6:36 AM
Subject: FW: Schedule Request - New Attorney Orientation on 3/16/17
To: Flores, Sarah Isgur. (OPA) <Sarah.Isgur.Flores@usdoj.gov>, Sarah Isgur Flores
(b) (6)

Good morning Sarah,

We will be adding this event to the AG's calendar. I will list you as the POC and asked that Trisha reach out to you for remark content.

Thanks

---

From: Fillbach, Trisha A. (OARM)
Sent: Tuesday, February 28, 2017 4:46 PM
To: Bryant, Errical (OAG) <ebryant@jmd.usdoj.gov>
Subject: RE: Schedule Request - New Attorney Orientation on 3/16/17

Hi Errical:

Yes, and I appreciate you asking. Attached please find the agenda from last year. We have a relatively similar program planned, but we have a few speaker changes. Specifically, we have a few new