UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

       *Plaintiff*,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE,

       *Defendant*.

Civil Action No. 1:19-cv-0879 (CJN)

## MEMORANDUM OPINION

Judicial Watch, Inc. seeks certain documents from the Department of Justice under the Freedom of Information Act, 5 U.S.C. §§ 552, *et seq.* DOJ produced many documents, some redacted. But the cross-motions for summary judgment do not deal with these redactions. Instead, the Parties dispute only the adequacy of the government's search. The Court concludes that most, but not all, of the searches were adequate. The Court thus grants in part and denies in part Defendant's Motion for Summary Judgment, ECF No. 24, and grants in part and denies in part Plaintiff's Cross-Motion for Summary Judgment, ECF No. 27.

### I.      Background

The Court finds no genuine dispute over these facts:

In July 2018, Judicial Watch submitted a FOIA request to the Department of Justice and its component agency, the Federal Bureau of Investigation. Pl.'s Resp. to Def.'s Statement of Material Facts ("Facts"), ECF No. 26 at ¶ 1. It sought:

- Any and all records regarding, concerning, or related to the April 2017 meeting between Department of Justice and FBI personnel and reporters, editors, and/or other individuals employed by and/or representing the Associated Press. This request includes, but it is not limited to, any and all notes, reports, memoranda,

> briefing materials, or other records created in preparation for, during, and/or pursuant to the meeting.
>
> - Any and all records of communication between any official, employee, or representative of [DOJ] and any of the individuals present at the aforementioned meeting.

*Id.* "For purposes of clarification," Plaintiff continued, "the meeting that is the subject of [t]his request was reported on by Politico on June 29, 2018." *Id.* The request included a hyperlink to that article, titled "Associated Press May Have Led FBI to Manafort Storage Locker." *Id.* Plaintiff filed this lawsuit eight months later. *Id.* ¶ 2.

Three DOJ components—the Criminal Division, FBI, and the Office of Information Policy—responded to Plaintiff's request. *Id.* ¶ 3. The search efforts of each are relevant to the present dispute.

*Criminal Division*

Start with the Criminal Division. As a result of a search for documents responsive to a similar FOIA request regarding the April 2017 meeting, it was known that Andrew Weissman, the former Chief of the Fraud Section, had attended that meeting, *id.* ¶ 4., and thus that the Fraud Section potentially had responsive documents, *id.* ¶ 5. The Office of the Assistant Attorney General, as well as the Money Laundering and Asset Recovery Section, were also identified as offices within the Criminal Division that might have relevant information. *Id.* ¶¶ 6–7. Search requests were thus sent to each of these offices. *Id.* ¶ 8.

The Office of the Assistant Attorney General identified four potential custodians of relevant records: Andrew Weismann, Bruce Swartz (a Deputy Assistant Attorney General), Kendall Day (a former Acting Deputy Assistant Attorney General), and Ann Brickley (a Money-Laundering Section trial attorney). *Id.* ¶ 10. The Money-Laundering Section subsequently provided to the Criminal Division a set of Brickley's emails that it thought responsive. *Id.* ¶ 11.

After reviewing these emails and discussing the matter with Brickley, the Criminal Division identified additional individuals who might have sent or received emails regarding the meeting: Deborah Connor (the Chief of the Money-Laundering Section), Mary Butler (the Chief of the Money-Laundering Section's International Unit), and Bruce Ohr (of the Office of the Deputy Attorney General). *Id.* ¶ 12. Brickley also confirmed in these conversations that she did not have any physical records responsive to Plaintiff's request. *Id.*

The Criminal Division thus conducted a search of the email accounts for seven employees: Weissmann, Swartz, Day, Ohr, Connor, Butler, and Brickley. *Id.* ¶ 13. It searched the Money-Laundering Section's shared electronic drives, too. *Id.* For these searches it employed the following search terms:

- "AP" with "meeting";
- "Associated Press" with "meeting";
- "Eric Tucker";
- "Jeff Horwitz";
- "Ted Bridis";
- Jack Gillum";
- "etucker@ap.org";
- "jhorwitz@ap.org"; and
- "tbridis@ap.org".

