IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,                        )
                                             )
    *Plaintiff*,                          )
                                             )
    *v.*                                 )    Civil Action No. 1:19-cv-879 (CJN)
                                             )
UNITED STATES DEPARTMENT OF                  )
JUSTICE,                                     )
                                             )
    *Defendant*.                         )
                                             )
                                             )
_____    )

# DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

<u>INTRODUCTION</u>......................................................................................................................1

<u>BACKGROUND</u>......................................................................................................................2

I.    Plaintiff's FOIA Requests, Defendant's Initial Searches and Productions, and the Court's First Summary Judgment Decision ....................................................................... 12

II.   Relevant Document Retention Policies and Procedures ......................................... 3

A.   DOJ-Wide Policies........................................................................................... 3

B.   EOUSA Policies and Practices ........................................................................ 5

III.  EOUSA and EDNY's Supplemental Searches .................................................... 6

<u>LEGAL STANDARD</u>............................................................................................................11

<u>ARGUMENT</u>...........................................................................................................................12

I.    The Supplemental Searches Were Adequate ...................................................... 12

II.   EOUSA Properly Withheld Certain Information Pursuant to Exemptions 5 and 6............ 16

A.   EOUSA Properly Withheld Information Under Exemption 5 and the Attorney Work-Product Privilege.............................................................................................. 16

B.   EOUSA Properly Withheld Information Under Exemption 6 ........................... 20

C.   Disclosure of the Withheld Information Would Harm Interests Protected by Exemptions 5 and 6......................................................................................................................... 22

III.  EOUSA Processed and Released All Reasonably Segregable Information ....................... 25

<u>CONCLUSION</u>.......................................................................................................................26

i

# TABLE OF AUTHORITIES

**Cases**

*A. Michael's Piano, Inc. v. Federal Trade Commission,*
18 F.3d 138 (2d Cir. 1994) ........................................................................................................19

*Ancient Coin Collectors Guild v. U.S. Dep't of State,*
641 F.3d 504 (D.C. Cir. 2011) ..................................................................................................13

*Armstrong v. Exec. Off. of the President,*
97 F.3d 575 (D.C. Cir. 1996) ....................................................................................................25

*August v. FBI,*
328 F.3d 697 (D.C. Cir. 2003) ..................................................................................................11

*Badalamenti v. U.S. Dep't of State,*
899 F. Supp. 542 (D. Kan. 1995) ..............................................................................................19

*Baker & Hostetler LLP v. U.S. Dep't of Commerce,*
473 F.3d 312 (D.C. Cir. 2006) ..................................................................................................13

*Beck v. Dep't of Just.,*
997 F.2d 1489 (D.C. Cir. 1993) ...........................................................................................21, 22

*Brayton v. Off. of the U.S. Trade Representative,*
641 F.3d 521 (D.C. Cir. 2011) ..................................................................................................11

*Canning v. U.S. Dep't of Just.,*
567 F. Supp. 2d 104 (D.D.C. 2008) ..........................................................................................25

*Chambers v. U.S. Dep't of Interior,*
568 F.3d 998 (D.C. Cir. 2009) ..................................................................................................13

*Chang v. Dep't of Navy,*
314 F. Supp. 2d 35 (D.D.C. 2004) ............................................................................................21

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of State,*
No. CV 19-1344 (RBW), 2022 WL 1801054 (D.D.C. June 2, 2022) ................................24

*Dalal v. U.S. Dep't of Justice,*
No. CV 16-1040 (TJK), --- F. Supp. 3d ---, 2022 WL 17092863 (D.D.C. Nov. 21, 2022) ...... 20, 22

*Darui v. U.S. Dep't of State,*
798 F. Supp. 2d 32 (D.D.C. 2011) ............................................................................................20

*De Sousa v. CIA,*
　　239 F. Supp. 3d 179 (D.D.C. 2017) .................................................................................25

*Department of Defense v. Federal Labor Relations Authority,*
　　510 U.S. 487 (1994) ...........................................................................................................22

*DiBacco v. U.S. Army,*
　　795 F.3d 178 (D.C. Cir. 2015) .................................................................................. 12, 13

*Encino Motorcars, LLC v. Navarro,*
　　138 S. Ct. 1134 (2018) ........................................................................................................12

*FBI v. Abramson,*
　　456 U.S. 615 (1981) .............................................................................................................12

*Food Mktg. Inst. v. Argus Leader Media,*
　　139 S. Ct. 2356 (2019) ................................................................................................ 11, 12

*FTC v. Grolier, Inc.,*
　　462 U.S. 19 (1983) ....................................................................................................... 17, 18

*Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.,*
　　485 F. Supp. 1 (D.D.C. 1978) ..........................................................................................24

*Gov't Accountability Project v. U.S. Dep't of Justice,*
　　852 F. Supp. 2d 14 (D.D.C. 2012) ...................................................................................20

*Heggestad v. U.S. Dep't of Just.,*
　　182 F. Supp. 2d 1 (D.D.C. 2000) .....................................................................................17

*Hickman v. Taylor,*
　　329 U.S. 495 (1947) ................................................................................................ 17, 18, 23

*In re Gen. Motors LLC Ignition Switch Litig.,*
　　80 F. Supp. 3d 521 (S.D.N.Y. 2015) ...............................................................................19

*In re Sealed Case,*
　　146 F.3d 881 (D.C. Cir. 1998) ................................................................................... 17, 23

*John Doe Agency v. John Doe Corp.,*
　　493 U.S. 146 (1989) .............................................................................................................11

*Judicial Watch, Inc. v. Dep't of Homeland Sec.,*
　　926 F. Supp. 2d 121 (D.D.C. 2013) .................................................................................16

*Judicial Watch, Inc. v. Dep't of Justice,*
　　432 F.3d 366 (D.C. Cir. 2005) ................................................................................ 18, 19, 20

iii

*Judicial Watch, Inc. v. DOJ,*
    365 F.3d 1108 (D.C. Cir. 2004) ..............................................................................16

*Judicial Watch, Inc. v. HUD,*
    20 F. Supp. 3d 247 (D.D.C. 2014) ..........................................................................11

*Judicial Watch, Inc. v. Rossotti,*
    285 F. Supp. 2d 17 (D.D.C. 2003) ..........................................................................13

*Judicial Watch, Inc. v. U.S. Dep't of Commerce,*
    337 F. Supp. 2d 146 (D.D.C. 2004) ........................................................................18

*Judicial Watch v. U.S. Dep't of Def.,*
    715 F.3d 937 (D.C. Cir. 2013) ................................................................................12

*Judicial Watch, Inc. v. U.S. Dep't of Just.,*
    No. 1:19-CV-0879 (CJN), 2022 WL 898825 (D.D.C. Mar. 28, 2022) ...................2, 7, 16

*Judicial Watch, Inc. v. U.S. Dep't of State,*
    306 F. Supp. 3d 97 (D.D.C. 2018) ..........................................................................22

