UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-CV-0879 (CJN) |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **DECLARATION OF KARA CAIN**

Pursuant to 28 U.S.C. § 1746, I, Kara Cain, declare the following to be a true and correct statement of facts:

1.      I am an Attorney-Advisor with the Freedom of Information Act/Privacy Act ("FOIA/PA") staff of the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice ("DOJ"). In my capacity as Attorney-Advisor, I act as a liaison with other divisions of DOJ in responding to requests and litigation filed under both FOIA, 5 U.S.C. § 552, and the Privacy Act of 1972, 5 U.S.C. §552a. I also review FOIA/PA requests for access to records located in this office and the 94 districts of the United States Attorney's Offices ("USAOs") and the case files arising therefrom, review correspondence related to requests, review searches conducted in response to requests, and prepare EOUSA responses to ensure compliance with FOIA/PA regulations, 28 C.F.R. §§ 16.3 *et. seq.* and §§ 16.40 *et seq.*, and 5 U.S.C. § 552 and 5 U.S.C. § 552a.

2.      Due to the nature of my official duties as Attorney-Advisor, I am familiar with the procedures followed by this office in responding to the FOIA request referred to EOUSA by

DOJ's Criminal Division, from Plaintiff, Judicial Watch. Additionally, I have reviewed the complaint which this Declaration addresses.

3.       The purpose of this Declaration is to provide the Court with information regarding EOUSA's efforts to respond to Plaintiff's FOIA request in response to the court order dated March 28, 2022. This declaration consists of: (i) relevant correspondence related to Plaintiff's FOIA request and EOUSA's response thereto, and (ii) information supporting the *Vaughn* Index, identified here as **Exhibit A**, for documents responsive to Plaintiff's FOIA request but withheld in full or in part from disclosure pursuant to FOIA Exemptions 5 U.S.C. § 552(b)(5) and (b)(6), and in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert denied*, 415 U.S. 977 (1974).

4.       The statements contained in this Declaration are based upon my personal knowledge, information provided to me in my official capacity as an Attorney-Advisor, and conclusions and determinations reached and made in accordance therewith.

## ADMINISTRATIVE HISTORY

5.       EOUSA received a FOIA request, via email, from DOJ's Criminal Division on April 26, 2022. The email indicated that the FOIA request in question, from Plaintiff Judicial Watch, was being referred to EOUSA so that EOUSA could conduct a search of the records of former Assistant United States Attorney ("AUSA") Shreve Ariail, pursuant to and consistent with the Court's March 28, 2022 Memorandum Opinion and accompanying Order in the above-captioned litigation. *See* **Exhibit B** (Plaintiff's FOIA request).

6.       EOUSA assigned the request number EOUSA-2022-001761, and on April 26, 2022, directed the USAO for the Eastern District of New York ("USAO-NYE" or "District"), where Mr. Ariail had previously been employed, to conduct a search for responsive records.

7.      As set forth in more detail below, *see infra* ¶ 13, USAO-NYE conducted an initial search on or about May 17, 2022—and additionally re-ran the same search on July 28, 2022—but was unable to locate any responsive records.

8.      On August 4, 2022, EOUSA then tasked its Office of Information Technology ("EOUSA-IT" or "IT") to conduct a forensic email search of a larger archival database. This search also did not yield any potentially responsive emails.

9.       A 'no records' response letter was transmitted to Judicial Watch on August 11, 2022. **Exhibit C**.

10.     As set forth in more detail below, *see infra* ¶ 25, EOUSA's IT Office subsequently conducted an additional forensic search. The supplemental search was conducted on December 5, 2022 and it ultimately returned no responsive records.

11.     As set forth in the Declaration of Jeanette Gonzalez-Rivera, in early February former AUSA Ariail contacted a former colleague at USAO-NYE. As a result of former AUSA Ariail contacting his former colleague, further described in the Gonzalez-Rivera Declaration, USAO-NYE located 96 pages of potentially responsive records. USAO-NYE forwarded these records to EOUSA to process in accordance with Plaintiff's FOIA request.

12.     After processing the potentially responsive records located by USAO-NYE, EOUSA issued a final response letter to Judicial Watch on May 9, 2023. **Exhibit D**.

13.     On May 31, 2023, EOUSA made a corrected production attached hereto as **Exhibit I**. The corrected production lifts certain withholdings that EOUSA discovered, subsequent to its May 9 production, were previously inadvertently released by CRM. As set forth in that letter, EOUSA's corrected production released eight of these pages in part and withheld 21 pages in full. A description of the withheld records, and/or portions of records, is set forth in

EOUSA's *Vaughn* index, attached hereto as **Exhibit A**. The remaining pages forwarded to EOUSA by USAO-NYE for processing were deemed non-responsive to Plaintiff's FOIA request.

## SUPPLEMNTAL SEARCHES CONDUCTED BY EOUSA

14.     On April 26, 2022, EOUSA initially tasked USAO-NYE to conduct a search for responsive records.

15.     EOUSA tasked USAO-NYE to conduct this search because records pertaining to, or in the custody of, a particular AUSA are generally housed at the specific USAO where the AUSA conducted government business. The associated district is the most reasonable place to commence a search. In this case that district is USAO-NYE.

16.     Each USAO maintains the case files created by that office, for civil and criminal matters that are either prosecuted or defended by that office. In the case at hand, USAO-NYE determined that there was no prosecution of any kind against Paul Manafort out of USAO-NYE.

17.     EOUSA and USAOs utilize the Microsoft Outlook program for email, and USAMail is the email archive EOUSA utilizes for the storage of archival emails sent and received by EOUSA and USAO personnel. USAOs have access to the USAMail archival system via Proofpoint. Accordingly, USAO-NYE implemented the search that EOUSA had requested that it run by searching USAMail, via Proofpoint, for any responsive, archived emails of former AUSA Shreve Ariail.

18.     USAO-NYE used the following search terms: "AP" with "meeting"; "Associated Press" with "meeting"; "Eric Tucker"; "Jeff Horwitz"; "Ted Bridis"; "Jack Gillum"; "etucker@ap.org;" jhorwitz@ap.org; "tbridis@ap.org," and "Manafort." The date

range used for this search was March 1, 2017 through and including June 30, 2017.

19.     USAO-NYE first conducted the above-described search on May 17, 2022. This search yielded no results. USAO-NYE reported this outcome to EOUSA.

20.     To check that its first search had not contained any inadvertent errors, USAO-NYE re-ran an identical search on July 28, 2022. Again, this search did not return any results. USAO-NYE again reported this outcome to EOUSA.

21.     Subsequently, EOUSA's FOIA Office learned that EOUSA's IT ("EOUSA-IT") Office has access to a more fulsome database of USAMail archival records—via "eDiscovery," *i.e.*, the process by which EOUSA-IT conducts a search, and identifies and collects information from a user's computer—than the email archives that are maintained at the USAO district level through a USAMail search via Proofpoint. Accordingly, on August 4, 2022, EOUSA tasked a further supplemental search to be conducted forensically by EOUSA's IT Office through eDiscovery.

22.     The search dates for the forensic email search were March 1, 2017, through and including June 30, 2017.

23.     The search terms utilized for this forensic search were: "AP", "Associated Press," "Eric Tucker," "Jeff Horwitz," "Ted Bridis," "Jack Gillum," "etucker@qp.org," "jhorwitz@ap.org," "tbridis@ap.org," or "Manafort"; and "meet*."

24.     On August 9, 2022, EOUSA's IT team indicated that the above-described forensic search did not yield any potentially responsive records.

25.     Accordingly, on August 11, 2022 EOUSA issued a "no records" response to Judicial Watch. **Exhibit C.**

*K. Cain Decl. Judicial Watch v. U.S. Department of Justice*
*Civil Action No.* 1:19-CV-0879 (CJN)

26.     On December 5, 2022, EOUSA's IT Office conducted another eDiscovery search for emails sent or received by former AUSA Ariail, between March 1, 2017 and June 30, 2017.

27.     This search largely duplicated the third supplemental search that EOUSA had previously conducted, *see supra* ¶¶ 21-24, with three differences. First, the December 5, 2022 search corrected a typo in Eric Tucker's email address, and used the correct address, *i.e.*, etucker@ap.org. Second, this search did not use "meet" as a limiting term. Thus, the search terms used for this search were "AP"; "Associated Press"; "Eric Tucker"; "Jeff Horwitz"; "Ted Bridis"; "Jack Gillum"; "etucker@ap.org"; "jhorwitz@ap.org"; "tbridis@ap.org"; or "Manafort."

28.     Third, in course of conducting the December 5, 2022 search, EOUSA-IT determined that in the August search, *see supra* ¶¶ 21-24, they had failed to check a radial button entitled "Active Archive and All Legal Holds." This was due to human error. Omission of this radial option excluded an additional set of records—specifically, emails that are retained for a longer period of time because they are either subject to a specific litigation hold, or because a Capstone Official was a sender or recipient of the email. *See infra* ¶ 38. Thus, in addition to the search term adjustments described above, the December 5, 2022 search searched a broader dataset. This search yielded over 3,000 potentially responsive emails.

29.     EOUSA's FOIA Office reviewed these potentially responsive records—which consisted almost exclusively of district-wide USAO-NYE email blasts—and determined that none were responsive to Plaintiff's FOIA request.

30.     Neither EOUSA's Records and Information Management Office, which oversees records retention for EOUSA, nor EOUSA's IT Office, was able to determine the specific reason for the retention of any specific email that was returned when the above-described forensic

search was run against the "Active Archive and All Legal Holds" dataset with the eDiscovery

search, because that information is not provided on a record-by-record basis. However, as

explained in further detail, *see infra* ¶ 38, emails on which a Capstone Official—which the U.S.

Attorney for each USAO qualifies as—is the sender or a recipient are subject to a permanent

retention policy. The U.S. Attorney was a recipient on all the district-wide email blasts, which

made up almost all of these search results.

31.     On December 20, 2022, USAO-NYE confirmed that, in addition to never having

prosecuted Paul Manafort, it had never opened any case file for either Paul Manafort, or the

April 11, 2017 meeting that is the subject of Plaintiff's FOIA request.

32.     USAO-NYE has also confirmed to EOUSA that, in the email filed by Plaintiff at

ECF No. 38-1, and appearing at page three of that filing, the names that were redacted by the

Criminal Division pursuant to Exemptions 6 and 7(C) (specifically, following former AUSA

Ariail's statement to Andrew Weissmann that "Yes, definitely. I briefed to Criminal [redacted]")

are of two other former USAO-NYE AUSAs, both of whom are no longer with the government.

Because these two other former AUSAs no longer work for the government, their emails are

subject to the same document retention policies—and the same corresponding "3 years and 30-

day" automatic deletion algorithm within USAMail—as are described in detail *infra* at ¶¶ 40-41.

33.     On March 1, 2023, EOUSA received the 96 pages of potentially responsive

records located by USAO-NYE, as a result of the events set forth in the Gonzalez-Rivera

Declaration. These records consisted of: (1) three set of meeting notes, and (2) 74 pages of

potentially responsive emails. Of the three sets of meeting notes, two are responsive to Plaintiff's

FOIA requests: the notes taken by former USAO-NYE AUSA Shreve Ariail at the meeting held

on the morning of April 11, 2017, that is the subject of the FOIA requests, and the notes taken by

former AUSA Ariail's colleague at a subsequent and independently scheduled meeting that occurred later the same day, at which the morning's meeting was referenced. USAO-NYE also located and forwarded for processing former AUSA Ariail's notes from the afternoon meeting, but that (third) set of notes do not mention or make any reference to the morning meeting, and are therefore not responsive.

34.     Of the 74 pages of potentially responsive emails located by USAO-NYE and sent to EOUSA for processing, eight pages were responsive to Plaintiff's FOIA requests. Of these, EOUSA ultimately released eight pages in part, after release of the corrected production. EOUSA further withheld the 21 pages of responsive meeting notes in full. *See* **Exhibit A** (*Vaughn* Index, describing the associated pages and applicable withholdings)**.**

## Relevant DOJ and EOUSA Records Retention Policies

35.     In accordance with Capstone guidance developed by the National Archives and Records Administration ("NARA"), the U.S. Department of Justice ("DOJ")'s Policy Statement for Electronic Mail and Electronic Messaging Records Retention (for purposes of this declaration, the "DOJ Policy"), attached hereto as **Exhibit E**, implements a tiered "Capstone" approach to document retention. *See* DOJ Policy at 4 (defining "Capstone" as "[a]n email management approach … that categorizes, and schedules emails based on the work and/or position of the email account user …."). In comportment with this tiered approach, the DOJ Policy designates the Attorney General, Deputy Attorney General, Associate Attorney General, [and] the program staff assigned to those offices as comprising DOJ's "Senior Leadership Offices." *Id.* at 9. "Business emails (including attachments) sent or received by" any of those official "are permanent federal records," and as such DOJ is required to "maintain these emails for 15 years after the end of the email user's tenure and then accession the email to NARA." *Id.*

p. 9 § II.A.1; *see also* NARA Disposition Authority DAA-0060-2016-0007 (commemorating

NARA approval of this email records retention schedule for the Heads of DOJ Components)

(attached here to as **Exhibit F**).

36.     The DOJ Policy further directs DOJ components to apply the same retention rule

to "[b]usiness emails (including attachments) sent or received by Heads of Components, their

direct reports, any other component positions identified on applicable records retention schedules

as Capstone Officials." *Id.* p. 9 § II.A.2.

37.     For emails sent or received by any other DOJ employee, the DOJ Policy provides

that if the email in question is "1) … not related to a case or project, and 2) … not sent or

received by Senior Leadership [or] their program staff, or Heads of Components [or] identified

Capstone Officials," the email is to be "maintained by the component for no fewer than 3 years

and no more than 7 years." *Id.* p. 10 (§ II.A.3.b); *see also* NARA Disposition Authority DAA-

0060-2016-0003 (commemorating NARA approval of this email records retention schedule for

non-Capstone DOJ employees) (attached here to as **Exhibit G**). The DOJ Policy directs Heads of

Components to "designate the number of years" from among this permissible range, "based on

component needs." DOJ Policy p. 10 (§11.A.3.b).

38.     The United States Attorneys' Policies and Procedures for Electronic Records and

Information Management, No. 3-13.300.007 (for purposes of this declaration, the "EOUSA

Policy"), attached hereto as **Exhibit H**, implements the DOJ Policy for EOUSA and the 94 U.S.

Attorney's Offices. First, it designates all United States Attorneys, the EOUSA Director, the

EOUSA Deputy Director, and the EOUSA Chief of Staff as Capstone Officials. EOUSA Policy

p. 8 (§ 6(B)(1)(a)). Accordingly, and in comportment with the DOJ Policy's directive respecting

"Capstone emails," "[b]usiness emails (including attachments) that are sent or received by" any

*K. Cain Decl. Judicial Watch v. U.S. Department of Justice*
*Civil Action No.* 1:19-CV-0879 (CJN)

of these designated officials are classified as "permanent federal records." *Id.* Such emails are

retained "for 15 years after the end of the email user's tenure and then accessioned  to NARA."

*Id*.

39.     The EOUSA Policy also elects—from the permissible range of 3 to 7 years set by

the DOJ Policy—a three-year retention policy for all other business emails. EOUSA Policy p. 8

(§ 6(B)(1)(b)). Such emails are classified as "temporary records," and are "retained for 3 years,

after which, the email is deleted from the USAMail storage system." *Id.*

40.     As a practical matter, EOUSA implements the three-year retention policy through

an algorithm it has programmed into its USAMail system, where it stores archival copies of

business emails there were sent or received by EOUSA and USAO personnel. The searches

described above, *see supra* ¶¶ 21-24, 26-28, queried the USAMail system via eDiscovery.

41.     This algorithm automatically—and permanently—deletes the archival copy of

every email subject to the three-year retention policy (and that is also not subject to any litigation

hold) three years and thirty days from the date the email in question was sent or received. Thus,

for example, a business email sent by an AUSA on January 1, 2017, which neither (a) included

any Capstone Official as a recipient; nor (b) was subject to any litigation hold, would be

automatically deleted by the USAMail algorithm on January 31, 2020.

42.     When an email is permanently deleted pursuant to this algorithm, no independent

record of the act of deletion is created.

43.     The above-described algorithm operates within the USAMail archival storage

system only. Thus, copies of emails that are actively maintained by current EOUSA and USAO

employees within their desktop Outlook applications are not automatically deleted pursuant to

the USAMail algorithm.

44.     Finally, the EOUSA Policy independently provides that "[b]usiness emails related to a case or project case (including attachments) that are sent or received by any User must be retained in accordance with the approved records retention schedule for the associated case or project. Users should separate any case or project related materials from their email account and save to an approved repository. These materials should be stored in accordance with the respective records retention schedule." EOUSA Policy p. 8 (§ 6(B)(1)(c)). Materials saved to a case file are thus also not automatically deleted pursuant to the USAMail algorithm.

45.     Here, USAO-NYE confirmed that it never opened, nor maintained, any case file for either to Paul Manafort or the AP Meeting.

