UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

JUDICIAL WATCH, INC.,

      Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,

      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

Civil Action No. 19-cv-879 (CJN)

### DECLARATION OF JEANETTE GONZALEZ-RIVERA

I, Jeanette Gonzalez-Rivera, declare the following to be true and correct:

1. I am a Supervisory Legal Administrative Specialist in the United States Attorney's Office for the Eastern District of New York (the "Office"). I have held this position since 2012. My duties include assisting in locating and searching records within the Office, including dockets, casefiles, and archived email. In the course of my employment, I have assisted with Freedom of Information Act ("FOIA") requests, and I am familiar with the systems by which the Office archives documents and emails.

2. I make the statements herein on the basis of personal knowledge and information acquired by me in the course of performing my official duties, including information provided to me by others within the Department of Justice (the "Department"). The other individuals with whom I have communicated include an Assistant United States Attorney within the Office (the "AUSA").

3. In the course of my work in the Office, I have been informed of a FOIA request for records pertaining to an "April 2017 meeting between Department of Justice and FBI

personnel and reporters, editors, and/or other individuals employed by and/or representing the Associated Press" that was "reported on in Politico on June 29, 2018 (see https://www.politico.com/story/2018/06/29/paul-manafort-storage-lockerassociated-press-687776)" (the "FOIA Request").

*Shreve Ariail Contacts the AUSA*

4. On or about February 9, 2023, former Assistant United States Attorney Shreve Ariail sent an email to the AUSA, with whom Mr. Ariail had worked when he was employed by the Office. Mr. Ariail related (in substance) that he had been contacted by an attorney with the Department's Federal Programs Branch, who had made him aware of the existence of the FOIA Request and related litigation.

5. The AUSA was not previously aware either of the FOIA Request or of this related litigation before receiving Mr. Ariail's email. Upon receiving Mr. Ariail's message, the AUSA promptly contacted the AUSA's colleagues who serve as the Office's criminal FOIA coordinators (the "Coordinators"). The AUSA reported to the Coordinators that, upon departing from the Office, Mr. Ariail had left with the AUSA several notebooks that contained handwritten notes regarding, among other things, meetings attended by Mr. Ariail over a period of time, including April 2017.

6. The AUSA further recalled that, while the AUSA did not attend any meeting at which the Associated Press (the "AP") was present, Mr. Ariail had attended such a meeting in April 2017 (the "AP Meeting"), and the AUSA and Mr. Ariail attended a subsequent and independently scheduled meeting later that same day at which the AP Meeting was referenced.

7. The AUSA consulted the notebooks left behind by Mr. Ariail and located what appeared to be his handwritten notes regarding the AP Meeting, as well as an independent set of handwritten notes that appeared to have also been taken by Mr. Ariail at the subsequent meeting that occurred later the same day. The AUSA also consulted the AUSA's own notebook from the same time period and located handwritten notes (taken by the AUSA) from the subsequent meeting that occurred later the same day.

8. The AUSA photocopied all three sets of notes, and I understand that photocopies were forwarded, in due course, to the Executive Office for U.S. Attorneys ("EOUSA") for processing in accordance with the FOIA Request. With the exception of providing the notes to EOUSA in connection with the FOIA Request, the AUSA's notes were not shared outside of the Office, and, as far as the AUSA is aware, neither were Mr. Arial's.

*The AUSA's Saved Emails are Searched*

9. In addition to locating Mr. Ariail's and the AUSA's own handwritten notes, shortly after having been contacted by Mr. Arial, the AUSA also manually searched the AUSA's email in the following ways to determine whether the AUSA had any emails regarding the AP Meeting in the AUSA's desktop Outlook application: First, the AUSA manually searched the AUSA's "sent" messages folder for emails on or around the day of the AP Meeting that referenced the AP Meeting. Second, the AUSA searched the AUSA's email inbox using the search term "Manafort" and reviewed the results for messages that referenced the AP Meeting.

10. By means of these searches, the AUSA located 17 potentially responsive emails, which were also provided to EOUSA for processing.

11. As described above, the AUSA performed the searches shortly after having been contacted by Mr. Arial. On May 9, 2023, I personally observed the AUSA carrying

out the same searches of his or her desktop Outlook application; this time, the same 17 emails that were located by the AUSA's original search, plus one additional potentially responsive email, were located. The one additional email that had not been located by the AUSA's original search was immediately forwarded to EOUSA for processing as well.

12. The AUSA confirmed to me that the AUSA was not aware of any other written or electronic records concerning the AP Meeting.

13. I also have searched CaseView and determined that the Office did not at any time open any case file for the AP Meeting or Paul Manafort.

14. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____
Jeanette Gonzalez-Rivera
Supervisory Legal Administrative Specialist

Executed this 1st day of June, 2023