UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-879 (CJN) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

Plaintiff Judicial Watch, Inc., by counsel and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, hereby cross-moves for summary judgment against Defendant U.S. Department of Justice.  As grounds therefor, Plaintiff respectfully refers the Court to the accompanying memorandum of points and authorities, response to Defendant's statement of material facts, and further statement of facts.

Dated:  July 17, 2023

Respectfully submitted,

*/s/ Lauren M. Burke*
D.C. Bar No. 1028811
*/s/ Kathryn Blankenberg*
D.C. Bar No. 1781777
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Phone: (202) 646-5172

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-879 (CJN) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
<u>AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY
JUDGMENT</u>**

## Table of Contents

**Page**

Table of Authorities ................................................................................................................ ii

INTRODUCTION. .................................................................................................................1

FACTUAL BACKGROUND. ................................................................................................1

LEGAL STANDARD. ...........................................................................................................5

ARGUMENT .........................................................................................................................6

    I.      Defendant's Repeated Failure to Follow Clear and Certain
           Leads Renders the Search Inadequate. ................................................................6

          A.    *In Camera* Review Is Warranted. ...........................................................10

    II.     Defendant Is Withholding Information Not Validly Exempt
           From Disclosure Under FOIA. ...........................................................................11

CONCLUSION .....................................................................................................................16

## Table of Authorities

**Cases**                                                                                   **Page(s)**

*Allen v. CIA*,
    636 F.2d 1287 (D.C. Cir. 1980) .................................................................................10

*Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*,
    370 F. Supp. 3d 116 (D.D.C. 2019) ...........................................................................11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).....................................................................................................5

*Dalal v. U.S. Dep't of Justice*,
    No. 16-cv-1040, 2022 U.S. Dist. 210074 (Nov. 21, 2022)..........................................15

*Darui v. U.S. Dep't of State*,
    798 F. Supp. 3d. 32 (D.D.C Cir. 2011) ......................................................................15

*Defs. of Wildlife v. U.S. Border Patrol*,
    623 F. Supp. 2d 83 (D.D.C Cir. 2009)..........................................................................5

*Dep't of the Air Force v. Rose*,
    425 U.S. 352 (1976)...................................................................................................15

*Gov't Accountability Project v. U.S. Dep't of Justice*,
    825 F. Supp. 2d 14 (D.D.C. 2012) .............................................................................15

*In re Sealed Case*,
    146 F.3d 881 (D.C. Cir. 1998) ...................................................................................11

*Judicial Watch Inc. v. U.S. Dep't of State*,
    272 F. Supp. 88 (D.D.C. 2017)....................................................................................8

*Judicial Watch Inc. v. U.S. Dep't of Justice*,
    432 F.3d 366 (D.C. Cir. 2005)...................................................................................15

*Judicial Watch, Inc. v. U.S. Dep't of Justice*
    No. 19-cv-0879, 2022 U.S. Dist. LEXIS 55614 (D.D.C. March 28, 2022) ......................6

*Judicial Watch, Inc. v. U.S. Postal Service*,
    297 F. Supp.2d 252 (D.D.C. 2004) ..............................................................................6

*Leopold v. U.S. Dep't of Justice*,
    487 F. Supp. 3d 1 (D.D.C. 2020) ...............................................................................16

*Morely v. CIA*,
　　508 F.3d 1108 (D.C. Cir. 2007) ..................................................... 6

*Oglesby v. U.S. Dep't of Army*,
　　920 F. 2d 57 (D.C. Cir. 1990) ........................................................5

*Reporters Comm. For Freedom of Press v. U.S. Dep't of Justice*,
　　No. 19-cv-2847, 2021 U.S. Dist. LEXIS 215639 (D.D.C. Nov. 8, 2021) .......................10

*SafeCard Services, Inc. v. Securities and Exchange Comm'n*,
　　926 F.2d 1197 (D.C. Cir. 1991) ...................................................5, 15

*Senate of Puerto Rico ex rel. Judiciary Comm. v. U.S. Dep't of Justice*,
　　823 F.2d 574 (D.C. Cir. 1987) .......................................................12

