## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH,

                Plaintiff,

        v.                        Civil Action No. 19-0879 (CJN)

UNITED STATES DEPARTMENT
OF JUSTICE,

                Defendant.

### THIRD DECLARATION OF COURTNEY J. O'KEEFE

I, Courtney J. O'Keefe, declare the following to be true and correct:

1.      I am the Deputy Chief in the Freedom of Information Act ("FOIA")/Privacy Act ("PA") Unit in the Office of Enforcement Operations in the Criminal Division of the United States Department of Justice ("Department" or "DOJ").  I have held this position since April 2023.  I have been employed as an Attorney with the Department since 2015.

2.      In my capacity as the Deputy Chief of the FOIA/PA Unit, and in conjunction with the Chief of the FOIA/PA Unit, I assist in supervising the handling of FOIA and PA requests processed by the FOIA/PA Unit.  I am responsible for, among other things, providing litigation support and assistance to Assistant United States Attorneys and Civil Division Trial Attorneys who represent the Criminal Division in lawsuits filed in federal court under the FOIA and/or the PA stemming from requests for Criminal Division records.

3.      The FOIA/PA Unit is responsible for processing FOIA/PA requests that seek records from the Criminal Division.  The FOIA/PA Unit determines whether the Criminal Division maintains records responsive to FOIA/PA requests, and if so, whether they can be

released in accordance with the FOIA and the PA.  In processing such requests, the FOIA/PA

Unit consults with personnel in the Criminal Division sections where potentially responsive

records may be maintained and, when appropriate, with other components within the Department

of Justice, as well as with other Executive Branch agencies.

4.      Due to the nature of my official duties, I am familiar with the procedures followed

by the Criminal Division in responding to requests for information from its files pursuant to the

provisions of the FOIA, 5 U.S.C. § 552, and the PA, 5 U.S.C. § 552a.  Specifically, I am familiar

with the FOIA request submitted by Plaintiff to the Criminal Division that is at issue in this

litigation and the Criminal Division's search and response to that request.

5.      I make the statements herein on the basis of personal knowledge, as well as on

information provided to me by others within the Criminal Division with knowledge of the search

and documents at issue in this case and on information acquired by me in the course of

performing my official duties in the FOIA/PA Unit.

6.      This declaration incorporates by reference my declarations dated March 11, 2021

("O'Keefe Decl.," ECF No. 24-4) and June 22, 2021 ("Second O'Keefe Decl.," ECF No. 29-1)

in support of the Department's Motion for Summary Judgment.

7.      On March 27, 2019, Plaintiff filed suit in connection with their July 5, 2018

FOIA request.  See Compl., ECF No. 01.

8.      On March 28, 2022, the Court issued a memorandum opinion, finding that the

Criminal Division's search was adequate, except for the need to route the FOIA request to

EOUSA.  See Mem. Op., ECF No. 32.  On April 26, 2022, the FOIA/PA Unit timely routed the

request to EOUSA.

**Supplemental Search Conducted by the FOIA/PA Unit in Response to Plaintiff's Request**

9.      In my declaration dated March 5, 2021, I explained the FOIA/PA Unit's search process and the original search conducted by the FOIA/PA Unit in response to Plaintiff's FOIA request.  See O'Keefe Decl., ¶¶ 9- 27.

10.      The FOIA/PA Unit participated in internal Department discussions during the course of the supplemental summary judgment briefing in this litigation regarding the results of another Department component's search.  The FOIA/PA Unit determined, as an exercise of discretion, to conduct a supplemental search of one additional Criminal Division custodian, who was employed as an Assistant United States Attorney by the Eastern District of New York but was detailed to a position within the Criminal Division ("Criminal Division detailee") as of the date of the meeting that is the subject of Plaintiff's FOIA request.  This Criminal Division detailee's name and Criminal Division email address appeared in the records already gathered in the original search.  However, this Criminal Division detailee was not previously identified as a custodian of potentially responsive records by the Criminal Division's Office of the Assistant Attorney General ("OAAG"), the Money Laundering and Asset Recovery Section ("MLARS"), or the Fraud Section ("FRD"), the three offices that the FOIA/PA Unit determined were the Criminal Division offices most likely to maintain records responsive to Plaintiff's request.  See O'Keefe Decl., ¶¶ 13-14.  Moreover, the FOIA/PA Unit did not originally determine it necessary to search this custodian's records because this custodian appeared a limited number of times in the records located during the course of the FOIA/PA Unit's search and did not actively participate in the discussions contained in the records located.

11.      The FOIA/PA Unit assessed that an appropriate time frame for the requested electronic search would be March 1, 2017 through June 30, 2017, the same time frame used in

3

previous electronic searches.  See O'Keefe Decl., ¶ 19.  Specifically, because the FOIA/PA Unit determined that the meeting in question occurred on April 11, 2017, this date range extended from more than five weeks prior the meeting, to approximately seven weeks after its occurrence. Based on both the face of Plaintiff's request and discussions with personnel from OAAG and MLARS, including those who were involved in the April 2017 meeting in question, the FOIA/PA Unit assessed that this timeframe would suffice to capture responsive records.  See O'Keefe Decl., ¶ 19.

