# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC. | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| U.S. DEPARTMENT OF JUSTICE, | ) Civil Action No. 1:19-cv-879 (CJN) ) |
| Defendant. | ) ) ) |

## THIRD DECLARATION OF JONATHAN M. BREYAN

I, Jonathan M. Breyan, declare the following to be true and correct:

1. I am a Senior Supervisory Attorney in the Office of Information Policy (OIP), United States Department of Justice (DOJ or the Department). In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests subject to litigation processed by the Initial Request Staff (IR Staff) of OIP – a role in which I have served since 2019. Prior to becoming a Senior Supervisory Attorney, I served as an Attorney-Advisor on the Appeals Staff at OIP from 2013-2019. The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and from six senior leadership offices of the DOJ, specifically, the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs (PAO). Moreover, the IR Staff is responsible for processing FOIA requests seeking certain records from the Special Counsel's Office (SCO).

2. The IR Staff devises appropriate records searches for each FOIA request and determines whether records can be released in accordance with the FOIA. In processing such

1

requests, the IR Staff consults with personnel in the Department's senior leadership offices and, when appropriate, with other components within the DOJ, as well as with other Executive Branch agencies.

3. I make the statements herein on the basis of personal knowledge, including my extensive experience with the FOIA, with OIP, and in handling requests for senior leadership office records, as well as on information acquired by me in the course of performing my official duties, including information provided to me by others within the Department with knowledge of the types of records at issue in this case.

4. In my first declaration in this case, ECF No. 24-3, filed with the opening Defendant's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, ECF No. 24-1, I addressed the organization of SCO records, the volume of SCO data, OIP's search methodology, and the specific searches conducted in response to Plaintiff's FOIA request.

5. In my second declaration in this case, ECF No. 29-3, filed with the Defendant's Reply Memorandum in Support of its Motion for Summary Judgment and In Opposition to Plaintiff's Cross-Motion for Summary Judgment, ECF No. 29, I provided further explanation of the searches conducted by OIP, as well as a description of additional searches conducted by OIP after the filing of my first declaration.

6. This third declaration describes OIP's supplemental search and the information withheld within the records located through this supplemental search. This declaration is intended to be read in tandem with my first and second declarations.

*Supplemental Search of Bruce Ohr's Records*

7.      As described in the first declaration of Courtney J. O'Keefe, ECF No. 24-4, the Criminal Division (CRM) identified Bruce Ohr, "formerly of the Office of the Deputy Attorney General" (O'Keefe Decl. ¶ 17), as a custodian who may have had potentially responsive records regarding the April 2017 meeting and conducted a search of Bruce Ohr's CRM email account for records responsive to Plaintiff's FOIA request.

8.      OIP participated in internal Department discussions during the course of the supplemental summary judgment briefing in this litigation regarding the results of a supplemental search by the Executive Office for United States Attorneys (EOUSA).  In the course of those discussions, OIP was informed that CRM had discovered that during the relevant time period, Bruce Ohr was reassigned from CRM to ODAG, and, therefore, an employee of ODAG, not CRM.  OIP was also informed that Bruce Ohr was reassigned back to CRM from ODAG in January 2018 and that his CRM email account remained open during his tenure with ODAG, thus enabling CRM to conduct its initial search of his account during the relevant time period.

9.      In light of these circumstances, OIP determined that it would voluntarily conduct an electronic search of Bruce Ohr's ODAG email account using the same date range utilized by CRM, March 1, 2017 through June 30, 2017.  OIP opted to use a broader set of search terms than those originally utilized by CRM.  The following broader search terms were utilized by EOUSA in supplemental searches in this litigation and by OIP in its electronic search of Bruce Ohr's ODAG email account: "AP," "Associated Press," "Eric Tucker," "Jeff Horwitz," "Ted Bridis," "Jack Gillum," "etucker@ap.org," "jhorwitz@ap.org," "tbridis@ap.org," or "Manafort."  OIP also used the search strings ("Associated Press" AND locker) and ("AP" AND locker), which

were utilized in OIP's original email searches for two SCO employees, as described in my first and second declarations, ECF Nos. 24-3 and 29-3. Through this electronic search of Bruce Ohr's ODAG email account, OIP located one email thread responsive to Plaintiff's request (constituting one page processed for release by OIP).

