UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC,
    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE,

    Defendant.

Case No. 1:19-cv-879-RBW

## DECLARATION OF SHANNON R. HAMMER

I, Shannon R. Hammer, declare as follows:

1.    I am currently Acting Assistant Section Chief (A/ASC) of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia, and in the absence of RIDS Section Chief Michael G. Seidel, I serve as Acting Section Chief for RIDS. I have held this position since December 2022. I joined the FBI in October 2006, and prior to my current position, I was the Unit Chief of the National Security and Classification Operations Unit; Unit Chief of a FOIPA Operations Unit; and a supervisor in the Initial Processing Operations Unit. In those capacities, I had management oversight for the RIDS national security review program; enterprise declassification review compliance, pursuant to Executive Order 13526, and classification reviews for civil and criminal discovery matters; and I oversaw the frontend operations of the FBI's FOIPA program.

2.    In my official capacity as Acting Section Chief of RIDS, I supervise approximately 241 FBI employees, supported by approximately 100 contractors, who staff a total of nine (9) Federal Bureau of Investigation Headquarters (FBIHQ) units and two (2) field

1

operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3.       Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of a one-page document referred for consultation to the FBI by the Department of Justice (DOJ), Office of Information Policy (OIP), on September 11, 2023. I am additionally aware that the DOJ, Criminal Division (CRM), released a supplemental response to Plaintiff on October 12, 2023, releasing 13 duplicative CRM pages previously released to the Plaintiff during the course of this litigation.[1] As the FBI requested equity withholdings, during consultation with CRM, pursuant to FOIA Exemptions (6), 7(C), and/or 7(E), the FBI will address the justifications for withholding pursuant to these exemptions below.

4.       This is my first declaration filed in this case and supplements, and hereby incorporates by reference, the information previously provided by Section Chief Michael Seidel

---

[1] The FBI has been advised the 13 pages of the CRM consulted pages at issue will be reprocessed for release of the specific referenced identity of SSA Karen A. Greenaway as the FBI has withdrawn (6) and 7(C).

for the first and second declarations dated, respectively, March 11, 2021 (First Seidel Declaration), and June 22, 2021 (Second Seidel Declaration). *See* ECF Nos. 24-2, and 30-2. The FBI submits this declaration in support of Defendant's Motion for Summary Judgment (MSJ).

5.     Below, the FBI provides the Court and Plaintiff a description of the FBI's procedures used to review and process the consulted OIP and CRM documents, and in accordance with *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), provides the FBI's justifications for withholding information in part from the consulted documents pursuant to 5 U.S.C. §§ 552 (b)(6), (b)(7)(C), and (b)(7)(E).

### JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

6.     The consulted documents responsive to Plaintiff's FOIA request received from OIP and CRM were processed by the FBI to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide Plaintiff with all material in the public domain and with all reasonably segregable, non-exempt information in the consulted records. Further description of the FBI information withheld beyond what is provided in this declaration could identify the actual exempt information the FBI has protected.

7.     *Justification Codes:* On the documents consulted to the FBI, the FBI further categorized its application of exemptions to better explain the nature of the information withheld pursuant to the provisions of the FOIA. Specifically, the FBI applied numerical codes that coincide with specific categories of exempt information.[2] This declaration demonstrates that all material withheld by the FBI is exempt from disclosure pursuant to the cited FOIA Exemptions.

8.     Each instance of information withheld pursuant to a FOIA Exemption is

---

[2] The OIP and CRM final responses to Plaintiff did cite to the FBI's coded Exemption category "PER FBI" on the face of the consulted documents.

3

accompanied by a coded designation that corresponds to the categories listed below. For example, if "(b)(7)(C)-1" appears on a document, the "(b)(7)(C)" designation refers to FOIA Exemption 7(C) protecting against unwarranted invasions of personal privacy. The numerical designation of "1" following the "(b)(7)(C)" narrows the main category into a more specific subcategory, such as "Name of an FBI Special Agent".

9.      The FBI withheld information pursuant to FOIA Exemptions 6 and 7(C) to protect the name of an FBI Special Agent, and Exemption 7(E) to protect an internal FBI e-mail address.

