IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 19-cv-0879 (CJN) |
| ) | |
| v. ) | |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Judicial Watch, Inc., by counsel and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, respectfully submits this Reply in support of its Cross-Motion for Summary Judgment (ECF 50). Defendant Department of Justice ("DOJ") has not satisfied its burden in showing that the attorney work product doctrine applies to the withheld meeting notes created by former Assistant U.S. Attorney for the Eastern District of NY (EDNY) Shreve Ariail and his colleague. The Court should order the release of these records, but at a minimum, Plaintiff requests an *in camera* review to determine the appropriateness of the withholding and a finding that Defendant's actions in the handling of Plaintiff's FOIA request with respect to the search and production of Ariail's records raise questions of arbitrary and capricious conduct.[1]

**I.       Defendant misapplies the attorney work product doctrine under Exemption 5.**

**A. Defendant's declarations are insufficient.**

Even with its supplemental declarations, Defendant still fails to demonstrate with any

---

[1] After reviewing Defendant's supplemental declarations regarding its supplemental searches conducted after Plaintiff filed its Cross-Motion and Opposition for Summary Judgment, Plaintiff no longer challenges the adequacy of the search for responsive records.

sufficient evidence that the attorney work product doctrine applies to the withholdings.  Rather than securing testimony from the attorney authors whom it clearly has access to,[2] Defendant relies only on the "presumption of good faith" generally afforded to agency affidavits.  *See Nova Oculus Partners, LLC v. U.S. Sec. & Exch. Comm'n*, 486 F. Supp. 3d 280, 288 (D.D.C. 2020).  In most FOIA cases, sufficiently detailed agency declarations are provided deference.  However, this privilege does not extend where agency information is conflicting, where circumstances give rise to conduct that is arbitrary or capricious, or where there is evidence of bad faith.  5 U.S.C. § 552 (a)(4)(F); *Animal Legal Def. Fund v. United States Dep't of Agric.*, 935 F.3d 858, 872 (9th Cir. 2019); *Landmark Legal Found. v. E.P.A.*, 959 F. Supp. 2d 175, 184 (D.D.C. 2013); *Judicial Watch, Inc. v. Dep't of* Commerce, 34 F. Supp. 2D 28, 41 (D.D.C. 1998); *Weisberg v. Webster*, 749 F.2d 864, 868 (D.C. Cir. 1984).  Defendant's supporting affidavits have been less than forthcoming and proven to be demonstrably false.  *See* Pl's Opp. at 3-4; *see also* Plaintiff's (First) Reply in Support of Cross-Motion for Summary Judgment at 3 (ECF 31).

Defendant relies on the Declaration of Attorney-Advisor Kara Cain ("Cain Decl."), which merely parrots legal statutory language, without providing any independent factual testimony upon which the Court can rely.  1st Cain Decl., ¶ 50 (ECF 48-2).  Declarant Cain's broad and boilerplate representation that the handwritten notes "contain the 'mental impressions' of Ariail and his colleague, 'concerning information related to potential criminal activity received in their official capacity as federal prosecutors and possible investigative steps'" is insufficient to conclude the notes were created in anticipation of specific litigation.  *Id.*; Def. Mem. at 19; *see SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) ("Where an

---

[2]     Defense counsel had a conversation with Ariail in January 2023 regarding his DOJ files. *See* Transcript of Hearing ("Tr.") at 15:19-16:13 (ECF 45).  Ariail's former colleague still works at EDNY.  *See* 1st Declaration of Jeanette Gonzalez-Rivera, ¶¶ 4-12 (ECF 48-3).

attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product.")   What is missing here is the "specific" requirement warranting non-disclosure.  Ariail confirmed he attended the meeting in his capacity as former head of the EDNY Organized Crime and Gangs Unit, and not as a prosecuting attorney preparing for litigation.  Def's Mem. at 9; Tr. at 15:19-16:13 (ECF 45).  Without specific relation to litigation, it appears the withheld records are simply notes made by a former Division Chief.  Defendant does not even address the former colleague's notes, let alone attempt to connect them to specific litigation warranting attorney work product protection.  Defendant's declarations omit the type of specific details that are necessary to satisfy the attorney work product doctrine under Exemption 5.