*Id.* ¶ 14. (Tucker, Horwitz, Bridis, and Gillum[1] were the AP reporters present at the 2017 meeting. *Id.*) The date range for each search was March 1 through June 30, 2017. *Id.* ¶ 15.

Upon review of the records returned from this first round of searches, the Criminal Division determined that supplemental searches from additional custodians were necessary. These included Kenneth Blanco (former Acting Assistant Attorney General), James Mann (former Chief of Staff),

---

[1] Defendant contends that Brickley's emails did not include Gillum's email address, Facts at ¶ 14 n.2; Plaintiff disputes the implication that Defendant did not have it available from other sources, *id.* ¶ 14.

and Trevor McFadden (former Deputy Assistant Attorney General).  *Id.* ¶ 16.  These email

accounts were searched using fewer search terms:

- "AP" with "meeting";
- "Eric Tucker";
- "Jeff Horwitz";
- "Ted Bridis"; and
- Jack Gillum".

*Id.* ¶ 17.

These searches revealed that Blanco, Mann, and McFadden, along with Day,

communicated with the FBI and DOJ's Office of Public Affairs regarding the 2017 meeting.  *Id.*

¶ 18.  The Division thus conducted a separate search of those four employees' emails, using new

terms:  "siflores@usdoj.gov" (the email address of Sarah Flores, former DOJ spokeswoman and

head of the Office of Public Affairs), and the email address of a nonpublic-facing employee who

worked in the FBI's Office of Public Affairs.  *Id.* ¶ 19.[2]

Following these additional searches, the Criminal Division conducted a responsiveness

review and processed all responsive documents.  *Id.* ¶ 20.  It ended up producing 351 pages in part

and withholding 54 pages in full.  *Id.* ¶ 21.

### Federal Bureau of Investigation

In response to a typical FOIA request, the FBI conducts an index search of its Central

Records System (CRS).  *Id.* ¶ 23.  It eventually did so here.  *Id.* ¶ 24.  But since the request sought

---

[2] The Criminal Division later learned that it had used an incorrect email address for Flores.  Pl.'s
Resp. to Def.'s Supp. Statement of Material Facts ("Supp. Facts"), ECF No. 31 at ¶ 69.  It thus
conducted a supplemental search, using the same terms, but with Flores's correct email addresses.
*Id.*  That search yielded eighty-seven pages of responsive documents, eighty-six of which were
duplicative.  *Id.* ¶ 70.  (Plaintiff denies this fact "as to the use of the term 'duplicative,'" *id.*, but
its citation for this objection—ECF 30-1 at ¶ 16—explains that "eighty-six of these pages were
duplicative.")  The one new page was produced to Plaintiff.  Supp. Facts at ¶ 70.

information about a specific meeting, the FBI began its search by identifying the Special Agent present at the meeting, Special Agent Pfeiffer, and requesting that he search for responsive records. *Id.* Pfeiffer searched his email archives using a combination of the terms "FBI," "DOJ," and/or "AP April 2017 meeting," but did not locate any responsive records. *Id.* ¶ 25. He also searched his computer hard drives using the same search terms, as well as his paper files. *Id.* ¶ 26. Again, he found nothing responsive. *Id.* But he did recall taking handwritten notes during the meeting and creating an electronic memorandum memorializing the meeting, *id.* ¶ 27; he believed he added both to the CRS file for the Manafort investigation, *id.* ¶ 28. He also suggested that additional information from the meeting could be found in the Manafort investigation file in CRS, as well as in the Special Counsel's Office's case files, which are separately maintained in CRS. *Id.* ¶ 29.

Using this information, the FBI conducted an index search in CRS. *Id.* ¶ 30. It used the search terms "Associated Press" and "AP meeting." *Id.* From these results, the FBI concluded that 28 pages were responsive. *Id.* ¶ 31. Those pages included Pfeiffer's memorandum and handwritten notes, as well as other memoranda and notes created by FBI personnel who attended the meeting. *Id.*

The FBI then conducted a search of the Special Counsel's Office's investigatory files, using the same search terms. *Id.* ¶ 32. It confirmed that the only responsive documents were duplicates of ones it had already identified. *Id.* ¶ 33.