*Judicial Watch, Inc. v. U.S. Dep't of State,*
    557 F. Supp. 3d 52 (D.D.C. 2021) ..........................................................................26

*Leopold v. DOJ,*
    487 F. Supp. 3d 1 (D.D.C. 2020) ............................................................................24

*Lepelletier v. FDIC,*
    164 F.3d 37 (D.C. Cir. 1999) ............................................................................20, 21

*Light v. DOJ,*
    968 F. Supp. 2d 11 (D.D.C. 2013) ..........................................................................11

*Louise Trauma Ctr. LLC v. U.S. Dep't of Homeland Sec.,*
    No. 1:20-CV-01128 (TNM), 2022 WL 1081097 (D.D.C. Apr. 11, 2022)...............23, 24

*Machado Amadis v. Dep't of Just.,*
    388 F. Supp. 3d 1 (D.D.C. 2019),
    *aff'd,* 971 F.3d 364 (D.C. Cir. 2020) ......................................................................24

*Martin v. Off. of Special Counsel,*
    819 F.2d 1181 (D.C. Cir. 1987) ..............................................................................18

*McCready v. Nicholson,*
    465 F.3d 1 (D.C. Cir. 2006).....................................................................................13

*McKinley v. FDIC,*
    744 F. Supp. 2d 128 (D.D.C. 2010) ...................................................................................18

*Mead Data Cent., Inc. v. Dep't of the Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ........................................................................................25

*Meeropol v. Meese,*
    790 F.2d 942 (D.C. Cir. 1986) ........................................................................................13

*Meza v. U.S. Dep't of Just.,*
    719 F. Supp. 2d 1 (D.D.C. 2010) ............................................................................. 18, 25

*Mil. Audit Project v. Casey,*
    656 F.2d 724 (D.C. Cir. 1981) ........................................................................................12

*Milner v. Dep't of Navy,*
    562 U.S. 562 (2011) ........................................................................................................17

*Nat'l Ass'n of Crim. Def. Lawyers v. Dep't of Just.,*
    844 F.3d 246 (D.C. Cir. 2016) ........................................................................................17

*Nat'l Ass'n of Retired Fed. Emps. v. Horner,*
    879 F.2d 873 (D.C. Cir. 1989) ........................................................................................21

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ........................................................................................................16

*Nova Oculus Partners, LLC v. U.S. Sec. & Exch. Comm'n,*
    486 F. Supp. 3d 280 (D.D.C. 2020) ...............................................................................12

*Oglesby v. U.S. Dep't of the Army,*
    920 F.2d 57 (D.C. Cir. 1990) ..........................................................................................12

*Perry v. Block,*
    684 F.2d 121 (D.C. Cir. 1982) ........................................................................................13

*Reporters Comm. for Freedom of the Press v. FBI,*
    3 F.4th 350 (D.C. Cir. 2021) ..........................................................................................23

*Rockwell Int'l Corp. v. U.S. Dep't of Justice,*
    235 F.3d 598 (D.C. Cir. 2001) ........................................................................................24

*SafeCard Servs., Inc. v. SEC,*
    926 F.2d 1197 (D.C. Cir. 1991) ............................................................................... 13, 19

*Schiller v. NLRB,*
    964 F.2d 1205 (D.C. Cir. 1992) ......................................................................................17

*Schrecker v. Dep't of Justice,*
    349 F.3d 657 (D.C. Cir. 2003) ...................................................................................... 14

*Shapiro v. U.S. Dep't of Justice,*
    893 F.3d 796 (D.C. Cir. 2018) ...................................................................................... 12

*Shurtleff v. United States Env't Prot. Agency,*
    991 F. Supp. 2d 1 (D.D.C. 2013) ................................................................................. 22

*Sussman v. U.S. Marshals Serv.,*
    494 F.3d 1106 (D.C. Cir. 2007) .................................................................................... 25

*Tax Analysts v. IRS,*
    117 F.3d 607 (D.C. Cir. 1997) ...................................................................................... 16

*U.S. Dep't of State v. Wash. Post Co.,*
    456 U.S. 595 (1982) .............................................................................................. 20, 21

*United States v. Deloitte LLP,*
    610 F.3d 129 (D.C. Cir. 2010) ...................................................................................... 17

*United States v. Nobles,*
    422 U.S. 225 (1975) ...................................................................................................... 17

*Washington Post Co. v. Special Inspector Gen. for Afghanistan Reconstruction,*
    No. CV 18-2622 (ABJ), 2021 WL 4502106 (D.D.C. Sept. 30, 2021) ......................... 26

*Weisberg v. U.S. Dep't of Justice,*
    745 F.2d 1476 (D.C. Cir. 1984) .................................................................................... 13

*Wilbur v. CIA,*
    355 F.3d 675 (D.C. Cir 2004) ....................................................................................... 13

*Williams & Connolly v. SEC,*
    662 F.3d 1240 (D.C. Cir. 2011) .................................................................................... 18

**Rules**

Fed. R. Civ. P. 26(b)(3)(A) .................................................................................................. 16

**Statutes**

5 U.S.C. § 552(a)(4)(B) ........................................................................................................ 12

5 U.S.C. § 552(a)(8)(A)(i) .............................................................................................. 22, 23

5 U.S.C. § 552(b)(5) ............................................................................................................ 16

vi

5 U.S.C. § 552(b)(6) ..............................................................................................................20

5 U.S.C. § 552(b)(9) ..............................................................................................................25

**INTRODUCTION**

This case concerns Plaintiff Judicial Watch's Freedom of Information Act ("FOIA")

requests to the Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") for

records related to an April 11, 2017 meeting between reporters for the Associated Press ("AP") and

certain employees of DOJ's Criminal Division, the FBI, and the U.S. Attorney's Office ("USAO")

for the Eastern District of New York ("EDNY"). In March 2022, the Court broadly upheld the

adequacy of DOJ's searches for responsive records, with one exception: because emails produced to

Plaintiff by the Criminal Division revealed that former EDNY Assistant U.S. Attorney ("AUSA")

Shreve Ariail had been in attendance at the meeting, the Court found that DOJ erred by not

searching his records. The Court ordered DOJ to do such a search, and now that that search has

been performed and all responsive, non-exempt records have been produced, the case is again ripe

for summary judgment.

The Executive Office for U.S. Attorneys ("EOUSA"), in conjunction with EDNY,

conducted an adequate search of Mr. Ariail's records. EOUSA and EDNY ran multiple searches of

Mr. Ariail's archived email, using search terms and a date range previously approved of by the Court.

They also determined there was no applicable case file to search. In addition, after concluding that

emails of a certain age were likely deleted pursuant to a routine document retention policy, DOJ

took the additional step of speaking directly with Mr. Ariail.  That conversation led to more searches

and the identification of Mr. Ariail's notes from the April 2017 AP Meeting, and more notes and

emails from another custodian. DOJ's search was more than adequate. DOJ also properly withheld

certain information pursuant to FOIA's Exemptions 5, under the attorney work-product privilege,

and Exemption 6. Defendant is therefore entitled to summary judgment.