## DESCRIPTION OF DOCUMENTS AND WITHELD MATERIAL

46.     The narrative description of the information withheld as provided in this Declaration and in the *Vaughn* Index is intended to provide the Court and Plaintiff with an understanding of the material being protected from disclosure. These materials consist of (1) former AUSA Ariail's handwritten notes from the AP Meeting; (2) the AUSA's handwritten notes from the independent afternoon meeting held on the same day, and (3) portions of responsive emails among DOJ employees.

## RECORDS WITHHELD PURSUANT TO
## EXEMPTION 5 U.S.C. §552(b)(5)

47.     Exemption 5 of the FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As discussed in detail below, EOUSA has withheld a portion of one email, as well as the two sets of responsive meeting notes, in full, pursuant to this exemption, and in particular attorney work-product privilege.

### Exemption 5: Inter-/Intra-Agency Threshold

48.    The email that was withheld in part under Exemption 5 was sent between

Department attorneys and not shared outside of the Department, and the withheld meeting notes

were taken by USAO-NYE attorneys, and were not shared outside of the Department. As such,

both the email and the withheld notes are "inter-/intra-agency" records within the meaning of

Exemption 5.

### Exemption 5: Attorney Work-Product Privilege

49.    The attorney work-product privilege encompassed by Exemption 5 of the FOIA,

shields material prepared by an attorney, or at the direction of an attorney, in reasonable

anticipation of litigation. It protects both tangible items prepared or developed by an attorney in

anticipation of litigation, and intangible items such as mental impressions, conclusions, opinions,

or legal theories as s/he anticipates or prepares for litigation—and thus, no segregation of factual

information is required for information falling within the privilege. The purpose of this privilege

is to protect the adversarial process by insulating the attorneys' preparation of litigation materials

from scrutiny. The privilege protects any part of a document prepared in anticipation of

litigation, not just the portions containing opinions and legal theories. The protection of the work

product doctrine continues beyond the termination of the particular situation for which the

materials were created.

50.    In this case, the attorney work-product privilege was applied to withhold in full

two sets of handwritten notes containing DOJ attorneys' mental impressions concerning

information related to potential criminal activity received in their official capacity as federal

prosecutors and possible investigative steps – and thus, in reasonable anticipation of future

litigation.[1]

51.     The attorney work-product privilege was also applied to withhold a portion of an email between USAO-NYE and the Criminal Division, in which two DOJ attorneys who had attended the AP Meeting discussed potential investigative steps.

52.     DOJ attorneys—including criminal prosecutors at USAO-NYE—are singularly tasked with enforcing federal laws and defending the interests of the United States. Disclosure of the withheld information would reveal DOJ attorneys' thought processes with respect to potential criminal activity, and related potential investigative steps they might take with respect such activity. Both the information withheld from the email, and the full contents of the withheld notes, thus reflect essential attorney work-product that DOJ attorneys engage in as they execute their core function within the Department of Justice.

## EXEMPTION 5 U.S.C. §552(b)(6)

53.     FOIA Exemption 6 protects information in "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6). The term "similar files" is generally read broadly to encompass any file containing information that applies to a particular person. Here, the records constitute "similar files" as they contain information identifying particular individuals.

54.     When determining whether to withhold information pursuant to Exemption 6, EOUSA balances the privacy interests of the individuals mentioned in these records against any public interest in disclosure. For purposes of this analysis, a public interest exists when

---

[1] As explained above, former AUSA Ariail's notes from the afternoon meeting do not make any reference to morning's "AP" meeting, and thus are not responsive to Plaintiff's request.  *See* ¶ 33, *supra*.

information would shed light on DOJ's performance of its mission to, *inter alia*, investigate
and prosecute violations of federal criminal and civil laws. Courts have generally found that
individuals have protectable privacy interests in relation to being associated with criminal
investigations and prosecutions; and there is no overriding public interest in such information
because it typically does not shed light on or significantly increase the public's understanding
of the operations and activities of the Department of Justice.

55.    Here, the information that EOUSA has withheld under Exemption 6 consists
of, *inter alia*, USAO-NYE and Criminal Division employee names, email addresses, and
telephone numbers. EOUSA has determined that these employees have a substantial (more than
*de minimus*) privacy interest in this information, due to the sensitive nature of work they
undertake related to the enforcement of federal laws. The release of this information could
subject these government employees to an unwarranted invasion of their personal privacy by
leading to efforts to contact them directly, gain access to their personal information, or subject
them to harassment, harm, or unwanted publicity. In the era of social media, DOJ
investigations have received increased scrutiny, and DOJ employees have increasingly become
targets in their private capacities.

56.    Conversely, the dissemination of this information would not help explain the
government's activities or operations. Release of employee names and contact information
would not reveal any additional information than what was already released to Plaintiff in
EOUSA's and the Criminal Division's previous productions in this litigation. EOUSA has
therefore not identified any countervailing public interest in this information, much less one
that would warrant the release of these individuals' names and contact information. The need to
protect these individuals' privacy rights thus far outweighs any public need for the disclosure

of the users' personally identifiable information.

**<u>Foreseeable Harm from Disclosure</u>**

57.     EOUSA considered the foreseeable harm standard when reviewing records and
applying FOIA exemptions in this matter, and has determined that it is reasonably foreseeable
that disclosure of the protected material would harm an interest protected by the specified
privilege(s) of Exemption 5 and 6.

58.     Disclosure of the information that was withheld under Exemption 5 and the
attorney work-product privilege would case foreseeable harm to the Department by exposing
the relevant DOJ attorney's mental processes and impressions regarding information received
in their official capacity as federal prosecutors, thus chilling the confidence that the
Department's current attorneys' hold that they can freely exercise the zone of privacy this
privilege affords them to think, plan, weigh facts and evidence, candidly evaluate investigatory
leads and the strengths and weaknesses of potential investigations, prepare legal theories—and
commemorate their thoughts regarding the same in notes, without fear that such notes will be
publicly disclosed. Should the Department's attorneys lose the confidence that, should they
take similar meeting notes, those notes can be maintained within a zone of privacy and not
disclosed to the public, they would be strongly disincentivized from taking such notes in the
first place, and thus lose or be substantially chilled from the exercise of a basic and crucial tool
in the development of an investigation or case. The Department's work in furtherance of its
mission to investigate and prosecute violations of federal criminal laws—as well as the
adversarial process itself—would foreseeably be substantially harmed by such a development.

59.     For all the reasons set forth above, *see supra* ¶¶ 53-56, the disclosure of the
information withheld pursuant to Exemption 6 would foreseeably cause an undue invasion of

privacy for the individuals' who names and contact information are at issue.

## SEGREGABILITY

60.     Under FOIA, federal agencies are required to release any portion of the record that is non-exempt and is reasonably segregable from the exempt material. If non-exempt information contained in the record is inextricably intertwined with exempt information, then reasonable segregation is not possible.

61.     In reviewing the responsive material, EOUSA conducted a line-by-line review to satisfy EOUSA's reasonable segregability obligation.

62.     EOUSA conducted a segregability review of all pages that were released in part. If it was determined that certain non-exempt information could be reasonably segregated from exempt information, those records were released in part.

63.     Further, as explained above, EOUSA determined that the two sets of responsive attorney notes are protected in full under the attorney work-product privilege. As also explained above, no segregation of factual information is required for information falling within the attorney work product privilege. Accordingly, no segregation analysis is required or possible for the two documents that were withheld in full.

64.     EOUSA has released all reasonably segregable non-exempt information from records responsive to Plaintiff's FOIA request and has properly withheld information pursuant to FOIA exemptions 5 U.S.C. § 552 (b)(5).

## CONCLUSION

65.     Each step in the processing of Plaintiff's request has been consistent with EOUSA's procedures, which were adopted to ensure an equitable response to all persons seeking responsive records under the FOIA/PA.

66.     Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the

foregoing is true and correct, to the best of my knowledge and belief.

Executed this 1st day of June, 2023.

_____

Kara Cain
Attorney-Advisor
Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff

# Exhibit A



**U.S. Department of Justice**

Executive Office for United States Attorneys

---

Freedom of Information and Privacy Staff

*Suite 5.400, 3CON Building     (202) 252-6020*
*175 N Street, NE               FAX (202) 252-6048*
*Washington, DC 20530*

***Judicial Watch v. Department of Justice***
***Docket No. 1:19-CV-0879 (CJN)***
***Vaughn Index***

Legend
WIF- Withhold in Full
RIP- Release in Part
AWP- Attorney Work Product
USAO-NYE- United States Attorney's Office for the Eastern District of New York
DOJ- Department of Justice
CRM- Department of Justice's Criminal Division
AP- Associated Press

**LITG-2023-000015**
**EOUSA-2022-001761- Partial Denial**

| Bates Number | Description of Record | Disclosure | Justification |
|---|---|---|---|
| LITG-2023-000015_0001 | Email from Ted Bridis to Shreve Ariail, forwarded by Ariail to CRM and USAO-NYE re: AP's latest stories on Paul Manafort<br><br>April 12, 2017 | RIP (B)(6) | Names and email addresses of DOJ employees, as well as phone numbers for AP reporter Ted Bridis were redacted. There is a privacy interest in the release of names and contact information. The release of this information could subject individuals to harassment and constitutes a clearly unwarranted invasion of personal privacy. Further, release of the information would not shed any light on the workings of the government. |

| LITG-2023-000015_0002-03 | Email from Ted Bridis to Shreve Ariail, forwarded by Ariail to CRM and USAO-NYE re: AP's latest stories on Paul Manafort  April 12, 2017 | RIP (B)(6) | Phone numbers, email addresses and DOJ employee names, as well as phone numbers for AP reporter Ted Bridis, were redacted. There is a privacy interest in the release of names and contact information. The release of this information could subject individuals to harassment and constitutes a clearly unwarranted invasion of personal privacy. Further, release of the information would not shed any light on the workings of the government. |
| --- | --- | --- | --- |
| LITG-2023-000015_0002-04 | Email chain from Ted Bridis to Shreve Ariail, forwarded by Ariail to CRM and USAO-NYE re: AP's latest stories on Paul Manafort  April 12, 2017 | RIP (B)(6) | Phone numbers, email addresses and DOJ employee names, as well as phone numbers for AP reporter Ted Bridis, were redacted. There is a privacy interest in the release of names and contact information. The release of this information could subject individuals to harassment and constitutes a clearly unwarranted invasion of personal privacy. Further, release of the information would not shed any light on the workings of the government. |
| LITG-2023-000015_0002-05-06 | Email chain from Ted Bridis to Shreve Ariail, forwarded by Ariail to CRM and USAO-NYE re: AP's latest stories on Paul Manafort  April 12, 2017 and May 16, 2017 | RIP (B)(6) | Names and email addresses of DOJ employees, as well as phone numbers for AP reporter Ted Bridis, were redacted. There is a privacy interest in the release of names and contact information. The release of this information could subject individuals to |

| | | | |
|---|---|---|---|
| | | | harassment and constitutes a clearly unwarranted invasion of personal privacy. Further, release of the information would not shed any light on the workings of the government. |
| LITG-2023-000015_0007-08 | Email chain from Ted Bridis to Shreve Ariail, forwarded by Ariaial to CRM and USAO-NYE re: AP's latest stories on Paul Manafort

April 12, 2017 | RIP (B)(5), (B)(6) | AWP- The email communication between USAO-NYE and DOJ's Criminal Division reflect the attorneys' exchange of thoughts and mental impressions in which two DOJ attorneys who had attended the meeting that is the subject of Plaintiff's FOIA request discussed potential investigative steps.

Phone numbers, email addresses and DOJ employee names, as well as phone numbers for AP reporter Ted Bridis, were redacted. There is a privacy interest in the release of names and contact information. The release of this information could subject individuals to harassment and constitutes a clearly unwarranted invasion of personal privacy. Further, release of the information would not shed any light on the workings of the government. |
| LITG-2023-000015_0002-09-15 | Shreve Ariail Handwritten Meeting Notes, taken at morning meeting with AP reporters, held on April 11, 2017 | WIF (B)(5) | AWP- Former AUSA Shreve Ariail's handwritten notes contain his mental impressions concerning information related to potential criminal activity received in his official |

| | | | |
|---|---|---|---|
| | | | capacity as a federal prosecutor and possible investigative steps – and thus, in reasonable anticipation of future litigation. |
| LITG-2023-000015_0002-16-21 | [Redacted] Handwritten Meeting Notes, taken at independently scheduled meeting held on the afternoon of April 11, 2017 | WIF (B)(5) | AWP-These handwritten notes contain a DOJ attorney's mental impressions concerning information related to potential criminal activity received in his/her official capacity as a federal prosecutor and possible investigative steps – and thus, in reasonable anticipation of future litigation. |

# Exhibit B

July 5, 2018

**VIA E-MAIL (MRUFOIA.Requests@usdoj.gov)**

FOIA/PA Mail Referral Unit
Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001

**Re:  Freedom of Information Act Request**

Dear Freedom of Information Officer:

Judicial Watch, Inc. ("Judicial Watch") hereby requests that the Department of Justice produce the following records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"):

> 1. **Any and all records regarding, concerning, or related to the April 2017 meeting between Department of Justice and FBI personnel and reporters, editors, and/or other individuals employed by and/or representing the Associated Press. This request includes, but is not limited to, any and all notes, reports, memoranda, briefing materials, or other records created in preparation for, during, and/or pursuant to the meeting.**
>
> 2. **Any and all records of communication between any official, employee, or representative of the Department of Justice and any of the individuals present at the aforementioned meeting.**
>
> **For purposes of clarification, the meeting that is the subject of this request was reported on in Politico on June 29, 2018 (see https://www.politico.com/story/2018/06/29/paul-manafort-storage-locker-associated-press-687776).**

Please determine whether to comply with this request within the time period required by FOIA and notify us immediately of your determination, the reasons therefor, and the right to appeal any adverse determination to the head of the agency or his or her designee.  5 U.S.C. § 552(a)(6)(i).  Please also produce all responsive records in an electronic format ("pdf" is preferred), if convenient.  We also are willing to accept a "rolling production" of responsive records if it will facilitate a more timely production.

Judicial Watch also hereby requests a waiver of both search and duplication fees.

**Department of Justice**

**July 5, 2018**

**Page 2 of 3**

We are entitled to a waiver of search fees because we are a "representative of the news media." *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also Cause of Action v. Federal Trade Comm.*, 799 F.3d 1108 (D.C. Cir. 2015); *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381 (D.C. Cir. 1989). For more than twenty years, Judicial Watch has used FOIA and other investigative tools to gather information about the operations and activities of government, a subject of undisputed public interest. We submit over 400 FOIA requests annually. Our personnel, which includes experienced journalists and professional writers on staff and under contract, use their editorial skills to turn this raw information into distinct works that are disseminated to the public via our monthly newsletter, which has a circulation of over 300,000, weekly email update, which has over 600,000 subscribers, investigative bulletins, special reports, www.judicialwatch.org website, *Corruption Chronicles* blog, and social media, including Facebook and Twitter, among other distribution channels. We have authored several books, including *Corruption Chronicles* by Tom Fitton (Threshold Editions, July 24, 2012), and another book, *Clean House* by Tom Fitton (Threshold Editions, Aug. 30, 2016). In 2012, we produced a documentary film, "District of Corruption," directed by Stephen K. Bannon. Our "news media" status has been confirmed in court rulings. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 2006 U.S. Dist. LEXIS 44003, *1 (D.D.C. June 28, 2006); *Judicial Watch, Inc. v. U.S. Dep't of Justice,* 133 F. Supp.2d 52 (D.D.C. 2000). As a tax exempt, 501(c)(3) non-profit corporation, we have no commercial interests and do not seek the requested records for any commercial use. Rather, we intend to use the requested records as part of our on-going investigative journalism and public education efforts to promote integrity, transparency, and accountability in government and fidelity to the rule of law.

Judicial Watch also is entitled to a waiver of both search fees and duplication fees because "disclosure of the information is in the public interest." 5 U.S.C. § 552(a)(4)(A)(iii). Disclosure of the requested records undoubtedly will shed light on "the operations or activities of the government." *Cause of Action*, 799 F.3d at 1115 (*quoting* 5 U.S.C. § 552(a)(4)(A)(iii)). Disclosure also is "likely to contribute significantly to the public understanding" of those operations or activities because, among other reasons, Judicial Watch intends to disseminate both the records and its findings to "a reasonably broad audience of persons interested in the subject" via its newsletter, email updates, investigative bulletins, website, blog, and its other, regular distribution channels. *Cause of Action*, 799 F.3d at 1116 (*quoting Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994)). Again, Judicial Watch does not seek the requested records for any commercial benefit or for its own "primary" benefit, but instead seeks them as part of its ongoing investigative journalism and public education efforts to promote integrity, transparency, and accountability in government and fidelity to the rule of law.

In the event our request for a waiver of search and/or duplication costs is denied, Judicial Watch agrees to pay up to $300.00 in search and/or duplication costs. Judicial Watch requests that it be contacted before any such costs are incurred, in order to prioritize search and duplication efforts.