*Stonehill v. United States DOJ Tax Div.*,
　　No. 19-cv-03770, 2022 U.S. Dist. LEXIS 24285 (D.D.C. Feb. 10, 2022) ....................12

*Trans Union LLC v. FTC*,
　　141 F. Supp. 2d 62 (D.D.C. 2001) .....................................................5

*Truitt v. U.S. Dep't of State*,
　　897 F.2d 540 (D.C. Cir. 1990) .........................................................5

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
　　489 U.S. 749 (1989) ....................................................................5

*U.S. Dep't of Justice v. Tax Analysts*,
　　492 U.S. 136 (1989) ...................................................................15

*U.S. Dep't of State v. Ray*,
　　502 U.S. 164 (1991) ...................................................................15

*United States v. Deloitte L.L.P.*,
　　610 F.3d 129 (D.C. Cir. 2010) ........................................................11

*Valencia -Lucena v. U.S. Coast Guard*,
　　180 F.3d  321(D.C. Cir. 1999) .........................................................8

*Wallick v. Agric. Mktg. Serv.*,
　　281 F. Supp. 3d 56 (D.D.C. 2017) .....................................................8

*Weisberg v. U.S. Dep't of Justice*,
　　745 F.2d 1476 (D.C. Cir. 1984) ........................................................5

iii

## Rules and Statutes

Fed. R. Civ. P. 56(c) ................................................................................1, 5

Fed. R.Civ.P. 26(b)(3) ...................................................................................11

5 U.S.C. § 552(a)(4)(B) ......................................................................1, 5, 11

Plaintiff, by counsel and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, respectfully submits this memorandum of points and authorities in opposition to Defendant U.S. Department of Justice's Motion for Summary Judgment and in support of Plaintiff's Cross-Motion for Summary Judgment.  As grounds thereof, Plaintiff states as follows:

## INTRODUCTION

Defendant's Memorandum in Support of its Motion for Summary Judgement falls short in meeting the government's burden of showing it conducted an adequate search for records responsive to Plaintiff's FOIA requests and fails to provide adequate justifications for withholding information under Exemption 5.  5 U.S.C. § 552(a)(4)(B).

As demonstrated below, rather than embracing the opportunity to resolve the government's search deficiencies, as identified by the Court in its March 28, 2022 Memorandum Opinion (ECF No. 32), Defendant continues to present declarations that inadequately explain its limited search actions thereby failing to demonstrate it has undertaken a search reasonably calculated to locate all responsive records to Plaintiff's FOIA request.  Additionally, Defendant is improperly withholding records and information that are not validly exempt from disclosure under FOIA.

Plaintiff therefore requests that Defendant's Motion for Summary Judgment be denied and that Plaintiff's Cross-Motion for Summary Judgment be granted.

## FACTUAL BACKGROUND

This is an action under the Freedom of Information Act ("FOIA").  Plaintiff's FOIA request seeks two categories of documents related to an April 2017 meeting between Department of Justice ("DOJ" or "Department"), Federal Bureau of Investigation ("FBI") personnel, and reporters for the Associated Press ("AP").  These records regard, concern, or relate to the

meeting and include all records of communication between any official, employee, or representative of the DOJ and any of the individuals present at the aforementioned meeting. Complaint ("Compl."), ECF No. 1, ¶¶ 6, 8.  The request further states that, "[f]or purposes of clarification, the meeting that is the subject of this request was reported on by Politico on June 29, 2018," and provided a hyperlink to a Politico news article entitled "Associated Press May Have Led FBI to Manafort Storage Locker." *Id*; *see* Plf's Ex. 3.  The Politico article included the following statement issued by AP spokeswoman Lauren Easton: "Associated Press journalists met with representatives from the Department of Justice in an effort to get information on stories they were reporting, as reporters do. During the course of the meeting, they asked DOJ representatives about a storage locker belonging to Paul Manafort, without sharing its name or location."  Plf's Ex. 3.