12.     On August 15, 2023, the FOIA/PA Unit sent a search request to the ITM Unit to conduct an electronic records search.  Specifically, the FOIA/PA Unit requested that ITM search the email account of the relevant custodian, i.e., the Criminal Division detailee who had been identified by the means described above, as having potentially responsive records.  The FOIA/PA unit provided the same search terms as the first two electronic records searches for this electronic records search: "AP" with "meeting," "Associated Press" with "meeting," "Eric Tucker," Jeff Horwitz," "Ted Bridis," "Jack Gillum," "etucker@ap.org," "jhorwitz@ap.org," or "tbridis@ap.org."[1]  See O'Keefe Decl., ¶ ¶ 20, 23.  On August 17, 2023, the ITM Unit completed the electronic search and returned potentially responsive emails to the FOIA/PA Unit.

13.     On August 15, 2023, the FOIA/PA Unit also sent a search request to the Criminal Division Assistant Director of Records and Information Management and Records Manager ("Records Manager") to request a search for any of the Criminal Division detailee's potentially responsive hard copy records.  Accordingly, on August 16, 2023, the Records

---

[1] Eric Tucker, Jeff Horwitz, Ted Bridis, and Jack Gillum were the AP reporters present at the April 2017 meeting.  Ann Brickley's emails provided the reporters' names and contained the email addresses of Tucker, Horwitz, and Bridis, but not Gillum.  See First O'Keefe Decl.¶ 17.

Manager sent an inquiry to the OAAG records point of contact requesting any potentially responsive hard copy records.[2]  The OAAG point of contact searched for the Criminal Division detailee's hard copy records by manually reviewing all records contained in an unclassified file cabinet, as well as all records contained in OAAG safes.  As a result of this search, no responsive hard copy records were located.

14.	Additionally, the Records Manager requested that the Criminal Division Records Unit point of contact search their Records and File Tracking system, which tracks records of departed employees that have been provided to the Records Unit, for any references to hard copy records that could have been provided to the Records Unit following the Criminal Division detailee's departure.  This search was conducted using the Criminal Division detailee's name.  At the time this search was conducted, no responsive hard copy records were located.

15.	However, on October 19, 2023, the Records Manager identified through a further search of the Records and File Tracking system, a box of hard copy records that contained an index list indicating that some of the records contained in the box could belong to the Criminal Division detailee.  The Records Manager determined that the Criminal Division detailee's name had been inadvertently misspelled in the index list and thus, did not appear in the previous searches conducted by the Records Unit.

16.	As of the date of this declaration, the Records Manager has retrieved the potentially responsive hard copy records located in the Records and File Tracking system and delivered them to the FOIA/PA Unit for review.

---

[2]  The Criminal Division custodian was on detail to the Office of the Assistant Attorney General ("OAAG").

17.     The Criminal Division has conducted an adequate and reasonable supplemental search for records responsive to Plaintiff's request.  Upon determining that an additional custodian could maintain responsive records, the Criminal Division promptly searched the custodian's email account for potentially responsive records.  The electronic search was conducted using search terms and parameters designed to locate all potentially responsive records.  Further, when the Records Manager discovered, on the date of this filing, of an additional box of paper records that needs to be searched, the Records Manager promptly requested that those records be retrieved and provided so that a manual review may be conducted.

18.     The Criminal Division will file a supplemental notice by October 24, 2023 informing the Court as to whether any responsive records were located through this final search. This review will constitute the conclusion of all possible threads for the Criminal Division to follow in conducting the supplemental search described herein.

19.     Each step in the handling of Plaintiff's request was entirely consistent with the FOIA/PA Unit's procedures, which were adopted to ensure an equitable response to all persons seeking records under the FOIA/PA.

## Supplemental Response to Plaintiff's FOIA Request

20.     On October 12, 2023, after processing thirteen pages of records, the FOIA/PA Unit issued a supplemental response.  Thirteen pages were released in part, with certain information marked as exempt from disclosure pursuant to 5 U.S.C. § 552(b)(5), (b)(6),

(b)(7)(C), and (b)(7)(E).[3]  In this letter, the FOIA/PA Unit informed Plaintiff that twelve pages were duplicate records of those already produced during the course of this litigation.[4]

21.     On October 19, 2023, the FOIA/PA Unit issued a revised supplemental response and production of the records described in Paragraph 20 after discovering that an FBI employee's name, whose identity had previously been disclosed in the course of this litigation, had inadvertently been withheld.  A copy of this revised supplemental response to Plaintiff, dated October 19, 2023, is attached hereto as Exhibit A, inclusive of its attachment of the thirteen responsive pages.

## Description of Documents and Withheld Material

22.     The information that the FOIA/PA Unit withheld consists of portions of an email, as well as a draft email, both of which pertained to discussions among Department attorneys relating to then-ongoing criminal law enforcement investigations, as well as names and personal contact information of Department employees and a third-party.

## Exemption 5

23.     Exemption 5 of the FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  As discussed in detail below, the

---

[3] The FBI withheld certain information in these records pursuant to 5 U.S.C. § 552 (b)(6), (7)(C), and (b)(7)(E).  The FBI will address these withholdings in a separate declaration filed concurrently before this Court.

[4] Plaintiff did not challenge the Criminal Division's withholdings in the previously released pages during the initial round of summary judgment briefing pertaining to these records.  The only issue in dispute for the Criminal Division during the briefing pertaining to these records was adequacy of search.  See Mem. Op., ECF No. 32 at 1.

information protected by the FOIA/PA Unit pursuant to FOIA Exemption 5 falls squarely within

the attorney work-product privilege.