10.     OIP also conducted a manual review of Bruce Ohr's handwritten notes using the same date range, March 1, 2017 through June 30, 2017, to locate any additional records that would be responsive to Plaintiff's FOIA request. The Records and Information Tracking Tool (RITT) contains records indices of documents belonging to former employees of OAG, ODAG, and OASG. After the end of a Department official's tenure with these leadership offices, his or her paper documents are indexed into the RITT database, which lists file folder titles, generally arranged according to subject. The Office of Records Management Policy (ORMP) of the Department's Justice Management Division (JMD) reviews these indices for accuracy and indexes the hard copy (i.e., paper) records into storage facilities. The OIP Attorney assigned to this case reviewed the RITT indices for Bruce Ohr's records and identified a folder titled "Bruce Ohr's Notes" which was retrieved by ORMP for OIP's manual review of the paper records within that folder. The OIP Attorney reviewed each relevant page of Bruce Ohr's handwritten notes, each page of which was dated with the month, day, and year they were taken, and did not locate any additional responsive records. OIP did not identify any other folders reasonably likely to contain responsive records in this RITT indices search.

11.     By letter dated October 12, 2023, OIP provided a supplemental response to Plaintiff, and released the one page, referenced above in paragraph 9, containing records responsive to Plaintiff's FOIA request. This page was released with withholdings made by OIP pursuant to Exemption 6 of the FOIA, and on behalf of the FBI pursuant to Exemptions 6, 7(C),

and 7(E).[1]  A copy of OIP's supplemental response, dated October 12, 2023, including the responsive one-page email thread processed for release by OIP, is attached hereto as Exhibit A.

*Explanation of Information Withheld by OIP Pursuant to Exemption 6*

12. Exemption 6 of the FOIA protects from disclosure information the release "of which would constitute a clearly unwarranted invasion of [the] personal privacy" of individuals. 5 U.S.C. § 552(b)(6).  When determining whether to withhold information pursuant to Exemption 6, OIP assesses whether there is more than a *de minimis* privacy interest at stake, whether there is any "FOIA public interest" in disclosure, and if so, balances those interests to determine whether protection of the information is appropriate.

13. The balancing test for Exemption 6 uses a "would clearly constitute unwarranted invasion of personal privacy" standard.  The FOIA public interest is limited to information which would shed light on the Department's performance of its mission: to enforce the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans.

14. OIP withheld the ODAG email address of Bruce Ohr pursuant to Exemption 6.  The release of Ohr's email address would not aid the public's understanding of how the Department carries out its duties, particularly when considering that Ohr's identity has been disclosed.  Accordingly, OIP determined that there is no FOIA public interest in the release of Ohr's ODAG email address.  Further, OIP determined that release of this email address would foreseeably subject Department employees to an increased risk of harassment and would risk

---

[1] The FBI will address these FBI withholdings in a separate declaration filed contemporaneously.

misuse and disruption of the proper and efficient use of official DOJ email accounts and communications systems, including for current government officials' accounts that use a similarly formatted email address as Ohr's. Release of this email address would not provide any marginal benefit to the FOIA public interest, particularly because the identity of the account holder, Bruce Ohr, is being disclosed, while there is a cognizable privacy interest in withholding this email address to protect the privacy of current and future Department employees and enable them to conduct Department business efficiently.

15. Although Ohr is no longer a Department employee, releasing any DOJ email address – both past and current – would reveal details about the Department's email address naming conventions that would contribute to the ability to "guess" the email addresses of current and future employees. Even though some DOJ email addresses are in the public domain, repeated and systematic release of DOJ email addresses would reveal trends in the Department's naming conventions and would thereby increase the chances that current and future Department employee email addresses can be predicted by individuals outside the government. This would foreseeably harm current and future employees' ability to conduct Department business efficiently via email and risk an onslaught of spam or phishing emails to their inboxes. Indeed, some Department employees have already experienced harassment and spamming when their email addresses have been guessed, necessitating that the Department take remedial and security measures to allow these employees to protect their privacy so that they may effectively do their jobs – and in some instances, to protect their personal safety.

16. In addition, some Department employees will leave the Department for a time, and then later return to it. In those instances, it is not uncommon for the Department to re-issue the same email address to that employee. For this reason, there is additionally a reasonably

foreseeable harm to the privacy of the departed employee to the extent that, upon returning to the Department, their email address will be publicly known. For these reasons, release of Bruce Ohr's ODAG email address would result in reasonably foreseeable harm to interests protected by Exemption 6. Specifically, release of the Ohr email address would constitute a clearly unwarranted invasion of the personal privacy of current and future Department employees. In the absence of a FOIA public interest in the disclosure of this email address, OIP determined that this information should be withheld.