## EXEMPTION 7 THRESHOLD

10.     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 U.S.C. §§ 533 and 534, Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to the national security, and to further the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records described herein were compiled as part of the FBI's investigation into Paul Manafort, as discussed in the First Seidel Declaration at ¶ 44. Paul Manafort was convicted by a federal jury on five tax evasion charges, one charge for failure to report foreign accounts, and two counts of bank fraud. Thus, the consulted records were compiled for the law enforcement purpose of gathering potential leads concerning any potential federal crimes associated to Paul Manafort, which falls squarely within the federal law enforcement duties of the FBI. The consulted records

at issue readily meet the threshold requirement of Exemption (b)(7).

EXEMPTIONS (b)(6) AND (b)(7)(C): UNWARRANTED INVASION OF PERSONAL PRIVACY

11.     Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of Exemption 6.

12.     Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552 (b)(7)(C)."[3]

13.     When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of the FBI SA whose name appears in the consulted documents at issue. When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. For purposes of these exemptions, a public interest exists only when information about an individual, their name, or their identifying information would shed light on the FBI's performance of its mission to protect the American people and uphold the Constitution of the United States, and its

---

[3] The practice of the FBI is to assert Exemption (b)(6) in conjunction with Exemption (b)(7)(C). Although the balancing test for Exemption (b)(6) uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption (b)(7)(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

5

function to protect the United States from terrorist attack; protect the United States against foreign intelligence, espionage, and nefarious cyber operations; combat significant criminal cyber activity, public corruption, transnational criminal enterprises, white-collar crime, and violent crime; and protect civil rights. In this specific instance, the FBI withheld information within the consulted documents pursuant to FOIA Exemptions 6 and 7(C), as the FBI determined that the individual's privacy interests outweighed any public interest in disclosure.

*Name of FBI Special Agent (SA)*

14.     Within Exemption category (b)(6)-1 and (b)(7)(C)-1, the FBI withheld the name of an FBI SA in the OIP and CRM consulted documents. In the OIP and CRM consultation the withheld FBI SA did not attend the off the record meeting with the AP and DOJ concerning the AP reporter's investigation into Paul Manafort as well as certain other foreign nationals. As previously discussed in the Second Seidel Declaration at ¶ 5 the only three FBI SAs attending the meeting were SSA Karen A. Greenaway, SSA George W. McEachern, and SA Jeffrey Pfeiffer. The FBI SA identified in the OIP and CRM consulted document did not attend the meeting, nor has the SA's identity been publicly acknowledged or associated with the Manafort or any other related investigation.

15. As to CRM's supplemental release of duplicative CRM records containing FBI equities processed at an earlier stage of the case, the emails in CRM's October 12, 2023, supplemental release withheld FBI equities pursuant to FOIA Exemptions 6 and 7C for the name of the same FBI SA who appears in the OIP email, on Bates pages CRM-000003, 000009-000013. This SA has access to specific information concerning official law enforcement investigations and/or information concerning preliminary inquiries into potential criminal activities, counterterrorism, and national security investigations. The FBI SA could therefore

become targets of harassing inquiries for unauthorized access to FBI investigations and/or inquiries if his/her identity is released. Privacy considerations protect FBI SAs from unnecessary, unofficial questioning as to the conduct of any investigation or inquiry, whether or not they are currently employed by the FBI.

16.     The publicity associated with the release of the identity of an FBI SA in connection with law enforcement investigations, especially investigations and inquiries that received substantial media attention such as the case concerning Paul Manafort and related matters, could trigger hostility, harassment and unwanted media attention toward the FBI SA. This publicity may seriously prejudice his/her effectiveness in conducting other investigations or performing his/her day-to-day work. The privacy consideration is also applied to protect the FBI SA, as an individual, from unnecessary, unofficial questioning as to the conduct of these or other investigations.

17.     During the course of an investigation, SAs may engage with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. Persons targeted by such investigations, and/or those sympathetic to those targeted, could seek to inflict violence on an SA based on their participation in an investigation, particularly such a well-publicized investigation as the one at issue here. There is no public interest served by disclosing the SAs identities because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. Accordingly – and because the FBI SA whose name is redacted to protect FBI equities in both the OIP and CRM supplemental releases, has not been publicly acknowledge or previously disclosed in connection with any investigation related to the meeting that is the subject of Plaintiff's FOIA request -- disclosure of his/her identity would constitute a

clearly unwarranted invasion of his/her personal privacy; and the FBI properly withheld the names of FBI SAs pursuant to Exemptions 6 and 7(C).