Defendant's actions, and omissions, pierce the "presumption of good faith" afforded to agency's declarations.  At every turn since the onset of this litigation, Defendant has claimed it has done all that it is required to do under FOIA – in its own words having "gone above and beyond" its duties – yet, at every turn it has found additional records previously missed, redactions previously mistakenly made, and demonstrated conduct that is arbitrary and capricious.  *See e.g.* Def's Mem. at 9-10; Def's Reply at 1, 7-12; 3d Breyan Decl. ¶¶ 7-11; 1st Hammer Decl. ¶ 3 & n. 1; 1st Gonzalez-Rivera Decl. ¶¶ 4, 5, 7, 11; 2d Gonzalez-Rivera Decl. ¶ 4; 3d O'Keefe Decl. ¶¶ 10-18; Tr. at 16:23-17:1; ECF 34, 36, 37, and 40.

**B. Defendant fails to show that the notes would not have been created in the ordinary course of business, regardless of litigation.**

As noted in Plaintiff's cross-motion for summary judgment, the very fact that Defendant located a box with Ariail's notebooks memorializing meetings, as it did for Ariail's former colleague, leads one to logically conclude that it was these DOJ attorneys' normal course of

business to take notes of meetings attended – undermining Defendant's claim that the notes are protected as work product in reasonable anticipation of litigation. Pl's Opp. at 13; *see* 1st Gonzalez-Ramirez Decl. ¶¶ 4-11. Simply because the notes are taken by an attorney does not shield them from disclosure. Documents prepared for general agency business, and not necessarily for litigation, should not be given protection of the work product privilege. *Federal Trade Commission v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) ("Where a document would have been created 'in substantially similar form' regardless of the litigation, work-product protection is not available."); *Pub. Citizen, Inc. v. Dep't of State,* 100 F. Supp. 2d 10, 30 (D.D.C. 2000) ("Although the work product privilege extends to documents prepared in anticipation of foreseeable litigation, even where no specific claim is contemplated, documents prepared in the agency's ordinary course of business, not sufficiently related to litigation, may not be accorded protection.") (citations omitted), rev'd in part on other grounds, *Pub. Citizen v. Dep't of State*, 276 F.3d 634 (D.C. Cir. 2002).

Although seemingly simple to do so – either by contacting Ariail or his former colleague to provide clarification on their notes – the agency chooses not to follow through on available, accessible, and relevant direct sources of information to satisfy its burden. *See* Pl's Opp. at 12; Def's Mem. at 9; Transcript of Hearing ("Tr.") at 15:19-16:13 (ECF 45) (relaying telephone conversation between Defense counsel and Ariail). Instead, it leaves the Plaintiff and the Court debating the question of attorney work product application based solely on conclusory agency declarations under the guise of "presumption of good faith."

In addition, Defendant's attempt to justify shielding the notes because part of DOJ's mission is to prosecute criminal activity and DOJ attorneys are always having an "eye toward litigation" is flawed. *See Jordan v. DOJ*, 591 F.2d 753, 775 (D.C. Cir. 1978) ("The work-

product rule does not extend to every written document generated by an attorney; it does not shield from disclosure everything that a lawyer does.  Its purpose is more narrow, its reach is more modest.")  If the Court is to accept such a broad approach, DOJ could shield almost any records since so much of what the agency does is performed by attorneys and subject to litigation or investigation of some kind.  Such an expansive application of the privilege in the FOIA context is improper.  "[T]he policies of the FOIA would be largely defeated" if agencies were to withhold any documents created by attorneys "simply because litigation might someday occur." *Senate of P.R. v. DOJ*, 823 F.2d 574, 587 (D.C. Cir. 1987).  Here, Defendant extends a "flexible approach" under FOIA to an all-inclusive application for any and all notes taken by an attorney as created "with an eye toward litigation" without providing the necessary specifics to justify withholding.  *Hickman v. Taylor,* 329 U.S. 495 (1947); *A. Michael's Piano, Inc. v. Federal Trade Commission,* 18 F.3d 138 (2d Cir. 1994).

Furthermore, Defendant's statement that it "has never staked its assertion of privilege (as to either set of attorney notes) on the Manafort investigation" falls short, leaving Plaintiff and the Court to wonder "on what investigation or litigation does Defendant stake its assertion of the privilege?" *See* Def's Reply at 15, fn 6.  The fact that both sets of attorney notes were not located in the Office of the Special Counsel Robert Mueller or the Paul Manafort litigation file during Defendant's original search supports Plaintiff's claim that these notes were taken in the ordinary course of business – and they were not created with an eye toward any specific litigation.

II.     *In Camera* **review is warranted.**

If the Court is not inclined at this time to order the production of the notes taken by Ariail and his former colleague from the meeting or about the meeting with the AP reporters, Plaintiff respectfully requests an *in camera* review by the Court of these notes.  *See Allen v. CIA*, 636

F.2d 1287, 1298 (D.C. Cir. 1980) ("Where the agency fails to meet that burden, a not uncommon event, the court may employ a host of procedures that will provide it with sufficient information to make its *de novo* determination, including *in camera* inspection."). Courts have departed from routine reliance on agency affidavits where exemptions are not sufficiently proven, or where other good cause may exist to order release of information under FOIA. *Id.*; *see also Juarez v. DOJ*, 518 F.3d 54, 59-60 (D.C. Cir. 2008). *In camera* review is "particularly appropriate" in cases like this one, where the "agency affidavits are insufficiently detailed to permit meaningful review of exemption claims." *Quinon & Strafer v. Federal Bureau of Investigation*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). As the D.C. Circuit Court has explained:

> In cases that involve a strong public interest in disclosure there is also a greater call for in camera inspection…When citizens request information to ascertain whether a particular agency is properly serving its public function, the agency often deems it in its best interest to stifle or inhibit the probes. It is in these instances that the judiciary plays an important role in reviewing the agency's withholding of information. But since it is in these instances that the representations of the agency are most likely to be protective and perhaps less than accurate, the need for in camera inspection is greater.

*Allen*, 636 F.2d at 1299. The public interest in disclosure in this case, and the strong possibility of the agency being "protective" of information, under the circumstances, dictates such a review here is appropriate. Plaintiff also respectfully submits that an *in camera* review would not create a heavy burden on the Court as the records consist of only 22 pages. *See* Def's Reply at 1.

**III.    Defendant's handling of Plaintiff's FOIA request raises questions of arbitrary and capricious conduct subject to Section 522(a)(4)(F).**

Presently before the Court is a second round of summary judgment briefing. At the initial briefing stage, the Court agreed with Plaintiff that Defendant needed to search Ariail's records within the Executive Office for United States Attorneys ("EOUSA") to satisfy its obligations under FOIA – a source of records that it could not "in good faith ignore." Memo. Opinion, March 28, 2022, p. 13 (ECF 32). As a result, additional records were located, including

the meeting notes Defendant now is improperly attempting to shield. *See supra*, pp. 2-6.

Defendant's actions since the onset of the litigation are troubling and cannot be ignored. Taken individually, perhaps it could be argued that some were inadvertent mistakes – but when viewed together, they suggest a pattern of bad faith and raise questions of whether agency personnel acted arbitrarily or capriciously to justify an investigation consistent with Section 552(a)(4)(F). 5 U.S.C. § 552(a)(4)(F).

First, Defendant's failure to forward Plaintiff's FOIA request to EOUSA when it originally received the request was wrong. On July 5, 2018, Plaintiff submitted the FOIA request to DOJ about the April 2017 meeting with the AP reporters seeking records from DOJ. Comp. ¶¶ 8-9; Memo. Opinion at 13 (ECF 32). DOJ's knowledge that Ariail with EOUSA attended the meeting is undisputed as DOJ scheduled and coordinated the meeting. ECF 27-1 at p. 13 (Outlook Calendar Meeting Invitation from Shreve Ariail to Andrew Weissmann, "Subject: Accepted: FW: Meeting with AP"). While Plaintiff concedes that this act alone could be viewed as an inadvertent omission, Plaintiff cannot concede that Defendant's refusal to later correct its mistake by not forwarding the request to EOUSA was inadvertent. Memo. Opinion at 13 (ECF 32).

Second, it became evident to Plaintiff in or around September 2020 that Defendant failed to undertake a proper search of Ariail's records. In response to Plaintiff's request that Defendant search EOUSA for Ariail's records, DOJ informed Plaintiff by email through counsel on October 2, 2020, that a "search of [] Ariail's email will require a routing of [Plaintiff's] request to EOUSA. The Criminal Division [CRM] is considering whether or not it will route your FOIA request to EOUSA. Alternatively, Judicial Watch can submit a FOIA request to EOUSA directly." Oct. 2, 2020 Email, Konkoly to Cotca, attached hereto as Ex. 1 (highlight added to

relevant portions for ease of reference). Plaintiff noted its objection to Defendant's proposal that Plaintiff submit a separate FOIA request to EOUSA and reminded agency counsel that Plaintiff submitted the request to DOJ, not CRM, and that DOJ had the obligation to "identify the components with potentially responsive records and request that those components search for potentially responsive records." *Id.* To date, Defendant has yet to provide any good reason why it arbitrarily refused to forward Plaintiff's request to EOUSA when it knew that Plaintiff's FOIA request was submitted to DOJ, not CRM, that EOUSA had relevant records, and that Plaintiff had specifically requested them. The only justification Defendant has provided to date was in its initial round of summary judgment briefing, specifically that CRM was not a custodian of EOUSA – which on its face was a poor, meritless argument as Plaintiff's FOIA request was not made to CRM. *See* Memo. Opinion at 13 (ECF 32).

Third, Defendant's refusal to search EOUSA prior to the Court's March 28, 2022 memorandum opinion on the parties' initial round of summary judgment still does not explain Defendant's failure to notify EOUSA of the pending litigation for purposes of preserving the records Plaintiff requested. Even if one is to assume that Defendant did not believe that it had an obligation to search EOUSA, this fact is an entirely separate matter from the fact Defendant had the legal obligation to preserve records and evidence that are in dispute, pending resolution from the Court. Defendant's failure to do so was egregious and resulted in the destruction of relevant records during this litigation. *See e.g.* ECF 35, 36, 37, 38, and 40. It is also noteworthy that Defendant led the Court and Plaintiff to believe for more than six months after the Court's March 2022 order that DOJ was undertaking a search of Ariail's records in good faith, all the while knowing about the destruction of evidence and failing to disclose this fact until Plaintiff requested a search declaration. *Id.* Neither Plaintiff nor the Court should have any reason to

believe that DOJ would have disclosed this information without Plaintiff's pressing. Defendant's conduct and that of its attorneys was more than remiss here, and the issue of whether the agency and its attorneys acted in bad faith, arbitrary and capricious cannot be ignored.

The circumstances surrounding Defendant's handling and processing of Plaintiff's FOIA request, when viewed as a whole, undisputedly raise questions on whether DOJ and its attorneys acted arbitrarily and capriciously. Accordingly, Plaintiff seeks an order finding that Defendant's conduct and that of its attorneys in refusing to forward Plaintiff's FOIA request to EOUSA for four years – until it was ordered to do so in the Court's March 28, 2022 order – and their failure to ensure that relevant records were preserved until the Cout adjudicated over the parties' claims over the disputed records "raise[] questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding" to justify a referral to the Office of Special Counsel for an appropriate investigation inquiry, consistent with Section 552(a)(4)(F).[3]

## IV.    Conclusion

For all the reasons asserted above and in Plaintiff's cross-motion for summary judgment, the Court should release the meeting notes Defendant continues to withhold, or, at a minimum, review them *in camera* to determine the appropriateness of Defendant's claim of the attorney work product doctrine under Exemption 5. In addition, Plaintiff seeks a finding from the Court that Defendant's conduct in processing and handling of Plaintiff's FOIA request raises questions of arbitrary and capricious conduct that warrant a referral for investigation under Section 522 (a)(4)(F).  5 U.S.C. § 552 (a)(4)(F).

---

[3]    While the statute mandates the investigation inquiry in the case of arbitrary or capricious "withholding," it logically follows that an agency's arbitrary and capricious refusal to search the records results in a "withholding" of the same records.

Dated: November 21, 2023

Respectfully submitted,

*/s/ Ramona R. Cotca*
Ramona R. Cotca (D.C. Bar No. 501159)
Lauren M. Burke (D.C. Bar No. 1028811)
Kathryn Blankenberg (D.C. Bar No. 1781777)
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
Tel:   (202) 646-5172
Email: rcotca@judicialwatch.org
       lburke@judicialwatch.org
       kblankenberg@judicialwatch.org

*Counsel for Plaintiff*