During this same time, the FBI received a separate FOIA request from a different requester, which sought "records concerning the issuance of a complaint about the March or April 2017 meeting involving Justice and FBI officials with reporters from the Associated Press." *Id.* ¶ 34. The FBI thought this complaint would be responsive to the request here, so it instructed its Office of Public Affairs to search for records concerning the filing of the alleged complaint. *Id.* ¶ 36.

The Office of Public Affairs searched both its unclassified and classified email systems for "FBI Complaint," "Associated Press," "AP/DOJ Meeting," and "April 2017." *Id.* ¶ 37.  But it did not find anything responsive.  *Id.*  It did, however, suggest that the FBI check with the Criminal Investigation Division, International Corruption Unit, which would be the most likely FBI unit to have such records (if they existed).  *Id.* ¶ 38.

The International Corruption Unit thus searched its electronic record file system for "FBI Complaint," "Associated Press," "AP/DOJ Meeting," and "April 2017." *Id.* ¶ 39.  It found no responsive documents.  *Id.* ¶ 40.  In addition, a Supervisor Special Agent of the Unit spoke with current and former personnel who attended the April 2017 meeting, or were familiar with the details of it.  *Id.*  These efforts did not yield any additional information, either.  *Id.*

*Office of Information Policy*

Both the Criminal Division and the FBI referred Plaintiff's FOIA request to the Office of Information Policy.  *Id.* ¶ 44.  They did so because, while the FBI's records system includes investigative files of the Special Counsel's Office, the Office of Information Policy has access to the *non*investigative records.  *Id.* ¶ 45.

OIP conducted three searches.  The first focused on emails.  OIP used responsive documents that had already been located and processed by the FBI to identify two attendees of the 2017 meeting who went on to work for the Special Counsel's Office:  Weissmann and Pfeiffer. *Id.* ¶ 47.  OIP then searched their email accounts, using the date range of May 18, 2017 (the earlier start date at the Special Counsel's Office of the two men) through October 11, 2017 (six months after the meeting).  *Id.* ¶ 48.  It used two searches:  ("Associated Press" AND "locker") and ("AP" AND "locker").  *Id.*  (The meeting participants had allegedly discussed a storage locker owned by Manafort.  *Id.*)  No responsive records were found.  *Id.* ¶ 49.

OIP also searched the Special Counsel's Office's electronic files. *Id.* ¶ 50. The Politico article referenced in Plaintiff's FOIA request mentioned a binder used at a hearing in the Manafort case. *Id.* And since the Special Counsel's Office was involved in the Manafort prosecution, OIP assessed that this binder might have responsive material. *Id.* ¶ 51.

The Parties debate whether the relevant documents were locatable or searchable at first. *See id.* ¶¶ 52–60. But in the fall of 2020, OIP learned that many boxes from the Special Counsel's Office's investigation had been assigned "box lists"—lists identifying the subject matters covered by the records in each box. *Id.* ¶ 61. OIP reviewed the box lists and identified one box—which included material listed as "Manafort Trial Binder: Locker Search SW Witness"—that could potentially have responsive documents. *Id.* ¶ 62-63. OIP reviewed every document in that box, but it did not locate any such binder, nor any other responsive documents. *Id.* ¶ 64.

OIP later performed another supplemental search. Supp. Facts ¶ 71. It searched the email accounts of Flores and Peter Carr, a Public Affairs Specialist detailed to the Special Counsel's Office at the time. *Id.* ¶ 72. It utilized the same date range and search terms utilized in the first search. *Id.* It found no responsive records. *Id.*

When the Criminal Division later informed OIP that a responsive record involving Flores was located in the Criminal Division's supplemental search, OIP decided to manually review all of Flores's emails from April 11 through April 21, 2017—that is, the date of the alleged meeting through the end of the following week. *Id.* ¶ 73. This additional review uncovered fourteen additional pages of supplemental records responsive to Plaintiff's request. *Id.* ¶ 74. Each was provided to Plaintiff. *Id.*

*       *       *

Plaintiff contends that, notwithstanding these efforts, DOJ did not conduct an adequately thorough search. It contends that DOJ failed to search known custodians, offices, and record systems likely to possess potentially responsive documents. Pl.'s Mem. in Opp. to Def.'s Mot. for Sum. Judg. and in Supp. of Pl.'s Cross Mot. ("Pl.'s Mot."), ECF No. 26 at 7–10. It further argues that DOJ failed to demonstrate that it used adequate search terms and date ranges. *Id.* at 10–13. Finally, it suggests that the search for the "trial binder" was inadequate. *Id.* at 13–15.

DOJ disagrees on all points. *See generally* Def.'s Mem. in Supp. of its Mot. for Sum. Judg. ("Def.'s Mot."), ECF No. 24-1; Def.'s Reply Mem. in Supp. of its Mot. for Sum. Judg. and in Opp. to Pl.'s Cross Mot. ("Def.'s Reply"), ECF No. 29.

## II.    Legal Standards

Rule 56 of the Federal Rules of Civil Procedure allows this Court to grant summary judgment when the pleadings, discovery, affidavits, and other material on file show no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

The burden of proof in FOIA cases is flipped: It is up to the defendant in a FOIA matter to show that its search for responsive records was adequate. *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013). This will depend on the individual circumstances of each case. *See Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). But in all cases the "agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). This can be met by providing a "reasonably detailed affidavit, setting

forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.*

The touchstone of a search's adequacy is thus reasonableness. *See Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015). "When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). "The agency is [also] not required to speculate about potential leads." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996). "If . . . the requester clearly states that he wants all agency records on a subject, i.e., regardless of their location, but fails to direct the agency's attention to any particular office other than the one receiving the request, then the agency need pursue only a lead it cannot in good faith ignore, i.e., a lead that is both clear and certain." *Id.*

Throughout all of this analysis, the Court must keep in mind that "FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro manage [sic] the executive branch." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 662 (D.C Cir. 2003) (quoting *Johnson v. Exec. Off. for U.S. Att'ys.*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

### III.    DOJ Undertook a Mostly Adequate Search

Plaintiff raises several challenges to the adequacy of DOJ's search.  Most but not all fail.

### A.    DOJ properly searched offices and record systems reasonably likely to possess potentially responsive records

Plaintiff contends that Defendant failed to search offices and record systems likely to possess potentially responsive records.  Pl.'s Mot. at 7–10.  But the undisputed facts tell a different story.

In particular, Plaintiff notes that records produced by DOJ showed that many individuals communicated with DOJ's Public Affairs Office regarding the April 2017 meeting.  *Id.* at 9–10. Plaintiff therefore argues that DOJ must search that entire office, not simply Flores's emails.  *Id.* at 10.  Plaintiff also argues that the Criminal Division was required to search the shared drives belonging to the Office of the Assistant Attorney General and the Fraud Section.  *Id.*

Both objections fall short.  Start with Flores and the Public Affairs Office.  At first blush, it appears that Plaintiff's argument is well-founded.  DOJ's affidavits reflect that individuals at the April 2017 meeting communicated with individuals in the Public Affairs Office:  "The review of the first electronic records search independently revealed that certain custodians . . . had communicated with the Federal Bureau of Investigation and DOJ's Office of Public Affairs regarding the April 2017 meeting."  Decl. of Courtney J. O'Keefe ("First O'Keefe Decl."), ECF No. 24-4 at ¶ 24.  Nothing in those initial declarations suggests that these communications were limited to, or always included, Flores.  DOJ nevertheless searched only her emails.  *Id.* ("Accordingly, a separate electronic records search of those custodians . . . was independently conducted, using the following search terms: "siflores@usdoj.gov" . . . .").[3]  Without additional information, the Court would conclude that a search of additional Public Affairs Office records was "a lead that is both clear and certain," and thus needed to be followed.  *Kowalczyk*, 73 F.3d at 389.

But Defendant's supplemental declarations clarified that a "records search revealed that certain Criminal Division personnel had communicated with former Department Spokesperson Sarah Isgur Flores regarding the April 2017 meeting.  The FOIA/PA Unit determined that in the

---

[3]  Defendant later reviewed each of Flores's emails individually, producing supplemental documents.  Second Decl. of Jonathan M. Breyan ("Second Breyan Decl."), ECF No. 30-3 at ¶ 12.

records returned from the first electronic search, *Ms. Flores was the only OPA employee with whom the Criminal Division communicated regarding the April 2017 meeting*."  Second Decl. of Courtney J. O'Keefe ("Second O'Keefe Decl."), ECF No. 30-1 at ¶ 13 (emphasis added).  Thus, because the lead only implicated Flores—not anyone else in the Office of Public Affairs— Defendant acted reasonably in searching her emails alone.  Since Plaintiff did not direct Defendant to any particular locations within the DOJ where the records might be, Defendant needed only to search its central filing system and follow any leads it could not ignore in good faith.  *Campbell*, 164 F.3d at 28; *Kowalczyk*, 73 F.3d at 389.  It did so here.

DOJ was also not required to search the shared drives belonging to the Office of the Assistant Attorney General and the Fraud Section.  The April 2017 meeting was not conducted by the Fraud Section; it was handled by the Money Laundering Section.  Second O'Keefe Decl. at ¶ 12.  "Because Plaintiff's FOIA request sought records regarding a meeting that was not tied to a subject matter that the Fraud Section was investigating, the FOIA/PA Unit determined that a search of the Fraud Section's shared electronic drive was not necessary."  *Id.*  And while DOJ searched Weissman's emails, and Weissman was the Chief of the Fraud Section, *see* Facts ¶ 4, 13, his emails were searched because it was independently known that Weissman had attended the meeting.  Yet Weissman's emails (and all other individuals' emails) did not reveal any other Fraud Section employees who might have responsive documents.  *See id.* ¶¶ 16, 18.  There were thus no further leads within the Fraud Section for DOJ to follow.

### B.    DOJ failed to search the records of one individual likely to possess potentially responsive records

Plaintiff argues that DOJ "did not even attempt to locate the records of all attendees of the April 2017 meeting and others known to have communicated about the meeting and/or subject matter of the meeting."  Pl.'s Resp. at 8.  It names three individuals who attended the April 2017

meeting:  Assistant United States Attorney Shreve Ariail and two FBI agents.  *Id.*  The argument

falls short with respect to the FBI agents, but not as to Ariail.

      As to the agents, DOJ reasonably concluded that any responsive documents would have

been discovered in its Central Records System.  It is worth quoting a declaration on this point at

length:

> The FBI's records management policy mandates that FBI personnel enter
> all federal records into an authorized FBI recordkeeping system . . . . FBI
> personnel must determine the record status for each electronic
> communication and import the ones that are "non-transitory" records into
> an electronic recordkeeping system such as Sentinel.  FBI policy advises
> that when doubt exists about whether an electronic communication is a non-
> transitory record, it should be treated as a non-transitory record and
> imported into Sentinel or a successor central recordkeeping system. . . .
> Sentinel as well as other record-keeping systems are searchable through a
> CRS index search.
>
> . . . [A]ny records (including emails detailing investigatory activities of
> investigatory importance deemed non-transitory) would have been
> serialized within the investigation files containing the responsive records
> processed for Plaintiff.  Knowledgeable FBI SAs, RIDS, and OPA
> personnel involved in the searches advised that there were no other
> employees or locations where responsive records would be maintained in
> the FBI concerning the requested subject matter.

Second Decl. of Michael G. Seidel ("Second Seidel Decl."), ECF No. 29-2 at ¶¶ 19–20 (citations

omitted).  Special Agent Pfeiffer—the agent whom the FBI *did* ask to review his own personal

documents, as he was named in the Politco article—confirmed that any relevant materials would

be maintained on CRS.  Facts at ¶¶ 28–29.

      Again, "[w]hen a request does not specify the locations in which an agency should search,

the agency has discretion to confine its inquiry to a central filing system if additional searches are

unlikely to produce any marginal return."  *Campbell*, 164 F.3d at 28.  DOJ did more than that here.

It also discussed the question with Pfeiffer (the one Special Agent named in the Poltico article),

who confirmed that any relevant documents would be found in CRS.  The agency has thus

"show[n] that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.

As for Ariail, DOJ argues that neither the Criminal Division nor the FBI are custodians of Ariail's records; the Executive Office for U.S. Attorneys is. Def.'s Reply at 7 & n.3. But that misses the point. Plaintiff submitted its request not to the Criminal Division or the FBI, but to DOJ. That DOJ forwarded the request only to those two divisions was its own decision. That decision did not relieve DOJ of its obligation to "pursue [ ] a lead it cannot in good faith ignore, i.e., a lead that is both clear and certain." *Kowalczyk*, 73 F.3d at 389; *cf. Lawyers' Comm. for Civil Rights Under Law v. U.S. Dep't of Justice*, No. 18-cv-167, 2020 WL 7319365, at *11 ("The DOJ Request did identify certain offices to be searched but did not include the Civil Division. However, once [Plaintiff] informed the agency of the records at issue and identified by name and department the DOJ attorneys who had them 'in their possession,' it provided 'a lead that [was] both clear and certain.'"). The information DOJ uncovered made it "clear and certain" that Ariail likely possessed responsive documents, and DOJ was therefore obligated to search his records (presumably through EOUSA).

### C.    DOJ used adequate search terms and date ranges

Plaintiff argues that DOJ used inadequate search terms and dates ranges. While the terms and date ranges were not consistent, there was nothing unreasonable about them.

Plaintiff first argues that both the Criminal Division and the FBI used the names of reporters as keywords, but the FBI used those terms only when searching its Public Affairs Office—not CRS. Pl.'s Mot. at 11. While this might seem incongruous, the Second Siedel Declaration explains why it was prudent. "[I]ndexing in the CRS is done at the discretion of the FBI investigators when they have determined the particular 'term' of sufficient investigative

significance to warrant indexing for future retrieval."  Second Siedel Decl. at ¶ 14.  And "the FBI [ ] confirmed that, when indexing the responsive serialized records into the CRS for the Manafort investigation, SA Pfeiffer (who serialized several of the relevant records in CRS . . . ) did not index these records under the names and/or email addresses of any of the reporters who attended the April 2017 meeting in question." *Id.*  This was because he determined that "such information was not an investigatory matter of interest needing to be indexed for future retrieval." *Id.*  The Public Affairs Office, on the other hand, does not sort their documents in this manner.  *See id.* at ¶ 15. Since that Office responds to inquiries from reporters and news agencies, its records were searched using the reporters' names, together with the April 2017 meeting.  *Id.*  The government has thus justified its reason for using different search terms, and "[w]here the agency's search terms are reasonable, the Court will not second guess the agency regarding whether other search terms might have been superior." *Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 146–47 (D.D.C. 2015).[4]

Plaintiff also argues that the email address for each AP reporter who attended the meeting should have been used in all searches.  Pl.'s Mot. at 11–12.  This challenge, as it relates to the FBI, has already been addressed.  *See supra*.  As to the Criminal Division, as the government notes, it did use the email addresses of three reporters present at the meeting.  *See id.* at 12.  It did not use the fourth reporter's email address because it did not have it at the time of the search, but it did search for his name.  *See* First O'Keefe Decl. at ¶ 20 n.3.  Further, a review of all emails about the meeting between Criminal Division employees and Associated Press reporters showed that the relevant documents "pertained only to the scheduling of this meeting."  Second O'Keefe Decl. at

---

[4] For the same reasons, Plaintiff's objection that the FBI did not search CRS using the email addresses of the AP reporters at the meeting also fails.  *See* Pl.'s Mot. at 11–12.

¶ 10.  Indeed, the only email communication from the reporter at issue—Jack Guillum—was one that accepted an electronic calendar invitation from Criminal Division employees.  *Id.*  The issue this court must resolve "is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original).  The Court concludes that it was.

As to OIP, Plaintiff's argument dovetails with another of Plaintiff's objections:  that the terms used by OIP to discover relevant emails from Weissman and Special Agent Pfeiffer were unreasonably restrictive.  Pl.'s Mot. 12.  Both objections fall short.  As DOJ correctly notes, "a FOIA petitioner cannot dictate the search terms for his or her FOIA request."  Def.'s Reply at 22 (quoting *Bigwood v. Dep't of Defense*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015)).  And the search terms that the Office did utilize—("Associated Press" AND locker) and ("AP" AND locker), Second Breyan Decl. at ¶ 6—were eminently reasonable.  As DOJ explains, "These terms were chosen because . . . the meeting participants included representatives of the Associated Press, and allegedly discussed a storage locker owned by Paul Manafort."  *Id.*  Plaintiff counters that "Manafort" might have been a better search term, as more was discussed at the meeting than just a storage locker.  Pl.'s Mot. at 12–13.  But the Politico article cited in Plaintiff's request stated that the meeting "may have led the FBI to a storage locker the bureau raided."  Second Breyan Decl. at ¶ 6.  "With this in mind," DOJ explains, "and the fact that OIP was conducting searches within the [Special Counsel's Office], which opened one month after the date of the meeting, OIP crafted its search terms in an attempt to identifying records concerning the [Special Counsel's Office] use of the information about the storage locker."  *Id.*  That was reasonable.  And as the government goes on to explain, "none of the searches conducted *or records located* by OIP indicate that using

the term 'Manafort' or the names and/or email addresses of specific AP reporters would be more likely to uncover responsive records than the search terms utilized." *Id.* (emphasis added).  DOJ's "burden was to show that its search efforts were reasonable and logically organized to uncover relevant documents; it need not knock down every search design advanced by every requester." *DiBacco*, 795 F.3d at 191.  It has met its burden here.

As to the date range, Plaintiff points out that both the Criminal Division and OIP "cut off the search well before the date Plaintiff submitted the FOIA request or even before reports surfaced about the April 2017 meeting."  Pl.'s Mot. at 13.  It asks this Court to order DOJ to supplement its searches through July 2018, when Politico published its article.  *See id.*  But this argument misses the mark.  Plaintiff's request was targeted to "records regarding, concerning, or related to the April 2017 meeting."  Facts at ¶ 1.  Both the Criminal Division and OIP thus reasonably focused its search dates around the meeting.  Indeed, both used ample time cushions:  March 1, 2017 through June 30, 2017 for the Criminal Division, and May 18, 2017 through October 11, 2017 for OIP. (Recall that the OIP search related to two individuals within the Special Counsel's Office, which was not set up until a month after the meeting.  Second Breyan Decl. at ¶ 6.)  The date ranges were thus reasonably tailored to Plaintiff's request.

### D.  Defendant's search for the Trial Binder was adequate

Plaintiff's final challenge is to the adequacy of the search for the so-called "Trial Binder." Pl.'s Mot at 13–15.  Specifically, Plaintiff notes that it cannot tell whether DOJ failed to locate the contents of the trial binder, or if it did not think they were responsive because it took a narrow view of Plaintiff's FOIA request.  *See id.* at 14.  But the Second Breyan Declaration cleared up any potential ambiguity:

> OIP also conducted a targeted search of the SCO's paper files, which are stored in 180 boxes.  The OIP Attorney-Advisor identified one box that could potentially contain records responsive to Plaintiff's FOIA request.

> However, after a manual, page-by-page review of all the paper files contained in the identified box, OIP was unable to confirm whether whether the box contained the contents of the binder discussed in the Political article. Nevertheless, each document was also reviewed to determine whether— again, irrespective of whether it was contained within the binder referenced by the Politico article—it is responsive to Plaintiff's FOIA [request]; none are responsive.

Second Breyan Decl. ¶ 9.  This is an adequate explanation and clears up the ambiguity.

Plaintiff appears to agree.  Nowhere in its reply brief does it counter DOJ's proffered explanation.  *See generally* Pl.'s Reply in Supp. of Cross-Mot. for Sum. Judg. ("Pl.'s Reply"), ECF No. 31.  The Court will thus treat this argument as conceded.  *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

*     *     *

For the foregoing reasons, the Court grants in part and denies in part Defendant's Motion for Summary Judgment, ECF No. 24, and grants in part and denies in part Plaintiff's Cross-Motion for Summary Judgment, ECF No. 27.  An appropriate order will accompany this opinion.

DATE:  March 28, 2022

CARL J. NICHOLS
United States District Judge