1

## BACKGROUND

I.   **Plaintiff's FOIA Requests, Defendant's Initial Searches and Productions, and the Court's First Summary Judgment Decision**

On July 5, 2018, Plaintiff Judicial Watch submitted two FOIA requests to DOJ and its component agency, the FBI. Specifically, these requests sought:

- (1) Any and all records regarding, concerning, or related to the [AP Meeting] between Department of Justice and FBI personnel and reporters, editors, and/or other individuals employed by and/ or representing the Associated Press. This request includes, but is not limited to, any and all notes, reports, memoranda, briefing materials, or other records created in preparation for, during, and/or pursuant to the meeting.

- (2) Any and all records of communication between any official, employee, or representative of [DOJ] and any of the individuals present at the aforementioned meeting.

Complaint ¶ 6, ECF No. 1 ("Compl."). Plaintiff's requests explained that "the meeting that is the subject of this request was reported on by Politico on June 29, 2018," and provided a hyperlink to a Politico news article entitled "Associated Press May Have Led FBI to Manafort Storage Locker." *Id*; *see* Josh Gerstein, *Associated Press may have led FBI to Manafort storage locker*, Politico (June 29, 2018) https://www.politico.com/story/2018/06/29/paul-manafort-storage-locker-associated-press-687776 ("Politico article").

Three DOJ components—FBI, the Criminal Division, and the Office of Information Policy ("OIP")—searched for and produced records responsive to the requests. *Judicial Watch, Inc. v. U.S. Dep't of Just.*, No. 1:19-CV-0879 (CJN), 2022 WL 898825, at *1-4 (D.D.C. Mar. 28, 2022). Among those records were a few emails that demonstrated that former EDNY AUSA Shreve Ariail, who is no longer with the government, had been in attendance at the April 2017 meeting in question. *Id.* at *6. Plaintiff requested that former AUSA Ariail's records also be searched, but Defendant took the position that it was not required to route the FOIA request to EOUSA, which would conduct a

search of a U.S. Attorney's Office. The Court disagreed and found, in a March 28, 2022 decision on

the parties' first round of cross-motions for summary judgment, that Defendant should have

followed this lead and searched Mr. Ariail's records. *Id.* The Court upheld DOJ's searches (the only

contested issue) in all other respects. *See generally Judicial Watch*, 2022 WL 898825.

## II.     Relevant Document Retention Policies and Procedures

Shortly after the Court's decision, on April 26, 2022, the Criminal Division forwarded

Plaintiff's FOIA requests to EOUSA for a search of Mr. Ariail's records. Declaration of Kara Cain

("Cain Decl.") ¶ 5.  As the Court is aware, that search failed to identify Mr. Ariail's copy of the

previously produced emails, leading Defendant to conclude that those records, five years old by the

time of the search, were deleted pursuant to DOJ's routine document retention policies and

procedures. As Defendant has previously reported, EOUSA did not implement a litigation hold in

this FOIA case because the timely search it conducted for responsive records accomplished the

same end, and because it had not previously been sent the FOIA request. ECF No. 37 ("Dec. 16,

2022 JSR") ¶ 13. Because there was no litigation hold, none of the individuals on the emails were

"Capstone" officials, *see* ECF No. 40 ("Jan. 20, 2023 JSR") ¶ 13, and EDNY never opened any

relevant case file, *see* ECF No. 38 ("Jan. 6, 2023 JSR") ¶ 11, the emails would not have been retained

for more than three years and a month pursuant to DOJ's policies, as described below.

### A.     DOJ-Wide Policies

In accordance with guidance developed by the National Archives and Records

Administration ("NARA"), DOJ implements a tiered, or "Capstone," approach to document

retention. *See generally* DOJ Policy Statement for Electronic Mail and Electronic Messaging Records

Retention ("DOJ Policy") (Cain Decl. Ex. E); *id.* at p. 4 (defining "Capstone" as "[a]n email

management approach … that categorizes, and schedules emails based on the work and/or position

of the email account user ….," such that the records of senior Department officials are subject to longer retention schedules than those of rank-and-file employees). In comportment with this tiered approach, the DOJ Policy designates the Attorney General, Deputy Attorney General, Associate Attorney General, and the program staff assigned to those offices as comprising DOJ's "Senior Leadership Offices." *Id.* at 9 (§ II.A1). "Business emails (including attachments) sent or received by" any of those officials "are permanent federal records" that DOJ is required to "maintain . . . for 15 years after the end of the email user's tenure," after which DOJ must "then accession the email to NARA." *Id.*; *see also* Request for Records Disposition Authority DAA-0060-2015-0007 (Cain Decl. Ex. F) (commemorating NARA approval of this email records retention schedule for the Heads of DOJ Components). The DOJ Policy further directs DOJ Components to apply the same retention rule to "[b]usiness emails (including attachments) sent or received by Heads of [DOJ] Components, their direct reports, any other component positions identified on applicable records retention schedules as Capstone Officials." DOJ Policy p. 9 (§ II.A.2).

For emails sent or received by any other DOJ employee, the DOJ Policy directs that if the email in question is "1) … not related to a case or project, and 2) … not sent or received by Senior Leadership [or] their program staff, or Heads of Components [or] identified Capstone Officials," the email is to be "maintained by the component for no fewer than 3 years and no more than 7 years." DOJ Policy p. 10 (§ II.A.3.b). The DOJ Policy further directs Heads of Components to "designate the number of years" from among this permissible range, "based on component needs." *Id.*; *see also* NARA Disposition Authority DAA-0060-2016-0003 (Cain Decl. Ex. G) (commemorating NARA approval of this email records retention schedule for non-Capstone DOJ employees).

4

B.   **EOUSA Policies and Practices**

EOUSA has designated all United States Attorneys, the EOUSA Director, the EOUSA
Deputy Director, and the EOUSA Chief of Staff (and these officials only) as Capstone Officials.
United States Attorneys' Policies and Procedures for Electronic Records and Information
Management ("EOUSA Policy") (Cain Decl. Ex. H) p. 8 (§ 6(B)(1)(a)). Accordingly, and in
comportment with the DOJ Policy's directive respecting "Capstone emails," the EOUSA Policy
classifies all "[b]usiness emails (including attachments) sent or received by" any of these designated
officials as "permanent federal records." *Id.* Such emails are to be retained "for 15 years after the
end of the User's tenure and then accessioned to NARA." *Id.*

EOUSA Policy elects—from the permissible range of 3 to 7 years set by the DOJ Policy—a
three-year retention policy for all other business emails. EOUSA Policy p. 8 (§ 6(B)(1)(b)). Such
emails are classified as "temporary records," and are "retained for 3 years, after which, the email is
deleted from the USAMail storage system." *Id.*

EOUSA and USAOs utilize the Microsoft Outlook program for email, and USAMail is the
storage system that EOUSA utilizes for the storage of archival emails sent and received by EOUSA
and USAO personnel, using the Outlook program. Cain Decl. ¶ 17. EOUSA implements this three-
year retention policy through an algorithm it has programmed into its USAMail system. *Id.* ¶ 40. The
algorithm automatically—and permanently—deletes the archival copy of every email subject to the
policy (and that is also not subject to any litigation hold) three years and thirty days from the date
the email in question was sent or received. *Id.* ¶ 41. For example, a business email sent by an AUSA
on January 1, 2017, which neither (a) included any Capstone Official designated as such by the
EOUSA Policy as a recipient; nor (b) was subject to any litigation hold, would be automatically
deleted by the USAMail algorithm on January 31, 2020. *Id.*

5

When an email is permanently deleted pursuant to the algorithm, no independent record of the act of deletion is created. *Id.* ¶ 42. Further, this algorithm operates within the USAMail archival storage system only. *Id.* ¶ 43. Thus, copies of emails that are actively maintained by current EOUSA and USAO employees within their desktop Outlook applications are not automatically deleted pursuant to the USAMail algorithm. *Id.*

Materials saved to a case file are also not automatically deleted pursuant to the USAMail algorithm. *Id.* ¶ 44. EOUSA Policy provides that "[b]usiness emails related to a case or project case (including attachments) that are sent or received by any User must be retained in accordance with the approved records retention schedule for the associated case or project. Users should separate any case or project related materials from their email account and save to an approved repository. These materials should be stored in accordance with the respective records retention schedule." EOUSA Policy p. 8 (§ 6(B)(1)(c)).

### III.   EOUSA and EDNY's Supplemental Searches

As noted above, approximately one month after the Court issued its March 2022 summary judgment decision, the Criminal Division forwarded Plaintiff's FOIA requests to EOUSA for a search of former AUSA Ariail's records. Cain Decl. ¶ 5. Because records pertaining to, or in the custody of, a particular AUSA are generally housed at the specific U.S. Attorney's Office where the AUSA in question conducted government business, the first step that EOUSA took was to task EDNY—the office where Mr. Ariail had formerly been employed—to conduct the search. Cain Decl. ¶ 15.  EDNY determined, first, that there was no prosecution of any kind against Paul Manafort out of EDNY. *Id.* ¶ 16.

U.S. Attorney's Offices have access to USAMail, which is the storage system utilized by EOUSA for archival emails sent and received by EOUSA and EDNY personnel, via Proofpoint. *Id.*

¶ 17. Accordingly, EDNY searched USAMail, via Proofpoint, for any responsive, archived emails of Mr. Ariail, using the following search terms: "AP" with "meeting"; "Associated Press" with "meeting"; "Eric Tucker"; "Jeff Horwitz"; "Ted Bridis"; "Jack Gillum"; "etucker@ap.org;" "jhorwitz@ap.org"; "tbridis@ap.org," and "Manafort."[1] The date range used for this search was March 1, 2017 through and including June 30, 2017. *Id.* ¶ 18. These were the same search terms, with the addition of the term "Manafort," and date range that DOJ previously used to search for records responsive to Plaintiff's FOIA requests and that the Court approved of in its prior opinion. *Judicial Watch*, 2022 WL 898825, at *7-8. EDNY conducted this search twice—first on May 17, 2022 and then again on July 28, 2022—in order to ensure that there had not been any errors the first time around. Cain Decl. ¶¶ 19-20. Both searches, however, yielded the same result of no hits. *Id.*

Subsequently, EOUSA's FOIA Office learned that EOUSA's Information Technology department ("EOUSA-IT") has access to a more fulsome database of USAMail archival records, via "eDiscovery," *i.e.*, the process by which EOUSA-IT conducts a search, and identifies and collects information from a user's computer. *Id.* ¶ 21. On August 4, 2022, EOUSA tasked a further supplemental search to be conducted forensically by EOUSA-IT through eDiscovery. *Id.* EOUSA-IT used the following search terms for the August 4 search: "AP," "Associated Press," "Eric Tucker," "Jeff Horwitz," "Ted Bridis," "Jack Gillum," "etucker@qp.org," "jhorwitz@ap.org," "tbridis@ap.org," or "'Manafort"; and "meet*." *Id.* ¶ 23. The date range for this search was March 1, 2017, through and including June 30, 2017—the same as the previous searches. *Id.* ¶ 22. On August 9, 2022, EOUSA's IT team indicated that this search did not yield any potentially responsive

---

[1] Tucker, Horwitz, Bridis, and Gillum were the AP reporters present at the 2017 meeting. *Judicial Watch*, 2022 WL 898825, at *2.

records, *id.* ¶ 24, and accordingly, on August 11, 2022, EOUSA issued a "no records" response to Plaintiff, *id.* ¶ 25.

The parties conferred about the "no records" responses and the fact that the searches did not identify Mr. Ariail's copy of the previously produced emails. *See* ECF Nos. 35-40. As a result of those conversations, on December 5, 2022, EOUSA-IT conducted a further supplemental eDiscovery search. Cain Decl. ¶ 26. This search largely duplicated the August 4, 2022 search, with three differences. *Id.* ¶ 27. First, the December 5, 2022 search corrected a typo in Eric Tucker's email address, and used the correct address, *i.e.*, etucker@ap.org. *Id.* Second, this search did not use "meet" as a limiting term. *Id.* (Thus, the search terms used for this search were "AP"; "Associated Press"; "Eric Tucker"; "Jeff Horwitz"; "Ted Bridis"; "Jack Gillum"; "etucker@ap.org"; "jhorwitz@ap.org"; "tbridis@ap.org"; and "Manafort." *Id.*

Third, in the course of conducting the December 5, 2022 search, EOUSA-IT determined that, due to human error, the personnel who conducted the prior forensic search had failed to check a radial button entitled "Active Archive and All Legal Holds." *Id.* ¶ 28. Omission of this radial option had excluded an additional set of records—specifically, emails that are retained for a longer period of time because they are either subject to a specific litigation hold, or because a Capstone Official was a sender or recipient of the email. *Id.* Thus, in addition to the search term adjustments described above, the December search queried a broader dataset. With these three adjustments, EOUSA's new forensic search yielded over 3,000 potentially responsive emails. *Id.*

EOUSA reviewed these potentially responsive records—which consisted almost exclusively of district-wide EDNY email blasts—and determined that none were responsive to Plaintiff's FOIA

requests. *Id.* ¶ 29;[2] *see also* Dec. 16, 2022 JSR, ¶¶ 15-17. Additionally, EDNY confirmed through a case files search that, in addition to never having prosecuted Paul Manafort, it did not open or maintain any case file for either Paul Manafort, or the April 11, 2017 AP Meeting that is the subject of Plaintiff's FOIA requests. *Id.* ¶ 31; Declaration of Jeanette Gonzalez-Rivera ("Gonzalez-Rivera Decl.") ¶ 13; *see also* Jan. 6, 2023 JSR, ¶ 11. This was double-confirmed by Mr. Ariail himself, in a conversation with undersigned defense counsel in January 2023. *See* Transcript of Hearing ("Tr.") at 15:19-16:13, ECF No. 45. Mr. Ariail also confirmed that he did in fact attend the AP Meeting, in his capacity as the former head of EDNY's organized crime and gang units, and that he did not take any records with him when he left the government. *Id.*

Mr. Ariail subsequently contacted a former colleague of his at EDNY who still works at that office. Gonzalez-Rivera Decl. ¶ 4. This colleague is cc'd on certain previously produced emails, but his/her identity was, and remains, protected under Exemption 6. *See* Cain Decl. ¶¶ 53-56. Mr. Ariail explained to the colleague that he had been contacted by an attorney with the Department's Federal Programs Branch (undersigned defense counsel), who had made him aware of the existence of this FOIA litigation regarding the AP Meeting. Gonzalez-Rivera Decl. ¶ 4. The colleague was not previously aware either of the FOIA request pertaining to the AP Meeting, or of this litigation. *Id.* ¶ 5. Following this communication with Mr. Ariail, the colleague contacted EDNY's criminal FOIA coordinators and told them that when Mr. Ariail left EDNY, he turned over to the colleague several

---

[2] Neither EOUSA's Records and Information Management Office, which oversees records retention for EOUSA, nor EOUSA-IT, was able to determine the specific reason for the retention of any specific email that was returned when the above-described forensic search was run against the "Active Archive and All Legal Holds" dataset with the eDiscovery search, because that information is not provided on a record-by-record basis. Cain Decl. ¶ 30. However, the EDNY U.S. Attorney— who is a Capstone Official whose emails are subject to permanent retention, *see supra* p.5—was a recipient on all of the district-wide email blasts, which as noted made up almost all of these search results. *Id.*

notebooks of his handwritten notes, including notes of meetings in April 2017, when the AP Meeting occurred. *Id.* The colleague also recalled that, while he/she did not attend the AP Meeting, he/she and Mr. Ariail attended another meeting later that same day at which the AP Meeting was referenced. *Id.* ¶ 6.

Mr. Ariail's notebooks were found, and the colleague searched them and located Mr. Ariail's handwritten notes about the AP Meeting, as well as his handwritten notes from the subsequent meeting that occurred later the same day. *Id.* ¶ 7. The colleague also searched a similar notebook of the colleague's from the same time period and located his/her own notes from the subsequent meeting that occurred later the same day. *Id.* EOUSA proceeded to process all three set of notes. *Id.* ¶ 8.

In addition to locating Mr. Ariail's and the colleague's own handwritten notes, the colleague also manually searched his/her own email for emails about the AP Meeting. First, the colleague manually searched his/her "sent" messages folder for emails on or around the day of the AP Meeting that referenced the Meeting. *Id.* ¶ 9. Second, the colleague searched his/her email inbox using the search term "Manafort" and reviewed the results for messages that referenced the AP Meeting. *Id.* These searches ultimately identified a total of 18 potentially responsive emails, which were also provided to EOUSA for processing. *Id.* ¶¶ 9-11.

On May 9, 2023, EOUSA issued a production to Plaintiff, consisting of 8 pages of emails—all of which were duplicates of records Plaintiff had already received from the Criminal Division—that it withheld in part under Exemptions 5 and 6. Cain Decl. Ex. D; *id.* ¶ 12. EOUSA also withheld 21 pages in full. *Id.* As EOUSA's *Vaughn* index and declaration make clear, these 21 pages consist of two sets of the attorney meeting notes—those taken by Mr. Ariail at the AP Meeting, and those taken by the colleague at the meeting later the same day. Cain Decl. Ex. A; *id.* ¶¶ 33-34. The notes

taken by Mr. Ariail at the meeting later the same day do not mention the AP Meeting and are therefore not responsive. *Id.* ¶ 33.

On May 15, 2023, Plaintiff informed defense counsel that it is challenging the adequacy of Defendant's supplemental searches, and well as all withholdings from the 29 pages of records that were produced in part and withheld in full by EOUSA, except for the withholding of telephone numbers under Exemption 6.

On May 31, 2023, EOUSA made a corrected production. Cain Decl. Ex. I. The corrected production lifts certain redactions that EOUSA recently discovered were previously inadvertently released by the Criminal Division.

## **LEGAL STANDARD**

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Judicial Watch, Inc. v. HUD*, 20 F. Supp. 3d 247, 253 (D.D.C. 2014) (citation omitted); *see also Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011) ("[T]he vast majority of FOIA cases can be resolved on summary judgment[.]"). "The defendant in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013).

Although the Freedom of Information Act "strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'" *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). "FOIA expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg.*

11

*Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (cleaned up) (quoting *FBI v. Abramson*, 456 U.S. 615, 630-31 (1981) and *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018)). The Department bears the burden of justifying its withholdings of materials responsive to Plaintiff's FOIA request, and this Court reviews the Department's response to that request de novo. *See* 5 U.S.C. § 552(a)(4)(B).

"Typically, the agency demonstrates the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions." *Shapiro v. U.S. Dep't of Justice*, 893 F.3d 796, 799 (D.C. Cir. 2018). A court may award summary judgment in a FOIA action solely on the basis of information provided by the agency through declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail," that "demonstrate that the information withheld logically falls within the claimed exemption[s]," and that are "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted); *see also Nova Oculus Partners, LLC v. U.S. Sec. & Exch. Comm'n*, 486 F. Supp. 3d 280, 288 (D.D.C. 2020) ("Agency affidavits are entitled to a presumption of good faith."). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Judicial Watch v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (*per curiam*) (citations omitted).

## ARGUMENT

### I.   The Supplemental Searches Were Adequate

An agency is entitled to summary judgment with respect to adequacy of its search if it "demonstrate[s] that it made a 'good faith effort to conduct a search . . . using methods which can be reasonably expected to produce the information requested." *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

"[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The search is thus gauged "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quotations omitted). Thus, the well-established standard for an adequate FOIA search is not "perfect[ion]," but rather a "reasonable[] . . . effort in light of the specific request." *DiBacco*, 795 F.3d at 194-95 (quoting *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)); *see also Judicial Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (similar).

An agency can establish the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). Such affidavits are sufficient if they "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (quoting *McCready v. Nicholson*, 465 F.3d 1, 14 (D.C. Cir. 2006)). "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice . . . ." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted); *see also Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir 2004) ("[M]ere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records."). Additionally, searching for records requires "both systemic and case-specific

exercises of discretion and administrative judgment and expertise," and is "hardly an area in which the courts should attempt to micro manage the executive branch." *Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003).

EOUSA and EDNY conducted an adequate search for Mr. Ariail's records responsive to Plaintiff's FOIA requests, as the Court ordered it to do. As detailed above, EOUSA and EDNY ran multiple searches of Mr. Ariail's archived email for responsive records, using search terms and a date range already approved as adequate by the Court. Cain Decl. ¶¶ 14-32. The most expansive of these searches—*i.e.*, the one conducted by EOUSA via eDiscovery on December 5, 2022—used even broader terms, by eliminating "meet" as a limiting term. *Id.* ¶¶ 26-28. EOUSA and EDNY also determined there was no case file to search for responsive records of Mr. Ariail, or anyone else. *Id.* ¶ 31; Gonzalez-Rivera Decl. ¶ 13.

When all of these searches failed to produce Mr. Ariail's copy of the previously produced emails, DOJ determined that that copy was likely deleted as a result of the agency's document retention policies. Under those policies, an email older than 3 years old, that was not subject to a litigation hold or sent to or received by a Capstone official, is automatically deleted from the USAMail archive pursuant to an algorithm a month after the 3-year mark. Cain Decl. ¶ 41. DOJ determined that Mr. Ariail's copy of the previously produced emails was such an email, and that there was no case file into which his copy would have been placed. There was thus no bad faith or nefarious conduct, just the routine, automated application of a retention policy. There is no basis to suggest otherwise, including with respect to the lack of a litigation hold.

But that is not the end of the story. DOJ took additional steps to remedy the situation, and those steps in fact produced the very records that Plaintiff's FOIA requests sought. As a result of the Department contacting Mr. Ariail himself, Mr. Ariail reached out to his former office, setting off

14

yet another search that yielded his notes from the AP Meeting and from a subsequent meeting later that same day at which the AP Meeting was referenced, although the latter notes were determined to be nonresponsive. Gonzalez-Rivera Decl. ¶¶ 4-8; Cain Decl. ¶ 33. And Mr. Ariail's involvement also resulted in the discovery of responsive records from his colleague—notes taken by the colleague at the subsequent meeting, as well as 8 pages of responsive email records (albeit duplicate copies of emails that the Criminal Division had already found and produced in part to Plaintiff long ago). Gonzalez-Rivera Decl. ¶¶ 4-11.

Further, with respect to an additional email produced to Plaintiff by the Criminal Division, *see* ECF No. 38-1 at p. 3, in which Mr. Ariail reported to Andrew Weissmann that he "briefed to Criminal [redacted pursuant to Exemptions 6 and 7(C)]," EDNY has confirmed that both of the names that were redacted in that sentence are of other former AUSAs. Cain Decl. ¶ 32. Because (1) EDNY has confirmed there is no relevant case file pertaining to the April 2017 meeting, and (2) there is no reason to believe any Capstone official was ever cc'd on any email pertaining to that meeting, any (entirely hypothetical) emails pertaining to the meeting that may have been sent or received by either of those former AUSAs would have been deleted pursuant to EOUSA's email retention policy 3 years and 30 days after their creation or receipt (*i.e.*, likely in approximately May 2020).

Thus, EDNY has now searched the records of the only other custodian in Mr. Ariail's office who it has reason to believe he communicated with about the AP Meeting and whose emails from April 2017 remain extant—i.e., the colleague referred to above. That is the precise remedy that Plaintiff has identified it seeks for the deletion of Mr. Ariail's copy of the previously produced emails. Tr. at 10:21-11:6 ("Court: What FOIA remedy to you have if there was such deletion? Ms. Cotca: Well, if there was a deletion, that's the point. I think then the point would be, okay. What

15

other custodians were in Mr. Ariail's office at the time whom he would have communicated with where there would be relevant records? . . . And search those because the universe of his records are in doubt at this point."). Defendant has thus conducted an adequate search for records responsive to Plaintiff's FOIA requests—and one that comports with what the Court previously agreed to be adequate. *See Judicial Watch*, 2022 WL 898825, at * 6 (upholding FBI's search of special agent named in Politico article). The Court should enter summary judgment in Defendant's favor on this issue.

## II.   EOUSA Properly Withheld Certain Information Pursuant to Exemptions 5 and 6

### A.   EOUSA Properly Withheld Information Under Exemption 5 and the Attorney Work-Product Privilege

Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). This exemption incorporates the privileges available to Government agencies in civil litigation, including—as relevant here—the attorney work-product privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1113 (D.C. Cir. 2004).

As an initial matter, both the withheld notes and email that was withheld in part pursuant to Exemption 5 are certainly "inter-agency or intra-agency memorand[a]," 5 U.S.C. § 552(b)(5), where the email in question was between DOJ attorneys, and the notes were taken by DOJ attorneys and not shared outside of the Department. Gonzalez-Rivera Decl. ¶ 8. Each of these withholdings is also proper under the attorney work-product privilege, which "protects materials 'prepared in anticipation of litigation or for trial by or for another party or its representative.'" *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 137 (D.D.C. 2013) (quoting Fed. R. Civ. P. 26(b)(3)(A)). The doctrine covers both "the mental impressions, conclusions, opinions, or legal theories of an attorney," as well as "factual materials prepared in anticipation of litigation," *Tax*

16

*Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997); *see Hickman v. Taylor*, 329 U.S. 495, 510 (1947)

(observing that "it is essential that a lawyer work with a certain degree of privacy, free from

unnecessary intrusion by opposing parties and their counsel."). "Without a strong work-product

privilege, lawyers would keep their thoughts to themselves, avoid communicating with other lawyers,

and hesitate to take notes." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998). *FTC v. Grolier, Inc.*,

462 U.S. 19, 28 (1983). The privilege applies in both the civil and criminal context. *See United States v.*

*Nobles*, 422 U.S. 225, 238 (1975) (noting that the doctrine's "role in assuring the proper functioning

of the criminal justice system is . . . vital").

The phrase "in anticipation of litigation" extends beyond an attorney's preparation for a case

in existing litigation and includes "documents prepared in anticipation of foreseeable litigation, even

if no specific claim is contemplated" at the time of the document's creation. *Schiller v. NLRB*, 964

F.2d 1205, 1208 (D.C. Cir. 1992), *abrogated on other grounds by Milner v. Dep't of the Navy*, 562 U.S. 562

(2011); *see also Heggestad v. U.S. Dep't of Just.*, 182 F. Supp. 2d 1, 8 (D.D.C. 2000) (work product

doctrine applies "even without a case already docketed or where the agency is unable to identify the

specific claim to which the document relates"). In assessing whether a document was prepared in

anticipation of litigation, the test is "whether, in light of the nature of the document and the factual

situation in the particular case, the document can fairly be said to have been prepared or obtained

because of the prospect of litigation." *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010)

(quoting *In re Sealed Case*, 146 F.3d at 884). For that standard to be met, the attorney who created the

document must have "had a subjective belief that litigation was a real possibility," and that

subjective belief must have been "objectively reasonable." *Nat'l Ass'n of Crim. Def. Lawyers*, 844 F.3d

at 251 (internal citation omitted).

In both the civil discovery and FOIA contexts, the D.C. Circuit has advised that the attorney work product doctrine "should be interpreted broadly and held largely inviolate[.]" *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). But unlike in the civil discovery context, where "work product protection may be overcome for cause," FOIA does not include a "for cause" provision. *Williams & Connolly v. SEC*, 662 F.3d 1240, 1243 (D.C. Cir. 2011). That is because "any materials disclosed for cause are not 'routinely' or 'normally' discoverable and, for that reason, are exempt under FOIA." *Id.* (citation omitted); *see also FTC v. Grolier Inc.*, 462 U.S. 19, 27 (1983) ("Whether its immunity from discovery is absolute or qualified, a protected document cannot be said to be subject to 'routine' disclosure.").

In addition, "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5." *McKinley v. FDIC*, 744 F. Supp. 2d 128, 141 (D.D.C. 2010) (internal quotation and citation omitted). Thus, this "[C]ircuit's case law is clear that '[t]he work-product doctrine simply does not distinguish between factual and deliberative material,'" *Judicial Watch, Inc.*, 432 F.3d at 371 (quoting *Martin v. Off. of Special Counsel*, 819 F.2d 1181, 1185-86 (D.C. Cir. 1987))— from which it follows that when a document "is fully protected as work product, then segregability is not required." *Meza v. U.S. Dep't of Just.*, 719 F. Supp. 2d 1, 6 (D.D.C. 2010).

In light of these principles, both sets of attorneys notes are attorney work product and thus protected from disclosure under Exemption 5. As the D.C. Circuit has recognized, "attorney notes . . . are quintessential examples of attorney work product, and therefore fall within the protections of FOIA Exemption 5(b) regardless of their 'factual' or 'deliberative' character." *Martin*, 819 F.2d at 1189; *see also Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 175 (D.D.C. 2004) (upholding the government's withholding of attorneys' handwritten notes where "litigation was

either occurring or foreseeable"); *Badalamenti v. U.S. Dep't of State*, 899 F. Supp. 542, 548 (D. Kan. 1995) (affirming withholding of information "prepared by government personnel working under the prosecuting attorney's direction and supervision and includ[ing] notes on evidence, draft filings and evaluation of events pertinent to plaintiff's criminal prosecution"); *cf. In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 532 (S.D.N.Y. 2015) ("Interview notes and memoranda produced in the course of . . . internal investigations have long been considered classic attorney work product.") (citing cases).

    As established by EOUSA's *Vaughn* index, and further explained by the agency's declaration, the withheld notes contain the "mental impressions" of Mr. Ariail and his colleague, "concerning information related to potential criminal activity received in their official capacity as federal prosecutors and possible investigative steps—and thus, in reasonable anticipation of future litigation." Cain Decl. ¶ 50. These notes—inclusive of their factual contents, *see Judicial Watch, Inc.*, 432 F.3d at 371—are at the heartland of the attorney work-product privilege because they were prepared "with an eye toward litigation," *A. Michael's Piano, Inc. v. Federal Trade Commission*, 18 F.3d 138, 146 (2d Cir. 1994); *see also, e.g., SafeCard Services, Inc.*, 926 F.2d at 1203 ("[W]here an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product."). The fact that there was ultimately no prosecution of Paul Manafort out of EDNY, or any EDNY case file on him or the AP Meeting, does not negate the potential for litigation at the time the notes were taken.

    The information withheld from the email pursuant to Exemption 5 satisfies the standards of this privilege as well, where it similarly reflects "potential investigative steps" that two DOJ attorneys who attended the April 11, 2017 "AP" meeting could take. Cain Decl. ¶ 51. Thus, the emails

"discuss ... [the] attorney[s'] impressions about the case" and "thoughts on possible next steps," which this Court has "readily conclud[ed]" are attorney work product and properly withheld under Exemption 5. *Gov't Accountability Project v. U.S. Dep't of Justice*, 852 F. Supp. 2d 14, 26 (D.D.C. 2012); *see also Judicial Watch, Inc.*, 432 F.3d at 369 (holding that contents of emails sent among agency lawyers qualified for the work-product privilege); *Darui v. U.S. Dep't of State*, 798 F. Supp. 2d 32, 39 (D.D.C. 2011) (emails "prepared by attorneys for DOJ and State … in connection with a law enforcement proceeding" were protected by the work-product privilege); *Dalal v. U.S. Dep't of Justice*, No. CV 16-1040 (TJK),

--- F. Supp. 3d. ---, 2022 WL 17092863, at *16 (D.D.C. Nov. 21, 2022) (upholding assertion of attorney work-product privilege over an email that "was sent between USAO attorneys handling [a particular] prosecution and cover[ed] various aspects in preparation of the case") (citation omitted).

Accordingly, the Court should uphold EOUSA's determination to withhold in full both sets of responsive attorney meeting notes, and to additionally withhold portions of the emails, pursuant to the attorney work-product privilege. As noted above, there is no duty to segregate material withheld under the work-product doctrine.

### B.    EOUSA Properly Withheld Information Under Exemption 6

Additional redactions to the emails at issue, made pursuant to Exemption 6, should be upheld as well.

Exemption 6 protects "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC,* 164 F.3d 37, 46 (D.C. Cir. 1999) ("The Supreme Court has interpreted the

phrase 'similar files' to include all information that applies to a particular individual."). In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier,* 164 F.3d at 46; *Chang v. Dep't of Navy,* 314 F. Supp. 2d 35, 43 (D.D.C. 2004). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier,* 164 F.3d at 47; *Beck v. Dep't of Just.,* 997 F.2d 1489, 1492 (D.C. Cir. 1993). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose[.]" *Beck,* 997 F.2d at 1493; *see also Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) ("Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature[.]") (citing *Wash. Post Co.,* 456 U.S. at 600).

EOUSA withheld under Exemption 6 the names and email addresses of Criminal Division and EDNY employees. First, this information is within the scope of Exemption 6 because it is personally identifying. *Lepelletier,* 164 F.3d at 47; *see Wash. Post Co.*, 456 U.S. at 602 (even bits of "personal information" are protected only if they "can be identified as applying to [a specific] individual"). Further, EOUSA has determined that these employees have a substantial (more than *de minimus*) privacy interest in this information, "due to the sensitive nature of work they undertake related to the enforcement of federal laws." Cain Decl. ¶ 55; *see also id.* (further explaining that "[t]he release of this information could subject these government employees to an unwarranted invasion of their personal privacy by leading to efforts to contact them directly, gain access to their personal information, or subject them to harassment, harm, or unwanted publicity," particularly in "the era of

21

social media," in which "DOJ employees have increasingly become targets in their private capacities.").

Conversely, disclosure of these names and email addresses would not further "public understanding of the operations or activities of the government," *Department of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 495 (1994) (emphasis removed) (citation omitted), which is the sole public interest relevant to this analysis, *Beck,* 997 F.2d at 1492; Cain Decl. ¶ 56. EOUSA thus plausibly concluded that "[t]he need to protect these individuals' privacy rights thus far outweighs any public need for the disclosure of the users' personally identifiable information." *Id.*; *see, e.g., Shurtleff v. United States Env't Prot. Agency*, 991 F. Supp. 2d 1, 18 (D.D.C. 2013) (government employees have "a significant personal interest in preventing the burden of unsolicited emails and harassment"); *Judicial Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 116–17 (D.D.C. 2018) ("The case law is clear that there is a substantial privacy interest in full email addresses."); *Dalal v. U.S. Dep't of Just.*, No. 16-1040, 2022 WL 17092863, at *18 (D.D.C. Nov. 21, 2022) (similar).

The challenged Exemption 6 withholdings should also be affirmed.

## C. Disclosure of the Withheld Information Would Harm Interests Protected by Exemptions 5 and 6

EOUSA has also met its burden to demonstrate that disclosure of the withheld information would frustrate the important purposes served by the attorney work-product privilege, and thus cause concrete and foreseeable harm. Agencies may only withhold information under a FOIA exemption if the agency "reasonably foresees that disclosure would harm an interest protected by an exemption" or if "disclosure is prohibited by law[.]" 5 U.S.C. § 552(a)(8)(A)(i).

EOUSA's declaration explains that disclosure of the email withheld in part pursuant to Exemption 5 and/or the meeting notes would "cause foreseeable harm to the Department by

22

exposing the relevant DOJ attorneys' mental processes and impressions regarding information
received in their official capacity as federal prosecutors, thus chilling the confidence that the
Department's current attorneys' hold that they can freely exercise the zone of privacy this privilege
affords them to think, plan, weigh facts and evidence, candidly evaluate investigatory leads and the
strengths and weaknesses of potential investigations,  prepare legal theories—and commemorate
their thoughts regarding the same in notes, without fear that such notes will be publicly disclosed."
Cain Decl. ¶ 58. Should the Department's attorneys "lose the confidence that, should they take
similar meeting notes, those notes can be maintained within a zone of privacy and not disclosed to
the public, they would be strongly disincentivized from taking such notes in the first place, and thus
lose or be substantially chilled from the exercise of a basic and crucial tool in the development of an
investigation,"—and the both "[t]he Department's work in furtherance of its mission to investigate
and prosecute violations of federal criminal laws" as well as "the adversarial process itself[] would
foreseeably be substantially harmed by such a development." *Id.*

　　This explanation aligns with courts' recognition that the "'context and purpose'" of the
attorney work product privilege within the adversarial system "makes self-evident the harm from its
disclosure." *Louise Trauma Ctr. LLC v. U.S. Dep't of Homeland Sec.*, No. 1:20-CV-01128 (TNM), 2022
WL 1081097, at *6 (D.D.C. Apr. 11, 2022) (quoting *Reporters Comm. for Freedom of the Press v. FBI*, 3
F.4th 350, 369 (D.C. Cir. 2021)); *see Hickman*, 329 U.S. at 510-11 ("Were [attorney work-product]
materials open to opposing counsel on mere demand, much of what is now put down in writing
would remain unwritten. . . . Inefficiency, unfairness and sharp practices would inevitably develop in
the giving of legal advice and in the preparation of cases for trial. . . . And the interests of the clients
and the cause of justice would be poorly served."); *In re Sealed Case*, 146 F.3d at 884 ("Without a
strong work-product privilege, lawyers would keep their thoughts to themselves, avoid

communicating with other lawyers, and hesitate to take notes."); *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 604-05 (D.C. Cir. 2001) (the attorney work-product privilege protects "the adversary trial process itself").

Thus, "[l]ike the attorney-client privilege, the work-product privilege holds a prominent and sacrosanct role in the law." *Louise Trauma Ctr. LLC*, 2022 WL 1081097, at *6 (citation omitted), and courts in this Circuit have recognized that withholding attorney work product protected material satisfies the foreseeable harm standard because disclosure would "indirectly reveal the mental impressions, assessments, and thought processes of the attorneys involved in [an] investigation" which would "inhibit the flexibility" of attorneys to pursue future investigations. *Leopold v. DOJ*, 487 F. Supp. 3d 1, 10 n.4 (D.D.C. 2020); *see also Machado Amadis v. Dep't of Just.*, 388 F. Supp. 3d 1, 20 (D.D.C. 2019) (finding agency's concern about potential chilling effect of disclosure of attorney work product sufficient to show foreseeable harm), *aff'd*, 971 F.3d 364 (D.C. Cir. 2020); *Louise Trauma Ctr. LLC*, 2022 WL 1081097, at *6 (similar); *accord Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 485 F. Supp. 1, 14 (D.D.C. 1978) (recognizing that "disclosure of information generated during a prosecutor's assessment of particular cases would be extremely detrimental to the prosecutor's free exercise of discretion"). This Court should do the same here.

Finally, EOUSA has also explained how disclosure of the personally-identifying information withheld under Exemption 6 would also cause foreseeable harm, by exposing the DOJ employees in question to harassment and/or unwanted publicity. Cain Decl. ¶¶ 53-56, 59; *see Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of State*, No. CV 19-1344 (RBW), 2022 WL 1801054, at *12-13 (D.D.C. June 2, 2022) (holding that agency's "explanation for the [Exemption 6] redaction satisfies its burden under the foreseeable harm standard," where the agency represented that disclosure of the "email username would subject him or her to 'unsolicited or harassing inquiries'" and, conversely, "would

24

not shed[] light on [its] performance of its statutory duties or otherwise let citizens know what their government is up to") (citations omitted).

### III.     EOUSA Processed and Released All Reasonably Segregable Information

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(9). However, non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. U.S. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, EOUSA has attested that, with respect to the challenged emails, it "conducted a line-by-line" segregability review, and released from within those records all non-exempt information that "could be reasonably segregated from exempt information[.]" Cain Decl. ¶¶ 61-62. Further, and as the Cain Declaration further explains, because it determined that the attorney-work product privilege applies to both sets of meeting notes in their entirety, "no segregation analysis is required or possible" for those two records. *Id.* ¶ 63; *see supra* p. 18; *Meza*, 719 F. Supp. 2d at 6 (when a document "is fully protected as work product, then segregability is not required"). These attestations suffice to meet Defendant's segregability obligations. *See De Sousa v. CIA*, 239 F. Supp. 3d 179, 203 (D.D.C. 2017) (agencies "met their segregability burdens by submitting *Vaughn* indexes, in

combination with the attestations of their respective declarants that documents were reviewed 'on a line-by-line basis' and no further segregation would be possible"); *Judicial Watch, Inc. v. U.S. Dep't of State*, 557 F. Supp. 3d 52, 59 (D.D.C. 2021) (similar); *Washington Post Co. v. Special Inspector Gen. for Afghanistan Reconstruction*, No. CV 18-2622 (ABJ), 2021 WL 4502106, at *23 (D.D.C. Sept. 30, 2021) (similar).

## **CONCLUSION**

For all the foregoing reasons, Defendant respectfully requests that the Court grant summary judgment in its favor on all remaining claims.

Dated:  June 1, 2023

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director

*/s/  Antonia Konkoly*
Antonia Konkoly
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Telephone: 202-514-2395
Email:  antonia.konkoly@usdoj.gov

*Counsel for Defendant*