**Department of Justice**
**July 5, 2018**
**Page 3 of 3**

If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 814-691-9806 or sdunagan@judicialwatch.org.

Thank you for your cooperation.

Sincerely,

Sean Dunagan
Judicial Watch, Inc.

# Exhibit C



**U.S. Department of Justice**

Executive Office for United States Attorneys

Freedom of Information and Privacy Staff

Suite 5.400, 3CON Building
175N Street, NE
Washington, DC 20530

(202) 252-6020

August 11, 2022

**SENT VIA EMAIL: sdunagan@judicialwatch.org**
Sean Dunagan
Judicial Watch
2031 E Kensington Ave
Salt Lake City, UT 84108

      Request Number:      EOUSA-2022-001761
      Date of Receipt:      April 26, 2022
      Subject of Request:    APRIL 2017 MEETING WITH DOJ/FBI W SHREVE ARIAL

Dear Mr. Sean Dunagan:

      In response to your Freedom of Information Act and/or Privacy Act request, the following checked paragraph(s) apply:

☒ A search for records located in the United States Attorney's Office(s) for the Eastern District of New York has revealed no responsive records regarding the above subject.

      This is the final action on this above-numbered request.  If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

      You may contact our FOIA Public Liaison at the Executive Office for United States Attorneys (EOUSA) for any further assistance and to discuss any aspect of your request.  The contact information for EOUSA is 175 N Street, NE, Suite 5.400, Washington, DC 20530; telephone at 202-252-6020. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire

about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of

Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Kevin Krebs
Assistant Director

# Exhibit D



**U.S. Department of Justice**

Executive Office for United States Attorneys

---

Freedom of Information and Privacy Staff    Suite 5.400, 3CON Building    (202) 252-6020
175N Street, NE
Washington, DC  20530

May 9, 2023

VIA Email

Sean Dunagan
Judicial Watch, Inc.

      Re: Request Number    EOUSA-2022-001761/LITG-2023-000015
Date of Receipt:       March 28, 2022
Subject of Request:    Judicial Watch v. DOJ et al (19-879) DDC

Dear Sean Dunagan:

      Your request for records under the Freedom of Information Act/Privacy Act has been processed.  This letter constitutes a reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Office.

      To provide you with the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes. The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act.  28 CFR § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. Please be advised that we have considered the foreseeable harm standard when reviewing records and applying FOIA exemptions.

      Enclosed please find:

  _0_   page(s) are being released in full (RIF);
  _8_   page(s) are being released in part (RIP);
_21_   page(s) are withheld in full (WIF)  **The redacted/withheld documents were reviewed to determine if any information could be segregated for release.**

The exemption(s) cited for withholding records or portions of records are marked below. An enclosure to this letter explains the exemptions in more detail.

(b)(5)
(b)(6)

This is the final action on this above-numbered request. If you are not satisfied with my response to your request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC  20530 or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

You may contact Federal Programs Attorney, Antonia Konkoly regarding questions about this final response.

Sincerely,

Kevin Krebs
Assistant Director

Enclosure(s)

<u>**EXPLANATION OF EXEMPTIONS**</u>

**FOIA: TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)  (A) specifically authorized under criteria established by and Executive order to be kept secret in the in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

**PRIVACY ACT: TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)  information complied in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to Executive Order 12356 in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material complied for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability eligibility, or qualification for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his identity would be held in confidence;

(k)(6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his identity would be held in confidence.

# Exhibit E



**U.S. Department of Justice** <span style="float:right">**0801.04**</span>

**Approved On: Dec 11, 2019**

# DOJ Policy Statement

## ELECTRONIC MAIL AND ELECTRONIC MESSAGING RECORDS RETENTION

| | |
|---|---|
| **PURPOSE:** | Establishes Department of Justice (DOJ or Department) retention policy for electronic mail (email) and other types of electronic messaging used to communicate business information related to the Department and its components' mission or functions |
| **SCOPE:** | All DOJ components, employees, and contractors, regardless of the type or duration of their employment |
| **ORIGINATOR:** | Justice Management Division, Office of Records Management Policy |
| **CATEGORY:** | (I) Administrative, (II) Records and Information Management |
| **AUTHORITY:** | 44 U.S.C. §§ 3101, 3301 *et seq.;* 36 C.F.R. §1236.22; OMB M-12-18 Managing Government Records, dated August 24, 2012; Presidential Memorandum, <u>Managing Government Records,</u> dated November 28, 2011; DOJ Order 0801, Records and Information Management, dated March 12, 2014; National Archives and Records Administration (NARA) Bulletins 2013-02, 2014-06, and 2015-02; General Record Schedule 23, item 7; Capstone schedules and NARA Capstone guidance. |
| **CANCELLATION:** | None |
| **DISTRIBUTION:** | Electronically distributed to those referenced in the "SCOPE" section and posted on the DOJ directives electronic repository (SharePoint) at: https://portal.doj.gov/sites/dm/dm/Pages/Home.aspx |
| **APPROVED BY:** | *Lee J. Lofthus*<br>*Assistant Attorney General for Administration* |

U.S. Department of Justice
Policy Statement 0801.04

# ACTION LOG

All DOJ directives are reviewed, at minimum, every 5 years and revisions are made as necessary. The action log records dates of approval, recertification, and cancellation, as well as major and minor revisions to this directive.  A brief summary of all revisions will be noted.  In the event this directive is cancelled, superseded, or supersedes another directive, that will also be noted in the action log.

| Action | Authorized by | Date | Summary |
|---|---|---|---|
| **Initial Document Approval** | Lee J. Lofthus, Assistant Attorney General for Administration | May 8, 2015 | Establishes retention policy for email |
| **Amended** | Lee J. Lofthus, AAG/A | Sep. 21, 2016 | Add retention policy for other types of electronic messaging |
| **Amended** | Lee J. Lofthus AAG/A | | Adds contractors to the Scope section. Revises the definitions for Electronic Messaging and Email User |
| **Amended** | Lee J. Lofthus AAG/A | Dec. 11, 2019 | Added language reinforcing the need for written, component level policy on text messaging consistent with Department level policy |

U.S. Department of Justice
Policy Statement 0801.04

# TABLE OF CONTENTS

**DEFINITIONS** ................................................................................................................ 4

**ACRONYMS** ................................................................................................................... 7

**I.   Policy** ...................................................................................................................... 8

**II.  Electronic Mail** ....................................................................................................... 9

    A.   Emails that are Federal Records ................................................................................. 9

    B.   Non-record Emails ..................................................................................................... 10

    C.   Personal Emails .......................................................................................................... 11

    D.   Personal Email Accounts ........................................................................................... 11

**III.  Electronic Messaging** ........................................................................................... 11

    A.   Records Retention Requirements .............................................................................. 11

    B.   Prohibited Use and Approved Use of Electronic Messaging ...................................... 13

**IV.  Preservation Management** ................................................................................... 14

**V.   Roles and Responsibilities** .................................................................................... 14

    A.   Heads of Components ................................................................................................. 14

    B.   Component Records Manager/Officer ....................................................................... 15

    C.   Component Chief Information Officer ....................................................................... 15

    D.   All Employees ............................................................................................................ 16

U.S. Department of Justice
Policy Statement 0801.04

## DEFINITIONS

| Term | Definition |
|------|------------|
| **Accession** | The transfer of physical and legal custody of permanent records to the National Archives and Records Administration (NARA). |
| **Business Email** | Electronic mail (email) that contains information related to the mission of the Department of Justice (DOJ or Department) or administrative matters. |
| **Capstone** | An email management approach developed by NARA that categorizes and schedules email based on the work and/or position of the email account user.  This approach allows for the capture of all business emails as a records series from the accounts of officials at or near the top of an agency (or an organizational subcomponent) to be preserved as permanent. |
| **Capstone Official** | Any person who serves in a formally designated Capstone position in accordance with this Policy Statement. |
| **Case/Project File** | A planned individual or collaborative enterprise designed to achieve a particular identified result that generates a discrete collection of documents, information, and other materials related to achieving that identified result.  Case/project files may relate to either mission or administrative work.  Examples of case or project files include, but are not limited to a/an: <br><br> • Contract/procurement <br> • Litigation <br> • Civil, criminal, or administrative appeal <br> • Investigation <br> • Congressional oversight <br> • Legal opinion <br> • Grant <br> • Cooperative agreement <br> • Personnel file <br> • Application or permit <br> • Equal Employment Opportunity case <br> • Freedom of Information Act or Privacy Act request and response <br> • Information technology project <br> • Policy/guidance/rulemaking product development |
| **Component** | Any office, board, division, or bureau of DOJ. |

| Term | Definition |
|------|------------|
| **Disposition** | Final operational action in the records lifecycle; includes the destruction of temporary records or the accession of permanent records to NARA. |
| **Electronic Messaging** | For the purpose of this Policy Statement, electronic systems or applications (other than email) that are used for communicating between individuals.  44 U.S.C. 2911. |
| **Email** | One form of asynchronous communication that permits electronic messages to be distributed by electronic means from one computer user account to one or more recipients *via* a network. |
| **Email User** | An employee, contractor, volunteer, intern, fellow, or any other person who uses a DOJ email system or DOJ electronic messaging. |
| **Employee** | For the purpose of this Policy Statement, a person who conducts DOJ business; this includes civil service personnel, political appointees, students, fellows, interns, and contractors. |
| **Federal Records** | Includes all recorded information, regardless of form or characteristics, made or received by a federal agency under federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them.  44 U.S.C. Chapter 3301, *et seq.*  (Does not include library and museum material made or acquired and preserved solely for reference or exhibition purposes or duplicate copies of records preserved only for convenience.) |
| **Heads of Components and Direct Reports** | Includes the Heads of Components (as listed in the official DOJ organization chart), their direct reports, and anyone who is appointed or acting in those positions.  For the purpose of this Policy Statement, this may also include specific component-identified additional positions that routinely advise the Heads of Components (such as positions filled by Presidential Appointment with Senate Confirmation or that otherwise have significant mission critical decision or policy roles). |
| **Permanent Record** | Any federal record appraised by NARA as having sufficient historical or other value to warrant continued preservation beyond the time it is needed for administrative, legal, or fiscal purposes.  Permanent records are accessioned by NARA when no longer needed by the agency. |
| **Program Staff** | Staff of the Senior Leadership Offices assigned mission-related responsibilities, not administrative and support responsibilities. |

| Term | Definition |
|------|------------|
| **Read Receipt** | An automated reply email delivered to the sender when an email is opened by the recipient indicating the date and time the email is opened.  This may not occur if the recipient views the email in the preview pane, views the email on a mobile device, or has disabled the function. |
| **Records Schedule** | Mandatory instructions for what to do with agency records when they are no longer needed for current government business, including a description of the records and an established period for their retention.  Also referred to as "schedule" or "records retention schedule." |
| **Record Series** | File units or documents arranged according to a filing or classification system or kept together because they relate to a particular subject or function; result from the same activity; document a specific kind of transaction; take a particular physical form; or have some other relationship arising out of their creation, receipt, or use, such as restrictions on access and use.  Title 36, Chapter XII, Subchapter B, Part 1220. |
| **Senior Leadership** | The Attorney General, the Deputy Attorney General, the Associate Attorney General, and the program staff assigned to those offices. |
| **Temporary Record** | Any federal record appraised by NARA for disposal after a specified retention period. |
| **Transitory Record** | Business information of short term interest and retained only while there is an operational need.  A transitory record either has no documentary or evidential value on its own or contains record information that merges into later more formalized business information formats, such as agency email, memoranda, correspondence, reports or statements, legal pleadings or filings, or other forms of agency business information that document or memorialize decisions or actions of the agency. |

**ACRONYMS**

| Acronym | Meaning |
|---------|---------|
| **C.F.R.** | Code of Federal Regulations |
| **CIO** | Chief Information Officer |
| **DOJ** | Department of Justice |
| **Email** | Electronic mail |
| **JCON** | Justice Consolidated Network |
| **NARA** | National Archives and Records Administration |
| **NSI** | National Security Information |
| **OMB** | Office of Management and Budget |
| **U.S.C.** | United States Code |

U.S. Department of Justice
Policy Statement 0801.04

## I.      Policy

Department of Justice (DOJ or Department) employees routinely create, send, and receive electronic mail or electronic messages (electronic communications) to communicate information related to the mission or administrative matters of the Department.[1]  Emails that contain federal record content must be retained in electronic systems that provide the capability to identify, retrieve, and retain the records for as long as they are needed for statutory, regulatory, and business purposes, in accordance with recordkeeping requirements for retention and disposition.

As forms of electronic messaging and communication capabilities other than email are becoming part of the DOJ modern office, DOJ employees are using electronic messaging, such as desktop and mobile messaging applications, tools, and services.  These electronic messaging applications, when "used for purposes of communicating between individuals," 44 U.S.C. 2911, in the context of DOJ missions or business functions, may also include federal record content that must be managed in accordance with the Federal Records Act and regulatory requirements for recordkeeping.

It is the policy of the Department to manage the use, maintenance, retention, preservation, and disposition of records created, captured, or shared using email or other electronic messaging while conducting departmental business, in accordance with federal recordkeeping statutory and regulatory requirements.  Employees may use email and electronic messaging applications for departmental business communications only in the manner permitted by this Policy Statement and component level policy or guidance on appropriate use for component business.  Components must issue written policy and guidance regarding the use of electronic messaging in the context of component missions and functions that is consistent with this Policy Statement.

This Policy Statement applies to departmental communications that are federal records whether the applications are hosted by DOJ or hosted on non-DOJ servers.  This Policy Statement identifies:

- High-level records retention requirements for email and electronic messaging used for communications in the conduct of the Department's mission and functions.

- Generally approved and prohibited uses of electronic messaging applications.

---

[1] The Department of Justice also permits employees, on a limited basis, to use email for personal communication as long as it is within the *de minimis* use policy limitations found in DOJ Order 2740.1A, Use and Monitoring of DOJ Computers.

- Roles and responsibilities of stakeholders.

Guidance for electronic messaging (other than email[2]) related to this Policy Statement can be found in DOJ Instruction 0801.04.02, Electronic Messaging Records Retention Instruction.

## II.   Electronic Mail

### A.  Emails That Are Federal Records

Email containing content that is evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Department are federal records and must be maintained in accordance with statutory, regulatory, and departmental policies, as well as records retention schedules approved by the Archivist of the United States.

The Capstone guidance, developed by the National Archives and Records Administration (NARA) for email management, allows agencies to categorize and schedule emails based on the work and/or position of the email account user.  Once the Archivist approves the submitted agency Capstone records retention schedule, the agency must treat all emails that are related to business from the accounts of identified officials at or near the top of an agency (or an organizational subcomponent) as federal records to be preserved as permanent in accordance with the applicable Capstone schedule.

The Department has implemented Capstone schedules as follows:

1.  Senior Leadership Offices

   Business emails (including attachments) sent or received by the Attorney General, Deputy Attorney General, Associate Attorney General, or the program staff assigned to those offices are permanent federal records and should not be deleted by anyone.  The Department must maintain these emails for 15 years after the end of the email user's tenure and then accession the email to NARA.

2.  Heads of Components and direct reports

   Business emails (including attachments) sent or received by Heads of Components, their direct reports, and any other component positions identified on applicable records retention schedules as Capstone Officials are permanent records and should not be deleted by anyone.  The component must maintain these emails after the end of the email user's tenure for the retention period

---

[2] An Instruction for electronic mail related to this policy statement is under development.

reflected in the component's approved records retention schedule and then accession the emails to NARA in accordance with the schedule.

3. All other employees

    a. Case or project email

    Business emails related to a case or project[3] (including attachments) that are sent or received by all other DOJ users must be retained in accordance with the approved records retention schedule for the associated case or project.

    b. Email not related to a case or project

    Record emails that:  1) are not related to a case or project, and 2) are not sent or received by Senior Leadership and their program staff, or Heads of Components and identified Capstone Officials, will be maintained by the component no fewer than 3 years and no more than 7 years.  The Head of Component must designate the number of years based on component needs and report the selected component retention period to the departmental Records Officer, the component Records Officer or Manager, and the component Chief Information Officer (CIO).

**B. Non-record Emails**

Non-record emails are those emails that do not meet the criteria of a federal record.  Non-record emails should be deleted when no longer needed, but, at most, should not be retained any longer than 7 years.  Examples of emails that are typically non-record include, but are not limited to:

- Emails where no substantive action is called for or taken, but are maintained solely for reference or convenience, for example, downloaded legal opinions or resource articles.

- Routine announcements of departmental events.

- Trade journals and other publications.

- Mass informational emails (*e.g.*,  JCON broadcasts).

- Duplicates of email threads.

---

[3] See the description of case or project files with examples in the Definitions section of this document.

- News clips.

- Read/delivery receipts (unless a user considers a read or delivery receipt a record in a case or project file).

### C. Personal Emails

Email messages that are not related to business are considered personal. Users should delete personal emails as soon as possible after receipt or save to a folder marked "Personal" in their electronic mailbox.

### D. Personal Email Accounts

In general, DOJ email users should not create or send record emails or attachments using non-official email accounts. However, should exigent circumstances require the use of a personal account to conduct DOJ business, the DOJ email user must ensure that the communicated information is fully captured in a DOJ recordkeeping system within 20 days. If sending the email from a non-official account, the email user must copy his or her DOJ email address as a recipient. If receiving a DOJ business-related email on a non-official email account, the DOJ email user must forward the business-related email to his or her DOJ email account. Once the user has ensured the capture of the email information in the DOJ account, the DOJ email should be removed from the non-official email account.

## III.  Electronic Messaging Records Retention Requirements

### A.  Records Retention Requirements

Components must develop and implement written component policies that are consistent with this Policy Statement for approved and prohibited use and retention for all electronic messaging applications that are available to component staff.

Electronic message content that is related to DOJ business is considered to be transitory record content except under the circumstances described below. Transitory record information should be disposed of as soon as possible, but retained no longer than 180 days.

1. Capstone Official electronic messaging

   a.  External electronic messaging

Electronic messages intended for the public that are issued by Capstone Officials (or any user delegated authority by the Capstone Official to communicate on his or her behalf) in his or her official capacity on behalf of the Department will be treated as a record series because these communications are widely publicized in the Capstone Official's formal capacity. Such electronic messages are permanent records in accordance with approved Capstone records retention schedules.

b. Internal electronic messaging

Electronic messaging used by Capstone Officials for internal communications or communications with other federal agencies and state, local, and tribal governments will be treated as transitory records. As transitory records, they will have a retention of less than 180 days, unless the electronic messaging content reflects a substantive decision or action of the Capstone Official that is not otherwise memorialized (for example, by a confirming email or by merging into correspondence or memoranda). Capstone Officials should dispose of internal electronic messaging that is transitory as soon as the messages are no longer needed for the immediate business purpose.

Should the electronic messaging reflect an otherwise undocumented decision or action, the Capstone Official must retain the message or otherwise document the action or decision in the recordkeeping systems used by that official.

2. Electronic messages related to criminal or civil investigations

Electronic messages related to criminal or civil investigations sent or received by DOJ employees engaged in those investigations must be retained in accordance with the retention requirements applicable to the investigation and component-specific policies on retention of those messages. (Refer to DOJ Instruction 0801.04.02, Electronic Messaging Records Retention Instruction, for guidance for developing component-specific policies.)

3. Case or project electronic messages

Electronic messages generated or received by Department employees (other than Capstone Officials) that are related to a case or project, document decisions or actions in the case or project, and are not otherwise formally documented, must be captured in the case or project files in accordance with the applicable records retention schedule for the associated case or project. Examples of messages that are "otherwise formally documented" are confirming email communications or

messages that have been merged into formal correspondence, memoranda, or pleadings.

Electronic messages that are not related to the substance of the case or project, are not the only documentation of an action or decision in the case or project, or are strictly administrative are considered transitory records and should be disposed of as soon as possible, but retained no longer than 180 days.

4. Electronic messages not related to a case or project

Except when required to be retained as described above in III.A.1-3 of this Policy Statement, or in any component-specific policy related to its mission and functions, all electronic messages sent or received by employees of the Department that are related to business are considered transitory records and should not be retained longer than 180 days.

**B. Prohibited Use and Approved Use of Electronic Messaging**

1. Prohibited use

Electronic messaging, as defined in this Policy Statement, may not be used for:

- Discussion of procurement sensitive information.

- Discussion of National Security Information (NSI) matters of any kind, unless the electronic messaging occurs through systems or applications approved for NSI.

- Law enforcement sensitive or any other sensitive information that is subject to controlled access, unless the messaging occurs through systems or applications with required access controls.

- Inappropriate use as defined in DOJ Order 2740.1A, Use and Monitoring of DOJ Computers, dated November 30, 2010, or its successor.

- Any additional prohibited use defined by component-specific policy for component employees.

2. Approved use

Electronic messaging, as defined in this Policy Statement, may be used by employees for conversational communications that are typically logistical or

administrative in purpose (such as scheduling, status inquiries, and routine business operations), unless there is component level policy prohibiting use. (Refer to DOJ Instruction 0801.04.02, Electronic Messaging Records Retention Instruction, for guidance for developing component-specific policies.)  Examples of allowed communications include those that:

- Confirm availability.

- Discuss logistics and timing of meetings and events.

- Share reference information.

- Reflect only logistical or administrative matters related to projects.

- Contain conversation that is personal as long as it complies with the Department's *de minimis* use policy stated in DOJ Order 2740.1A, Use and Monitoring of DOJ Computers.

- Permit use defined by component-specific policy for component employees related to mission and functions of the component and where the component has developed policy and approaches for use and capture of any federal records created through the permitted use.

## IV.    Preservation Management

Upon notice of a legal requirement to hold or preserve email or electronic messaging content, components should:  1) be capable of suspending disposition, and 2) retain any email or electronic messages that exist and relate to the request, regardless of record status, until the obligation to preserve ends.  *See* DOJ Order 0802 Management of Preservation Responsibilities.

## V.    Roles & Responsibilities

### A.  Heads of Components

The Heads of Components must:

1. Ensure that all email and electronic messages are maintained in accordance with applicable records retention schedules.

2. Provide to the Office of Records Management Policy written designation of the position titles for Heads of Components and direct reports of component Capstone

Officials as defined in the Definitions section of this document.  Update designation of position titles as organizational changes occur.

3. Develop and implement written component policies for approved and prohibited use of component email and electronic messaging applications that are consistent with this Policy Statement.

4. Ensure that all component employees have been provided training or written instructions appropriate to their role and responsibilities for the component, including approved and prohibited use of component email and electronic messaging applications consistent with this Policy Statement and component policies.

Guidance for component policy development can be found in DOJ Instruction 0801.04.02, Electronic Messaging Records Retention Instruction.

## B.  Component Records Manager/Officer

The component Records Manager/Officer must:

1. Maintain a list of names and dates of tenure of component Capstone Officials.

2. Work with the component CIO to develop procedures for associating case or project email and electronic messages that are not administrative in nature with related case or project records.

3. Work with the component CIO to develop component guidance for the management, retention, and disposition of transitory electronic messages.

4. Prepare and approve transfer of permanent electronic messages to NARA for accession in accordance with approved records schedules and existing preservation obligations.

## C.  Component Chief Information Officer

The component CIO must:

1. Work with Records Managers/Officers to provide tools and approaches to maintain email and electronic messages that must be retained in accessible and usable formats for the required retention period.

2. Ensure that capabilities exist to preserve email and electronic messages should a legal obligation to preserve this information arise.

15

3. Ensure that component processes allow for removal of non-record and personal emails.

4. Maintain permanent emails in accordance with applicable records retention schedules and in approved email formats according to existing NARA transfer standards.

5. Ensure that component processes allow for the required disposition of transitory electronic messages.

6. Maintain electronic messages in accordance with this Policy Statement and any applicable records retention schedules.

**D. All Employees**

All employees must:

1. Comply with the provisions of DOJ Order 0801, Records and Information Management, and this Policy Statement.

2. Use only approved email and electronic messaging applications and accounts to send and receive DOJ business-related communications in accordance with this Policy Statement.

3. Follow Department and component policies and procedures for appropriate retention of email and electronic messaging based on the employee position, the record status of the email or electronic message, and any applicable records retention schedules.

# Exhibit F

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
Request for Records Disposition Authority                                      Records Schedule: **DAA-0060-2015-0007**

# Request for Records Disposition Authority

| | |
|---|---|
| Records Schedule Number | DAA-0060-2015-0007 |
| Schedule Status | Modified Approved Version |
| Agency or Establishment | Department of Justice |
| Record Group / Scheduling Group | General Records of the Department of Justice |
| Records Schedule applies to | Department-wide |
| Schedule Subject | Email Records of the Heads of Components |
| Internal agency concurrences will be provided | No |

Background Information

The Head of each Component in the Department of Justice has oversight responsibility and the highest level of authority for Component decision making. In the course of their work, they oversee operations and management of the Component as well as development and implementation of policies, processes, decisions, and actions that support the component mission functions.

This schedule covers the email records of the Heads of all Components in the Department of Justice that are listed in the official Department organizational chart as signed by the Attorney General, except the Senior Leadership Offices (Attorney General, Deputy Attorney General, and Associate Attorney General) and Components headed by an Assistant Attorney General.

The Heads of Components for the following offices are covered by this schedule:

Offices, Boards and Divisions:
• Office of the Solicitor General (OSG)
• Executive Office for US Trustees (EOUST)
• Office on Violence Against Women (OVW)
• Community Oriented Policing Services (COPS)
• Office of Information Policy (OIP)
• Foreign Claims Settlement Commission (FCSC)
• Community Relations Service (CRS)
• Office of Public Affairs (PAO)
• Office of Tribal Justice (OTJ)
• Office for Access to Justice (ATJ)
• Interpol Washington
• Office of the Inspector General (OIG)

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
Request for Records Disposition Authority                                    Records Schedule: **DAA-0060-2015-0007**

- Professional Responsibility Advisory Office (PRAO)
- Office of Professional Responsibility (OPR)
- Office of the Pardon Attorney (OPA)
- US Parole Commission (USPC)
- Executive Office for Organized Crime Drug Enforcement Task Forces (OCDETF)

Independent Records Programs:
- Drug Enforcement Administration (DEA)
- Executive Office for US Attorneys (EOUSA)
- US Attorneys
- Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)
- Bureau of Prisons (BOP)
- US Marshals Service (USMS)
- Executive Office for Immigration Review (EOIR)

Note: The email records of the Director and leadership of the Federal Bureau of Investigation are already scheduled per N1-65-07-1 and are not included in this records schedule.

## Item Count

| Number of Total Disposition Items | Number of Permanent Disposition Items | Number of Temporary Disposition Items | Number of Withdrawn Disposition Items |
|---|---|---|---|
| 1 | 1 | 0 | 0 |

## GAO Approval

## Outline of Records Schedule Items for DAA-0060-2015-0007

| Sequence Number | |
|---|---|
| 1 | Heads of Component Email Records<br>Disposition Authority Number: DAA-0060-2015-0007-0001 |

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
Request for Records Disposition Authority

Records Schedule: **DAA-0060-2015-0007**

## Records Schedule Items

Sequence Number

1

### Heads of Component Email Records

Disposition Authority Number    DAA-0060-2015-0007-0001

Heads of Components have oversight responsibility for the mission of the components and report directly to the Deputy Attorney General or the Associate Attorney General. Direct reports include any positions reporting directly to the Head of the Component and may also include other specifically identified positions that 1) routinely advise the Head of Component, 2) are positions filled by Presidential Appointment with Senate Confirmation, or 3) otherwise have significant mission critical decision or policy roles. This item includes all electronic mail (e-mail) records (with attachments) related to the mission of the Department created and received by the Heads of Components and direct reports.

| | |
|---|---|
| Final Disposition | Permanent |
| Item Status | Active |
| Is this item media neutral? | No |
| Explanation of limitation | limited to email and attachments |
| Do any of the records covered by this item currently exist in electronic format(s) other than e-mail and word processing? | No |

### Disposition Instruction

| | |
|---|---|
| If this item has multiple sections, indicate here records to which this section apply | These disposition instructions apply to the following DOJ components only: Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Drug Enforcement Administration (DEA), Community Relations Service (CRS), Executive Office for Organized Crime Drug Enforcement Task Forces (OCDEFT), Office of Inspector General (OIG), Office of the Pardon Attorney (OPA), Professional Responsibility Advisory Office (PRAO) and Office of the Solicitor General (OSG). |
| Cutoff Instruction | Cut off at end of calendar year in which the official ends his/her tenure. |
| Transfer to the National Archives for Accessioning | Transfer to the National Archives 25 year(s) after cutoff |

Additional Information

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
Request for Records Disposition Authority                                    Records Schedule: **DAA-0060-2015-0007**

| | |
|---|---|
| What will be the date span of the initial transfer of records to the National Archives? | Unknown<br>This depends on individual tenures. |
| How frequently will your agency transfer these records to the National Archives? | Unknown<br>This depends on individual tenures. |

## Disposition Instruction

| | |
|---|---|
| If this item has multiple sections, indicate here records to which this section apply | These disposition instructions apply to the following DOJ components only: Bureau of Prisons (BOP), Executive Office of Immigration Review (EOIR), Executive Office of United States Attorneys (EOUSA), United States Attorneys, United States Marshalls Service (USMS), Access to Justice (ATJ), Community Oriented Policing Services (COPS), Executive Office of United States Trustees (EOUST), Foreign Claims Settlement Commission (FCSC), Office of Information Policy (OIP), Office of Professional Responsibility (OPR), Office of Public Affairs (PAO), Office of Tribal Justice (OTJ), Office of Violence Against Women (OVW), INTERPOL Washington, United States Parole Commission (USPC). |
| Cutoff Instruction | Cut off at end of calendar year when official ends his/her tenure. |
| Transfer to the National Archives for Accessioning | Transfer to the National Archives 15 year(s) after cutoff |

## Additional Information

| | |
|---|---|
| What will be the date span of the initial transfer of records to the National Archives? | From 1999 To 2005 |
| How frequently will your agency transfer these records to the National Archives? | Unknown<br>This depends on tenure dates. |

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
Request for Records Disposition Authority

Records Schedule: **DAA-0060-2015-0007**

## Agency Certification

I hereby certify that I am authorized to act for this agency in matters pertaining to the disposition of its records and that the records proposed for disposal in this schedule are not now needed for the business of the agency or will not be needed after the retention periods specified.

### Signatory Information

| Date | Action | By | Title | Organization |
|------|--------|-----|-------|--------------|
| 03/11/2015 | Certify | Rebekah Meservy | Assistant Director of RIM Operations | Justice Management Division - Office of Records Mgt Policy |
| 06/09/2015 | Submit for Concurrence | Erin Cayce | Appraiser | National Archives and Records Administration - Records Management Services |
| 06/16/2015 | Concur | Margaret Hawkins | Director of Records Management Services | National Records Management Program - ACNR Records Management Serivces |
| 06/16/2015 | Concur | Laurence Brewer | Director, National Records Management Program | National Archives and Records Administration - National Records Management Program |
| 06/18/2015 | Approve | David Ferriero | Archivist of the United States | Office of the Archivist - Office of the Archivist |

# Exhibit G

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
Request for Records Disposition Authority                                    Records Schedule: **DAA-0060-2016-0003**

# Request for Records Disposition Authority

| | |
|---|---|
| Records Schedule Number | DAA-0060-2016-0003 |
| Schedule Status | Approved |
| Agency or Establishment | Department of Justice |
| Record Group / Scheduling Group | General Records of the Department of Justice |
| Records Schedule applies to | Department-wide |
| Schedule Subject | Email from Non-Capstone Official Accounts |
| Internal agency concurrences will be provided | No |

Background Information

The Department of Justice uses agency specific records control schedules to manage its permanent and temporary email. DOJ email management generally follows the NARA Capstone approach as set forth in NARA General Records Schedule (GRS) 6.1, Email Managed Under a Capstone Approach. The email of DOJ designated Capstone officials is covered by NARA approved records control schedules N1-060-10-036, Email Records of the Attorney General, Deputy Attorney General, and Associate Attorney General and their Program Staffs. DAA-0060-2015-0006, U.S. Department of Justice Assistant Attorneys General Email, DAA-0060-2015-0007, Email Records of the Heads of Components. N1-060-10-035, Electronic Mail Records of Administrative Staff for the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General schedules non-Capstone email and is specific to the DOJ Senior Leadership Offices. This schedule covers all other non-Capstone emails that are not associated with a related case or project. Emails identified as non-record, transitory, or personal and not related to DOJ business, follow the disposition set forth in General Records Schedule 5.2, Item 010. This schedule does not cover email created by the Federal Bureau of Investigation.

## Item Count

| Number of Total Disposition Items | Number of Permanent Disposition Items | Number of Temporary Disposition Items | Number of Withdrawn Disposition Items |
|---|---|---|---|
| 1 | 0 | 1 | 0 |

## GAO Approval

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
Request for Records Disposition Authority

Records Schedule: **DAA-0060-2016-0003**

## Outline of Records Schedule Items for DAA-0060-2016-0003

Sequence Number

1

Email From Non-Capstone Official Accounts
Disposition Authority Number: DAA-0060-2016-0003-0001

## Records Schedule Items

Sequence Number

1

### Email From Non-Capstone Official Accounts

Disposition Authority Number    DAA-0060-2016-0003-0001

This item covers email records of individuals who are not designated as DOJ Capstone officials. This item does not apply to emails associated with a related case or project. DOJ Components covered by this item must use the longest retention in the range unless the Component submits to the Office of Records Management Policy (ORMP) their written policy and practice establishing standardized retentions within the retention range set by this schedule, which are appropriate for the Component's mission, business, and legal requirements.

| | |
|---|---|
| Final Disposition | Temporary |
| Item Status | Active |
| Is this item media neutral? | No |
| Explanation of limitation | Item covers email only. |
| Do any of the records covered by this item currently exist in electronic format(s) other than e-mail and word processing? | No |

### Disposition Instruction

Retention Period          Destroy between 3 year(s) and 7 year(s) after sent or received

### Additional Information

GAO Approval             Not Required

## Agency Certification

I hereby certify that I am authorized to act for this agency in matters pertaining to the disposition of its records and that the records proposed for disposal in this schedule are not now needed for the business of the agency or will not be needed after the retention periods specified.

### Signatory Information

| Date | Action | By | Title | Organization |
|------|--------|-----|-------|--------------|
| 05/04/2016 | Certify | Rebekah Meservy | Assistant Director of RIM Operations | Justice Management Division - Office of Records Mgt Policy |
| 10/12/2017 | Return for Revision | Lloyd Beers | Appraisal Archivist | National Archives and Records Administration - ACNR Records Management Services |
| 10/16/2017 | Submit For Certification | Rebekah Meservy | Assistant Director of RIM Operations | Justice Management Division - Office of Records Mgt Policy |
| 10/16/2017 | Certify | Rebekah Meservy | Assistant Director of RIM Operations | Justice Management Division - Office of Records Mgt Policy |
| 02/21/2018 | Submit for Concurrence | Lloyd Beers | Appraisal Archivist | National Archives and Records Administration - ACNR Records Management Services |
| 02/26/2018 | Return to Submitter | Margaret Hawkins | Director of Records Management Services | National Records Management Program - ACNR Records Management Serivces |
| 04/06/2018 | Submit for Concurrence | Lloyd Beers | Appraisal Archivist | National Archives and Records Administration - ACNR Records Management Services |
| 04/06/2018 | Concur | Rachel BanTonkin | Supervisory Archives Specialist | National Archives and Records Administration - ACR1 |
| 04/10/2018 | Concur | Margaret Hawkins | Director of Records Management Services | National Records Management Program - ACNR Records Management Serivces |

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
Request for Records Disposition Authority

Records Schedule: **DAA-0060-2016-0003**

| 04/11/2018 | Approve | David Ferriero | Archivist of the Unite d States | Office of the Archivist - Office of the Archivist |

# Exhibit H



**United States Attorneys'**
**Policies and Procedures**

Version 2.0
**No.** 3-13.300.007

| First Posted Date: | Jan. 26, 2022 |
|---|---|
| Current Ver. Date: | Oct. 31, 2022 |
| *See Version History Log for prior versions.* | |

# ELECTRONIC RECORDS AND INFORMATION MANAGEMENT

| | |
|---|---|
| **SCOPE:** | These policies and procedures apply to the Executive Office for United States Attorneys (EOUSA) and all United States Attorneys' Offices (USAOs) and are intended solely for internal agency use. |
| **PURPOSE:** | To establish policies and procedures for electronic recordkeeping |
| **ORIGINATING OFFICE:** | Records and Information Management Staff Office of the Chief Information Officer |
| **CATEGORY:** | Records & Information Mgt. |
| **SUPERSEDES:** | None |
| **ORIGINATOR:** | Laura Besong, Assistant Director, RIM Staff |
| **APPROVED BY:** | Jill Janecek, Chief Information Officer, EOUSA |

# TABLE OF CONTENTS

ELECTRONIC RECORDS AND INFORMATION MANAGEMENT ................................ 1

TABLE OF CONTENTS ................................................................................................ 2

**1.** Background .......................................................................................................... 3

**2.** Records Retention ............................................................................................... 3

**3.** Definitions ........................................................................................................... 3

**4.** Legal Citations ................................................................................................... 3

**5.** Related References ............................................................................................. 3

**6.** Policy .................................................................................................................. 3

    A.    Electronic Records Lifecycle ............................................................... 4

    B.    Electronic Mail and Electronic Messaging Records ............................ 7

    C.    Electronic Case Files ......................................................................... 11

    D.    Litigation Holds and Information Access Requests ............................ 13

    E.    Digitization ......................................................................................... 13

    F.    Electronic and Digital Signatures ...................................................... 15

    G.    Version Control ................................................................................... 16

    H.    Naming Conventions .......................................................................... 17

    I.    Metadata ............................................................................................ 18

    J.    File Formats ....................................................................................... 19

    K.    Folder Structures ............................................................................... 20

    L.    Electronic Information Systems .......................................................... 20

    M.    Accessibility ....................................................................................... 21

**7.** Roles and Responsibilities ................................................................................ 21

    A.    Chief Information Officer ..................................................................... 21

    B.    Assistant Director, Records and Information Management Staff ......... 22

    C.    Records Coordinator .......................................................................... 22

    D.    Systems Manager .............................................................................. 22

    E.    Administrative Officer ......................................................................... 22

    F.    All Employees .................................................................................... 22

VERSION HISTORY LOG ........................................................................................... 24

GLOSSARY OF TERMS ............................................................................................. 25

APPENDIX ................................................................................................................... 30

## 1.  Background

Just like physical records, electronic records must be managed in accordance with federal records management laws, regulations and policies.  Electronic records are stored in a form that only a computer can process.  These records can be numeric, graphic, audio, video and text information; media can include, but are not limited to, hard drives, flash drives, magnetic media, such as tapes, disks, and optical disks.  While EOUSA and each USAO may have different structures, they do have a common need for how to manage their electronic records.  This United States Attorneys' Policies and Procedures (USAPP) provides guidance to EOUSA/USAOs on how to maintain, preserve, and destroy electronic records.

## 2.  Records Retention

Federal records generated under this document are subject to the retention periods prescribed by the General Records Schedules (GRS), or SF-115 Agency Records Schedules governing such records, as further specified below (if applicable).

## 3.  Definitions

*See* **Appendix A.**

## 4.  Legal Citations

- 44 U.S.C. § 3551, Federal Information Security Modernization Act (FISMA)
- 28 C.F.R. § 0.22, EOUSA General Functions (Subpart D-1)
- 44 U.S.C. §§ 3101, 3301 *et seq.*
- 36 C.F.R. § 1220 *et seq.*
- 29 U.S.C. § 798, Section 508 of the Rehabilitation Act

## 5.   Related References

- DOJ Directives, Orders, Policy Statements, Instructions
- OMB Circular A130, Management of Federal Information Resources
- OMB Memorandum (M-19-17) Enabling Mission Delivery through Improved Identity, Credential, and Access Management
- OMB/NARA Memorandum (M-19-21) Transition to Electronic Records
- Electronic Media Security and Encryption USAPP 3-16.200.015
- Litigation and Legal Hold Procedures USAPP 3-13.300.003
- Case File Creation and Preservation USAP 3-13.300.005
- Metadata Preservation and Removal USAPP 3-13.300.006

## 6.  Policy

The federal government has increasingly recognized the importance of using electronic formats for sharing information to meet business needs, providing easy access for stakeholders, and supporting mission success.  Notably, in 2012 and 2019, the National Archives and Records Administration (NARA) and the Office of Management and Budget

(OMB) jointly issued OMB Memoranda M-12-18 and M-19-21 that collectively declared that all temporary and permanent federal records must be managed electronically, and with appropriate metadata, by the end of 2022.  Furthermore, after December 31, 2022, NARA will no longer accept transfers of permanent or temporary records in analog formats (hardcopy, microfilm, and microfiche) and will only accept records in electronic formats for accessioning.  Additional business drivers for the move to electronic records include an increased need for transparency and accessibility to information (e.g., Presidential Memoranda and Directives, Freedom of Information Act, and eDiscovery), changing human resource management needs (e.g., teleworking), space consolidation, and resiliency for emergency preparedness.

Electronic records include records generated by technology or on equipment such as personal computers, telecommunication systems (i.e., mobile devices), electronic mail systems or other electronic information systems.  The requirements for the maintenance, use, and disposition of electronic records are the same as those for paper records.  The disposition of electronic records is governed by records retention schedules approved by the Archivist of the United States to ensure government agencies maintain control of their electronically stored information (ESI).

Electronic records have additional requirements that should be considered when preserving to ensure their integrity, which includes but is not limited to the use of electronic signatures, version control, metadata, security, and accessibility.

## A.  Electronic Records Lifecycle

1. Creation

    When EOUSA/USAO employees, detailees, and contractors (hereinafter, collectively, "Users") create or receive electronic content, the records management lifecycle begins, and Users must determine how the content will be managed.  The process for managing electronic content includes determining the subject, matching the content to existing business functions, ensuring the format is acceptable, and ensuring the metadata is adequate and accurate.  Users are responsible for verifying that electronic records can be managed in a way that ensures they are reliable, authentic, usable, and have integrity.

    Users should work with EOUSA/USAO records management staff to analyze records to identify the business function of the group of records, determine the business value of the group of records, and identify retention periods of similar records.  Additionally, Users should coordinate with EOUSA/USAO records management staff to determine if an existing EOUSA-specific, DOJ-specific or NARA General Records Schedule (GRS) applies to the records and should assign the electronic records to the appropriate records schedule.  This consists of determining the correct group of records to assign to electronic records and ensuring the assigned group of records is tied to a records schedule.  If there is not a records schedule, electronic records must be treated as permanent.

2. Maintenance and Use

Once electronic records have been captured or records management controls have been applied, the Maintenance and Use phase begins. When suitable, Users should determine the appropriate access level for electronic records by reviewing the content of a record or group of records, identifying Users that need access to the record, choosing the appropriate level of access to records based on the nature of the subject, and assigning access levels to records. Users should coordinate with EOUSA/USAO Information Technology (IT) staff to ensure controls are put in place (where applicable) to audit the log of records to see if any changes were made and by whom. This includes searching for the electronic records, retrieving the audit log, identifying entries in the audit log to investigate, contacting the individual who made those changes, and asking the individual about the circumstances surrounding the changes made to the electronic records.

3. Disposition

Disposition refers to the instructions for what is to be done with a record that is no longer needed to support agency business. There are two types of dispositions for records:

a) Temporary – Records that will eventually be destroyed or deleted when all relevant business needs have expired.

b) Permanent – Records that contain historically significant materials, provide evidence of agency accomplishments, or document important events in national history, and as a result will be preserved by NARA.

Temporary Electronic Records

Once temporary electronic records have met the required retention period identified in the records retention schedule, they must be disposed of. First, EOUSA/USAO records management staff should notify the relevant stakeholders that the electronic records are eligible for disposal. This process consists of notifying business owners that electronic records are approved for disposal, identifying all approved records that will be disposed, notifying the EOUSA/USAO records management staff of the records approved for disposal, receiving approval from the respective records management staff to proceed with the disposal, and disposing of the approved records from the agency systems.

Permanent Electronic Records

Electronic records that are deemed to have historical value should be marked permanent and preserved by EOUSA/USAO in accordance with the records schedule. Once these records have met their retention period, the records enter the transfer phase. The permanent records must first be approved to be transferred to NARA; this includes identifying and preparing permanent records, notifying business owners of

permanent records eligible for transfer, receiving approval from business owners, notifying the USAO Records Coordinator or EOUSA Records Liaison of permanent records eligible for transfer, and receiving approval from the USAO Records Coordinator or EOUSA Records Liaison to proceed with the transfer.  The records must then be transferred to NARA; this process consists of identifying approved records for transfer, ensuring the records are in approved formats, exporting the records from agency systems, creating transfer documentation to accompany the transfer to NARA, and transferring the records and documentation to NARA.  Lastly, EOUSA/USAO must dispose of the copies of transferred records once NARA confirms receipt and creates a record of transfer.  EOUSA/USAO may need to extend the time frame for which they retain legal custody of permanent records to accommodate an order, law, or business justification.

4. Unscheduled Electronic Records

   Unscheduled records are records that do not have a NARA-approved disposition authority.  When Users discover electronic information that does not have an associated records retention schedule, they should promptly report the unscheduled records to EOUSA/USAO records management staff.  Unscheduled electronic records may not be destroyed or deleted.

5. Non-records and Personal Materials

   During the regular course of business, it is expected that Users will accumulate and retain information that does not qualify as a federal record or is personal in nature.  It is important that Users maintain this information separate from federal records.

   a) Non-records can include information that does not meet the general definitions of a record, like convenience copies, catalogs, blank forms, or documents on which no administrative action is recorded or taken.

   b) Non-record case materials include discovery or submitted materials that are not filed in court, not cited, and not necessary to document decisions and strategies or to understand the outcome of the case; library reference materials; legal research (unless it is significant to the case); personal communications unrelated to the decisions and strategies or outcome of the case; exact duplicate copies; drafts that receive only grammatical or insubstantial stylistic changes; and physical objects related to the case or introduced as exhibits, such as models, weapons, equipment, and medical samples.

6. Electronic Storage and External Media

   Electronic records should be stored in an accessible location and available to authorized Users.  Acceptable electronic storage repositories include cloud storage, local network drives, common shared drives, and removeable media (i.e., external hard drives, USB drives, or optical media).  Because data contained on electronic media must be maintained in a sustainable format (i.e., have the ability to access an electronic record throughout its lifecycle, regardless of the technology used when it was

originally created), no computer storage medium can truly be considered archival. Electronic media should be placed in a protective case and stored vertically to increase its physical longevity.

For more information on permissible file formats, please see NARA Bulletin 2014-04, Appendix A: Transfer Guidance Format Tables.

External (or removable) media can include USB drives, compact discs (CDs), digital video discs (DVDs), and portable/mobile devices (such as laptop computers or smartphones), and information stored by a non-agency service such as a cloud or managed service.  Access should be limited to EOUSA/USAO employees and contractors.  All removable media must be encrypted using a FIPS 140-2 validated or an NSA-approved encryption mechanism, based on the classification of information processed on the device, unless the data is determined, in writing, to be non-sensitive by the EOUSA Chief Information Officer or designee.  Laptop computers must use antivirus software and a host-based firewall mechanism.  EOUSA/USAOs must ensure all security-related updates are installed on mobile computers and devices.  Information on mobile devices that is categorized as "federal record information" must be managed in accordance with applicable records retention schedules and departmental and EOUSA policies.

For more information on the technical requirements for removeable media, please see Electronic Media Security and Encryption USAPP 3-16.200.0015.

7.  Cleanup and Data Destruction

In order to ensure information maintained on the EOUSA/USAO networks are up-to-date, relevant, accurate, and easily accessible, Users are required to routinely review and purge any electronic non-record or personal materials.  Additionally, effective records management includes timely deletion of electronic records.  Users should routinely review information located on network drives, cloud storage, and removeable media to determine if temporary records have met their retention.  When deleting electronic records, Users should coordinate with their local records management staff to ensure temporary records are eligible for destruction and to document any records that have been destroyed.  Users responsible for permanent records should contact their local records management staff to determine if records are ready to be accessioned by the National Archives.

## B.  Electronic Mail and Electronic Messaging Records

In 2014, the Federal Records Act was amended to include a definition for electronic messages (See 44 U.S. Code §2911).

i.  The term 'electronic messages' means electronic mail and other electronic messaging systems that are used for purposes of communicating between individuals.

ii.   The term 'electronic messaging account' means any account that sends electronic messages.

1. Electronic Mail (Email) Records

Email containing content that is evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of EOUSA or USAOs are federal records and must be maintained in accordance with statutory, regulatory, Department of Justice (DOJ) policies, as well as records retention schedules approved by the Archivist of the United States.  It is the policy of EOUSA, that all electronic messages that are used to conduct official government business must be captured and retained regardless of the medium in which they were created.

Email records are to be created and received within a government assigned system and issued account.  Emails with sensitive information should be processed and classified accordingly as required to ensure secure and proper retention.

Note:  Emails obtained in cases as potential evidence are covered in the Electronic Case File Section below.

a)   Senior Leadership (Capstone Officials)

Business emails (including attachments) sent or received by any United States Attorney (USA), the EOUSA Director, EOUSA Deputy Director and EOUSA Chief of Staff are permanent federal records and should not be deleted by anyone. These emails are retained for 15 years after the end of the User's tenure and then accessioned to NARA (see Disposition Authority DAA-0060-2015-0007).

b)   All Other Employees

Business emails (including attachments) sent or received by all other employees are temporary records and retained for 3 years, after which, email is automatically deleted from the USAMail storage system (see Disposition Authority DAA-0060-2016-0003).

c)   Case or Project Email

Business emails related to a case or project (including attachments) that are sent or received by any User must be retained in accordance with the approved records retention schedule for the associated case or project.  Users should separate any case or project related materials from their email account and save to an approved repository.  These materials should be stored in accordance with the respective records retention schedule.

d)   Non-official Email Accounts

Per the amendments of the Federal Records Act of 2014 (44 U.S. Code §2911), an employee of an executive agency may not create or send a record using a non-official electronic messaging account.  If you do, then you must:

i.   Copy an official electronic messaging account of the employee in the original creation or transmission of the record; and

ii.  Forward a complete copy of the record to an official electronic messaging account of the employee no later than 20 days after the original creation or transmission of the record

2.  Electronic Messaging Applications

a)  Text Messages

Employees should not create any federal records (e.g., significant actions affecting business decisions) using text messages, regardless of whether these messages are being sent via government furnished equipment or an employee's personal phone. In the rare and extenuating circumstance that an employee must create records using text messages, the employee must take the necessary action to preserve the messages.  At a minimum, the text and call related messages must be kept in an electronic file format (e.g., screen capture of text), attached, and forwarded to their official government email account.

b)  Instant or Chat Messages

The use of electronic messaging platforms for instant or chat messages has become an integral part of how EOUSA/USAOs communicate.  These messages should only be used for transitory communications and should not be used to conduct official government business.  Transitory record information should be disposed of as soon as possible but retained no longer than 180 days (See GRS 5.2, item 010).

Electronic messaging may be used by employees for conversational communications that are typically logistical or administrative in purpose (e.g., scheduling, status inquiries, and routine business operations).  Other examples of allowed communications include those that confirm availability, discuss logistics and timing of meetings and events, share reference information, reflect only logistical or administrative matters related to projects, and contain conversations that are personal (as long as these communications comply with the Department's de minimis use policy stated in DOJ Order 0908, Use and Monitoring of DOJ Information Technology, Information Systems, and Access to an Authorized Users' Electronic Information).

c)  Prohibited Use of Electronic Messaging

Electronic messaging, as defined in DOJ Policy Statement 0801.04, may not be used for:

i.  Discussion of procurement sensitive information.

ii.  Discussion of National Security Information (NSI) matters of any kind, unless the electronic messaging occurs through systems or applications approved for NSI.

iii.  Law enforcement sensitive or any other sensitive information that is subject to controlled access, unless the messaging occurs through systems or applications with required access controls.

iv.  Inappropriate use as defined in DOJ Order 0908, Use and Monitoring of DOJ Information Technology, Information Systems, and Access to an Authorized Users' Electronic Information, dated August 18, 2020.

3.  Social Media and Websites

a)  Social Media

Social media content is dynamic and may be continually updated, which may cause challenges for capture.  Permanent and long-term temporary social media records should be captured and managed outside of the social media platform. Short-term temporary social media records may be managed in the platform.

Records created or received using Social Media (e.g., Twitter, Facebook, YouTube, podcasts, etc.) must be effectively managed throughout their lifecycle, and are subject to the same statutory, regulatory, and EOUSA records and information management requirements as records in other formats and on other media.  Social Media platforms provide functionality to download a User's archive.  These records should be downloaded, appropriately marked and preserved with a User's network files.  Users should ensure that they have prior approval to create social media records on behalf of the government.

b)  Websites

Records management staff must ensure that website-related records created from EOUSA/USAO web operations including web content records and website administrative records are preserved, maintained, and disposed of in accordance with approved records retention and disposition schedules.  It is a best practice for website content to remain accessible to the public.  If content is removed, an explanation should be provided as there is an expectation from Users that content will be available for the foreseeable future.

Users should assume content posted on website platforms are records.  It is possible that not all website records are permanent records, however Users should review website content and coordinate with records management staff to ensure that web-related records are captured and managed separate from the platform. Permanent and long-term temporary website records should be captured and

managed outside of the live website.  Short-term temporary website records may be managed in the platform.  In order to determine the best approach for managing website records, Users should make considerations such as the frequency of updates, the level at which a website will be managed, how to manage dynamic content, how to manage day-forward capture of data, how to handle deleted content, how to capture and manage legacy websites, and how to handle content that resides in third-party platforms.

## C. Electronic Case Files

Litigation case files – regardless of format – are required to contain sufficient documentation to understand the nature, course, and outcome of a case and the USAO's legal and administrative handling of it.  Litigation case files should follow specific office created workflows and while each case file will be different, there should be a standardized approach (determined by Leadership in each office) to creation, storage, and handling of electronic files during the litigation lifecycle, including evidence, discovery information, pleadings, outlines, work product, etc.

1. Creation

   When organizing electronic criminal or civil litigation case files, each case or matter should be stored in a unique location with the corresponding USAO number assigned under the USAO established numbering system.  The case storage locations – to the fullest extent possible – should contain all reports and preliminary papers, copies of indictments or pleadings, etc., and all correspondence.  Each litigation case file(s) will contain varying amounts of information, according to the natural progression of the matter or case.

   a) Electronic materials created by the USAO

      Users may generate a substantial volume of electronic files in the form of work product, correspondence, pleadings, emails, subpoenas, agreements, contracts, filings, and research materials.  These USAO-created electronic materials can be saved in the following locations, depending on individual office protocols: the USAO's network drive, the USAO's cloud storage, external media, or an EOUSA-approved Document Management System, if available.

   b) Electronic materials received by the USAO

      The USAO should seek or request only those records that are within the scope of the case or matter to the fullest extent possible.  Once these materials are received by the USAO, an unaltered copy of the original electronic source material should be stored in the format in which it was received in a specific location associated with the litigation case file capable of storing the data size associated with this material.

USAOs should track all electronic materials received by the USAO, the date of receipt, the entity providing the materials to the USAO, and the format of the materials provided to the USAO.

Electronic materials received by USAOs that are not suitable for loading into a document review platform should be associated with the litigation case file and stored in an appropriate location in accordance with the USAO's workflow.  This location should be secure and sustainable.  Best practice guidance regarding the recommendations on how and where materials should be stored can be found accompanying this USAPP (see Appendix).

All other electronic materials received by the USAO may be processed to be placed into an approved electronic review platform.  Any evidentiary and investigative information that is reformatted and reorganized to create another unique set of data – such as bates stamped production copies or exhibits, should be marked and preserved separately from the original electronic material received by the USAO.

Electronic materials that are produced by the USAO to other parties should be marked and stored within the case file separate from the original electronic material received by the USAO.  Logs and/or indices of produced materials should be maintained.

Similarly, the USAO should maintain a copy of the electronic materials that are entered into evidence with the court.

2. Maintenance and Control

Electronic case files should be accessible to authorized Users.  To ensure integrity of information and avoid any spoliation, electronic case files and any associated information should be under the control of the assigned attorney(s), supervisors, and legal staff.

Electronic case files should be maintained in accordance with the corresponding Criminal and Civil Matters and Case File records retention schedule (N1-118-10-007).  Case files should be retained for as long as the district may need them.  When determining the retention, sentencing and supervised release periods should be added to the required retention.

a)  Electronic case files and the contents thereof should be maintained in their native format.  Printing of such documents should only take place when necessary.

b)  Mixed media case files should continue to be stored in their existing format.  Permanent records should be merged (files should be uploaded to removeable media) and combined with and stored in hard copy files.

3. Disposition

Disposition of electronic case files should occur at the point in which the case is officially closed. A case is considered closed after all applicable events have taken place involving all parties or defendants. Please see the Case File Creation and Preservation USAPP 3-13.300.005 for more information on closing of litigation case files.

a) Permanent electronic case files should be uploaded to removable media and prepared for shipment to the National Archives once they have met their in-office retention requirements.

b) Temporary electronic case files should be stored onsite in an acceptable electronic storage repository until they have met their retention and destroyed onsite. Coordinate with your USAO Records Coordinator to document any onsite destruction of records.

**D.  Litigation Holds and Information Access Requests**

During the course of business, there are activities that warrant the suspension of routine records management processes such as litigation holds and information access requests. When such activities take place, Users are required to promptly comply with the instructions given.

a) Litigation and Legal Holds

When electronic records have been identified by the scope of a litigation hold, Users have a duty to preserve those records and suspend any routine destruction. This consists of working with the appropriate agency attorney and Information Technology (IT) staff to determine the search terms and other parameters to identify the records to place on hold, search for the records in all electronic systems, identify the records to place on hold, and place the identified records on hold to satisfy the litigation hold. Users will be notified when the litigation hold has been terminated. For more information, please see the Litigation and Legal Hold Procedures USAPP 3-13.300.003.

b) Information Access Requests

When an information access request is received, including Freedom of Information Act (FOIA), Privacy Act (PA), Congressional, Office of Inspector General (OIG), Office of Professional Responsibility (OPR), or any other type of request, Users are required to determine the search terms and other parameters, search for responsive records, and prepare the responsive records to satisfy the information request.

**E.  Digitization**

In order to move toward managing records in electronic formats to support mission and administrative functions, emergency operations, and meet OMB/NARA directives on managing federal records in electronic formats, EOUSA/USAOs can begin to digitize records.

Digitization projects must have clearly defined and documented requirements that result in finished products that ensure the reliability, accuracy, security, and accessibility of the digital information.

1. Business/Operational Analysis

   EOUSA/USAOs must conduct a business and operational analysis of the business needs, costs, benefits, and recordkeeping requirements before moving forward with any digitization project.  While conducting the analysis for the digitization project, components should analyze and address:

   a) Business Need.  EOUSA/USAOs should analyze the nature of the use of the collection and should assess the frequency for needed access.

   b) Record Retention.  EOUSA/USAOs should maintain all digitized federal records in a useable and retrievable format for their entire approved retention period, whether temporary or permanent.

   c) Volume.  EOUSA/USAOs should determine the volume and physical characteristics of the collections to be digitized.

   d) Condition of Materials.  EOUSA/USAOs should review/inspect the materials to determine their condition, which may affect the advisability and approach to digitization.

   e) Digitization and Storage Costs.  EOUSA/USAOs should analyze space needs and cost of physical storage, as well as costs of digitization to meet requirements and long-term maintenance, accessibility, and storage of electronic records.

   f) Tangible Value.  EOUSA/USAOs should consider that digitizing records with physical characteristics inherent to their value or authenticity, such as original signatures or seals may potentially affect the ability to use the digitized version for its intended business purpose.  Although rare, there may be requirements that mandate continued maintenance of the original paper document.

Once EOUSA/USAOs have conducted the business and operational analysis and move forward with digitization, they must meet the following requirements:

   i. If EOUSA/USAO intends to digitize temporary records in order to designate the digitized (electronic) version as the recordkeeping copy and destroy the original source (paper) records, they must:

      (1) Digitize the record to the standards in 36 C.F.R. § 1236.32; and

      (2) Validate the digitization according to 36 C.F.R. § 1236.34.

   ii. When EOUSA/USAO designates the digitized version as the record version, the original source record becomes an intermediary record and may be

disposed of according to 36 C.F.R. § 1236.36 (and General Records Schedules 5.2, item 020).

iii.  If EOUSA/USAO digitizes permanent records, they must retain the original source records since NARA has not at this time authorized disposal of the source records for permanent scanned records.  For digitization of permanent paper or analog records, EOUSA/USAOs must adhere to all NARA technical standards in 36 C.F.R. §1236.

iv.  Each office must digitize to standards appropriate for the accurate preservation of the information on the printed page.  When converting analog or film-based material (microfilm, microfiche, slides, etc.), agencies must digitize to standards appropriate for the accurate preservation of the original image.  Examples of appropriate methods and formats are available on NARA's Digitization Services Products and Services page.

Note:  Any consideration of commercial vendor scanning services must first be approved by the EOUSA Chief Information Officer.

## F. Electronic and Digital Signatures

Electronic and digital signatures improve efficiency, enhance savings, reduce and eliminate paper and paper filing requirements, and facilitate secure interactions among parties who are in geographically distinct locations.  An electronic signature is a legally binding signature that is a digitized version of a handwritten signature.  By comparison, a digital signature is a type of electronic signature that uses asymmetric keys to verify a signature's validity.

EOUSA/USAOs may use electronic or digital signatures as appropriate and/or practical when the use is not prohibited by law or regulation.  If they do so, these signatures are not required to be retained in paper format.  Per DOJ policy, components are encouraged to leverage electronic and digital signatures for business transactions as follows –

i.  Where technically feasible and permissible by federal policy, the default method of generating digital signatures must be based on Personal Identity Verification (PIV).

ii.  Where use of PIV credentials to generate digital signatures is not technically feasible or not permissible by federal policy, EOUSA/USAOs should make a determination on use of digital signatures that complies with DOJ policy and is based on the risk associated with impacted business transactions.

iii.  EOUSA/USAOs must adhere to guidance in Office of Management and Budget (OMB) Memorandum M-19-17, Enabling Mission Delivery through Improved Identity, Credential, and Access Management.

iv.  EOUSA/USAOs are responsible for making the threshold legal determination that digital signature is legally permissible for the particular business function

proposed for use.  There may be statutory or regulatory obligations that require pen and ink signatures.

    v.    EOUSA/USAOs should implement relevant technology safeguards described in NIST Special Publication 800-63 Revision 3 (SP 800-63-3), Digital Identity Guidelines and are encouraged to reference guidance in Federal CIO Council document Use of Electronic Signatures in Federal Organization Transactions (2013).

## G. Version Control

Version control is used to manage different drafts and versions of the same document or record before the final version is agreed upon.  Version control should be used if more than one version of the documents exists, or if it is circulated to others during development.

Version control is needed to ensure that the most recent and up-to-date version is used. This is necessary to make accurate decisions with current information, provide an audit trail for the revision history of the finalized version, ensure staff do not waste time working on or reading out-of-date versions, enable copies of older versions to be destroyed, and make it easier to identify the most recent document in use.  There are times when maintaining drafts, working copies, and revisions of a record require that all versions be maintained.  Per 36 CFR § 1222.22, "What types of documentary materials are Federal records?" it is stated –

Working files, such as preliminary drafts and rough notes, and other similar materials, are records that must be maintained to ensure adequate and proper documentation if:

    i.    They were circulated or made available to employees, other than the creator, for official purposes such as approval, comment, action, recommendation, follow-up, or to communicate with agency staff about agency business; and

    ii.    They contain unique information, such as substantive annotations or comments that adds to a proper understanding of the agency's formulation and execution of basic policies, decisions, actions, or responsibilities.

If a version should be preserved (e.g., important working files, version contains unique or substantive information, or other legal obligations), Users should take care to identify and preserve records in accordance with NARA regulations.  Users should also determine whether a record requires prompt disposal of unnecessary versions.

In order to promptly identify versions of the same document, Users should ensure that the naming convention (please see the next section of this USAPP for more guidance) adequately reflects the status of a document (e.g., draft, version number, final, etc.).

## H. Naming Conventions

The benefits of using a standard naming convention for electronic folders and files include the ability to locate files more readily, a reduction in file duplication, and the ability to distinguish final versions from drafts.  Note that electronic files received in discovery from external sources may not need to follow a standard naming convention, particularly if the files are in original/native format or have been named to indicate document type or record number.  As such, the below listed guidelines should not be applied absolutely in every situation.  They should, however, be used whenever possible to encourage the development of consistent folder and file-naming practices:

i.   Folder names should correspond to records listed on the EOUSA/USAO file plan (discuss with local Records Coordinator).

ii.   Folders should not contain a period (.)

iii.   File paths and file names should be no more than 255 characters in length (combined).

iv.   Use unique file names and identifiers; file names should be descriptive, consistent, and meaningful.

v.   Arrange elements of the file name in logical order, based on purpose of file and relationship to other files.

vi.   File names should contain only alphanumeric characters, hyphen, and underscore; they should not contain spaces or more than one period. Avoid special characters like $, &, %, and # in file names.

vii.   Use leading zeros to improve sorting. Example: USAOCase123_Button_J-v01.docx.

viii.   Format dates as Year-Month-Day. Examples: YYYY-MM-DD or YYYY_MM_DD or YYYYMMDD. Variations: YYYY, YYYY-MM, YYYY-YYYY.

ix.   Use "v" to indicate the version number or where applicable, 'Draft' or 'Final'. Example: Policy123-v02.docx.

x.   When labeling with names of individuals, use last name followed by first initial.

xi.   Keep file names short. Avoid extra-long folder names and complex hierarchical structures but use information rich file names instead.

xii.   Avoid unnecessary repetition and redundancy in file names and file paths.

xiii.   Avoid using common words such as 'draft' or 'letter' at the start of file names, unless doing so will make it easier to retrieve the record.

xiv.   The file names of records relating to recurring events should include the date and a description of the event.

xv.   Avoid non-standardized acronyms or shorthand in file names.  Names should be searchable and understood by individuals other than the creator of the document.

In addition to the above listed guidelines, it is important to note that certain characters have special meanings when used in file names in OneDrive, SharePoint, and Windows. For example, slash (/) and backslash (\) are used as file path delimiters and can cause problems in file names.  Similarly, a number of characters (/, @, #, &, ?, etc.) have special meaning in Web resource locators, and can cause Web links and uploads to SharePoint to fail.

## I.   **Metadata**

As technology continues to advance and more electronic storage options become available, it is important that all electronic records include the appropriate metadata.  The definition of "metadata" provided by the National Institute of Standards and Technology states:  Metadata is structured information that describes, explains, locates, or otherwise makes it easier to retrieve, use, or manage an information resource.

Metadata are elements of information that answer the questions 'who, what, where, when, and why' regarding electronic records.  Metadata elements provide administrative, descriptive, and technical information that describe the structure and content of electronic records.  These metadata elements can also provide contextual information that explains how electronic records were created, used, managed, and maintained prior to their transfer to NARA, and how they are related to other records.  This information enables NARA to appropriately manage, preserve, and provide access to electronic records for as long as they are needed.  Transfer metadata describes the primary attributes of a permanent electronic record, as required by NARA.  Metadata is required for successful transfer of permanent electronic records from EOUSA/USAO to NARA.  Provided below are required transfer metadata elements for permanent electronic records, as dictated by NARA Bulletin 2015-04:

i.    *Identifier [File Name]*.  The complete name of the computer file including its extension (if present).

ii.   *Identifier [Record ID]*.  The unique identifier assigned by an agency or a records management system.

iii.  *Title*.  The name given to the record.

iv.   *Description*.  A narrative description of the content of the record, including abstracts for document-like objects or content descriptions for audio or video records.

v.    *Creator*.  The agent primarily responsible for the creation of the record.

vi.   *Creation Date*.  The date that the file met the definition of a Federal record; and

vii.   *Rights*.  Information about any rights or restrictions held in and over the record including access rights such as national security classification, or personally identifiable information, Privacy Act, or Freedom of Information Act, or usage rights relating to copyright or trademark.

Metadata for electronic records may be populated automatically or manually.  Automatic population is preferred, but typically only the file name and creation date are populated in file systems.  Further, the file creation date may not correspond to the record creation date if the file has been moved or copied.  Title, creator, and creation date are often captured automatically by office software, but again may be unreliable.  Manual population of metadata can be done during file creation, use, or transfer.  Generally, earlier is better.

Electronic records lacking minimum metadata become serious barriers when classifying information into its appropriate records series or type.  This alone makes it difficult to transfer records to appropriate electronic records repositories, protect information accordingly, and dispose accordingly.  At a minimum, records should contain a document title, the office or component which created the document, and date the document was completed.

For procedural and technical guidance on how to preserve and/or remove metadata associated with permanent electronic records, please see Metadata Preservation and Removal, USAPP 3-13.300.006.

## J.  File Formats

EOUSA/USAOs use a wide variety of software while creating electronic records that include text, images, audio, video, email, databases, websites, and social media accounts.  For these files, NARA recommends specific file formats that are open, non-proprietary, and widely available for long-term archival use.  A long-lived file format is important to ensure the future accessibility of records, especially permanent electronic records.

NARA determines which sustainable formats are acceptable for transfer.  Sustainability, as it relates to electronic file formats, is the suitability of a format to preserve encoded information over time.  Factors that contribute to a format's sustainability include the availability and completeness of documentation and the availability of applications that can interpret it.  These factors are used by NARA to analyze formats that are in common use to determine their appropriateness for agencies transferring permanent records.

When determining acceptable formats, NARA also considers categories.  These categories provide a method of grouping formats that either share a common method of encoding or are used to store the same type of data.  The categories serve to provide a convenient way to associate formats that are generally used to store a particular electronic record type.  Permanent records should adhere to the requirements outlined in NARA Bulletin 2014-04, Appendix A: Transfer Guidance Format Tables, which defines the preferred and acceptable file formats for both textual and structure data.

### K. Folder Structures

To effectively manage electronic records, EOUSA/USAOs should develop a standard system for organizing folders and documents. The system should provide for structured names for directories (folders or filters), any sub-directories (subfolders or subdirectories) and files (electronic documents) so that files can be easily located during routine use and leveraged for records management purposes. Specifically, a folder structure should be used as follows:

  i.  Effectively apply a uniform name to a group of files that can be used to encode metadata for record management purposes (e.g., the name of the principal office as the creator).

  ii.  Associate records management policy to a group of files via the file plan.

  iii.  Facilitate records management operations (e.g., transfer or deletion) on a large group of files.

The first level of organization in a folder structure is often the directory structure. The directory system can be compared to a tree, with folders and subfolders branching off from the main, or "root" directory, resulting in a hierarchical structure. Documents could then be stored as files under the appropriate folder, filter, and subfolders or subcategory. Folder or filter names do not need to be repeated in the file names. This leaves more characters available to describe documents. The following principles should be kept in mind when designing the structure for electronic directories:

  i.  The structure should be simple and logical.

  ii.  The organization structure should proceed from the general to the specific. In other words, proceed from activity to a sub-activity to tasks and subtasks. For example, proceed from HUMAN RESOURCES to EMPLOYEE TRAINING to SAFETY WORKSHOP; or in cases, proceed from CASE to PLEADINGS to MOTIONS IN LIMINE.

  iii.  Clear and consistent terminology should be used when naming folders and files. This will permit the originating Users as well as others to quickly identify and retrieve documents. For example, if everyone in the organization uses the term "HUMAN RESOURCES," avoid using the term "PERSONNEL".

### L. Electronic Information Systems

The capital planning process integrates the planning, acquisition, and management of capital assets into the budget decision-making process and is intended to assist agencies in improving asset management and in complying with the results-oriented requirements. Federal requirements for including recordkeeping in Electronic Information Systems (EIS) mandate agencies to establish procedures for addressing records management requirements, including recordkeeping requirements and disposition, before approving new EIS or enhancements to existing systems.

All existing or proposed EIS must meet the requirements set forth in 36 CFR 1236.26 and DOJ Policy Statement 0801.01 Records and Information Management Certification. These requirements ensure that any system, application, or service which captures, creates, or maintains federal records has incorporated controls to ensure compliance with recordkeeping requirements for those records.  Records management and archival functions must be incorporated into the design, development, and implementation of EIS through coordination and assistance of the EOUSA Records Officer.

    a. Electronic files should be organized in EIS to facilitate complete record maintenance and expedient retrieval.  Files should be organized by program area, office and/or nature of the case.  The use of consistent naming conventions enhances the ability to locate records.  Records may then be divided by permanent, temporary, convenience copy, and non-record material, if appropriate.

    b. Organization of records within EIS should be accomplished by developing consensus among office supervisors, records management staff, and IT staff, when appropriate.

## M. Accessibility

Electronic information is a vital resource for all employees and ensuring accessibility is necessary to comply with the requirements in Section 508 of the Rehabilitation Act of 1973.  Ensuring electronic records are refreshed or migrated to keep up with new technologies while capturing and maintaining the records should include the following:

    i. Applicable Section 508 functional requirements should be incorporated in planning, acquiring, developing, and maintaining EIS systems, products, services, websites, files, and other electronic content.

    ii. Documents should include built-in formatting styles (i.e., headings, subheadings, slide layouts, headers/footers, tables, columns, etc.) that allow for assistive technology to work properly.

    iii. Electronic information should be structured and marked in such a way that assistive technology can read it in a logical order.

    iv. Non-text elements (i.e., images, photos, charts, clip art, graphical text, audio files, etc.) should be identified and marked with a text equivalent.

    v. Interactive documents (i.e., forms or links) should be accessible and functional using a keyboard or other assistive technology.

## 7.  Roles and Responsibilities

### A. Chief Information Officer

1. Oversees the development and management of the EOUSA Records and Information Management Program, including the implementation of the electronic recordkeeping. Serves as the official responsible for the ensuring the availability of technology

resources needed to accomplish EOUSA and USAO missions, which encompasses both information and related assets, such as Users, equipment, funds, and information technology.

**B.  Assistant Director, Records and Information Management Staff**

1.  Serves as the National Records Manager and senior technical expert responsible for leading, planning, organizing, directing, reviewing, coordinating, and establishing controls and measures to manage all electronic records.

**C.  Records Coordinator**

1.  Serves as the USAO Records Manager responsible for overseeing the day-to-day records management program.  Oversight responsibilities include:

    a)  Ensuring all network Users create, maintain, and preserve federal records in accordance with all applicable laws, regulations, and policies.

    b)  Coordinating with Systems Manager on electronic records management matters like digitization, network accounts, litigation holds, ESI, and other IT/RIM related projects.

    c)  Cooperating with the Assistant Director, Records and Information Management Staff on new or routine initiatives and projects.

    d)  Maintaining an up-to-date file plan with all the districts records holdings to include all electronic records.

    e)  Executing the timely disposition of temporary electronic records and accessioning all permanent electronic records in accordance with NARA policies and guidelines.

**D.  Systems Manager**

1.  Serves as the administrator responsible for managing electronic information systems, including implementing litigation holds on email accounts and network files, coordinating with Records Coordinator on technological related records management issues.

**E.  Administrative Officer**

1.  Serves as the official responsible for providing oversight to each USAO records management program (where applicable).  Accountable for overall administration of electronic records management implementation.

**F.  All Employees**

1.  Comply with all applicable laws, regulations and policies governing DOJ information.

2. Complete annual mandatory records and information management training and incorporates guidance received from records management staff.

3. Recognize that the office's records are Government property and consist of recorded information (documentary materials) required by law or used to conduct agency business.

4. Create and maintain records documenting office activities.

5. Prevent any unlawful removal, loss or destruction of federal electronic records.

6. Cooperate with the records management staff to ensure that all records are listed in the office file plan and described accurately in the agency's records schedule.

7. Maintain personal papers and non-record materials separate from Federal records.

8. Cooperate with the records management staff in transferring eligible records to a records center and permanent records to NARA.

9. Cooperate with the records management staff in destroying records only as authorized in the agency's records schedule.

| Point-of-Contact: | | |
|---|---|---|
| POC Name / Email: | Laura Besong / (b) (6) | |
| Title / Staff: | Assistant Director / RIM | |
| Phone: | (b) (6) | |

*Addenda*:

- Version History Log
- Categories of Topics
- Glossary of Terms
- Appendix/Attachments

# VERSION HISTORY LOG

U.S. Attorney Policies and Procedures are regularly reviewed for accuracy. This Version History Log records the date and summary of each change, including its SharePoint version number:

| Ver-sion | Date of Action | Point-of-Contact (Name / Staff) | Summary of Action / Changes |
|---|---|---|---|
| 1.0 | 4/20/21 | Laura Besong/RIM | New USAPP |
| 2.0 | 10/31/22 | Laura Besong/RIM | Added Attachment 5; updated CIO |
| 3.0 | Click | | |
| 4.0 | Click | | |
| 5.0 | Click | | |
| 6.0 | Click | | |
| 7.0 | Click | | |
| 8.0 | Click | | |
| 9.0 | Click | | |
| 10.0 | Click | | |

## CATEGORIES OF USAPP TOPICS *(for cover page)*

| | |
|---|---|
| Organization & Planning | Facilities & Property Support |
| Standards of Conduct | Security & Emergency Mgt. |
| Legal/Ethics Guidance | Records & Information Mgt. |
| AGAC / U.S. Attorneys | Information Technology |
| AUSAs / SAUSAs | FOIA/Privacy |
| Oversight (EARS/OIG/OPR) | Witnesses & Consultants |
| Human Resources Management | Financial Litigation Unit |
| Equal Employment Opportunity | Victim/Witness |
| Training | Civil Litigation |
| Travel | Civil Rights |
| Resource & Financial Mgt. | Criminal |
| Procurement & Acquisitions | Appeals |
| Media / Public Communications | Bankruptcy |

# GLOSSARY OF TERMS

## DEFINITIONS

| Term | Definition |
|---|---|
| *Accession* | The act and procedures involved in a transfer of legal title and the taking of records into the physical custody of the National Archives. |
| *Active records* | Records that continue to be used with sufficient frequency to justify keeping them in the office of creation; current records. |
| *Administrative Records* | Documents that are preserved because they facilitate the operations and management of an agency, but do not relate directly to programs that help the agency achieve its mission. These include such documents as the agency budget and Users, supplies, travel, and training documents. |
| *Approved Repository* | An official electronic filing system (approved or supported by OCIO) used for retaining records and other documentary materials. These include, but are not limited to network drives, cloud storage, personal drives, EOUSA-sponsored document management systems, and external media (meeting the requirements outlined in Electronic Media Security and Encryption USAPP 3-16.200.015). |
| *Capstone* | An email management approach developed by the National Archives and Records Administration that categorizes and schedules email based on the work and/or position of the email account User. This approach allows for the capture of all business emails as a records series from the accounts of officials at or near the top of an agency (or organizational subcomponent) to be preserved as permanent. |
| *Capstone Officials* | Capstone Official positions are identified in applicable records retention schedules. A Capstone Official is the person who serves in any formally designated Capstone position. The records retention schedules that apply to Capstone Officials' records impose a permanent retention on records. |
| *Cloud computing* | NIST defines cloud computing as "a model for enabling convenient, on-demand network access to a shared pool of configurable computing resources (e.g., networks, servers, storage, applications, and services) that can be rapidly provisioned and released with minimal management effort or service provider interaction. |
| *Cutoff* | The breaking or ending of files at regular intervals, usually at the close of a fiscal or calendar year, to permit their disposal or transfer in complete blocks and, for correspondence, to permit the establishment of new files. |
| *Data migration* | The process of transferring data between storage types, formats, or computer systems. |
| *Deletion* | The removal or erasure of information from electronic devices and storage media. |
| *Digital Signature* | A type of electronic signature that use complex algorithms, certificate authorities and trust service providers to authenticate the signer along with the integrity of the document. *See* Electronic Signature. |

| Term | Definition |
|------|------------|
| *Disposal* | The action taken regarding temporary records after their retention periods expire and consisting usually of destruction/deletion. On rare occasions, with permission, records may be donated (36 CFR 1226.26). |
| *Electronic Information System (EIS)* | A system that contains and provides access to computerized Federal records and other information. (36 CFR 1236.2) An EIS includes the inputs and outputs that are generated, as well as the master files. The system may contain budgetary, fiscal, social, economic, scientific, technical, or program-related data and information, operated in support of agency programs and management responsibilities. |
| *Electronic Formats* | Information created, manipulated, communicated, stored, and utilized in digital form, requiring the use of computer hardware and software. |
| *Electronic Records* | Records stored in a form that only a computer can process. These can include, but are not limited to, information stored on network/share drives, hard drives, flash drives, smart phones, tablets, and social media applications. |
| *Electronic Signature* | Under 15 U.S.C. § 7006(5), the term "electronic signature" refers to an "electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed and adopted by a person with the intent to sign the record." *See* Digital Signature. |
| *Encryption* | *See* Electronic Media Security and Encryption USAPP 3-16.200.0015 |
| *ESI* | Electronically Stored Information |
| *File Plan* | A plan designating the physical location(s) at which an agency's files are to be maintained, the specific types of files to be maintained there, and the organizational element(s) having custodial responsibility. Also: A document containing the identifying number, title or description, and disposition authority of files held in an office. |
| *Filing system* | A set of policies and procedures for organizing and identifying files or documents to speed their retrieval, use, and disposition. Sometimes called a Recordkeeping System. |
| *Inactive records* | Records that are no longer used in the day-to-day course of business, but that may be preserved and occasionally used for legal, historical, or operational purposes. |
| *Inventory* | A survey of agency records and non-record materials conducted primarily to develop records schedules and to identify various records management problems. |
| *IT / LT* | Information Technology / Litigation Technology |
| *Lifecycle* | The distinct phases of a record's existence: creation, maintenance and use, retention, and disposition. |
| *Metadata* | Data describing stored data: that is, data describing the structure, data elements, interrelationships, and other characteristics of electronic records. |

| Term | Definition |
|------|------------|
| *National Archives and Records Administration (NARA)* | An independent federal agency possessing primary responsibility for managing the records of all three branches of the United States Federal Government, for providing guidance to federal agencies on records management policies and practices, for authorizing the disposition of federal records, for storing federal records, and for preserving records of permanent historical value to the United States in both federal archives and presidential libraries. |
| *Non-record* | Non-records are documentary material excluded from the legal definition of a record. They may have business value or may be reference or convenience copies. |
| *Permanent record* | Any federal record appraised by NARA as having sufficient historical or other value to warrant continued preservation beyond the time it is needed for administrative, legal, or fiscal purposes. Permanent records are accessioned by NARA when no longer needed by the agency. |
| *Personal papers* | Documents private to the individual, which are not used to conduct agency business. Personal copies of administrative records pertaining to employment are also personal papers. Personal papers must, at all times, be clearly designated as such and maintained separately from the records of the office. |
| *PII* | Personally Identifiable Information |
| *Processing* | The arranging, describing, and housing permanent records for ease of access, storage, use, and eventual transfer to the National Archives and Records Administration (NARA). |
| *Program records* | Records created by each federal agency when performing the unique functions that stem from the distinctive mission of the agency, as defined in enabling legislation and further delineated in formal regulations. |
| *Record retention (retention period)* | The length of time a record must be kept (either in the office or in off-site storage) because it is needed for ongoing business, to document an action, or for statutory or historical reasons. |
| *Records schedule* | A document that identifies and describes an agency's records, usually at the series level, and provides instructions for the disposition of records throughout their lifecycle. NARA-approved records schedules are Standard Form 115s. |
| *Record series* | File units or documents arranged according to a filing or classification system or kept together because they relate to a particular subject or function; result from the same activity; document a specific kind of transaction; take a particular physical form; or have some other relationship arising out of their creation, receipt, or use, such as restrictions on access and use. Title 36, Chapter XII, Subchapter B, Part 1220. |

| Term | Definition |
|------|------------|
| *Recordkeeping system (recordkeeping repository)* | An electronic system that captures, organizes, and categorizes records to facilitate their preservation, retrieval, use, and disposition. |
| *Retention* | The length of time a record must be kept (either in the office or in off-site storage) because it is needed for ongoing business, to document an action, or for statutory reasons.<br>Note: This is also referred to as a "retention period." |
| *Shared drives* | Shared drives, also known as network drives, are typically used to store and share content. Agencies have also used shared drives to group and store content by function, project, committee, or other logical category. The use of shared drives poses recordkeeping challenges because agencies may store content that includes Federal records and non-record materials. |
| *Temporary record* | Any federal record appraised by NARA for disposal after a specified retention period. |
| *Unscheduled record* | Records whose final disposition has not been approved by NARA. Unscheduled records may not be destroyed or deleted. |
| *USAVON* | United States Attorneys' Virtual Office Network |
| *User* | Any employee, detailee, contractor who utilizes EOUSA/USAO computers, systems, or network services to create, receive, or access federal records. |

## ORGANIZATIONAL UNITS

| Term | Organization |
|------|--------------|
| *DOJ / Department* | Department of Justice |
| *EOUSA* | Executive Office for United States Attorneys |
| *Office / District* | EOUSA and USAO locations |
| *OLE / NAC* | Office of Legal Education / National Advocacy Center |
| *USAO* | United States Attorney's Office |

# APPENDIX

| ATTACHMENT #1 – File Naming Guidelines |
|---|
| https://ocio.usa.doj.gov/rim/PublishingImages/Pages/Electronic-Records-Management-/EOUSA%20Naming%20Convention%20Guidelines.pdf |

| ATTACHMENT #2 – Electronic Messaging Best Practices |
|---|
| https://ocio.usa.doj.gov/rim/SitePages/Electronic%20Messaging%20Best%20Practices.aspx |

| ATTACHMENT #3 – Electronic Records Cleanup Guide |
|---|
| https://ocio.usa.doj.gov/rim/_layouts/15/WopiFrame.aspx?sourcedoc={62BCEA20-DF81-4416-A68B-2E8A25C92FE4}&file=Quick%20Guide_Electronic%20Records%20Cleanup.pdf&action=default |

| ATTACHMENT #4 – Social Media Archival Instructions |
|---|
| https://ocio.usa.doj.gov/rim/PublishingImages/Pages/Electronic%20Records%20Management/EOUSA%20Social%20Media%20Archival%20Instructions_DRAFT%20.pdf |

| ATTACHMENT #5 – Transition to Electronic Case Files Guide |
|---|
| https://ocio.usa.doj.gov/rim/EOUSA%20Tools%20and%20Resources/Electronic%20Records%20Management/Electronic%20Case%20Files/eLitigation%20Recommendations%20for%20Transitioning%20Case%20Files%20and%20Discovery%20Materials%20to%20Electronic%20Case%20Files.docx |

# Exhibit I



**U.S. Department of Justice**

Executive Office for United States Attorneys

---

Freedom of Information and Privacy Staff

Suite 5.400, 3CON Building
175N Street, NE
Washington, DC  20530

(202) 252-6020

May 31, 2023

VIA Email

Sean Dunagan
Judicial Watch, Inc.

Re: Request Number   EOUSA-2022-001761/LITG-2023-000015
Date of Receipt:     March 28, 2022
Subject of Request:  Judicial Watch v. DOJ et al (19-879) DDC
                     ***Supplemental Response***

Dear Sean Dunagan:

Your request for records under the Freedom of Information Act/Privacy Act has been processed.  This letter constitutes a reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Office.

To provide you with the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes. The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act.  28 CFR § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. Please be advised that we have considered the foreseeable harm standard when reviewing records and applying FOIA exemptions.

Enclosed please find:

  0      page(s) are being released in full (RIF);
  8      page(s) are being released in part (RIP);
 21      page(s) are withheld in full (WIF).  **The redacted/withheld documents were reviewed to determine if any information could be segregated for release.**

The exemption(s) cited for withholding records or portions of records are marked below. An enclosure to this letter explains the exemptions in more detail.

(b)(5)
(b)(6)

This is the final action on this above-numbered request. If you are not satisfied with my response to your request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Sixth Floor, 441 G Street, NW, Washington, DC  20530 or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

You may contact Federal Programs Attorney, Antonia Konkoly regarding questions about this final response.

Sincerely,

Kevin Krebs
Assistant Director

Enclosure(s)

## EXPLANATION OF EXEMPTIONS

### FOIA: TITLE 5, UNITED STATES CODE, SECTION 552

(b) (1)      (A) specifically authorized under criteria established by and Executive order to be kept secret in the in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(b)(2)      related solely to the internal personnel rules and practices of an agency;

(b)(3)      specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)      trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)      inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)      personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)      records or information compiled for law enforcement purposes, but only the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

(b)(8)      contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)      geological and geophysical information and data, including maps, concerning wells.

### PRIVACY ACT: TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)      information complied in reasonable anticipation of a civil action proceeding;

(j)(2)      material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)      information which is currently and properly classified pursuant to Executive Order 12356 in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)      investigatory material complied for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)      material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)      required by statute to be maintained and used solely as statistical records;

(k)(5)      investigatory material compiled solely for the purpose of determining suitability eligibility, or qualification for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his identity would be held in confidence;

(k)(6)      testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)      material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his identity would be held in confidence.

**From:**   Ariail, Shreve (USANYE)
**To:**   (b)(6)   (CRM); Weissmann, Andrew (CRM);   (b)(6)   (USANYE)
**Subject:**   Fwd: AP"s latest stories on Paul Manafort
**Date:**   Wednesday, April 12, 2017 6:42:37 PM

Sent from my iPhone

Begin forwarded message:

**From:** "Bridis, Ted" <TBridis@ap.org>
**Date:** April 12, 2017 at 6:36:15 PM EDT
**To:**   (b)(6)
**Subject: AP's latest stories on Paul Manafort**

https://apnews.com/20cfc75c82eb4a67b94e624e97207e23/AP-Exclusive:-Manafort-firm-received-Ukraine-ledger-payout

> *... Now, financial records newly obtained by The Associated Press confirm that at least $1.2 million in payments listed in the ledger next to Manafort's name were actually received by his consulting firm in the United States. They include payments in 2007 and 2009, providing the first evidence that Manafort's firm received at least some money listed in the so-called Black Ledger.*

https://apnews.com/7820703c490a45a8a5608274e24e827b/Former-Trump-campaign-chairman-to-register-as-foreign-agent

> *WASHINGTON (AP) — President Donald Trump's former campaign chairman Paul Manafort will register with the Justice Department as a foreign agent for lobbying work he did on behalf of political interests in Ukraine, led at the time by a pro-Russian political party, his spokesman said Wednesday.... By registering retroactively, Manafort will be acknowledging that he failed to properly disclose his work to the Justice Department as required by federal law.*

Ted Bridis, news editor
Investigative
The Associated Press
1100 13th St. NW, Suite 700
Washington, DC 20005-4076
(202)
(202)   (b)(6)
https://www.ap.org/tips

LITG-202-000015_001

| | |
|---|---|
| **From:** | Ariail, Shreve (USANYE) |
| **To:** | Weissmann, Andrew (CRM) |
| **Cc:** | (b)(6) CRM); (b)(6) (USANYE) |
| **Subject:** | Re: AP"s latest stories on Paul Manafort |
| **Date:** | Wednesday, April 12, 2017 6:52:24 PM |

Well, given that don't know what's been done, I'm working on investigative plan that focuses broadly on what we think should be done, and possible theories of prosecution, coming up with theoretical predicate acts etc.

Per our prior discussion, I'd like to see/know what MLARS is doing/has done so we don't overlap.

Sent from my iPhone

On Apr 12, 2017, at 6:48 PM, Weissmann, Andrew (CRM) (b)(6) wrote:

Thx.  Are you all putting a written plan together including what's been done and what steps you will take?

Andrew Weissmann
Chief
Fraud Section
Criminal Division
Office: (b)(6)

On Apr 12, 2017, at 6:42 PM, Ariail, Shreve (USANYE)
< (b)(6) > wrote:

Sent from my iPhone

Begin forwarded message:

From: "Bridis, Ted" <TBridis@ap.org<mailto:TBridis@ap.org>>
Date: April 12, 2017 at 6:36:15 PM EDT
To: (b)(6)
(b)(6) mailto (b)(6)
Subject: AP's latest stories on Paul Manafort

https://apnews.com/20cfc75c82eb4a67b94e624e97207e23/AP-Exclusive:-Manafort-firm-received-Ukraine-ledger-payout

... Now, financial records newly obtained by The Associated Press confirm that at least $1.2 million in payments listed in the ledger next to Manafort's name were actually received by his consulting firm in the United States. They include payments in 2007 and 2009, providing the first evidence that Manafort's firm received at least some money listed in the so-called Black Ledger.

https://apnews.com/7820703c490a45a8a5608274e24e827b/Former-Trump-campaign-chairman-to-register-as-foreign-agent

WASHINGTON (AP) — President Donald Trump's former campaign chairman Paul Manafort will register with the Justice Department as a foreign agent for lobbying work he did on behalf of political interests in Ukraine, led at the time by a pro-Russian political party, his spokesman said Wednesday.... By registering retroactively, Manafort will be acknowledging that he failed to properly disclose his work to the Justice Department as required by federal law.

Ted Bridis, news editor

Investigative
The Associated Press
1100 13th St. NW, Suite 700
Washington, DC 20005-4076

(b)(6)    voice
          cell
https://www.ap.org/tips

| | |
|---|---|
| **From:** | Weissmann, Andrew (CRM) |
| **To:** | Ariail, Shreve (USANYE) |
| **Cc:** | (b)(6) (CRM);  (b)(6) (USANYE) |
| **Subject:** | Re: AP"s latest stories on Paul Manafort |
| **Date:** | Wednesday, April 12, 2017 6:48:50 PM |

Thx.  Are you all putting a written plan together including what's been done and what steps you will take?

Andrew Weissmann
Chief
Fraud Section
Criminal Division
Office:   (b)(6)

On Apr 12, 2017, at 6:42 PM, Ariail, Shreve (USANYE)
(b)(6) <mailto: (b)(6) wrote:

Sent from my iPhone

Begin forwarded message:

From: "Bridis, Ted" <TBridis@ap.org<mailto:TBridis@ap.org>>
Date: April 12, 2017 at 6:36:15 PM EDT
To: (b)(6)          mailto (b)(6)
(b)(6)          <mailto (b)(6)
Subject: AP's latest stories on Paul Manafort

https://apnews.com/20cfc75c82eb4a67b94e624e97207e23/AP-Exclusive:-Manafort-firm-received-Ukraine-ledger-payout

... Now, financial records newly obtained by The Associated Press confirm that at least $1.2 million in payments listed in the ledger next to Manafort's name were actually received by his consulting firm in the United States. They include payments in 2007 and 2009, providing the first evidence that Manafort's firm received at least some money listed in the so-called Black Ledger.

https://apnews.com/7820703c490a45a8a5608274e24e827b/Former-Trump-campaign-chairman-to-register-as-foreign-agent

WASHINGTON (AP) — President Donald Trump's former campaign chairman Paul Manafort will register with the Justice Department as a foreign agent for lobbying work he did on behalf of political interests in Ukraine, led at the time by a pro-Russian political party, his spokesman said Wednesday.... By registering retroactively, Manafort will be acknowledging that he failed to properly disclose his work to the Justice Department as required by federal law.

Ted Bridis, news editor
Investigative
The Associated Press
1100 13th St. NW, Suite 700
Washington, DC 20005-4076
(b)(6)          voice
                cell
https://www.ap.org/tips

**From:** Ariail, Shreve (USANYE)
**To:** (b)(6) USANYE); (b)(6) CRM]; (b)(6) USANYE)
**Subject:** Fwd: AP"s latest stories on Paul Manafort
**Date:** Tuesday, May 16, 2017 2:54:39 PM

Sent from my iPhone

Begin forwarded message:

**From:** "Bridis, Ted" <TBridis@ap.org>
**Date:** May 16, 2017 at 2:18:02 PM EDT
**To:** (b)(6)
**Subject: RE: AP's latest stories on Paul Manafort**

https://apnews.com/6ac48bb640d34e55b5e57da0240a04bd/Russian-magnate-sues-AP-over-story-on-Trump-campaign-ties

> *WASHINGTON (AP) — A Russian billionaire with ties to Vladimir Putin sued The Associated Press on Monday for defamation over a story about his connections to a former Trump campaign chairman.*
>
> *Aluminum magnate Oleg Deripaska claimed in the federal defamation and libel lawsuit that the AP's March 22 story about his business dealings with Paul Manafort was inaccurate and hurt his career by falsely accusing him of criminal activity.*
>
> *The AP's general counsel, Karen Kaiser, said the news organization stands by its story and will defend itself vigorously.*

**From:** Bridis, Ted
**Sent:** Wednesday, April 12, 2017 6:36 PM
**To:** (b)(6)
**Subject:** AP's latest stories on Paul Manafort

https://apnews.com/20cfc75c82eb4a67b94e624e97207e23/AP-Exclusive:-Manafort-firm-received-Ukraine-ledger-payout

> *... Now, financial records newly obtained by The Associated Press confirm that at least $1.2 million in payments listed in the ledger next to Manafort's name were actually received by his consulting firm in the United States. They include payments in 2007 and 2009, providing the first evidence that Manafort's firm received at least some money listed in the so-called Black Ledger.*

https://apnews.com/7820703c490a45a8a5608274e24e827b/Former-Trump-campaign-chairman-to-register-as-foreign-agent

> *WASHINGTON (AP) — President Donald Trump's former campaign chairman Paul Manafort will register with the Justice Department as a foreign agent for lobbying work he did on behalf of political interests in Ukraine, led at the time by a pro-Russian political party, his spokesman said Wednesday.... By registering retroactively, Manafort will be acknowledging that he failed to properly disclose his work to the Justice Department as required by federal law.*

Ted Bridis, news editor
Investigative
The Associated Press

1100 13th St. NW, Suite 700
Washington, DC 20005-4076

(b)(6) | voice
cell

https://www.ap.org/tips

**From:** Weissmann, Andrew (CRM)
**To:** Ariail, Shreve (USANYE)
**Cc:** ☐ (b)(6) ☐ CRM); ☐ (b)(6) ☐ USANYE)
**Subject:** Re: AP"s latest stories on Paul Manafort
**Date:** Wednesday, April 12, 2017 7:40:05 PM

☐ (b)(5) ☐

Andrew Weissmann
Chief
Fraud Section
Criminal Division
Office: ☐ (b)(6) ☐

> On Apr 12, 2017, at 6:52 PM, Ariail, Shreve (USANYE) ☐ (b)(6) ☐ wrote:
>
> Well, given that don't know what's been done, I'm working on investigative plan that focuses broadly on what we think should be done, and possible theories of prosecution, coming up with theoretical predicate acts etc.
>
> Per our prior discussion, I'd like to see/know what MLARS is doing/has done so we don't overlap.
>
> Sent from my iPhone
>
> On Apr 12, 2017, at 6:48 PM, Weissmann, Andrew (CRM) ☐ (b)(6) ☐ wrote:
>
> Thx.  Are you all putting a written plan together including what's been done and what steps you will take?
>
> Andrew Weissmann
> Chief
> Fraud Section
> Criminal Division
> Office: ☐ (b)(6) ☐
>
> On Apr 12, 2017, at 6:42 PM, Ariail, Shreve (USANYE)
☐ (b)(6) ☐ <mailto ☐ (b)(6) ☐ >> wrote:
>
>
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> From: "Bridis, Ted" <TBridis@ap.org<mailto:TBridis@ap.org>>
> Date: April 12, 2017 at 6:36:15 PM EDT
> To: ☐ (b)(6) ☐ <mailto: ☐ (b)(6) ☐ "
☐ (b)(6) ☐ <mailto: ☐ (b)(6) ☐ >
> Subject: AP's latest stories on Paul Manafort
>
> https://apnews.com/20cfc75c82eb4a67b94e624e97207e23/AP-Exclusive:-Manafort-firm-received-Ukraine-ledger-payout
>
> ... Now, financial records newly obtained by The Associated Press confirm that at least $1.2 million in payments listed in the ledger next to Manafort's name were actually received by his consulting firm in the United States. They include payments in 2007 and 2009, providing the first evidence that Manafort's firm received at least some money listed in the so-called Black Ledger.

>

> https://apnews.com/7820703c490a45a8a5608274e24e827b/Former-Trump-campaign-chairman-to-register-as-foreign-agent

>

> WASHINGTON (AP) — President Donald Trump's former campaign chairman Paul Manafort will register with the Justice Department as a foreign agent for lobbying work he did on behalf of political interests in Ukraine, led at the time by a pro-Russian political party, his spokesman said Wednesday.... By registering retroactively, Manafort will be acknowledging that he failed to properly disclose his work to the Justice Department as required by federal law.

>

> Ted Bridis, news editor

> Investigative

> The Associated Press

> 1100 13th St. NW, Suite 700

> Washington, DC 20005-4076

> ☐ (b)(6) ☐ voice

> ☐ ☐ cell

> https://www.ap.org/tips

>