On March 28, 2022, this Court issued a Memorandum Opinion, Dkt. No. 32 ("Mem. Op."), and accompanying Order, Dkt. No. 33, granting in part and denying in part Defendant's Motion for Summary Judgment and granting in part and denying in part Plaintiff's motion for the same.  As relevant here, the Court denied Defendant's motion in one respect, finding that Defendant should have searched the records of former Assistant U.S. Attorney ("AUSA") for the Eastern District of New York ("EDNY") Shreve Ariail ("Arial"), who is known to have attended the meeting in question.  *See* Mem. Op. at 13.  Specifically, the Court found that because "[t]he information DOJ uncovered made it 'clear and certain' that Ariail likely possessed responsive documents," Defendant was "obligated to search his records (presumably through EOUSA)."  *Id.*

Plaintiff has conferred with Defendant in good faith since the Court ruled on March 28, 2022 that Defendant has an obligation under FOIA to search Ariail's records.  On August 23, 2022, the parties submitted a Joint Status Report (ECF 34) in which Defendant represented that it

undertook three separate searches for Ariail's emails "out of abundance of caution," but that the "supplemental searches had not yielded any potentially responsive records." *See* Joint Status Report Aug. 23, 2022 at ¶¶ 5-6 (ECF 34). On December 2, 2022, Defendant for the first time revealed to this Court and Plaintiff that Ariail's records were subject to a 3-year-30-day retention policy, indicating that his records were deleted subject to the retention policy of the Executive Office of U.S. Attorneys ("EOUSA") during the pendency of this lawsuit. *See* ECF 36 at ¶¶ 3, 5; Ex. 1 (ECF 36-1). Defendant did not place a litigation hold for the FOIA request even though Plaintiff's FOIA request clearly put Defendant on notice that Ariail's records are relevant to this case. *See* ECF 36 at ¶¶ 3, 12. Two weeks after this initial disclosure, Defendant further admitted that some of Ariail's records from the time frame relevant to Plaintiff's FOIA request were indeed not deleted, although determined not responsive to the request. *See* ECF 37 at ¶ 17. On January 6, 2023, Defendant represented for the first time that EOUSA had confirmed that EDNY did not possess a case file for either Paul Manafort or the April 11, 2017 meeting with AP reporters. *See* ECF 38 at ¶ 11.

On March 6, 2023, three days prior to the parties' March 9, 2023 Status Conference before the Court, Defendant informed Plaintiff that at some point in January 2023, Defendant had contacted by telephone Ariail regarding Plaintiff's FOIA request and this litigation. Plf's Ex. 1; *see also* Def's Mem. at 9. Defendant also informed Plaintiff that Ariail subsequently contacted an unidentified former colleague of his at EDNY who still works at that office. Plf's Ex. 1; *see also* Def's Mem. at 9; Declaration of Jeanette Gonzalez-Rivera ("Gonzalez-Rivera Decl.") ¶ 4. The former colleague was reportedly unaware of Plaintiff's FOIA request or this litigation. Plf's Ex. 1; *see also* Def's Mem. at 9; Gonzalez-Rivera Decl., ¶ 5. Upon being informed, the colleague located a notebook Ariail left at the office with Ariail's handwritten notes

from the April 11, 2017 meeting.  Plf's Ex. 1; *see also* Def's Mem. at 10; Gonzalez-Rivera Decl., ¶ 7.  According to Defendant, the colleague did not attend the AP meeting but did attend a subsequent afternoon meeting where the AP meeting was discussed.  *Id.*  The colleague found his or her own handwritten notes from the afternoon meeting, which ultimately Defendant determined were responsive to Plaintiff's FOIA request.  *Id.*  Defendant later determined that Ariail's handwritten notes from the afternoon meeting were not responsive to Plaintiff's FOIA request.  Def's Mem. at 10-11; Cain Decl., ¶ 33.  Additionally, Defendant stated that EOUSA did not know about the existence of these notebooks until it was informed by the colleague.  Plf's Ex. 1; Tr. at 16:23-17:1.  The colleague also searched his or her email account for responsive records, producing 18 potentially responsive records, eight of which were ultimately found by Defendant to be responsive.  Plf's Ex. 1; *see also* Def's Mem. at 10; Gonzalez-Rivera Decl., ¶ 11.

On May 9, 2023, Defendant produced to Plaintiff eight pages of emails and withheld 21 pages of Ariail's and the unidentified colleague's handwritten notes in full.  Def's Mem. at 10-11.  On May 31, 2023, Defendant issued to Plaintiff an amended production of the eight pages of email records, lifting certain redactions that Defendant states were previously released by the Criminal Division.  Statement of Material Facts ("SOF") ¶ 62; Def's Mem. at 11.  Defendant also confirmed in its Memorandum that the names redacted in an email produced to Plaintiff by the Criminal Division (Plf's Ex. 2) belong to two former AUSAs.  SOF ¶ 76; Def's Mem. at 15.  Defendant did not take any further steps to search these AUSAs, or any other EOUSA official besides Ariail and his unidentified former colleague, for responsive records.  SOF ¶ 77; Def's Mem. at 15.

## LEGAL STANDARD

In FOIA litigation, as in all litigation, summary judgment is appropriate only when the pleadings and declarations demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment under FOIA, the court must view the facts in the light most favorable to the plaintiff. *Weisberg v. U.S. Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

"FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). To demonstrate that it has performed an adequate search for documents responsive to a FOIA request, an agency must submit a reasonably detailed affidavit describing the search. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). To meet these requirements, the affidavit must at least include the agency's "rationale for searching certain locations and not others." *Defs. of Wildlife*, 623 F. Supp. 2d at 92. Agency affidavits attesting to a reasonable search "are accorded a presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), that can be rebutted "with evidence that the agency's search was not made in good faith," *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001), or when a review of the record raises substantial doubt about the adequacy of the search effort. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

Additionally, "exemptions from disclosure must be narrowly construed . . . conclusory and generalized allegations are unacceptable." *Morely v. CIA*, 508 F.3d 1108, 1114-15 (D.C. Cir. 2007).  Agency decisions to "withhold or disclose information under FOIA are reviewed *de novo*" by the district court and are not subject to *Chevron* deference.  *Judicial Watch, Inc. v. U.S. Postal Service*, 297 F. Supp.2d 252, 256 (D.D.C. 2004).

## ARGUMENT

I.  **Defendant's Repeated Failure to Follow Clear and Certain Leads Renders the Search Inadequate.**

Defendant cannot prevail on summary judgment where it still does not even attempt to locate the records of all of the known individuals to have communicated about the meeting and/or subject matter of the meeting.  Under the circumstances presented here, it was unreasonable for Defendant to limit its search of the EOUSA to Ariail and his unidentified former colleague.  Defendant's supplemental search revealed clear and certain leads of at least two, if not more, unsearched additional EOUSA officials who likely possess responsive records. *See Judicial Watch, Inc. v. United States Dep't of Justice*, No. 19-cv-0879, 2022 U.S. Dist. LEXIS 55614, *19 (D.D.C. March 28, 2022) ("The information DOJ uncovered made it 'clear and certain' that Ariail likely possessed responsive documents, and DOJ was therefore obligated to search his records (presumably through EOUSA).").  The lack of clarity on the number of EOUSA officials who should have been searched is due mostly to Defendant's withholding of the AUSAs' names, as well as the recent revelation that two redacted names in an email produced by the Criminal Division (Plf's Ex. 2) belong to two former AUSAs.  *See* Def's Mem. at 15, 20-22; Declaration of Kara Cain ("Cain Decl.), ¶¶ 32, 55.  Defendant, for no discernable reason, repeatedly fails to follow clear and certain leads and provides nothing more than conclusory statements.  Plaintiff should not have to seek summary judgment and a court order for Defendant

to pursue clear and certain leads after every production.  Here, Plaintiff is not seeking the Court

to micromanage.  *See* Def's Mem. at 13.  There is ample reason to question the agency's

"discretion" to not implore the same type of inquiry made with Ariail to the unidentified AUSAs

clearly known to Defendant.  Unfortunately, it is Defendant's own bad behavior that necessitates

the Court's intervention.

   With respect to the two former AUSAs whose names are redacted in the email produced

by the Criminal Division (Plf's Ex. 3), Defendant cannot establish beyond material doubt that the

search of these two former AUSA's records is not reasonably expected to locate records

potentially responsive to Plaintiff's FOIA request.  Defendant provides no satisfactory response

on why it did not pursue these two leads. The only explanation is that the Court did not and has

not yet ordered it to do so.  But the email record itself indicates that responsive records exist. In

the email, Ariail, who attended the April 2017 AP meeting, reported to Andrew Weissman that he

"briefed to Criminal [redacted pursuant to Exemptions 6 and 7(c)]."  SOF ¶ 76; Plf's Ex. 3.

EDNY has confirmed that the redacted portion contains the names of two former AUSAs.  SOF ¶

76.  Clearly, based on this record, Arial communicated with the two former AUSAs about the AP

meeting that he attended.  Any communications between Arial and the two former AUSAs, or

communications between the two former AUSAs or even between the one of the AUSAs and any

other DOJ official would be responsive to Plaintiff's FOIA request.  Defendant attempts to

downplay this clear lead, stating that because it has "no reason to believe" that the two former

AUSAs emailed any Capstone official about the AP meeting and because they are no longer

employed at EOUSA, their emails would have been deleted pursuant to EOUSA email retention

policy.  Def's Mem. at 15. Given that the supplemental search led to the discovery of Ariail's

responsive records, even though Ariail left EOUSA in May 2018, material doubt is cast upon

Defendant's claim.  And Defendant provides no basis to conclude that these two former AUSAs would not have emailed a Capstone official – especially since it has not even attempted to search their records.  This conclusory assumption is insufficient under FOIA.  *See Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 73 (D.D.C. 2017).  The fact remains that Defendant received responsive records identifying other individuals and is obligated to search their records without requiring judicial order.  *Judicial Watch v. U.S. Dep't of State*, 272 F. Supp. 3d 88, 93-94 (D.D.C. 2017) ("Although an agency need not move heaven and earth to uncover every conceivable responsive record, it cannot conclude its search 'if there are additional sources that are likely to turn up the information requested.'"); *Valencia-Lucena v. U.S. Coast Guard*, 180 F. 3d 321, 326 (D.C. Cir. 1999)).  Without a search of these two former AUSAs' records, the Court should not conclude the agency's search was adequate.

It is also clear from the email productions that there is *at least one* other AUSA, other than Ariail and his former colleague, who Defendant does not address nor has searched.  For instance, in one email dated May 16, 2017 (Bates No. LITG-2023-000015_0005-06) there are two distinct AUSAs, excluding Arial, whose names are redacted.  Cain Decl., Ex. I.  Even if one of the names belongs to the former colleague, there is still undeniably at least one other AUSA who Defendant has ignored in its search.  In light of the fruitful results produced when Defendant contacted Ariail and searched his former colleague's records, Defendant's refusal to contact the unidentified AUSAs is evidence of bad faith.  It was the personal knowledge and involvement of Ariail and the colleague that led to the production of 29 pages of responsive records.  Def's Mem. at 9-10, 14-15.  In fact, Defendant even told this Court that EOUSA did not have any reason to know "what the colleague knew, which is that, when Ariail left government service at the end of May 2018, he left a handful of notebooks with this colleague."  Tr. at 16:23-

17:1.  There is no reason to believe that the unidentified AUSAs are aware of Plaintiff's FOIA request or this litigation, given that Ariail was unaware of either until he was contacted by Defendant and the colleague also was unaware until he or she was contacted by Ariail. Gonzalez-Rivera Decl., ¶¶ 2, 4, 5.  Additionally, if the redacted officials are active EOUSA employees or if they emailed a Capstone Official, then their emails should be retrievable.  *See* Def's Mem. at 3-6; Cain Decl., ¶¶ 38, 43.

Finally, Defendant is silent on the identity and number of DOJ officials in attendance at a meeting held in the afternoon of April 11, 2017 that referred to the morning meeting with the AP reporters.  Def's Mem. at 9-10, 15; Gonzalez-Rivera Decl., ¶ 6.  This is the first time that Plaintiff has learned about this afternoon meeting.  Defendant's supposed efforts to go "above and beyond" its FOIA obligations somehow seem to have glossed over this very relevant event. While the officials at the afternoon meeting might not have attended the April 11, 2017 meeting with the AP reporters, Plaintiff's request is not so limited.  Plaintiff's FOIA request plainly seeks not only "any and all records of communication" with DOJ officials who attended the April 2017 meeting with AP reporters, but also "any and all records regarding, concerning or related to" that April 2017 meeting.  Compl. ¶ 6.  Any records produced as a result of the subsequent meeting related to the AP meeting are therefore responsive to Plaintiff's request.  Further, it is not unreasonable to believe that DOJ officials in attendance at the afternoon meeting also kept responsive handwritten notes.  Ariail's former colleague was not even present at the AP meeting, and he or she alone produced six pages of handwritten notes responsive to Plaintiff's FOIA request and eight responsive email records.  *See* Def's Mem. at 10; Cain Decl., Ex. A.  It is therefore likely that other officials present at the April 11, 2017 afternoon meeting also possess responsive records.

Defendant purports that its search is adequate because it "comports with what the court previously agreed to be adequate." Def's Mem. at 16. Contrary to Defendant's claims of "above and beyond", Defendant's own argument portrays it not only did not comport to statutory obligations, but still only did what the court indicated as adequate in the context of the records that had been produced to Plaintiff before the first round of summary judgment. That is not enough. Its supplemental search revealed several clear and certain leads that Defendant fails to pursue without a court order to do so.

A.    *In Camera* Review Is Warranted.

While Plaintiff does not challenge the Exemption 6 redactions, Plaintiff does challenge the adequacy of Defendant's search as it relates to the redacted AUSAs and potentially other DOJ officials. *See Reporters Comm. for Freedom of the Press v. U.S. Dep't of Justice*, No. 19-2847, 2021 U.S. Dist. LEXIS 215639, *10 (D.D.C. Nov. 8, 2021) (whether an exemption could potentially apply to responsive records does not permit the agency to refuse to search for these records). Because the names of the officials are redacted under Exemption 6, Plaintiff cannot determine the number or identity of additional AUSAs whose records should have been searched. To resolve this ambiguity and to determine whether Defendant has conducted an adequate search, Plaintiff respectfully requests this Court to conduct an *in camera* review of the eight pages of emails that Defendant has produced, as well as single-page email (Plf's Ex. 3) produced by the Criminal Division. Because the records are "few in number and of short length," the Court may reasonably review the responsive records *in camera*. *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980).

## II.   Defendant Is Withholding Information Not Validly Exempt from Disclosure Under FOIA. [1]

Defendant is withholding in full 21 pages of two sets of attorney meeting notes – those taken by Ariail at the AP Meeting, and those taken by the unidentified colleague at a meeting later the same day as well as one sentence of an email communication between Weissmann and Ariail.  *See* Def.'s Mem. at 10; Cain Decl. ¶¶ 33-34; *Id*. Ex. A.

The Government bears the burden of justifying its withholding of materials responsive to Plaintiff's FOIA request.  5 U.S.C. § 552(a)(4)(B).  Here, Defendant fails to show – as it cannot – that the withheld information is attorney work-product exempt from disclosure pursuant to FOIA Exemption 5.  *See* Cain Decl., Exs. A and I, ECF No. 48-2.  It is not.

The attorney work-product doctrine protects only the "mental impressions, conclusions, opinions, or legal theories of an attorney" made in anticipation of litigation or for trial.  *United States v. Deloitte L.L.P.*, 610 F.3d 129, 135 (D.C. Cir. 2010) (quoting Fed.R.Civ.P. 26(b)(3)).  "In assessing whether a document was prepared in anticipation of litigation, the test is 'whether, in light of the nature of the document and the factual situation in a particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Id.*, at 137 (quoting *In re Sealed Case,* 146 F.3d 881, 884 (D.C. Cir. 1998)).  The threshold inquiry considers "whether there was 'a subjective belief that litigation was a real possibility' at the time the document was prepared and whether that belief was 'objectively reasonable.'" *Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin*., 370 F. Supp. 3d 116, 135 (D.D.C. 2019) (citations omitted); *In re Sealed Case,* 146 F.3d at 884.

---

[1]   Plaintiff does not seek public disclosure of personally identifying information withheld pursuant to Exemption 6.  However, as outlined above, Plaintiff seeks limited review of the redacted identities to determine the universe of potential custodians.

Defendant states the handwritten notes "contain the 'mental impressions' of Ariail and his colleague, 'concerning information related to potential criminal activity received in their official capacity as federal prosecutors and possible investigative steps – and thus, in reasonable anticipation of future litigation.'" Def.'s Mem. at 19; Cain Decl., ¶ 50. But this argument is a red herring. Not every written document generated by an attorney is subject to the privilege. *Senate of Puerto Rico ex rel. Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987). And the circumstances here do not support a conclusion that the two sets of handwritten notes warrant attorney work-product protection.

First, Defendant makes no showing that Ariail prepared his handwritten notes with the subjective belief that litigation was a real possibility. Counsel for Defendant spoke directly with Ariail. Def.'s Mem. at 9; Tr. At 15:19-16:13, ECF No. 45. Ariail confirmed he attended the meeting in his capacity as the former head of EDNY's organized crime and gang units. *Id*. What he did *not* confirm is that his handwritten notes represented his mental impressions with an eye toward litigation. It would have been easy enough to do so having spoken directly with Defendant's counsel. It is telling that *no* such direct representation is made in Defendant's declaration.

Moreover, a mere connection to litigation is not enough; the document must have been created *because of* it. *Stonehill v. United States DOJ Tax Div.*, No. 19-cv-03770, 2022 U.S. Dist. LEXIS 24285, *62-63 (D.D.C. Feb. 10, 2022). Defendant does not articulate what investigation or anticipated litigation with which Ariail was involved to warrant attorney work-product protection to Ariail's post-meeting notes. On the contrary, it appears the handwritten notes being withheld were simply Ariail's normal course of conduct in taking notes to memorialize a meeting rather than his mental impressions or deliberations on an investigation or anticipated

litigation.  Ariail informed his former colleague of a box of several notebooks of handwritten notes which he left behind when he left.  Gonzalez-Rivera Decl., ¶ 6.  These notebooks served the purpose of memorializing "meetings attended by Ariail over a period of time, including April 2017."  *Id.* at ¶ 5.  Clearly it was Ariail's normal course of conduct to take notes to memorialize a meeting.  Defendant's characterization that the notes represent "mental impressions" and deliberations on an investigation or anticipated litigation, absent corroboration from Ariail, is not supported.

Notably, in Defendant's initial summary judgment motion, DOJ argued it had no responsibility to search Ariail's records (despite knowing he attended the meeting) resulting in deletion of his entire pst file  after "3 years and 30 days" because his office had no case or project file on Manafort or the AP meeting and there was no litigation hold on Ariail's records. *See* Def.'s Reply at 7 & n. 3, ECF 30; Mem. Op. at 13.  In the same breath, Defendant represented that the April 2017 meeting was handled by the Money Laundering Section and not tied to a subject matter that the Fraud Section was investigating. *See* Second O'Keefe Decl., ¶ 12, ECF No. 30-1; Mem. Op. at 11.  Weissmann was the Chief of the Fraud Section.  *See* Def.'s SOF ¶¶ 4, 13, ECF 24-1; Mem. Op. at 11.  Neither Weissmann nor Ariail, nor either of their Departments, were involved in the investigation or litigation of Paul Manafort.  Yet now, after the court-ordered search produced records, Defendant asserts they must be withheld because of the nature of Weissmann and Ariail as attorneys with an eye toward litigation on the matter. Def.'s Mem. at 17-19.

Second, the purpose of the meeting, as reported by AP reporters in the Politico news article entitled "Associated Press May Have Led FBI to Manafort Storage Locker" was to learn information from the Agency regarding the Manafort investigation.  Plf's Ex. 3.  Specifically, the

Associated Press ("AP") spokeswoman Lauren Easton stated, "Associated Press journalists met with representatives from the Department of Justice in an effort to get information on stories they were reporting, as reporters do. During the course of the meeting, they asked DOJ representatives about a storage locker belonging to Paul Manafort, without sharing its name or location." *Id.*; SOF ¶ 75. Ariail confirmed he attended the meeting in his capacity as former head of EDNY's organized crime and gang units. Def.'s Mem. at 9; Tr. 15:19-16:13, ECF No. 45. But that is where it ends. Defendant does not attempt to connect Ariail to *any* investigation or litigation involving Paul Manafort. Without more, the circumstances indicate only that Ariail's presence at the meeting was as the head of EDNY's organized crime and gang units, not as an attorney involved in the investigation or prosecution of Paul Manafort. The Court should undertake *in camera* review to determine the nature of Ariail's handwritten notes.

Third, Defendant is completely silent on attaching attorney work-product protection to the unidentified colleague's notes. The colleague did not even attend the AP meeting, yet a search of his or her records yielded responsive records. Defendant fails to even address how the attorney work-product protection applies to the colleagues' notes from the afternoon meeting. The colleague still works at DOJ. It would be easy enough to have him or her testify that his or her notes represented "mental impressions" created because of anticipated litigation. As well, there is no reason to withhold the colleague's specific involvement in an investigation or litigation given the (b)(6) protection Plaintiff does not challenge. However, it is doubtful that the colleague had any involvement in any anticipated litigation regarding Paul Manafort given that he or she did not attend the morning meeting, even though he or she was clearly available for the afternoon meeting that very same day.

Additionally, Defendant is withholding one sentence from an email communication between Weissmann and Ariail asserting attorney work-product protection because it "reflects 'potential investigative steps' that two DOJ attorneys who attended the April 11, 2017 'AP' meeting could take."  Def.'s Mem. at 19; Cain Decl. ¶ 51.  Far more evidence of attorney involvement is required before a record may be deemed attorney work product.  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 366 (1976); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

Finally, all of the cases Defendant relies upon in its motion are clearly distinguishable from the circumstances here: *Gov't Accountability Project v. U.S. Dep't of Justice*, 852 F. Supp. 2d 14, 26 (D.D.C. 2012) (documents discuss attorney's impressions about the case, evidence and next steps);  *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 432 F.3d, 366 369 (D.C. Cir. 2005)(nine emails involving communications about whether DOJ should file an *amicus* brief in the *Boim* litigation agency's position in brief); *Darui v. U.S. Dep't of State*, 798 F. Supp. 3d 32, 39 (D.D.C. 2011) (involved prosecuting attorneys in criminal case and preparation for sovereign immunity hearing);  *Dalal v. U.S. Dep't of Justice,* No. 16-cv-1040, 2022 U.S. Dist. 210074, *16 (D.D.C. Nov. 21, 2022) (withheld email contains 'information related to trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to plaintiff's criminal case); *SafeCard Services, Inc.*, 926 F.2d at 1203 ("where an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product.")

Given the circumstances here, as described above, disclosure of the handwritten notes and one sentence in the email communication most certainly will not harm – or even reveal – any

mental impressions of attorneys involved in an investigation.  *See* Def.'s Mem. at 24, citing *Leopold v. U.S. Dep't of Justice*, 487 F. Supp. 3d 1, 10 n. 4 (D.D.C. 2020).

## CONCLUSION

Therefore, for the reasons set forth above, Defendant has failed, as a matter of law, to meet its legal burden and statutory duty to conduct an adequate search for all potentially responsive records to Plaintiff's FOIA request and is improperly withholding information not validly exempt from disclosure under FOIA.

The Court should deny Defendant's motion for summary judgment and grant Plaintiff's motion for summary judgment.

Dated:  July 17, 2023                              Respectfully submitted,

                                                   */s/ Lauren M. Burke*
                                                   D.C. Bar No. 1028811
                                                   */s/ Kathryn Blankenberg*
                                                   D.C. Bar No. 1781777
                                                   JUDICIAL WATCH, INC.
                                                   425 Third Street SW, Suite 800
                                                   Washington, DC 20024
                                                   Phone: (202) 646-5172

                                                   *Counsel for Plaintiff*