### Exemption 5: Inter-/Intra-Agency Threshold

24.     The information withheld from Plaintiff pursuant to this exemption consists of

communications generated by and wholly internal to the Department.  Specifically, the FOIA/PA

Unit withheld the text of an email, dated April 11, 2017, written by Criminal Division attorney

Ann Brickley to another Criminal Division attorney, Andrew Weissmann (See CRM-000009,

CRM-000011),[5] as well as an email draft, dated April 13, 2017, written by the Criminal

Division detailee described in Paragraph 10 to a Criminal Division attorney, Andrew

Weissmann, and an Assistant United States Attorney, Shreve Ariail, as well as another Assistant

United States Attorney (See CRM-000001).[6]  Both of these communications pertained to internal

discussions regarding the posture of then-ongoing criminal investigations.  As such, the records

are "inter-/intra-agency" records within the threshold of Exemption 5.

### Exemption 5: Attorney Work-Product Privilege

25.     The attorney work-product privilege encompassed by Exemption 5 of the

FOIA shields material prepared by an attorney, or at the direction of an attorney, in reasonable

anticipation of litigation.  It protects both tangible items prepared or developed by an attorney in

anticipation of litigation, and intangible items such as mental impressions, conclusions, opinions,

or legal theories as s/he anticipates or prepares for litigation.  The privilege extends to materials

prepared during law enforcement investigations when an investigation is based upon a specific

wrongdoing and is undertaken to collect evidence and build a case against the individual alleged

---

[5] This email is duplicated in the records released in part to Plaintiff.

[6] The draft nature of the April 13, 2017 email is reflected by the fact that there is no "from" line
at the top of the email.

to have committed wrongdoing.  The purpose of this privilege is to protect the adversarial process by insulating the attorneys' preparation of litigation materials from scrutiny.  The privilege protects any part of a document prepared in anticipation of litigation, not just the portions containing opinions and legal theories.

26.     The information protected under this privilege consists of the text of an email authored by Ms. Brickley, a Criminal Division attorney, as part of a conversation between Department attorneys, as well as a draft email written by a Criminal Division detailee, while conducting criminal investigations into individuals who may have violated federal criminal laws. The withheld Brickley email, as well as the withheld email draft, consider strategic courses of action for the Department to consider undertaking during then-ongoing law enforcement investigations.  Additionally, the withheld text of the Brickley email contains the rationale for her suggested path forward for the then-ongoing law enforcement investigation being discussed.

27.     DOJ attorneys are singularly tasked with enforcing federal laws and defending the interests of the United States.  Disclosure of the withheld information would reveal DOJ attorneys' assessments of the posture of then-ongoing criminal investigations, including opining on potential deliberate steps under consideration in furtherance of then-ongoing criminal law enforcement investigations.  The information withheld reflects essential attorney work-product – legal theories and analysis – that DOJ attorneys engage in as they execute their core function within the Department of Justice.

**Foreseeable Harm**

28.     Disclosure of the withheld portion of the email, as well as the withheld email draft, would reveal DOJ attorneys' thought processes in assessing potential strategic steps that DOJ attorneys were planning to take in then-ongoing law enforcement investigations.  Release of

9

this information would thus reveal Department attorneys' internal analyses and rationales regarding then-ongoing law enforcement investigations.  Should this information be released, it would chill the essential zone of privacy that Department attorneys rely on to offer their candid assessments of the law and facts—and strength and weaknesses—of the cases they investigate and prosecute.  This chilling effect, in turn, would foreseeably harm the ability of the Department to execute on its core mission to investigate and bring to justice violations of federal criminal law, as well as the adversarial process of the U.S. justice system itself.

**Exemption 6 and 7(C)**

29.     FOIA Exemption 6 protects information in "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is generally read broadly to encompass any file containing information that applies to a particular person.  Here, the records constitute "similar files" as they contain the names of Department personnel.

30.     FOIA Exemption 7(C) protects information "compiled for law enforcement purposes" and protects personal privacy when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  The Criminal Division develops, enforces, and supervises the application of federal criminal laws. Specifically, the withheld emails were created during the course, and in furtherance, of the then-ongoing criminal investigations.  Accordingly, these records were compiled for a law enforcement purpose and readily meet the threshold of Exemption 7.

31.     When withholding information pursuant to these two exemptions,[7] the FOIA/PA Unit is required to balance the privacy interests of the individuals mentioned in these

---

[7]  The FOIA/PA Unit's practice is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "*would* constitute a clearly unwarranted

records against any public interest in disclosure.  For purposes of this analysis, a public interest exists when information would shed light on the Criminal Division's performance of its mission to develop, enforce, and supervise the application of all federal criminal laws.  Courts have generally found that individuals (including law enforcement personnel as well as private third parties) have protectable privacy interests in relation to being associated with criminal investigations and prosecutions.  Courts also generally have found that there is no overriding public interest in such information because personal information about individuals typically does not shed light on or significantly increase the public's understanding of the operations and activities of the Department of Justice.  Here, Exemptions 6 and 7(C) would justify withholding the identifying information and contact information of Department personnel that appear in criminal law enforcement communications and documents.

32.     The FOIA/PA Unit determined that Department employees whose identities were made public in the course of this litigation have a de minimis privacy interest in their names in these emails.  The names of those individuals were released.  However, the names of Department employees not in public-facing positions, including attorneys not publicly affiliated with specific criminal investigations discussed in the records, were withheld.

33.     Information withheld by FOIA/PA Unit pursuant to Exemption 6 and 7(C) consist of: (1) the names of non-public facing Department employees and employees not publicly affiliated with a specific criminal investigation; (2) email addresses and phone numbers

---

invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "*could* reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion.  The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

for Department employees; and (3) phone numbers for an Associated Press journalist who attended the April 2017 meeting that is the subject of Plaintiff's FOIA request.

34.     The FOIA/PA Unit determined that the privacy interests in Department employees' information, as well as in the Associated Press journalist's privacy interest in his phone numbers, is substantial (more than de minimis). Considering the sensitive law enforcement work DOJ employees undertake related to the enforcement of federal laws, the release of such information – tied directly to a DOJ employee – could subject them to harassment and unwanted publicity, which may limit their effectiveness in handling their respective prosecution or investigation functions and duties. Disclosure would also reveal the identities of Department employees not publicly affiliated with specific criminal investigations, and in this case, a then-ongoing sensitive and high-profile criminal law enforcement investigation. Additionally, release of this information would reveal the identity of an administrative assistant who has access to sensitive law enforcement information, who is not otherwise public facing. Harassing telephone calls and unwarranted hostility could disrupt and impede their official activity. Release of this identifying information could result in unwanted and even unlawful efforts to gain additional access to these individuals and/or personal information about them. And finally, the FOIA/PA Unit also determined that the Associated Press journalist whose phone numbers appear in the relevant records also has a substantial interest in the protection of his phone numbers from the public, as the disclosure of this information could likewise lead to unwanted contact and harassment.

35.     Upon determining that the privacy interests described above are substantial, FOIA requires a balancing analysis between the privacy interests of the individual against any countervailing public interest in disclosure. In order to overcome a more than de minimis

privacy interest, Plaintiff must articulate a "FOIA public interest" in disclosure and establish a

nexus between the withheld information and that FOIA public interest.  To demonstrate a FOIA

public interest in disclosure, Plaintiff must articulate how the withheld information sheds light on

the operations and activities of government or how it would contribute significantly to the

public's understanding of the operations or activities of the Criminal Division or the Department.

The FOIA/PA Unit has not identified any cognizable public interest in disclosure of the

information described in paragraphs 33 and 34.  Revealing this information at issue is unlikely to

add to the public's understanding of how the Criminal Division or the Department works or how

well it performs its statutory duties.  Thus, the substantial privacy interests protected by

withholding this information outweigh the non-existent public interest that might be served by its

release.  Accordingly, the release of such information constitutes a clearly unwarranted invasion

of personal privacy pursuant to Exemptions 6 and 7(C).

### Foreseeable Harm

36.     The FOIA/PA Unit considered the foreseeable harm standard when asserting

Exemptions 6 and 7(C) over the records described in paragraphs 29-35.  Disclosure of the names

of non-public U.S. Government employees, as well as email addresses and phone numbers of

U.S. Government employees, could subject these individuals to harassment and unwanted

publicity, considering the sensitive work these employees conduct, which may limit their

effectiveness in handling their respective mission-specific functions and duties.  Revealing this

information may limit their effectiveness in conducting future investigations or cooperating with

the U.S. Government in law enforcement matters.  Additionally, disclosure of the phone numbers

of an Associated Press journalist, who was present at the April 2017 meeting, could reasonably

be expected to constitute an unwarranted invasion of personal privacy.   Releasing this

information concerning this third party to the public could subject this individual to harassment, as well as undue public attention.

37.     All of the individuals discussed in Paragraph 36 have more than de minimis privacy interests in the protected information.  In each instance where information was withheld from Plaintiff pursuant to Exemptions 6 and 7(C), the FOIA/PA Unit determined that these privacy interests were not outweighed by any FOIA public interest in the disclosure of that information.  The release of this information would constitute a clearly unwarranted invasion of personal privacy and would not shed any light on agency functions.

### Segregation of Non-Exempt Information

38.     I have carefully reviewed the records at issue line-by-line and determined that all nonexempt information was segregated and disclosed.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Courtney J. O'Keefe

Executed this 19th day of October 2023.

14

Exhibit A



**U.S. Department of Justice**

Criminal Division

---

*Office of Enforcement Operations*                         *Washington, D.C. 20530*

**VIA Electronic Mail**                         October 19, 2023

Ramona R. Cotca
Judicial Watch, Inc.
425 Third St., SW
Suite 800
Washington, D.C. 20024                    Judicial Watch, Inc. v. U.S. Department of
rcotca@JUDICIALWATCH.ORG            Justice, 19-cv-00879-CJN (D.D.C.)

Dear Ms. Cotca:

  This is a revised supplemental response to your Freedom of Information Act request dated July 5, 2018, for records concerning an April 2017 meeting between DOJ, FBI personnel, and reporters of the Associated Press.[1]  Your request is currently the subject of the above-referenced litigation.

  This response pertains to 13 pages of records, 12 of which are duplicative of pages previously released to you in the course of this litigation.[2]  After careful review, I have determined that these pages may be released in part with certain information withheld pursuant to:

   5 U.S.C. § 552(b)(5), which concerns certain inter- or intra-agency communications protected by the deliberative process and the attorney work-product privileges;

   5 U.S.C. § 552(b)(6), which concerns materials the release of which would constitute a clearly unwarranted invasion of the person privacy of third parties;

   5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties; and,

---

[1] The FOIA/PA Unit is issuing a revised production of the enclosed records after discovering that an FBI employee's name, whose identity had previously been disclosed, had inadvertently been withheld.

[2] Please be advised that pages 2-3 (CRM-000002 – CRM-000003) and 6-13 (CRM-000005 – CRM-000013) are duplicative of records previously produced by CRM, and pages 4-5 (CRM-000004- CRM-000005) are duplicative of a record previously produced by EOUSA.

2

5 U.S.C. § 552(b)(7)(E), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to disclose techniques or procedures for law enforcement investigations or prosecutions.

You may contact Trial Attorney Antonia M. Konkoly by phone at (202) 514-2395 or by mail at U.S. Department of Justice, Civil Division, Federal Programs Branch, 1100 L Street, N.W., Washington, DC 20005 for any further assistance and to discuss any aspect of your request.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to an administrative appeal of this determination. If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account on the following website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

for
Christina Butler
Chief
FOIA/PA Unit

Enclosures

Cc: Antonia M. Konkoly (Antonia.Konkoly@usdoj.gov)

**To:**  Ariail, Shreve (USANYE); Weissmann, Andrew (CRM)
**Cc:**  (b) (6), (b) (7)(C) (USANYE)
**Subject:**  RE: AP's latest stories on Paul Manafort
**Date:**  Thursday, April 13, 2017 9:44:08 AM

---

**(b)(5)**

-----Original Message-----
From: Ariail, Shreve (USANYE) [mailto:(b) (6), (b) (7)(C) @usdoj.gov]
Sent: Wednesday, April 12, 2017 6:52 PM
To: Weissmann, Andrew (CRM) (b) (6), (b) (7)(C) @CRM.USDOJ.GOV>
Cc: (b) (6), (b) (7)(C) (CRM) (b) (6), (b) (7)(C) @CRM.USDOJ.GOV>; (b) (6), (b) (7)(C) (USANYE) (b) (6), (b) (7)(C) @usdoj.gov>
Subject: Re: AP's latest stories on Paul Manafort

Well, given that don't know what's been done, I'm working on investigative plan that focuses broadly on what we think should be done, and possible theories of prosecution, coming up with theoretical predicate acts etc.

Per our prior discussion, I'd like to see/know what MLARS is doing/has done so we don't overlap.

Sent from my iPhone

On Apr 12, 2017, at 6:48 PM, Weissmann, Andrew (CRM) (b) (6), (b) (7)(C) @usdoj.gov> wrote:

Thx.  Are you all putting a written plan together including what's been done and what steps you will take?

Andrew Weissmann
Chief
Fraud Section
Criminal Division
Office: (b) (6), (b) (7)(C)

On Apr 12, 2017, at 6:42 PM, Ariail, Shreve (USANYE)
(b) (6), (b) (7)(C) @usdoj.gov<mailto:(b) (6), (b) (7)(C) @usdoj.gov>> wrote:



Sent from my iPhone

Begin forwarded message:

From: "Bridis, Ted" <TBridis@ap.org<mailto:TBridis@ap.org>>
Date: April 12, 2017 at 6:36:15 PM EDT
To: (b) (6), (b) (7)(C) @usdoj.gov<mailto:(b) (6), (b) (7)(C) @usdoj.gov>"
(b) (6), (b) (7)(C) @usdoj.gov<mailto:(b) (6), (b) (7)(C) @usdoj.gov>>
Subject: AP's latest stories on Paul Manafort

https://apnews.com/20cfc75c82eb4a67b94e624e97207e23/AP-Exclusive:-Manafort-firm-received-Ukraine-ledger-payout

... Now, financial records newly obtained by The Associated Press confirm that at least $1.2 million in payments listed in the ledger next to Manafort's name were actually received by his consulting firm in the United States. They include payments in 2007 and 2009, providing the first evidence that Manafort's firm received at least some money listed in the so-called Black Ledger.

https://apnews.com/7820703c490a45a8a5608274e24e827b/Former-Trump-campaign-chairman-to-register-as-foreign-agent

WASHINGTON (AP) — President Donald Trump's former campaign chairman Paul Manafort will register with the Justice Department as a foreign agent for lobbying work he did on behalf of political interests in Ukraine, led at the time by a pro-Russian political party, his spokesman said Wednesday.... By registering retroactively, Manafort will be acknowledging that he failed to properly disclose his work to the Justice Department as required by federal law.

Ted Bridis, news editor
Investigative
The Associated Press
1100 13th St. NW, Suite 700
Washington, DC 20005-4076
(b) (6), (b) (7)(C), voice
(b) (6), (b) (7)(C), cell
https://www.ap.org/tips

**From:** (b) (6), (b) (7)(C) (CRM) on behalf of Weissmann, Andrew (CRM)
**To:** Ariail, Shreve (USANYE); (b) (6), (b) (7)(C) (CRM); (b) (6), (b) (7)(C) per FBI (WF) (FBI); "tbridis@ap.org"; Brickley, Ann (CRM); "etucker@ap.org"; Ohr, Bruce (ODAG); Greenaway, Karen A. (CID) (FBI); "jhorwitz@ap.org"
**Cc:** Moon, Matthew S. (CID) (FBI)
**Subject:** FW: Meeting with AP

-----Original Appointment-----
From: Weissmann, Andrew (CRM)
Sent: Wednesday, April 5, 2017 4:15 PM
To: Weissmann, Andrew (CRM); (b) (6), (b) (7)(C) (CRM) (b) (6), (b) (7)(C) per FBI WF) (FBI); 'tbridis@ap.org'; Brickley, Ann (CRM); 'etucker@ap.org'; Ohr, Bruce (ODAG); Greenaway, Karen A. (CID) (FBI); 'jhorwitz@ap.org'
Cc: Moon, Matthew S. (CID) (FBI)
Subject: FW: Meeting with AP
When: Tuesday, April 11, 2017 9:00 AM-10:30 AM (UTC-05:00) Eastern Time (US & Canada).
Where: 4th floor VTC (4204)


-----Original Appointment-----
From: (b) (6), (b) (7)(C) (CRM) On Behalf Of Weissmann, Andrew (CRM)
Sent: Tuesday, April 4, 2017 1:44 PM
To: (b) (6), (b) (7)(C) per FBI WF) (FBI); 'tbridis@ap.org'; Brickley, Ann (CRM); 'etucker@ap.org'; Ohr, Bruce (ODAG); Greenaway, Karen A. (CID) (FBI); 'jhorwitz@ap.org'
Cc: Moon, Matthew S. (CID) (FBI)
Subject: Meeting with AP
When: Tuesday, April 11, 2017 9:00 AM-10:30 AM (UTC-05:00) Eastern Time (US & Canada).
Where: 4th floor VTC (4204)


We are located in the Bond Building at 1400 New York Ave NW.

**From:**     Ariail, Shreve (USANYE)
**To:**       (b) (6), (b) (7)(C) (USANYE); (b) (6), (b) (7)(C) (CRM); (b) (6), (b) (7)(C) (USANYE)
**Subject:**  Fwd: AP's latest stories on Paul Manafort
**Date:**     Tuesday, May 16, 2017 2:54:40 PM

Sent from my iPhone

Begin forwarded message:

**From:** "Bridis, Ted" <TBridis@ap.org>
**Date:** May 16, 2017 at 2:18:02 PM EDT
**To:** "(b) (6), (b) (7)(C) @usdoj.gov" <(b) (6), (b) (7)(C) @usdoj.gov>
**Subject: RE: AP's latest stories on Paul Manafort**

https://apnews.com/6ac48bb640d34e55b5e57da0240a04bd/Russian-magnate-sues-AP-over-story-on-Trump-campaign-ties

> *WASHINGTON (AP) — A Russian billionaire with ties to Vladimir Putin sued The Associated Press on Monday for defamation over a story about his connections to a former Trump campaign chairman.*
>
> *Aluminum magnate Oleg Deripaska claimed in the federal defamation and libel lawsuit that the AP's March 22 story about his business dealings with Paul Manafort was inaccurate and hurt his career by falsely accusing him of criminal activity.*
>
> *The AP's general counsel, Karen Kaiser, said the news organization stands by its story and will defend itself vigorously.*

**From:** Bridis, Ted
**Sent:** Wednesday, April 12, 2017 6:36 PM
**To:** (b) (6), (b) (7)(C) @usdoj.gov'
**Subject:** AP's latest stories on Paul Manafort

https://apnews.com/20cfc75c82eb4a67b94e624e97207e23/AP-Exclusive:-Manafort-firm-received-Ukraine-ledger-payout

> *... Now, financial records newly obtained by The Associated Press confirm that at least $1.2 million in payments listed in the ledger next to Manafort's name were actually received by his consulting firm in the United States. They include payments in 2007 and 2009, providing the first evidence that Manafort's firm received at least some money listed in the so-called Black Ledger.*

https://apnews.com/7820703c490a45a8a5608274e24e827b/Former-Trump-campaign-chairman-to-register-as-foreign-agent

*WASHINGTON (AP) — President Donald Trump's former campaign chairman Paul Manafort will register with the Justice Department as a foreign agent for lobbying work he did on behalf of political interests in Ukraine, led at the time by a pro-Russian political party, his spokesman said Wednesday.... By registering retroactively, Manafort will be acknowledging that he failed to properly disclose his work to the Justice Department as required by federal law.*

Ted Bridis, news editor
Investigative
The Associated Press
1100 13th St. NW, Suite 700
Washington, DC 20005-4076
(b) (6), (b) (7)(C) , voice
(b) (6), (b) (7)(C) cell
https://www.ap.org/tips

| | |
|---|---|
| **From:** | Weissmann, Andrew (CRM) |
| **To:** | Ariail, Shreve (USANYE) |
| **Cc:** | (b) (6), (b) (7)(C) (CRM); (b) (6), (b) (7)(C) (USANYE) |
| **Subject:** | Re: AP"s latest stories on Paul Manafort |
| **Date:** | Wednesday, April 12, 2017 6:48:49 PM |

Thx.  Are you all putting a written plan together including what's been done and what steps you will take?

Andrew Weissmann
Chief
Fraud Section
Criminal Division
Office: (b) (6), (b) (7)(C)

On Apr 12, 2017, at 6:42 PM, Ariail, Shreve (USANYE) (b) (6), (b) (7)(C) @usdoj.gov> wrote:

Sent from my iPhone

Begin forwarded message:

**From:** "Bridis, Ted" <TBridis@ap.org>
**Date:** April 12, 2017 at 6:36:15 PM EDT
**To:** (b) (6), (b) (7)(C) @usdoj.gov" < (b) (6), (b) (7)(C) @usdoj.gov>
**Subject: AP's latest stories on Paul Manafort**

https://apnews.com/20cfc75c82eb4a67b94e624e97207e23/AP-Exclusive:-Manafort-firm-received-Ukraine-ledger-payout

> *... Now, financial records newly obtained by The Associated Press confirm that at least $1.2 million in payments listed in the ledger next to Manafort's name were actually received by his consulting firm in the United States. They include payments in 2007 and 2009, providing the first evidence that Manafort's firm received at least some money listed in the so-called Black Ledger.*

https://apnews.com/7820703c490a45a8a5608274e24e827b/Former-Trump-campaign-chairman-to-register-as-foreign-agent

> *WASHINGTON (AP) — President Donald Trump's former campaign chairman Paul Manafort will register with the Justice Department as a foreign agent for lobbying work he did on behalf of political interests in Ukraine, led at the time by a pro-Russian political party, his spokesman said Wednesday.... By registering retroactively, Manafort will be acknowledging that he failed to properly disclose his work to the Justice Department as required by federal law.*

Ted Bridis, news editor

Investigative

The Associated Press

1100 13th St. NW, Suite 700

Washington, DC 20005-4076

(b) (6), (b) (7)(C) , voice

(b) (6), (b) (7)(C) cell

https://www.ap.org/tips

| | |
|---|---|
| **From:** | Ariail, Shreve (USANYE) |
| **To:** | (b) (6), (b) (7)(C)  (CRM); Weissmann, Andrew (CRM); (b) (6), (b) (7)(C  (USANYE) |
| **Subject:** | Fwd: AP's latest stories on Paul Manafort |
| **Date:** | Wednesday, April 12, 2017 6:42:38 PM |

Sent from my iPhone

Begin forwarded message:

**From:** "Bridis, Ted" <TBridis@ap.org>
**Date:** April 12, 2017 at 6:36:15 PM EDT
**To:** (b) (6), (b) (7)(C) @usdoj.gov" (b) (6), (b) (7)(C) @usdoj.gov>
**Subject: AP's latest stories on Paul Manafort**

https://apnews.com/20cfc75c82eb4a67b94e624e97207e23/AP-Exclusive:-Manafort-firm-received-Ukraine-ledger-payout

> *... Now, financial records newly obtained by The Associated Press confirm that at least $1.2 million in payments listed in the ledger next to Manafort's name were actually received by his consulting firm in the United States. They include payments in 2007 and 2009, providing the first evidence that Manafort's firm received at least some money listed in the so-called Black Ledger.*

https://apnews.com/7820703c490a45a8a5608274e24e827b/Former-Trump-campaign-chairman-to-register-as-foreign-agent

> *WASHINGTON (AP) — President Donald Trump's former campaign chairman Paul Manafort will register with the Justice Department as a foreign agent for lobbying work he did on behalf of political interests in Ukraine, led at the time by a pro-Russian political party, his spokesman said Wednesday.... By registering retroactively, Manafort will be acknowledging that he failed to properly disclose his work to the Justice Department as required by federal law.*

Ted Bridis, news editor
Investigative
The Associated Press
1100 13th St. NW, Suite 700
Washington, DC 20005-4076
(b) (6), (b) (7)(C) , voice
(b) (6), (b) (7)(C) cell
https://www.ap.org/tips

**From:**    Weissmann, Andrew (CRM)
**To:**      Swartz, Bruce; (b) (6), (b) (7)(C) (CRM)
**Subject:**  Fwd: tomorrow"s AP meeting
**Date:**    Tuesday, April 11, 2017 12:15:28 PM

---

Andrew Weissmann
Chief
Fraud Section
Criminal Division
Office: (b) (6), (b) (7)(C)

Begin forwarded message:

**From:** "Brickley, Ann (CRM)" (b) (6), (b) (7)(C) @CRM.USDOJ.GOV>
**Date:** April 11, 2017 at 8:18:41 AM EDT
**To:** "Weissmann, Andrew (CRM)" (b) (6), (b) (7)(C) @CRM.USDOJ.GOV>
**Subject: RE: tomorrow's AP meeting**


Hi Andrew:

(b) (5)

Thanks,

Ann

**From:** Brickley, Ann (CRM)
**Sent:** Monday, April 10, 2017 1:14 PM
**To:** Weissmann, Andrew (CRM) (b) (6), (b) (7)(C) @CRM.USDOJ.GOV>
**Subject:** RE: tomorrow's AP meeting

Thanks. I can talk until 2 or again after 3:30.


**From:** Weissmann, Andrew (CRM)
**Sent:** Monday, April 10, 2017 10:35 AM
**To:** Brickley, Ann (CRM) <(b) (6), (b) (7)(C) @CRM.USDOJ.GOV>
**Cc:** Greenaway, Karen A. (CID) (FBI) (b) (6), (b) (7)(C), (b)(7)(E) per FBI
**Subject:** RE: tomorrow's AP meeting

I checked with my assistant and that is just the room we are using (our VTC room) but there is no one attending by VTC).  We can arrange that if you would like.
I also have another matter to raise on this investigation if you have time today for a quick call?

Andrew Weissmann

Chief, Fraud Section
Department of Justice
(b) (6), (b) (7)(C)

---

**From:** Brickley, Ann (CRM)
**Sent:** Monday, April 10, 2017 10:23 AM
**To:** Weissmann, Andrew (CRM) (b) (6), (b) (7)(C) @CRM.USDOJ.GOV>
**Cc:** Greenaway, Karen A. (CID) (FBI) (b)(6), (b)(7)(C), (b)(7)(E) per FBI @ic.fbi.gov>
**Subject:** tomorrow's AP meeting

Hi Andrew – I see that tomorrow's meeting has a VTC indication.  Who is dialing in?

Thanks,
Ann

**Ann C. Brickley**
Trial Attorney
International Unit
Money Laundering & Asset Recovery Section
Criminal Division | U.S. Department of Justice
(b) (6), (b) (7)(C)

**From:** Weissmann, Andrew (CRM)
**To:** (b) (6), (b) (7)(C)  (CRM)
**Subject:** FW: tomorrow's AP meeting
**Date:** Tuesday, April 11, 2017 8:55:02 AM

---

oy

Andrew Weissmann

Chief, Fraud Section

Department of Justice

(b) (6), (b) (7)(C)

---

**From:** Brickley, Ann (CRM)
**Sent:** Tuesday, April 11, 2017 8:19 AM
**To:** Weissmann, Andrew (CRM) (b) (6), (b) (7)(C) @CRM.USDOJ.GOV>
**Subject:** RE: tomorrow's AP meeting

Hi Andrew:

(b) (5)

Thanks,

Ann

---

**From:** Brickley, Ann (CRM)
**Sent:** Monday, April 10, 2017 1:14 PM
**To:** Weissmann, Andrew (CRM) (b) (6), (b) (7)(C) @CRM.USDOJ.GOV>
**Subject:** RE: tomorrow's AP meeting

Thanks. I can talk until 2 or again after 3:30.

---

**From:** Weissmann, Andrew (CRM)
**Sent:** Monday, April 10, 2017 10:35 AM
**To:** Brickley, Ann (CRM) (b) (6), (b) (7)(C) @CRM.USDOJ.GOV>
**Cc:** Greenaway, Karen A. (CID) (FBI) (b) (6), (b) (7)(C), (b) (7)(E) per FBI
**Subject:** RE: tomorrow's AP meeting

I checked with my assistant and that is just the room we are using (our VTC room) but there is no one attending by VTC).  We can arrange that if you would like.

I also have another matter to raise on this investigation if you have time today for a quick call?

Andrew Weissmann

Chief, Fraud Section
Department of Justice
(b) (6), (b) (7)(C)

---

**From:** Brickley, Ann (CRM)
**Sent:** Monday, April 10, 2017 10:23 AM
**To:** Weissmann, Andrew (CRM)  (b) (6), (b) (7)(C)  @CRM.USDOJ.GOV>
**Cc:** Greenaway, Karen A. (CID) (FBI) (b) (6), (b) (7)(C), (b) (7)(E) per FBI
**Subject:** tomorrow's AP meeting

Hi Andrew – I see that tomorrow's meeting has a VTC indication.  Who is dialing in?

Thanks,
Ann

**Ann C. Brickley**
Trial Attorney
International Unit
Money Laundering & Asset Recovery Section
Criminal Division | U.S. Department of Justice
(b) (6), (b) (7)(C)

| | |
|---|---|
| **From:** | Weissmann, Andrew (CRM) |
| **To:** | (b) (6), (b) (7)(C) (CRM); (b) (6), (b) (7)(C) per FBI (WF) (FBI); "tbridis@ap.org"; Brickley, Ann (CRM); "etucker@ap.org"; Ohr, Bruce (ODAG); Greenaway, Karen A. (CID) (FBI); "jhorwitz@ap.org" |
| **Cc:** | Moon, Matthew S. (CID) (FBI) |
| **Subject:** | FW: Meeting with AP |

-----Original Appointment-----
From: (b) (6), (b) (7)(C) (CRM) On Behalf Of Weissmann, Andrew (CRM)
Sent: Tuesday, April 4, 2017 1:44 PM
To: (b) (6), (b) (7)(C) per FBI (WF) (FBI); 'tbridis@ap.org'; Brickley, Ann (CRM); 'etucker@ap.org'; Ohr, Bruce (ODAG); Greenaway, Karen A. (CID) (FBI);
'jhorwitz@ap.org'
Cc: Moon, Matthew S. (CID) (FBI)
Subject: Meeting with AP
When: Tuesday, April 11, 2017 9:00 AM-10:30 AM (UTC-05:00) Eastern Time (US & Canada).
Where: 4th floor VTC (4204)


We are located in the Bond Building at 1400 New York Ave NW.