17. OIP conducted a thorough line-by-line review of each record and released all reasonably segregable, non-exempt information. OIP withheld from disclosure only that very limited information (the email address) which would harm with reasonable foreseeability the interests protected by Exemption 6, discussed above.

I declare under penalty of perjury that the foregoing is true and correct.

*Jonathan Breyan*

_____
Jonathan M. Breyan
Senior Supervisory Attorney

Executed this 19th day of October, 2023.

# Exhibit A



**U.S. Department of Justice**

Office of Information Policy
*441 G Street, NW*
*Sixth Floor*
*Washington, DC 20530*

*Telephone: (202) 514-3642*

October 12, 2023

Sean Dunagan      Re:   DOJ-2019-005812
Judicial Watch, Inc.           19-cv-879 (D.D.C.)
sdunagan@judicialwatch.org     VRB:JMB:BRV

Dear Sean Dunagan:

    This is a supplemental response to your Freedom of Information Act (FOIA) request, dated July 5, 2018 and received in this Office on July 2, 2019,[1] for records related to an April 2017 meeting between Department of Justice and FBI personnel and the Associated Press.

    We previously provided you with three responses to your request, most recently on June 8, 2021.  One additional page containing records responsive to your request has been located.  At this time, I have determined that this page is appropriate for release with withholdings made pursuant to Exemptions 6, 7(C), and 7(E) of the FOIA, 5 U.S.C. § 552(b)(6), (b)(7)(C), and (b)(7)(E).  Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties, Exemption 7(C) pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties, and Exemption 7(E) pertains to records or information compiled for law enforcement purposes, the release of which would disclose certain techniques and procedures or guidelines for law enforcement investigations or prosecutions.  Please be advised that we have considered the foreseeable harm standard when reviewing records and applying FOIA exemptions.

    For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. § 552(c) (2018).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

---

[1] This FOIA request was not routed to this Office until July 2, 2019, after the above-captioned litigation related to this request had commenced.

If you have any questions regarding this response, please contact Antonia Konkoly of the Department's Civil Division, Federal Programs Branch at 202-514-2395.

        Sincerely,

        *Jonathan Breyan*

        Jonathan Breyan
        Senior Supervisory Attorney
        <u>for</u>
        Vanessa R. Brinkmann
        Senior Counsel

Enclosure

## RE: Following up

| | |
|---|---|
| From: | ▓▓▓▓▓ (WF) (FBI)" ▓▓▓▓▓ |
| To: | "Ohr, Bruce (ODAG) (JMD)" (b) (6) |
| Bcc: | "Ohr, Bruce (ODAG)" (b) (6) |
| Date: | Mon, 03 Apr 2017 11:33:48 -0400 |

b6 - 1 Per FBI
b7C - 1 Per FBI
b7E - 2 Per FBI

Hi Bruce,

Could we talk this afternoon or early tomorrow morning so I can clarify a couple of points, re: the AP reporters?

Thanks,
▓▓▓

From: Ohr, Bruce (ODAG) (b) (6)
Sent: Friday, March 31, 2017 2:15 PM
To: ▓▓▓▓▓ (WF) (FBI) ▓▓▓▓▓
Subject: Re: Following up

Thanks ▓▓▓

b6 - 1 Per FBI
b7C - 1 Per FBI
b7E - 2 Per FBI

Have a good weekend.

Bruce

Sent from my iPhone

On Mar 31, 2017, at 2:14 PM, ▓▓▓▓▓ (WF) (FBI) ▓▓▓▓▓ wrote:

b6 - 1 Per FBI
b7C - 1 Per FBI
b7E - 2 Per FBI

> Bruce,
>
> Let me talk to some folks here at HQ, first. I will be transitioning back to my regular duties at WFO soon and will be passing this project to a successor. I'll reach out early next week.
>
> Thanks,
> ▓▓▓

From: Ohr, Bruce (ODAG) (b) (6)
Sent: Friday, March 31, 2017 1:45 PM
To: ▓▓▓▓▓ (WF) (FBI) ▓▓▓▓▓
Subject: Following up

b6 - 1 Per FBI
b7C - 1 Per FBI
b7E - 2 Per FBI

▓▓▓

> Following up on the last matter I mentioned to you earlier this week, would you be available to meet with the reporters during the week of April 10? I can give you the additional details I've learned if you have a minute.
>
> - Bruce

19-cv-879 (FBI)-1A