EXEMPTION (b)(7)(E): INVESTIGATIVE TECHNIQUES AND PROCEDURES

18.     FOIA Exemption (b)(7)(E) provides protection for:

> law enforcement records [which]…would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E).

19.     Exemption (b)(7)(E) has been asserted to protect information from these records, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, if such disclosure could reasonably be expected to risk circumvention of the law.

20.     Within the responsive documents, the FBI applied Exemption (b)(7)(E) to non-public details about techniques and procedures that are otherwise known to the public. Specifically, the FBI asserted Exemption 7(E) to protect sensitive FBI internal e-mail addresses.

*Internal FBI E-mail Addresses*

21.     Within Exemption category (b)(7)(E)-2, the FBI withheld the sensitive internal FBI e-mail address of the above-discussed FBI SA for both the OIP and CRM consultations.[4] Disclosure of this FBI internal e-mail address could provide criminals with specific targets for possible cyber-attacks and other types of attacks on FBI secure communications. Considering the current cyber-security environment where government data breaches and other hacking attempts

---

[4] The FBI has been advised the 13 pages of the CRM consulted pages at issue will be reprocessed, with the release the identity of SSA Karen A. Greenaway. The FBI continues to protect its email naming convention for all current and former FBI personnel as they are all part of the FBI program protections of internal FBI policy, including email conventions/schemes.

on government systems are prevalent, it is likely that the release of this type of information could

provide hackers with avenues to exploit the FBI's Information Technology system. It is possible

they could use this information to gain unauthorized access to FBI systems, view and/or

manipulate sensitive investigative data, interfere with the FBI's non-public intranet protocol,

and/or hinder the FBI's ability to enforce the law by disrupting the FBI's internal

communications. Releasing this information poses substantial risks to FBI information systems,

could potentially decrease the FBI's effectiveness, and could enable criminals to circumvent the

law. Additionally, the publication of this information could allow bad actors to disrupt FBI's law

enforcement operations by subjecting FBI employees to harassing e-mails seeking information

concerning FBI investigations. And finally, release of an e-mail address would also necessarily

release the name of the FBI Special Agent (or a majority of the name), which has been withheld

for the reasons explained *supra* at ¶¶ 14-17. Thus, the FBI properly withheld this information

pursuant to Exemption (b)(7)(E).

## FORESEEABLE HARM STANDARD

22.     The FOIA Improvement Act of 2016 generally adopted the *foreseeable harm*

*standard* and made it statutory, advising that agencies shall withhold information under the

FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by

an exemption or disclosure is prohibited by law. Accordingly, the FBI's analysis of records

responsive under the FOIA is a two-part process.  First, the FBI determines whether a portion of

a record is exempt pursuant to one or more FOIA exemptions.  Second, if the portion thereof is

exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable

harm would result from disclosure of the portion thereof.  In each of the portions of withheld

records, the FBI conducted this two-part analysis and only portions of records where it

determined the withheld portion met both of these criteria. The FBI's foreseeable harm is more fully described within each of the above coded exemption justification categories.

## SEGREGABILITY

23.     In evaluating the consulted documents, the FBI conducted a line-by-line review and determined information in the consulted documents could be released in part with redactions pursuant to Exemptions 6, 7(C), and 7(E). These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on those pages. After the FBI's segregability review, all nonexempt information was segregated and disclosed.

## **CONCLUSION**

24.     The FBI processed documents consulted to it by OIP and CRM and released all reasonably segregable non-exempt information from those documents. The FBI processed the consulted documents under the access provisions of the FOIA to achieve maximum disclosure. Information was properly withheld pursuant to FOIA Exemptions 6, 7(C), and 7(E). The FBI carefully examined the consulted documents and determined the information withheld, if disclosed, would cause a clearly unwarranted invasion of the personal privacy or could reasonably be expected to constitute an unwarranted invasion of personal privacy; and would disclose an internal FBI procedure used for law enforcement investigations. After review of the documents at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

correct.

Executed this __19th__ day of October 2023.


SHANNON R. HAMMER
Acting Assistant Section Chief (A/ASC)
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia